IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO THE COURT'S AUGUST 25, 2003 ORDER

Defendant, the United States, respectfully submits this response to "Yankee Atomic's Motion To Compel Production Of Documents Pursuant To The Court's August 25, 2003 Order," filed on March 12, 2004.[1] In that motion, the three Yankee plaintiffs, Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, and Maine Yankee Atomic Power Company (collectively, "the Yankees"), seek to compel the production of three documents.[2] Although the Court ordered in its August 25, 2003 order that the Government could produce two of these documents in redacted form, the Yankees claim that the Government's attorneys have clearly redacted these two documents in a manner designed to deprive the Yankees of evidence. The Yankees also move to compel production of another document based upon the

[1] This response should be deemed applicable to Connecticut Yankee v. United States, Case No. 98-154C, and Maine Yankee v. United States, Case No. 98-474C.

[2] In their motion to compel, the Yankees identify several other matters that they raised in a letter to the Government dated November 12, 2003. They do not specifically request any relief from the Court regarding those matters, stating that it "hopes the other concerns can be resolved without the Court's intervention." Motion, at 2 n.3. We provided a complete response to all of the issues raised in the Yankees' November 12, 2003 letter on March 25, 2004. See App. 1-4. We presume that the "other concerns" that the Yankees raised are now resolved.

Government's failure to include the document in its privilege log. In support of this response, we rely upon the following brief and appendix.

## ARGUMENT

### I. THE YANKEES' MOTION SEEKING PRODUCTION OF PRIVILEGED PORTIONS OF DOCUMENT NO. 70 IS UNSUPPORTED

In its August 25, 2003 order, the Court required production of certain documents that the Government had claimed were subject to the deliberative process privilege. However, in doing so, the Court also reviewed the information contained in the Government's privilege logs and upheld the Government's additional claims of the attorney-client or work product privileges with respect to certain of these documents, and ordered those documents produced in redacted form to protect the portions identified as subject to the attorney-client or work product privileges in the logs. Order, at 3. The Yankees, without any support other than their own innuendo and speculation, now accuse the Government attorneys of using the redaction process to "gut" or delete the portions of two of these documents over which they had previously asserted the deliberative process privilege. Motion, at 2-3. Essentially, the Yankees are accusing the Government's attorneys of spoliation of evidence by using the redaction process to achieve what they could not in motion practice. Id. at 3-4.

One of the documents that is the subject of these claims is Document No. 70 (HQR166-0032).[3] Document number 70 is a December 13, 2001 informal memorandum sent by Lake Barrett, then Acting Director of DOE's Office of Civilian Radioactive Waste Management

[3] "Document No. ____" refers to the document number ascribed to a document listed in the Government's privilege log, as identified in the Yankees' March 6, 2003 motion to compel. Those numbers also were referenced in the Court's August 25, 2003 order.

("OCRWM"), to Jessie Roberson, DOE's Assistant Director for Environmental Management, requesting assistance in drafting a response letter to Governor King addressing GTCC waste storage. Id. at Ex. F. In its initial privilege log, the Government had set forth that the memorandum "reveals the deliberations of DOE regarding how to respond to Governor King's letter" in support of its claim relating to the deliberative process privilege. Id. at Ex. G. However, the Government also represented in the initial privilege log that the memorandum "contains the substance of communications between OCRWM and DOE-OGC regarding proposed response." Id. at Ex. G. After reviewing this entry in the privilege log, the Court, in its August 25, 2003 order, allowed the Government to produce this memorandum "after redacting [the] substance of legal communications." Order, at 3.

The Government complied fully with the Court's order by only redacting two and one-half sentences out of the last two paragraphs of the three-paragraph memorandum before it was produced. See Motion, at Ex. F. The memorandum as produced contains a communication from Acting Director Barrett regarding the reasons behind his efforts to arrange a meeting with Assistant Secretary Roberson to discuss the Office of Environmental Management's position on preparation of an Environmental Impact Statement to analyze the alternatives for disposal of GTCC waste. Id. at Ex. F. However, the Government redacted the description of the legal communications between OCRWM and the Department's Office of General Counsel ("DOE-OGC"), as permitted by the Court's August 25, 2003 order. In response to the Yankees' request that we "re-review" our redaction, we did, and we again determined that it involved a description of the substance of legal communications between attorney and client. App. 1-2.

Despite the clarity of the Government's privilege description, the Yankees focus on a single sentence in the redacted document, Document No. 70, that precedes the Government's two-and-one-half sentence redaction, which contains Mr. Barrett's statement about the NRC's objection to the "absence of proposed path forward," and claim that the Government has "completely excised" the "rest of the letter amplifying this comment." Id. at 3-4. They speculate that the redactions that the Government made to Document No. 70 simply cannot involve a description of legal communications between attorney and client, apparently because the Yankees very much want to see the remainder of the document. The Yankees rely on nothing but pure speculation to support their inference that the two-and-one-half sentence redaction is connected in any way to Mr. Barrett's comment about the NRC objection. Id. at 4.

The Yankees' baseless speculation and accusations fail to satisfy the Yankees' burden of challenging the Government's assertion of privilege. As this Court, through Judge Sypolt, previously held in this very case in resolving the Yankees' prior challenges to the Government's privilege claims, each party that claims privilege over any documents must "submit its *prima facie* grounds for denying production of each withheld document" in a privilege log, which "requires merely a description of the type of document (e.g., an opinion letter, a request for an opinion letter), its topic, date, the writer and recipient, and an explanation as to why the matter is deemed to be privileged (which privilege was being invoked and on what grounds)." Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002). "Needless to say, the party invoking the privilege need not reveal so much about the contents of a communication as to compromise the privilege." Id. After it receives the other party's privilege log, "[t]he challenger

of a privilege has the burden of showing, whether based on the terms of the description, or on extraneous knowledge, that the document appears not to be privileged." Id. at 309.

Here, the Yankees have failed to present any evidence whatsoever challenging the Government's privilege claims. They implicitly acknowledge that the privilege description adequately describes a privileged attorney-client communication, and the Court's August 25, 2003 order implicitly acknowledged the adequacy of that description by permitting the Government to redact the privileged attorney-client information from the document. Nevertheless, the Yankees assert that the Court should order production because they do not trust the Government. The Yankees have offered no evidence or argument, other than pure speculation, that the Government's attorneys, as officers of this Court, have misrepresented the contents of the redacted two-and-one-half sentences. Certainly, there is nothing about the fact that Mr. Barrett and Ms. Roberson are not attorneys that should cause the Court to doubt the representations by the Government attorneys that, in the two-and-one-half sentence redaction at the end of his memorandum, Mr. Barrett might have relayed to Ms. Roberson comments made to Mr. Barrett by the agency's Office of General Counsel about the very subject matter of the memorandum. Id. at Ex. F. Although the Yankees rely on authorities for the proposition that the "cc" to the Department of Energy's General Counsel, Ms. Otis, might be insufficient "by itself" to sustain an assertion of attorney-client privilege, id., at 4, n.4, our privilege claim is not based upon any argument that, through this memorandum, Mr. Barrett was seeking legal advice from Ms. Otis. Instead, we have informed the Court and the Yankees that the memorandum describes the substance of prior legal communications between OCRWM and DOE-OGC. The Yankees

have identified nothing beyond utter speculation as its grounds for overcoming our assertion of privilege. Such speculation is insufficient to challenge this privilege claim.

As an alternative to production, the Yankees suggest that this Court should conduct an in camera inspection of this document in an unredacted form. In fact, the Yankees appear to believe that in camera inspections should occur whenever a party, without establishing any good cause, simply does not trust the other party's representations. That suggestion is not only unprecedented, but it is in direct conflict with case precedent regarding in camera inspections. Importantly, a district court typically uses in camera inspection of documents only in exceptional, rather than routine, cases, primarily because it "circumvents the adversarial process." Jones v. Federal Bureau of Investigation, 41 F.3d 238, 243 (6th Cir. 1994); see PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 252-53 (D.C. Cir. 1993) (in camera review generally disfavored); Schiller v. National Labor Relations Bd., 964 F.2d 1205, 1209 (D.C. Cir. 1992) (in camera review "is generally disfavored"); McNamara v. United States Dep't of Justice, 974 F. Supp. 946, 955 (W.D. Tex. 1997) (Vaughn index is preferable to in camera inspection because "it keeps in tact [sic] our system of adversarial dispute resolution"). Although a court may ask the agency to provide more information about the subject of the documents in question, it will seek in camera inspection in only exceptional circumstances where it cannot obtain sufficient information from agency explanations and descriptions. See, e.g., Young v. Central Intelligence Agency, 972 F.2d 536, 538 (4th Cir. 1992) (rejecting in camera inspection when affidavits and Vaughn index were sufficiently specific); Silets v. United States Dep't of Justice, 945 F.2d 227, 229-32 (7th Cir. 1991) (en banc) (same); Vaughn v. United States, 936 F.2d 862, 869 (6th Cir. 1991) (finding in camera review "neither favored nor necessary where other evidence provides adequate detail and

justification"). Further, it would be patently unfair for the Yankees to attempt to place before the trial court judge assigned to a case its adversary's privileged internal communications without showing the exceptional circumstances that might warrant an in camera review. Although we fully respect the Court's ability to disregard information that it determines is not admissible evidence, it is inappropriate to place either the Government or the Court in a position that would require the Court to attempt to disregard such information absent the exceptional circumstances that would warrant an in camera review.

Here, the Yankees do not contend that the Government's privilege description, on its face, fails to support a claim of privilege. Instead, the Yankees merely assert that they do not believe counsel for the Government and that the Court should double-check counsel's veracity by reviewing privileged documents in camera. Further, the Yankees' irresponsible representations about the Government's motives in this litigation are outrageous. See, e.g., Motion, at 4 ("[i]t seems far more likely that the government, in an attempt to continue to hide this redacted material from the plaintiffs and the Court . . . ."). The Court should firmly rebuke the Yankees' inappropriate comments and request.

## II. THE YANKEES' MOTION SEEKING PRODUCTION OF PRIVILEGED PORTIONS OF DOCUMENT NO. 205 IS UNSUPPORTED

Document No. 205 (NRC004-0243) is a October 22, 2001 internal NRC e-mail regarding the NRC's review of DOE’s draft response to the letter from Governor King. Here again, relying on the representations of the Government attorneys in the Government’s privilege log that a portion of the e-mail “contains [a] description of legal advice provided by NRC-OGC, based upon review of proposed response for legal sufficiency,” the Court’s August 25, 2003 order

allowed the Government to produce the e-mail "after redacting the description of legal advice." That is precisely what the Government's attorneys have done. The Yankees claim that the Government has "gutted" this piece of evidence.

Here again, the document at issue is an intra-agency communication regarding the agency's review of a draft response to Governor King's letter. Here again, the substance of the Government's privilege claim is that the author of the communication included a description of agency counsel's advice on that subject. Supporting that claim is the fact that an attorney with the office of agency counsel is not just copied, but is an addressee of the communication. Finally, once again, there is nothing to support the Yankees' claim of ulterior motive beyond pure speculation and baseless suspicion. The Yankees have no grounds to support their claims that the Government or its attorneys have acted inappropriately. Indeed, the documentary evidence attached to their motion shows only that the Government attorneys have done nothing other than comply with this Court's discovery orders on the privilege issues. For the same reasons described in response to the Yankees' request for production of Document No. 70, the Yankees' request for production or for an in camera review of Document No. 205 is inappropriate.

III. THE YANKEES' MOTION RELATING TO THE DOCUMENT WITH A BATES-STAMP NO. HQR236-003 SHOULD BE DENIED BECAUSE THE GOVERNMENT HAS PROVIDED AN ADEQUATE PRIVILEGE DESCRIPTION FOR THAT REDACTION

The Yankees have moved to compel the production of a third document (HQR236-0030 through -0032) because it was never listed on the Government's privilege log. The Government's records indicate that this document was produced in redacted form on September 30, 2003, one month after the Court's August 25, 2003 order. Although an entry relating to the

document was added to the Government's privilege log and was provided to some other plaintiffs, a revised log containing that entry apparently was not provided to the Yankees. That omission has been corrected, and the privilege log entry relating to this document reads as follows:

> FAX TRANSMITTAL FROM J. TAYLOR TO W. OLSEN FORWARDING MATERIAL REGARDING GTCC PRESENTED TO UNDERSECRETARY CARD FOR DELIBERATION REGARDING THE BUDGET; REDACTED MATERIAL AND PAGES CONTAIN BUDGET INFORMATION REGARDING PROGRAMS UNRELATED TO OCRWM OR GTCC. A REDACTED VERSION OF THIS DOCUMENT, PAGES 0030 - 0032, IS BEING RELEASED PURSUANT TO THE COURT'S ORDER OF AUGUST 25, 2003.
> AW ATTORNEY: J. TAYLOR (DOE-OGC)

Ms. Taylor is an attorney with DOE-OGC, Mr. Olsen was an attorney with the Department of Justice at the time of the fax transmittal, and their communications are properly privileged.

To the extent that the Yankees are complaining that the Government redacted sensitive yet irrelevant and non-responsive information from a document produced to the Yankees, the Yankees are in no position to complain, given that they have produced numerous documents only after redacting what they consider to be irrelevant information. See, e.g., Connecticut Yankee Trial Exhibit No. 1444, page CDB006706, and Trial Exhibit Nos. 296, 1445, 1448, & 1450; Maine Yankee Trial Exhibit Nos. 1505 & 1506; Yankee Atomic Bates-Stamp Pages YAE001610, YAE1613, & YAE001614. If the Yankees want to challenge redactions of irrelevant information, they should similarly be required to produce all such information previously redacted from their own document production. If any of the redacted information was relevant to these proceedings, it is highly likely that the Department of Energy would have

invoked the deliberative process privilege over it and would likely do so if the Court ordered the production of irrelevant information. Yet, because the information is irrelevant to these proceedings, no need exists for DOE to engage in that effort. Because the Government properly redacted this information, the Yankees' claims that the Court should order its production should be rejected.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Yankees motion compel production of these three documents be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

March 30, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 30th day of March 2004, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO THE COURT'S AUGUST 25, 2003 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.