**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

No. 98-126C
(Senior Judge Merow)

UNITED STATES OF AMERICA,

Defendant.

## YANKEE ATOMIC'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

1. The "Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste" (the "Standard Contract") executed by Yankee Atomic Electric Company ("Yankee Atomic"), Maine Yankee Atomic Power Company ("Maine Yankee"), and Connecticut Yankee Atomic Power Company ("Connecticut Yankee") required DOE to issue an "acceptance priority ranking" ("APR") of SNF and/or HLW, through which SNF and/or HLW would receive acceptance priority based generally upon its age.

RESPONSE: Yankee Atomic agrees that the parties' contract required DOE to issue an Acceptance Priority Ranking. However, that ranking was only an initial allocation of priority and was for planning purposes only. *See Opposition to Motion for Summary Judgment* and evidence cited therein, particularly at pp. 18-21.

2. The Standard Contract contains the following contractual provision:

> Acceptance Priority Ranking. <u>Delivery commitment schedules for SNF and/or HLW may require the disposal of more material than the annual capacity of the DOE disposal facility (or facilities) can accommodate</u>. The following acceptance priority ranking will be utilized.

(a) Except as may be provided for in subparagraph (b) below and Article V.D. of this contract, acceptance priority shall be based upon the age of the SNF and/or HLW as calculated from the date of discharge of such material from the civilian nuclear power reactor. DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility, except as otherwise provided for in paragraphs B and D of Article V.

(b) Notwithstanding the age of the SNF and/or HLW, priority may be accorded any SNF and/or HLW removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently for whatever reason.

10 C.F.R. § 961.11, Art. VI.B.1 (emphasis added).

RESPONSE: Yankee Atomic agrees the quoted provision appears in the parties' contract. To the extent the government attributes any special significance to the language it emphasizes, Yankee Atomic objects, but because the government does not specify any such significance, Yankee Atomic cannot respond further.

3. On June 22, 1983, Yankee Atomic executed the Standard Contract. "Yankee Atomic's 2003 Statement of Relevant Facts in the Form of a Proposed Stipulation of Facts," at ¶33.

RESPONSE: Yankee Atomic agrees.

4. In February 1992, Yankee Atomic announced it would permanently cease operation of its plant. Id. at ¶ 18.

RESPONSE: Yankee Atomic agrees.

5. As of February 1992, all fuel assemblies from Yankee Atomic's reactor had been moved into the fuel pool. Id at ¶ 17.

RESPONSE: Yankee Atomic agrees, but objects that this fact is irrelevant to the government's motion.

6. On June 30, 1983, Connecticut Atomic executed the Standard Contract. "Connecticut Yankee's 2003 Statement of Relevant Facts in the Form of a Proposed Stipulation of Facts," at ¶ 36.

RESPONSE: Yankee Atomic agrees.

7. In December 1996, Connecticut Yankee permanently eased operation of its plant. Id. at ¶ 18.

RESPONSE: Yankee Atomic agrees.

8. On June 6, 1983, Maine Yankee executed the Standard Contract. "Maine Yankee's 2003 Statement of Relevant Facts in the Form of a Proposed Stipulation of Facts," at ¶33.

RESPONSE: Yankee Atomic agrees.

9. Maine Yankee last operated its nuclear power plant in December 1996. Id. at ¶ 16.

RESPONSE: Yankee Atomic agrees.

10. The Department of Energy has consistently maintained a policy that no priority would be granted to shutdown reactors under the terms of the Standard Contract. See, e.g., Deposition of Lake Barrett, May 15, 2002, at 323:19-23; Deposition of David Zabransky, June 6, 2002, at 305:19-306:14; Deposition of Thomas Pollog, May 15, 2002, at 204:20-205:13.

Rudolph Grube, the former Director of Fuel Management for Maine Yankee and Yankee Atomic, concurred with the assessment that DOE did not grant priority to shutdown reactors. See, Deposition of Rudolph Grube, November 7, 2001, at 39:17-40:4, 45:14-19 and 182:9-14.

RESPONSE: Yankee Atomic disagrees that the Department of Energy ("DOE") has consistently maintained a policy under which no priority would be granted to shutdown reactors, and also disagrees that any such policy would be relevant to the issue before the Court, which is the determination of Yankee Atomic's damages resulting from DOE's breach of contract.

a. DOE policy has not been as stated by the government, and certainly has not been "consistently" so. For example, at the time DOE drafted the parties' contract, DOE rejected suggestions from several operating utilities that the provision for shutdown plant priority be removed from the contract, stating, "[t]his type of priority is *necessary* to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity." 48 Fed. Reg. 16590, 16593 (April 18, 1983) (emphasis added). Even today, DOE has not foreclosed the possibility of granting priority to shutdown plants. *See* A22 (Klein, 30(b)(6) Dep. Tr. at 516). Moreover, how to implement the contract's provision for shutdown plant priority was one of more than 30 issues addressed in DOE's issue resolution process in the late 1980's and early 1990's. *See* A83-90 (discussing issue resolution process). Evidence shows that DOE never reached a final position on this issue in that process. *See* A93 (Slater-Thompson Dep. Tr. at 149) (referring to paper on the issue resolution process, A83-90, and using "the priority for shutdown plant issue as an example," stating "[t]his was our first cut at defining the nature and scope of the issue without proposing a resolution"); A102 (Cole Dep. Tr. at 485) (discussing opposition of operating utilities to granting priority to shutdown plants, and noting "we felt we still need to

leave that door open and [DOE] may want to do that [grant priority] to help them in the decommissioning process").

Thus, DOE's claim of a "consistent" policy is not supportable. In addition, the policy views mentioned in some of the deposition testimony the government cites were articulated at a time when DOE's inability to commence contract performance in 1998 seemed (or was) clear. Policy views articulated in those circumstances shed little, if any, light on the likely behavior of DOE and the utilities in the "non-breach" world, where DOE would have commenced spent fuel removal in 1998 and "continued" removal thereafter, *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 662, 664 (2003), "without qualification or condition," *Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272, 1276 (D.C. Cir. 1996). *See* A18 (Klein 30(b)(6) Dep. Tr. at 524-25) (DOE "could have given" priority to shutdown plants if DOE had commenced performance in 1998 at a reasonable spent fuel removal rate); Expert Report of Frank C. Graves; *see also* A100-02 (Cole Dep. Tr. at 483-85).

Finally, the government's assertion that a former Yankee Atomic employee, Mr. Grube, "concurred with the assessment that DOE did not grant priority to shutdown reactors," is not only beside the point for reasons discussed above but is not supported by the deposition testimony the government cites.

b. In any event, the basic issue with respect to Yankee Atomic' damages is whether costs that Yankee Atomic has incurred to store spent fuel and GTCC waste would have been incurred by Yankee Atomic in the "non-breach" world, where DOE would have commenced contract performance in 1998 and "continued" thereafter "without qualification or condition." In deciding that issue, the Court must give appropriate weight to the explicit contract provision

allowing DOE to grant shutdown plant priority, which the evidence shows was considered by both parties to be an important contract provision. *See generally* Yankee Atomic's accompanying opposition to the government's motion for partial summary judgment regarding priority for shutdown reactors. *See also* A106-07 (Barrett Dep. Tr. at 364-65) ("Q. . . . I take it you would agree that granting priority to a shutdown reactor can be shown, at least in some circumstances, to avoid the establishment of otherwise unneeded reactor site storage facilities?" A. Yes.").

Respectfully submitted,

Dated: April 6, 2004

s/Jerry Stouck
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800 (phone)
(202) 682-1639 (facsimile)

COUNSEL FOR PLAINTIFF,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
SPRIGGS & HOLLINGSWORTH

274110v2