IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow) |

**APPENDIX TO**
**YANKEE ATOMIC'S OPPOSITION TO**
**GOVERNMENT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING**
**PRIORITY FOR SHUTDOWN REACTORS**

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 - Fax

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert Shapiro
Peter J. Skalaban, Jr.
SPRIGGS & HOLLINGSWORTH

April 06, 2004

# INDEX TO APPENDIX

**Description** **Page**

Yankee Atomic's Response to Defendant's July 3,2003 Interrogatories, Request for Admission and Requests for Production Documents [Excerpts]........0001

Deposition Transcript of Robert L. Morgan (3/21/02, 3/22/02) [Excerpts]........0010

Picture of Yankee Atomic's Independent Spent Fuel Storage Installation (ISFSI)........0013

Rule 30(b)(6) Notice of Deposition of Susan Klein (4/18/02)........0014

Deposition Transcript of Susan Klein (4/25/02) [Excerpts]........0020

Spent Fuel Acceptance Scenarios Devoted to Shutdown Reactors: A Preliminary Analysis, September 1989 (PA-165043 to PA-165091)........0025

Deposition Transcript of John W. Bartlett (8/26/03) [Excerpts]........0074

Standard Contract Issue Resolution Process: An Overview and Status, (HQ0010103 to HQ0010118)........0083

Deposition Transcript of Nancy Slater-Thompson (6/13/2002) [Excerpts]........0091

Deposition Transcript of Billy M. Cole (3/13/2002) [Excerpts]........0096

Deposition Transcript of Lake H. Barrett (5/15/2002) [Excerpts]........0104

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-126C

(Senior Judge Merow)

**YANKEE ATOMIC'S RESPONSE TO DEFENDANT'S JULY 3, 2003 INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to RCFC 26, 34 and 36 and the Court's August 29, 2003 Order, Yankee Atomic Responses to Defendant's July 3, 2003 Interrogatories, Requests for Admission and Requests for Production of Documents responds as follows:

**General Responses and Objections**

The following general responses and objections to the requests are incorporated by reference into each of Yankee Atomic's responses set forth below. Yankee Atomic's answers to interrogatories, responses to requests for admission and production of documents are subject to these general objections regardless of whether Yankee Atomic agrees in individual responses below to answer interrogatories or produce documents notwithstanding additional objections noted in such individual responses.

1. Yankee Atomic objects to the defendant's instruction at page 1, which purports to require Yankee Atomic to supplement its responses to the Interrogatories and Requests "from time to time, but not later than 10 days after such additional information has been obtained."

INTERROGATORY NO. 17:

A. State whether you contend that DOE has an obligation to give priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that shut down any or all of their nuclear reactors.

B. State whether you contend that DOE would ever have a duty to accord priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors.

C. State whether you contend that any Standard Contract holder that has already shut down any or all of its nuclear reactors is entitled to priority in DOE's allocation of acceptance slots for, or in the acceptance of, its SNF and/or HLW.

D. State whether you contend that DOE would ever have an obligation to refuse to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors.

OBJECTIONS:

Yankee Atomic objects that the phrases "an obligation to give priority," "would ever have a duty to accord priority," "entitled to priority," "would ever have an obligation to refuse to grant priority," and "the allocation of acceptance slots" are vague.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: The answer to subparts A and D is no. Regarding subparts B and C, Yankee Atomic contends that DOE would have had a duty to accord priority in the acceptance of spent fuel and HLW from utilities that have permanently shut down reactors, if such priority were necessary to avoid a situation where the utility would otherwise have to store spent fuel and HLW on-site for an

**0002**

extended period of time. In its damage claim, Yankee Atomic contends that if DOE had performed its obligations to accept SNF and HLW at a reasonable rate starting in 1998, utilities with shut down reactors would have been able to have exchanged acceptance allocations such that the grant of priority in the acceptance of spent fuel would not have been necessary. Yankee Atomic contends further that if the market for exchanges of acceptance allocations would not have sufficiently developed in the non-breach world to enable such prompt removal, DOE would have granted priority acceptance to utilities with permanently shut down reactors to the extent necessary to ensure such prompt removal.

INTERROGATORY NO. 18:

To the extent that plaintiff contends that DOE would have a duty to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that have permanently shut down any or all of their nuclear reactors, or to the extent that plaintiff contends that any Standard Contract holder that has already shut down any or all of their nuclear reactors is entitled to priority in DOE's allocation of acceptance slots for, or in the acceptance of, its SNF and/or HLW, explain in detail all the legal and factual bases upon which you base this contention, making sure to:

a. identify any and all documents that support, or detract from, your contention;

b. identify all persons with knowledge regarding plaintiff's contention and regarding priority for Standard Contract holders with shut down reactors;

c. explain the source of each person's knowledge regarding this contention; and

d. identify all documents that support and/or relate to your response to this interrogatory.

OBJECTIONS:

Yankee Atomic objects that the phrases "duty to grant priority," "entitled to priority," "allocation of acceptance slots," "explain in detail all the legal and factual bases," "that support or detract from," and "that support and/or relate to your response" are vague. Yankee Atomic also objects that subparts a. and d. are unduly burdensome.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: Yankee Atomic's contention regarding priority is set out in its answer to Interrogatory No. 17. The bases for this contention are as follows. At the time of formation of the parties' contract, the

parties intended that after January 31, 1998, Yankee Atomic would not have to incur additional costs for on-site storage of spent fuel and HLW. The parties' contract provides, in Article VI.B.1.(b), for priority acceptance by DOE of spent fuel and/or HLW removed from a commercial reactor that is permanently shut down. At the time of formation of the parties' contract, the parties understood and intended that DOE would implement this article, if and as necessary to enable DOE to avoid imposing on utilities incremental and avoidable costs for on-site storage of spent fuel and HLW. Indeed, when it drafted the parties' contract, DOE rejected requests by certain utilities to omit this article, explaining "[t]his type of priority is necessary to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity." 48 Fed. Reg. 16590, 16593 (April 18, 1983). DOE has never departed from this policy. This policy is consistent with DOE's obligation from the full cost recovery nature of its spent fuel and HLW removal program to conduct that program in an economically efficient manner. Provision of priority acceptance to permanently shutdown reactors is also consistent with the use of acceptance campaigns for the acceptance of spent fuel. *See also* Yankee Atomic's response to Interrogatory No. 19 of "Yankee Atomic's Responses to Defendant's Interrogatories and Request for Production of Documents Served on September 4, 2001."

a. and d. Documents with the following Bates Numbers: ADM-001-0961-65, CDB006105-75, PNL-001-1324-26, HQ0015562-73, CTR0002716-20, CTR0002662-715, CTR0002660-61, CTR0002657-59, CTR0002642-56.

b. and c. Loring Mills (who represented the nuclear utility industry when DOE drafted the parties' contract), John Buchheit and Rudolph Grube (who represented Yankee Atomic when DOE drafted the parties' contract). Ivan Stuart will discuss the advantages of acceptance campaigns as set out in his expert witness report.

INTERROGATORY NO. 19:

To the extent that plaintiff contends that DOE would ever have an obligation or the right to refuse to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors, explain in detail all of the legal and factual bases upon which you base this contention, making sure to:

a. identify any and all documents that support, or detract from, your contention;

b. identify all persons with knowledge regarding your contention;

c. explain the source of each person's knowledge regarding this contention; and

d. identify all documents that support and/or relate to your response to this interrogatory.

ANSWER:

Yankee Atomic makes no such contention.

INTERROGATORY NO. 21:

Describe in detail the terms for any obligation that you contend that DOE has to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW if a Standard Contract holder chose to, or has, permanently shut down any unit or all of its plant, making sure to:

a. explain the analysis that leads to your conclusion;

b. identify the schedule that you contend DOE is obligated to follow, if different from that identified in your response to Interrogatory Nos. 1, 2, and 3, above;

c. identify all documents that provide the basis for your analysis, in particular, regarding scheduling;

d. identify all persons with knowledge regarding these contentions;

e. explain the source of each person's knowledge regarding these contentions;

f. identify any assumptions upon which you base your contentions;

g. identify any documents that support and/or relate to your contentions; and

h. identify the factual and/or legal basis for any assumptions (as identified in subparagraph f of this interrogatory) that you made.

OBJECTIONS:

Yankee Atomic objects that the phrases "describe in detail," "the terms of any obligation," "allocation of acceptance slots," "explain the analysis," "schedule," and "scheduling" are vague.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: Yankee Atomic's contention regarding the terms of DOE's duties and obligation to accord priority

acceptance of spent fuel and HLW to utilities with permanently shut down reactors is set out in response to Interrogatory Nos. 17 and 18 above.

a. See Interrogatory Nos. 17 and 18 above. If DOE would have started accepting spent fuel at a reasonable rate in 1998 but a market for the exchange of acceptance allocations did not develop sufficiently to enable prompt removal of SNF and HLW from permanently shut down reactors, absent priority acceptance, Yankee Atomic would have had to store its spent fuel for a significant amount of time. *See, e.g.,* Acceptance Priority Ranking dated March 1995 showing Yankee Atomic's last discharge at a cumulative industry total of 23,630 MTU. At the acceptance rates set out in Frank Graves' expert witness report, with no exchanges or priority, Yankee Atomic's spent fuel would have been accepted in approximately 2007. As shown by the expert witness report of Ken Wise, Yankee Atomic would have incurred substantial avoidable costs storing its spent fuel for this period. As set out in Frank Graves' expert witness report, in the non-breach world, DOE would have accepted 1200 MTU of spent fuel in 1998. Thus, DOE would have had ample capacity to accept Yankee Atomic's 122.4 MTU of spent fuel in 1998. If DOE was otherwise accepting spent fuel but a market for exchanges of spent fuel acceptance allocations did not develop sufficiently to enable utilities to arrange the timing of DOE's acceptance of their SNF and HLW in an efficient manner, DOE would have ordered the acceptance of spent fuel from utilities in some reasonably efficient manner that would have permitted the use of acceptance campaigns. *See* Expert Witness Reports of Ivan Stuart and John Bartlett. Consistent with its policy of not having spent fuel and high-level radioactive waste remain at the sites of permanently shut down reactors for an extended period as noted at 48 Fed. Reg. at 16593, DOE would have accepted Yankee Atomic's spent fuel on a campaigned, priority basis.

b. Yankee Atomic's contentions regarding scheduling are limited to its contentions regarding when DOE would have accepted its spent fuel absent the breach consistent with a reasonable acceptance rate. If the market for exchanges of acceptance allocations did not develop sufficiently to enable prompt acceptance of spent fuel and HLW from permanently shut down reactors in the non-breach world as otherwise set out in the expert witness report of Frank Graves, DOE would have accorded priority acceptance to Yankee Atomic's spent fuel such that it all would have been accepted by the end of 1998.

c. and g. The documents relevant to Yankee Atomic's contentions on this issue are not different than those listed on Yankee Atomic's exhibit list submitted on March 28, 2003. In particular, Yankee Atomic relies on the documents listed in subpart a. above, the documents listed in response to Interrogatory Nos. 18.a. and 19a. and the documents considered by Yankee Atomic's expert witnesses, Mr. Graves, Dr. Bartlett and Mr. Stewart.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY )
CONNECTICUT YANKEE ATOMIC POWER COMPANY )
MAINE YANKEE ATOMIC POWER COMPANY )
FLORIDA POWER & LIGHT COMPANY )
NORTHERN STATES POWER COMPANY )
DUKE POWER, A Division of DUKE ENERGY CORP.)
INDIANA MICHIGAN POWER COMPANY )
SACRAMENTO MUNICIPAL UTILITY DISTRICT )
SOUTHERN NUCLEAR OPERATING COMPANY, et al. )
COMMONWEALTH EDISON COMPANY )
BOSTON EDISON COMPANY )
GPU NUCLEAR, INCORPORATED )
WISCONSIN ELECTRIC POWER COMPANY )
POWER AUTHORITY OF THE STATE OF NEW YORK )
OMAHA PUBLIC POWER DISTRICT )
NEBRASKA PUBLIC POWER DISTRICT )
TENNESSEE VALLEY AUTHORITY, )
Plaintiffs, )
v. )
UNITED STATES, )
Defendant. )

2

DEPOSITION OF ROBERT L. MORGAN

March 21 and 22, 2002 Volume 2, Pg 213 - 330

0010

shutdown reactors "is necessary to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity."

Does that -- Would you agree with that? Did you agree with that at the time?

A. Yes.

Q. What did you mean, "necessary to prevent them from waiting 20 to 30 years"?

A. We didn't want to hold up D and D of a reactor site.

Q. "D and D" referring to?

A. Decommissioning and -- what's the -- I don't remember the acronym. Shutting down the reactor.

Q. Was that one of your objectives, to avoid --

MR. BANES: Objection. Vague.

BY MR. NESLIN:

Q. -- to avoid holding up --

A. A utility from D and D?

Q. Yes.

A. Decommissioning. We didn't want to do that.

Q. That was an objective of yours?

A. Yes.

Q. Not to. Now if we could turn to page 16602.

A. Yes.

Q. The bottom of the first column, Article VI.B.1(b). Do you see that at the bottom of the page?

A. Yes.

Q. This is the provision that allows a priority for shutdown reactors. Correct?

MR. BANES: Objection. Calls for a legal conclusion.

A. I believe that's correct.

BY MR. NESLIN:

Q. Did you have -- Strike that. How did you expect the Department of Energy to apply this provision?

MR. BANES: Objection. Calls for speculation.

BY MR. NESLIN:

Q. Do you understand my question?

A. Unless faced with the issue, I can't tell you how we would resolve it.

Q. Did you have any criteria in mind for when priority would have been accorded to a



EXHIBIT
KLEIN #1
4-24-02

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY (98-126C) (Merow, S.J.) | ) |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY (98-154C) (Merow, S.J.) | ) |
| MAINE YANKEE ATOMIC POWER COMPANY (98-474C) (Merow, S.J.) | ) |
| FLORIDA POWER & LIGHT COMPANY (98-483C) (Wilson, J.) | ) |
| NORTHERN STATES POWER COMPANY (98-484C) (Wiese, J.) | ) |
| DUKE POWER, A Division of DUKE ENERGY CORP. (98-485C) (Sypolt, J.) | ) |
| INDIANA MICHIGAN POWER COMPANY (98-486C) (Hodges, J.) | ) |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT (98-488C) (Yock, S.J.) | ) |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. (98-614C) (Merow, S.J.) | ) |
| COMMONWEALTH EDISON COMPANY (98-621C) (Hewitt, J.) | ) |
| BOSTON EDISON COMPANY (99-447C) (Allegra, J.) | ) |
| GPU NUCLEAR, INCORPORATED (00-440C) (Bush, J.) | ) |
| WISCONSIN ELECTRIC POWER COMPANY (00-697C) (Merow, S.J.) | ) |
| POWER AUTHORITY OF THE STATE OF NEW YORK (00-703C) (Damich, J.) | ) |
| OMAHA PUBLIC POWER DISTRICT (01-115C) (Bush, J.) | ) |
| NEBRASKA PUBLIC POWER DISTRICT (01-116C) (Sypolt, J.) | ) |
| TENNESSEE VALLEY AUTHORITY (01-249C) (Bruggink, J.) | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE UNITED STATES, | ) Discovery Judge: (Judge Sypolt) |
| Defendant. | ) |

**NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims and the Order of the Discovery Judge dated March 25, 2002, counsel for the above-referenced Utility Plaintiffs will take the deposition of Defendant's designated representative at 9:30 a.m. on Wednesday, April 24, 2002, at the law offices of Jenner & Block, 601 Thirteenth St., NW, Suite 1200 South, Washington, DC 20005. The deposition will be recorded by stenographic means and will continue day to day until completed.

Defendant's designated representative will be examined with respect to the matters set forth in the attached exhibit.

Dated: April 18, 2002

Respectfully submitted,

Alex D. Tomaszczuk by Daniel Herzfeld

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
Telephone: 703.770.7940
Fax: 703.770.7901

Counsel of Record for Plaintiffs
Florida Power & Light Company, Northern States Power Company, Duke Power, Indiana Michigan Power Company, Boston Edison Company, GPU Nuclear, Inc., Power Authority of the State of New York, Omaha Public Power District, and Nebraska Public Power District

**OF COUNSEL:**
Jay E. Silberg
Devon E. Hewitt
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, DC 20037-1128

**0015**

M. Stanford Blanton
Balch & Bingham, LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel: (205) 251-8100
Counsel of Record for Plaintiff:
Southern Nuclear Operating Company, et al.

Richard C. Johnson
Jenner & Block
601 13th Street, N.W.
Suite 1200 South
Washington, D.C. 20005
Tel: (202) 639-6075
Counsel of Record for Plaintiff:
Commonwealth Edison Company

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, 40th Floor
Seattle, WA 98101-3099
Tel: (206) 583-8419
Counsel of Record for Plaintiff:
Wisconsin Electric Power Company

Melvin C. Garbow
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20004-1206
Tel: (202) 942-5666
Counsel of Record for Plaintiff:
Sacramento Municipal Utility District

Peter K. Shea
Office of General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902-1401
Tel: (865) 632-7319
Counsel of Record for Plaintiff:
Tennessee Valley Authority

0017

**EXHIBIT**

3. DOE's responses to DCS forms submitted by the utility plaintiffs, including DOE's decision to stop approving such DCS forms.

5. DOE's consideration of its obligation to accept Greater-Than-Class-C waste.

7. The date that DOE currently believes that it will begin accepting fuel under the Standard Contract and the acceptance rate that DOE is planning to use once acceptance begins.

9. The role and purpose of the provision on priority for shutdown reactors in the performance of the Standard Contract.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2002, I caused a copy of the foregoing NOTICE OF DEPOSITION to be served by facsimile and by U.S. mail, postage prepaid, on:

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Attention: Classification Unit
8th Floor, 1100 L Street, N.W.

Document #: 1180086 v.2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

--------------------------------------------X

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese, J.) :
DUKE POWER, a Division of DUKE ENERGY CORP.:
(98-485C)(Sypolt, J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, et al. :
(98-614C)(Merow, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C) (Allegra, J.) :
GPU NUCLEAR, INCORPORATED :
(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY : VOLUME
(00-697C)(Merow, S.J.) : II
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :Discovery
(01-116C)(Sypolt, J.) :Judge:
TENNESSEE VALLEY AUTHORITY :(Judge
(01-249C)(Bruggink, J.) :Sypolt)
Plaintiffs, :PAGES
v. :275 - 533

THE UNITED STATES, :

Defendant. :

---------------------------------------------X

Deposition of Susan Klein

Washington, DC

Thursday, April 25, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144540

A. Under the standard contract; that's correct.

Q. Under the standard contract. And so DOE's consideration of granting priority at this time is -- would you describe it as being premature?

A. I guess it's just that we reserve the right to do it if we had a huge repository and we could meet everybody's need and it might seem to be a reasonable thing to do. So, I mean, we may determine once we're operational.

Q. You haven't prejudged and foreclosed the possibility; is that fair to say?

A. That's fair to say.

Q. If the repository were operating at such a rate that granting priority would not harm operating utilities, DOE would consider granting a priority to a shutdown reactor. Is that also fair to say?

A. I think that's fair to say, yes.

MR. MACDONALD: 48.

(Thereupon, the reporter marked for identification Deposition Exhibit No. 48.)

BY MR. MACDONALD:

Q. Ms. Klein, I've handed you a document marked

My question is: Was the reason this provision was included, the priority shutdown provision, that is because it was necessary to prevent reactors from waiting 20 or 30 years to be decommissioned?

A. Yes.

Q. And DOE included this provision despite the fact that four commenters recommended the deletion of the provision?

A. Yes, that's correct.

Q. And as you explained I believe earlier, acceptance of fuel from a shutdown reactor would allow that reactor to go to green fields I believe is the word that you used; is that correct?

A. Yes, it would. In most cases, it would allow them to go to green fields, yes.

Q. If DOE had begun accepting fuel in 1998 at a 3,000 MTU rate or a ramp-up, a reasonable ramp-up to a 3,000 MTU rate, do you have an opinion as to whether DOE could have given priority to shutdown reactors without harming or prejudicing the rights of operating utilities.

MS. POWELL: Object to beyond the scope, but you can answer.

THE WITNESS: It could have given. I think that would be policy considerations that would be looked at, but it would make it certainly --

BY MR. MACDONALD:

Q. Would have made it easier?

A. Much easier, yes.

(Discussion off the record.)

(Thereupon, the reporter marked for identification Deposition Exhibit No. 50.)

BY MR. MACDONALD:

Q. Ms. Klein, I've just marked -- had marked for you Exhibit 50, which is a memo dated June 28, 1991 from P. N. McDuffie and S. A. Vance to D. C. Langstaff and A. B. Brownstein. Do you have that there before you?

A. Yes, I do.

Q. I believe we discussed earlier Mr. Vance, Scott Vance, who you know; is that right?

A. That's correct.

Q. And Mr. A. B. Brownstein is Alan Brownstein;