**REVISED APPENDIX**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-126 C
(Senior Judge Merow)

**APPENDIX TO
YANKEE ATOMIC'S OPPOSITION TO
GOVERNMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
PRIORITY FOR SHUTDOWN REACTORS**

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 - Fax

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert Shapiro
SPRIGGS & HOLLINGSWORTH

April 07, 2004

# INDEX TO APPENDIX

**Description** **Page**


Yankee Atomic's Response to Defendant's July 3,2003 Interrogatories, Request for Admission and Requests for Production Documents [Excerpts]........0001

Deposition Transcript of Robert L. Morgan (3/21/02, 3/22/02) [Excerpts]........0010

Picture of Yankee Atomic's Independent Spent Fuel Storage Installation (ISFSI)........0013

Rule 30(b)(6) Notice of Deposition of Susan Klein (4/18/02)........0014

Deposition Transcript of Susan Klein (4/25/02) [Excerpts]........0020

Spent Fuel Acceptance Scenarios Devoted to Shutdown Reactors: A Preliminary Analysis, September 1989 (PA-165043 to PA-165091)........0025

Deposition Transcript of John W. Bartlett (8/26/03) [Excerpts]........0074

Standard Contract Issue Resolution Process: An Overview and Status, (HQ0010103 to HQ0010118)........0083

Deposition Transcript of Nancy Slater-Thompson (6/13/2002) [Excerpts]........0091

Deposition Transcript of Billy M. Cole (3/13/2002) [Excerpts]........0096

Deposition Transcript of Lake H. Barrett (5/15/2002) [Excerpts]........0104

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | |
| Plaintiff, | No. 98-126C |
| v. | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**YANKEE ATOMIC'S RESPONSE TO DEFENDANT'S JULY 3, 2003 INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to RCFC 26, 34 and 36 and the Court's August 29, 2003 Order, Yankee Atomic Responses to Defendant's July 3, 2003 Interrogatories, Requests for Admission and Requests for Production of Documents responds as follows:

**General Responses and Objections**

The following general responses and objections to the requests are incorporated by reference into each of Yankee Atomic's responses set forth below. Yankee Atomic's answers to interrogatories, responses to requests for admission and production of documents are subject to these general objections regardless of whether Yankee Atomic agrees in individual responses below to answer interrogatories or produce documents notwithstanding additional objections noted in such individual responses.

1. Yankee Atomic objects to the defendant's instruction at page 1, which purports to require Yankee Atomic to supplement its responses to the Interrogatories and Requests "from time to time, but not later than 10 days after such additional information has been obtained."

INTERROGATORY NO. 17:

A. State whether you contend that DOE has an obligation to give priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that shut down any or all of their nuclear reactors.

B. State whether you contend that DOE would ever have a duty to accord priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors.

C. State whether you contend that any Standard Contract holder that has already shut down any or all of its nuclear reactors is entitled to priority in DOE's allocation of acceptance slots for, or in the acceptance of, its SNF and/or HLW.

D. State whether you contend that DOE would ever have an obligation to refuse to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors.

OBJECTIONS:

Yankee Atomic objects that the phrases "an obligation to give priority," "would ever have a duty to accord priority," "entitled to priority," "would ever have an obligation to refuse to grant priority," and "the allocation of acceptance slots" are vague.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: The answer to subparts A and D is no. Regarding subparts B and C, Yankee Atomic contends that DOE would have had a duty to accord priority in the acceptance of spent fuel and HLW from utilities that have permanently shut down reactors, if such priority were necessary to avoid a situation where the utility would otherwise have to store spent fuel and HLW on-site for an

extended period of time. In its damage claim, Yankee Atomic contends that if DOE had performed its obligations to accept SNF and HLW at a reasonable rate starting in 1998, utilities with shut down reactors would have been able to have exchanged acceptance allocations such that the grant of priority in the acceptance of spent fuel would not have been necessary. Yankee Atomic contends further that if the market for exchanges of acceptance allocations would not have sufficiently developed in the non-breach world to enable such prompt removal, DOE would have granted priority acceptance to utilities with permanently shut down reactors to the extent necessary to ensure such prompt removal.

INTERROGATORY NO. 18:

To the extent that plaintiff contends that DOE would have a duty to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that have permanently shut down any or all of their nuclear reactors, or to the extent that plaintiff contends that any Standard Contract holder that has already shut down any or all of their nuclear reactors is entitled to priority in DOE's allocation of acceptance slots for, or in the acceptance of, its SNF and/or HLW, explain in detail all the legal and factual bases upon which you base this contention, making sure to:

a. identify any and all documents that support, or detract from, your contention;

b. identify all persons with knowledge regarding plaintiff's contention and regarding priority for Standard Contract holders with shut down reactors;

c. explain the source of each person's knowledge regarding this contention; and

d. identify all documents that support and/or relate to your response to this interrogatory.

OBJECTIONS:

Yankee Atomic objects that the phrases "duty to grant priority," "entitled to priority," "allocation of acceptance slots," "explain in detail all the legal and factual bases," "that support or detract from," and "that support and/or relate to your response" are vague. Yankee Atomic also objects that subparts a. and d. are unduly burdensome.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: Yankee Atomic's contention regarding priority is set out in its answer to Interrogatory No. 17. The bases for this contention are as follows. At the time of formation of the parties' contract, the

**0004**

parties intended that after January 31, 1998, Yankee Atomic would not have to incur additional costs for on-site storage of spent fuel and HLW. The parties' contract provides, in Article VI.B.1.(b), for priority acceptance by DOE of spent fuel and/or HLW removed from a commercial reactor that is permanently shut down. At the time of formation of the parties' contract, the parties understood and intended that DOE would implement this article, if and as necessary to enable DOE to avoid imposing on utilities incremental and avoidable costs for on-site storage of spent fuel and HLW. Indeed, when it drafted the parties' contract, DOE rejected requests by certain utilities to omit this article, explaining "[t]his type of priority is necessary to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity." 48 Fed. Reg. 16590, 16593 (April 18, 1983). DOE has never departed from this policy. This policy is consistent with DOE's obligation from the full cost recovery nature of its spent fuel and HLW removal program to conduct that program in an economically efficient manner. Provision of priority acceptance to permanently shutdown reactors is also consistent with the use of acceptance campaigns for the acceptance of spent fuel. *See also* Yankee Atomic's response to Interrogatory No. 19 of "Yankee Atomic's Responses to Defendant's Interrogatories and Request for Production of Documents Served on September 4, 2001."

a. and d. Documents with the following Bates Numbers: ADM-001-0961-65, CDB006105-75, PNL-001-1324-26, HQ0015562-73, CTR0002716-20, CTR0002662-715, CTR0002660-61, CTR0002657-59, CTR0002642-56.

b. and c. Loring Mills (who represented the nuclear utility industry when DOE drafted the parties' contract), John Buchheit and Rudolph Grube (who represented Yankee Atomic when DOE drafted the parties' contract). Ivan Stuart will discuss the advantages of acceptance campaigns as set out in his expert witness report.

INTERROGATORY NO. 19:

To the extent that plaintiff contends that DOE would ever have an obligation or the right to refuse to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW to Standard Contract holders that had shut down any or all of their nuclear reactors, explain in detail all of the legal and factual bases upon which you base this contention, making sure to:

a. identify any and all documents that support, or detract from, your contention;

b. identify all persons with knowledge regarding your contention;

c. explain the source of each person's knowledge regarding this contention; and

d. identify all documents that support and/or relate to your response to this interrogatory.

ANSWER:

Yankee Atomic makes no such contention.

INTERROGATORY NO. 21:

Describe in detail the terms for any obligation that you contend that DOE has to grant priority in the allocation of acceptance slots for, or in the acceptance of, SNF and/or HLW if a Standard Contract holder chose to, or has, permanently shut down any unit or all of its plant, making sure to:

a. explain the analysis that leads to your conclusion;

b. identify the schedule that you contend DOE is obligated to follow, if different from that identified in your response to Interrogatory Nos. 1, 2, and 3, above;

c. identify all documents that provide the basis for your analysis, in particular, regarding scheduling;

d. identify all persons with knowledge regarding these contentions;

e. explain the source of each person's knowledge regarding these contentions;

f. identify any assumptions upon which you base your contentions;

g. identify any documents that support and/or relate to your contentions; and

h. identify the factual and/or legal basis for any assumptions (as identified in subparagraph f of this interrogatory) that you made.

OBJECTIONS:

Yankee Atomic objects that the phrases "describe in detail," "the terms of any obligation," "allocation of acceptance slots," "explain the analysis," "schedule," and "scheduling" are vague.

ANSWER:

Notwithstanding the objections noted above, Yankee Atomic states as follows: Yankee Atomic's contention regarding the terms of DOE's duties and obligation to accord priority

acceptance of spent fuel and HLW to utilities with permanently shut down reactors is set out in response to Interrogatory Nos. 17 and 18 above.

a. See Interrogatory Nos. 17 and 18 above. If DOE would have started accepting spent fuel at a reasonable rate in 1998 but a market for the exchange of acceptance allocations did not develop sufficiently to enable prompt removal of SNF and HLW from permanently shut down reactors, absent priority acceptance, Yankee Atomic would have had to store its spent fuel for a significant amount of time. *See, e.g.,* Acceptance Priority Ranking dated March 1995 showing Yankee Atomic's last discharge at a cumulative industry total of 23,630 MTU. At the acceptance rates set out in Frank Graves' expert witness report, with no exchanges or priority, Yankee Atomic's spent fuel would have been accepted in approximately 2007. As shown by the expert witness report of Ken Wise, Yankee Atomic would have incurred substantial avoidable costs storing its spent fuel for this period. As set out in Frank Graves' expert witness report, in the non-breach world, DOE would have accepted 1200 MTU of spent fuel in 1998. Thus, DOE would have had ample capacity to accept Yankee Atomic's 122.4 MTU of spent fuel in 1998. If DOE was otherwise accepting spent fuel but a market for exchanges of spent fuel acceptance allocations did not develop sufficiently to enable utilities to arrange the timing of DOE's acceptance of their SNF and HLW in an efficient manner, DOE would have ordered the acceptance of spent fuel from utilities in some reasonably efficient manner that would have permitted the use of acceptance campaigns. *See* Expert Witness Reports of Ivan Stuart and John Bartlett. Consistent with its policy of not having spent fuel and high-level radioactive waste remain at the sites of permanently shut down reactors for an extended period as noted at 48 Fed. Reg. at 16593, DOE would have accepted Yankee Atomic's spent fuel on a campaigned, priority basis.

b. Yankee Atomic's contentions regarding scheduling are limited to its contentions regarding when DOE would have accepted its spent fuel absent the breach consistent with a reasonable acceptance rate. If the market for exchanges of acceptance allocations did not develop sufficiently to enable prompt acceptance of spent fuel and HLW from permanently shut down reactors in the non-breach world as otherwise set out in the expert witness report of Frank Graves, DOE would have accorded priority acceptance to Yankee Atomic's spent fuel such that it all would have been accepted by the end of 1998.

c. and g. The documents relevant to Yankee Atomic's contentions on this issue are not different than those listed on Yankee Atomic's exhibit list submitted on March 28, 2003. In particular, Yankee Atomic relies on the documents listed in subpart a. above, the documents listed in response to Interrogatory Nos. 18.a. and 19a. and the documents considered by Yankee Atomic's expert witnesses, Mr. Graves, Dr. Bartlett and Mr. Stewart.