IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow) |

YANKEE ATOMIC'S REPLY TO THE DEFENDANT'S RESPONSE TO THE MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO THE COURT'S AUGUST 25, 2003 ORDER; AND, YANKEE ATOMIC'S REQUEST FOR EXPEDITED CONSIDERATION OF ITS MOTION

Yankee Atomic Electric Company ("Yankee Atomic") respectfully files this Reply to the government's March 30, 2004 "Response to Plaintiff's Motion to Compel Production of Documents Pursuant to the Court's August 25, 2003 Order" ("Response").[1] Yankee Atomic also seeks expedited consideration of the Motion because of upcoming depositions in which the documents at issue could be relevant.

The government Response relies exclusively on its privilege log and the Court's August 25, 2003 Order to justify its excessive redactions of potentially important Greater-Than-Class-C Waste ("GTCC") evidence. The government, in its Response, seems to miss the point: out of the scores of documents that the government was ordered to produce, Yankee Atomic's Motion concerns three – and only three – documents that *on their face* appear to be excessively redacted

[1] This Reply should also be deemed applicable to *Connecticut Yankee v. United States*, Case No. 98-154C, and *Maine Yankee v. United States*, No. 98-474C.

and/or not *in fact* privileged. Neither this Court nor Yankee Atomic had these documents in hand previously, with or without redactions, but now that these documents are in hand, there is a substantial basis for believing that the documents are not privileged and/or were excessively redacted. At a minimum, these doubts warrant the Court's review of this small subset of three documents. Moreover, prior to approaching the Court for relief, Yankee Atomic made sincere efforts – four times, in fact, – to resolve its concerns directly with the government, but to no avail. Motion at 1-2.

The government's high-pitched defensiveness, asserting repeatedly and wrongly that the integrity of the government's lawyers is at issue, likewise misses the point. Yankee Atomic's Motion does not depend upon questioning the integrity and honesty of the government's lawyers. Yankee Atomic merely seeks the Court's intervention to ensure that the Department of Justice has not made overly liberal claims of privilege in their defense of the government. It is a truism that capable and honest lawyers sometimes advance positions that turn out to be erroneous. This litigation involves important issues, and it is entirely appropriate to question whether the government's redactions have been overly broad. This is especially true when an examination of the face of the documents calls into question the government's privilege assertions.

1. Importantly, Yankee Atomic called the Court's attention to only three out of scores of documents produced by the government pursuant to the August 25, 2003 Order. With respect to two of these documents, the December 13, 2001 note by Lake Barrett, *see* Motion at ¶ 2.a., and the October 22, 2001 e-mail by James Kennedy, *id.* at ¶ 2.b, Yankee Atomic demonstrated that the unredacted contents of the documents and the context in which the government made its redactions strongly suggest that the government may have over-redacted important evidence.

*See* Motion at 2-5. Accordingly, Yankee Atomic has demonstrated sufficient good cause for an *in camera* inspection by the Court.

Conversely, although the government has the burden to sustain its claims of privilege, *see, e.g., First Fed. Sav. Bank of Hegewisch v. United States,* 55 Fed. Cl. 263, 267 (2003), the government failed to sustain that burden in its Response. Rather than substantiating its privilege claims over these two documents, the government simply asserts that Yankee Atomic is engaging in "baseless speculation." Response at 4. That assertion is untrue, as shown by Yankee Atomic's Motion and further demonstrated below.

The situation is somewhat different, but ultimately even more compelling, with respect to the third document in question, *see* Motion, Ex. J, a chart first produced by the government (with substantial redactions) on September 30, 2003. *See* Response at 8. The government's newly-minted "privilege log" for those redactions, which by the government's own admission appears *for the first time* on page 9 of its Response, appears to be directly contradicted by explicit, unredacted language in the chart. The relevant portion of the "privilege log" entry states "Redacted material and pages contain budget information regarding programs *unrelated to OCRWM or GTCC.*" Response at 9-10 (emphasis added). However, a simple examination of the chart on page HQR2360030 of Exhibit J to Yankee Atomic's Motion shows that the fourth row, "Activity," reads "Greater than Class C Waste," and the "Description" reads "Under the LLW Policy Act, DOE has a responsibility to dispose of higher activity level 'Greater than Class C' commercial waste. DOE has not met this responsibility, and an Environmental Impact Statement/NEPA must be completed for disposition of GTCC." Motion at Ex. J. The redacted columns for this GTCC entry are "Associated Funding," "FTE's," and "Transfer." *Id.* Clearly, these entries *are* related – explicitly – to GTCC waste and DOE's "responsibility" for its

disposal. As such, there appears to be little question, and Yankee Atomic submits there can be no question, that the redacted material is relevant to this case. *See* Order of June 26, 2004. (Denying government motion for partial summary judgment on GTCC waste issue, because, *inter alia,* "[t]here are material disputes of fact concerning the Department of Energy's policy, or lack of policy, concerning its LLRWPA obligation to assume custody of GTCC.") The government's seemingly inaccurate "privilege log" description of the redacted portion of the "GTCC" entry on the chart – an inaccuracy that appears plain from the unredacted portions of the chart in question – warrants *in camera* of the redacted material in that chart.

2. Contrary to the government's main argument, there is no "baseless speculation" involved in the government's apparently inaccurate "privilege log" description of the redacted portions of the chart discussed above. That Yankee Atomic has not engaged in "baseless speculation" is further supported by two other examples of government overzealousness. First, the Court already rejected the government's prior interpretation of what documentary material concerning GTCC waste could be withheld as privileged in its August 25, 2003 Order. In that Order, the Court rejected the government's claim (no doubt a product of the government's interpretation of how caselaw applied to the documents it sought to protect) that many of its documents could be withheld pursuant to the deliberative process privilege. Order of August 25, 2003 at 2-3. Second, the extent to which the government will go in attempting to avoid disclosure of GTCC waste documents is also shown by the government's citation in its Response to wholly inapposite cases to support its argument that *in camera* review of three discrete documents cannot be had. *See* Response at 6-7. The government cites numerous cases for the proposition that *in camera* review is "exceptional." *Id.* at 6. The government's cases, however, are all FOIA cases, which merely hold that in the *FOIA* context *in camera* review should be

undertaken only after attempting to resolve a production dispute by other means. *See, e.g., Jones v. Federal Bureau of Investigation,* 41 F.3d 238, 243 (6th Cir. 1994). The government's cases, however, note that even in the FOIA context courts do undertake *in camera* inspections of documents when there is doubt as to the government's claims of exemption. *Id.* at 243. As the Sixth Circuit stated, "*[N]o other party or institution is available to ensure that the [government's] assertions are reliable.*" *Id.* (emphasis added).

Contrary to the government's position, it is well established that "[t]he court . . . may require that documents . . . be submitted to it for preliminary examination *in camera* to assist the court in determining whether to order [production]." 8A, Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d, § 2214 at 440. This is true even in FOIA cases like those cited by the government. Closer to home, the Federal Circuit has specifically approved the use of *in camera* inspection of documents to resolve privilege disputes, *see Dorf & Stanton Comm. Inc. v. Molson Breweries,* 100 F.3d 919, 923-24 (Fed. Cir. 1996), and this Court has employed *in camera* review to resolve privilege disputes and to "accurate[ly] assess[] the Government's privilege assertions," *Coast-to-Coast Fin. Corp. v. United States,* 45 Fed. Cl. 796, 799 (2000). Indeed, it is axiomatic in our system of justice that this Court – and not the government's litigation counsel – has the authority, and the responsibility, to ensure that the government has properly redacted information.

3. The government's concern that this Court could somehow be tainted by an *in camera* review of the withheld GTCC waste documents, *see* Response at 7, is likewise baseless and fundamentally wrong. The possibility that the fact-finder will be exposed to inadmissible evidence, which is always present in a bench-trial context, is of minimal concern in that context because unlike many juries, the Court is fully capable of disregarding inadmissible evidence.

The possibility of "taint" certainly did not prevent approval of *in camera* review by the Federal Circuit in *Dorf & Stanton, supra,* or this Court in *Coast-to-Coast, supra.*

4. Ultimately, the government's oversensitivity and defensiveness in its Response suggests that it "doth protest too much." William Shakespeare, *Hamlet,* III, ii, 239 (1601). The government states, for example: (a) "[T]he Yankees are accusing the Government's attorneys of spoliation of evidence," Response at 2; (b) "[T]hey do not trust the Government . . . the Government's attorneys, as officers of this Court, have misrepresented the contents . . . ," *id.* at 5; (c) "[T]he Yankees' irresponsible representations about the Government's motives in this litigation are outrageous," *id.* at 7. The government even suggests that Yankee Atomic be "rebuke[d]." *Id.*

None of the government's assertions are true. Yankee Atomic has not alleged spoliation, or misrepresentation, and is not questioning the government's motives. Nor does Yankee Atomic's Motion question the integrity of the government's attorneys. Rather, Yankee Atomic simply questions the government's claims of privilege underlying its redactions – a straightforward and typical legal dispute that has nothing to do with counsel's motives or integrity.

The government, through its protests, seems to want both the Court and Yankee Atomic to simply surrender to the government's interpretation of what is and is not privileged information. The Court should firmly reject the government's suggestion that it should abdicate its role as the appropriate arbiter of privilege disputes – particularly, as here, where redacted documents indicate on their face – in unredacted passages – that the redactions may be inappropriate or excessive.

5. Finally, because of fast-approaching scheduled depositions for which the unredacted versions of the three documents may be relevant, Yankee Atomic requests the Court to review the briefing in this matter as expeditiously as possible.

**Conclusion**

For the reasons set forth above, Yankee Atomic respectfully requests the Court to order the government to produce the documents listed in Exhibit A of the March 12, 2004 Motion to Compel in their entirety and without redactions as expeditiously as possible for *in camera review* and determination whether the government's claims of privilege and irrelevance are valid. .

Respectfully submitted,

Date: April 9, 2004

s/Jerry Stouck
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800 (phone)
(202) 682-1639 (fax)

COUNSEL FOR PLAINTIFF
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Peter J. Skalaban
Vivek K. Hatti
SPRIGGS & HOLLINGSWORTH

CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing "Yankee Atomic's Reply to Defendant's Response to the Motion To Compel Production Of Documents Pursuant To The Court's August 25, 2003 Order; And, Yankee Atomic's Request for Expedited Consideration of Its Motion" to be served electronically through the Court of Federal Claims Electronic Filing System on April 9, 2004 upon the following:

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-6288
Fax (202) 307-2503

*Attorney for the United States*

s/Jerry Stouck
Jerry Stouck