In the U.S. Court of Federal Claims

-----------------------------------x

Yankee Atomic Electric Co., :
et al :
: NO. 98-126C
v. : 98-154C
: 98-474C
United States of America :

-----------------------------------x

April 19, 2002

DEPOSITION OF:

Victor W. Trebules, Jr.

a witness, called by counsel pursuant to notice, commencing at 9:00 a.m., which was taken at Spriggs and Hollingsworth, 1350 I St., NW, Washington, DC

01050

agree that at the time that you were working on the plan in 1984 and 1985 it was an objective of the spent fuel program that that program be operated in an economically efficient manner?

MR. SHULTIS: Objection as to "economically efficient." It's vague.

A. I believe we said words to that effect in the mission plan, that's correct.

Q. Why was that an objective?

A. To the best of my recollection, I think we used phrases like fiduciary responsibility. People working in the program felt that they had an obligation to try to execute the program efficiently and effectively.

Q. Why was that an objective?

A. We knew the program was going to cost a lot of money over its lifetime.

I guess it's my opinion that the people felt they ought to try to be efficient in carrying out that program.

Q. Let's pull out the mission plan which I think is exhibit six, if you would, please.

Reporter's Certificate

I, the undersigned, Certified Court Reporter, do hereby certify that the foregoing transcript of testimony was taken by me in stenotype and thereafter reduced to print under my direction, that said transcript is a full, true and substantially accurate record of the proceedings, to the best of my ability.

I do further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

______________________________

Certified Realtime Reporter

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - x COPY

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C

- - - - - - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Deposition of LAKE H. BARRETT

Washington, D. C.

Monday, April 22, 2002

9:31 a.m.

Job No.: 11792-4

Pages 1 through 272, Volume 1

Reported by: Diane Gomez, RPR

01053

3,000 that existed was chosen in consideration with the production rate, you know, the cost and the transportation and the other issues involved.

Q So based on your prior testimony, Mr. Barrett, the 3,000 rate would be consistent with your understanding of the intent of the act to reduce over a reasonable period of time the backlog of spent nuclear fuel throughout the nation, correct?

MR. CRAWFORD: Objection, speculation. Objection, foundation.

A Yes.

MR. CRAWFORD: Can we take a break here.

MR. CAYNE: Certainly.

(There is a recess from the record.)

Q Mr. Barrett, how long did you hold the director position that you discussed?

A The division director?

Q Yes.

A I don't recall. Somewhere -- when I first came to the department, so that would have been '85, spring of '85 until I was assigned to be QA director I think. I don't know, a couple of years.

CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

I, Diane Gomez, Registered Professional Reporter, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 25th day of April, 2002.

My commission expires:
June 14, 2005

Diane Gomez

NOTARY PUBLIC IN AND FOR
THE DISTRICT OF COLUMBIA

**01055**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------------------------------------X
YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese, J.) :
DUKE POWER, a Division of DUKE ENERGY CORP.:
(98-485C)(Sypolt, J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, et al. :
(98-614C)(Merow, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C) (Allegra, J.) :
GPU NUCLEAR, INCORPORATED :
(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY : VOLUME
(00-697C)(Merow, S.J.) : I
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :Discovery
(01-116C)(Sypolt, J.) :Judge:
TENNESSEE VALLEY AUTHORITY :(Judge
(01-249C)(Bruggink, J.) :Sypolt)
Plaintiffs, :PAGES
v. :1 - 274

THE UNITED STATES, :

Defendant. :

------------------------------------------------X

Deposition of Susan Klein

Washington, DC

Wednesday, April 24, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144539

A. My --

MS. POWELL: Well --

THE WITNESS: You don't have to say anything. I'm just waiting for you to have the opportunity.

My understanding is that at the time we came up with that figure, that was approximately the utility discharge rate and that we took 70,000 metric tons and divided it by 25. Both those reasons gave us the 3,000 and then we had 4, 6, 12, too, as a ramp-up period, less transportation and all that.

BY MR. HIRSCH:

Q. Let's talk about the first reason for a minute. The utility discharge -- strike that.

The DOE had looked at the utility discharge rate?

A. That's what I was informed of. I didn't personally do that.

Q. And is it correct generally that the 3,000 metric ton rate would equal the discharge rate plus some amount to get rid of the backlog of spent nuclear fuel?

MS. POWELL: I'm just going to note for the record that we offered Mr. Pollog on I think -- I think that you're talking about this topic, but you can answer.

THE WITNESS: I don't remember. I wasn't told about the backlog. I was informed that it was based on 3,000 was at the time the average utility discharge rate. So...

BY MR. HIRSCH:

Q. It was your understanding that the --

A. I don't know about the backlog issue at all.

Q. All right.

A. About that that accounted for a backlog.

Q. Is it your understanding that the 3,000 rate would keep up with the utility discharge rate?

A. Yes.

Q. Is that correct?

A. Uh-huh.

Q. And then I guess you mentioned the other reason or rationale. I'm sorry. What was the second rationale?

A. 70,000 metric tons, which is how much we're

authorized to put in the first repository, divided by the life of the repository, which is 25 years.

Q. Gives you about 3,000 metric tons a year?

A. Uh-huh.

Q. Given both of those reasons, are you aware of any reason why the DOE would run the repository at Yucca Mountain at a rate less than 3,000 metric tons?

MS. POWELL: Object to beyond the scope, but you can answer.

THE WITNESS: I understand there are lots of ramp-up issues. There's transportation issues. There's utility interface issues. Casks. I mean, that could affect it, but that was our planning and what we'd like to do is be able to do that at 3,000. But I know there's lots of things that need to be worked out.

BY MR. HIRSCH:

Q. Well, assuming that all the ramp-up issues are resolved including transportation?

A. Uh-huh.

Q. Are you aware of any reason why the DOE wouldn't operate the facility at a 3,000 metric ton

rate --
A. No, I'm not.
Q. -- over the life of the facility?
A. No, I'm not aware of any reason we would not do that.
Q. All right. You got or we saw this maybe a little earlier. In order to open by 2010, does the DOE need to essentially build a rail line from the existing rail line in Nevada to the repository?
MS. POWELL: Objection, beyond the scope, but you can answer.
THE WITNESS: That's one of the possibilities is building a rail line. The other is to have -- I know one of the counties wanted to have some sort of system through there. I think it's Lincoln County, Nevada. To have a transportation truck centrally located site. So we haven't made the decision yet. Mostly rail is our preferred alternative, but we haven't decided the routes and the methods.
BY MR. HIRSCH:
Q. So, well, is there -- is it correct that

BY MR. HIRSCH:

Q. I'm going to -- you can look at whatever part of it you'd like.

A. No, I did look at the overview, but this part I had no input in.

Q. Okay. What I'd like to refer you to is page 3-2 of the document. Do you see on page 32 there's a table Annual Repository Receipt Rates?

A. Uh-huh.

Q. And does this table reflect the 400, 600, 1200, 2,000, 3,000 metric ton rates that you previously identified?

A. Yes.

Q. Does this also show the 3,000 metric ton rate extending on from 2015 till 2032?

A. Yes, it does.

MR. HIRSCH: 23.

(Thereupon, the reporter marked for identification Deposition Exhibit No. 23.)

BY MR. HIRSCH:

Q. Ms. Klein, I've handed you what's been marked as Klein Deposition Exhibit 23. It's a document

Will you look at the table located on page 4-14 of this document. Let me just ask you. Is it correct that Exhibit 16 is the last version of the total system life cycle cost report that the DOE has issued?

MS. POWELL: Objection to beyond the scope, but if you know, you can answer.

THE WITNESS: I believe so.

BY MR. HIRSCH:

Q. And does this table that's part of Exhibit 14 show that the DOE is projecting that it will remove spent nuclear fuel from utilities at a rate of 3,000 metric tons from the period 2014 through 2039?

MS. POWELL: Same objection, but you can answer.

THE WITNESS: Yes. As targets only, yes.

BY MR. HIRSCH:

Q. And then the prior years 2010 through 2013 reflect a 400, 600, 1200, 2,000 ramp-up rate that you provided earlier?

A. Yes.

Q. Is that correct?

A. That's correct.

Q. Do you have any reason to believe that this removal rate that's set out in this table is not the DOE's current estimate for the rate it intends to operate at?

A. I do not know that this is -- this was done in May 2001. I wouldn't know necessarily that the Secretary or the General Counsel or the Under Secretary would be aware of these planning numbers that OCRWM has given. So, and we have never asked the official DOE position on what they plan to do after that 10-year period. So, I mean...

Q. All right. Exhibit 16 --

A. But it is clearly in there as something that OCRWM has said as a target only.

Q. All right. And that Exhibit 16 was released to the public and to Congress and to all utilities?

A. Yes, it was.

Q. Is that correct?

A. Yes, it was.

Q. That Exhibit 16 shows the DOE performing at the 3,000 rate from 2014 through 2039?

CERTIFICATE OF NOTARY PUBLIC

I, Denise Dobner Vickery, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in stenotypy and thereafter reduced to typewriting under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Notary Public in and for the
District of Columbia

My Commission expires:
January 15, 2003

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY (98-126C)(Merow, S.J.) | : | |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY (98-154C)(Merow, S.J.) | : | |
| MAINE YANKEE ATOMIC POWER COMPANY (98-474C)(Merow, S.J.) | : | |
| FLORIDA POWER & LIGHT COMPANY (98-483C)(Wilson, J.) | : | |
| NORTHERN STATES POWER COMPANY (98-484C)(Wiese, J.) | : | |
| DUKE POWER, a Division of DUKE ENERGY CORP. (98-485C)(Sypolt, J.) | : | |
| INDIANA MICHIGAN POWER COMPANY (98-486C)(Hodges, J.) | : | |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT (98-488C)(Yock, S.J.) | : | |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. (98-614C)(Merow, S.J.) | : | |
| COMMONWEALTH EDISON COMPANY (98-621C)(Hewitt, J.) | : | |
| BOSTON EDISON COMPANY (99-447C) (Allegra, J.) | : | |
| GPU NUCLEAR, INCORPORATED (00-440C)(Bush, J.) | : | |
| WISCONSIN ELECTRIC POWER COMPANY (00-697C)(Merow, S.J.) | : | VOLUME II |
| POWER AUTHORITY OF THE STATE OF NEW YORK (00-703C)(Damich, J.) | : | |
| OMAHA PUBLIC POWER DISTRICT (01-115C)(Bush, J.) | : | |
| NEBRASKA PUBLIC POWER DISTRICT (01-116C)(Sypolt, J.) | : | Discovery Judge: |
| TENNESSEE VALLEY AUTHORITY (01-249C)(Bruggink, J.) | : | (Judge Sypolt) |
| Plaintiffs, | : | PAGES |
| v. | : | 275 - 533 |

THE UNITED STATES, :

Defendant. :

-------------------------------------------X

Deposition of Susan Klein

Washington, DC

Thursday, April 25, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144540

A. No.

Q. The one we were just looking at. The volume 2 of the DOE viability assessment from December of '98.

A. Okay. Uh-huh.

Q. And in particular, I think we were looking yesterday at the table on page 3-2.

A. Yes.

Q. And --

A. Those are approximately. I think there was a 1900 not an 1800 in our requirements document.

Q. Okay.

A. But they're based on -- they're based on these receipt rates, annual repository receipt rates in Table 3-1.

Q. And this table shows a receipt rate of 3,000 starting in 2014 and I guess running until 2032 on this --

A. Yes.

Q. -- table?

A. That's correct.

Q. And I'm sorry. Your clarification after checking with your office this morning with respect to

the rate was what?

A. Was that the rate here in this Volume 2 of the VA, Exhibit 22, in Table 3-1 is the correct rate for our planning purposes. What we plan, how we plan, the rate at which we plan to accept spent fuel at the repository.

Q. And that is a rate that would ramp up to 3,000 by 2014 and continue on at 3,000 until 2032; is that correct?

A. Yes, that's correct. 2033. Through 2032.

Q. I think you mentioned in your previous answer a system requirements document put out by the DOE?

A. Yes.

MR. HIRSCH: We've previously marked an exhibit which we'll get back to. Let's go ahead and look at that. 27.

(Thereupon, the reporter marked for identification Deposition Exhibit No. 27.)

THE WITNESS: Yes.

BY MR. HIRSCH:

Q. Ms. Klein?

A. Yes.

CERTIFICATE OF NOTARY PUBLIC

I, Denise Dobner Vickery, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in stenotypy and thereafter reduced to typewriting under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Notary Public in and for the
District of Columbia

My Commission expires:
January 15, 2003

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C) (Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C) (Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C) (Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C) (Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C) (Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C) (Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Thursday, April 11, 2002

Continued deposition of ALAN BROWNSTEIN, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being previously duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman,

date at the top.
Q. Which is?
A. December 31st, 1991.
Q. Okay.
A. During that time, the M&O was the principal, and that was TRW.
Q. Does it appear to you that this document, Exhibit 46, was prepared by TRW?
A. I don't know.
Q. Was TRW involved in the ACR issues resolution process?
A. I, I think by this time, they, through one of their subs, they were, one of their subcontractors.
Q. Which subcontractor is that?
A. That would have been JAI.
Q. And by December 1991, was Mr. Billy Cole working for JAI?
A. Yes, to the best of my recollection.
Q. You see in the first sentence of this document, Exhibit 46, it says this standard disposal contract which defines the spent nuclear fuel and high-level radioactive waste acceptance process was unfortunately developed in such a way that the terms and conditions

contained numerous omissions, inconsistencies, ambiguities and contradictions?

A. Yes.

Q. "An OCRWM review of the Standard Disposal Contract identified 34 issues requiring resolution before waste acceptance could begin"?

A. Just a second.

Q. Sure.

(There was a pause in the proceedings.)

THE WITNESS: I'm sorry.

BY MR. HIRSCH:

Q. Would you agree that the standard contract contained omissions, inconsistencies, ambiguities and contradictions?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: To the extent that the issues that the utility representatives and we agreed, which were I think the series of 34, and that is probably the right number, those 34 could be characterized in that grouping.

BY MR. HIRSCH:

Q. There were 34 issues identified in this document?