A. That's what this says. And to the best of my recollection, I think that's accurate.

Q. And so you would agree that there were at least -- strike that.

So you would agree that there were 34 issues that had been identified where there were omissions, inconsistencies, ambiguities or contradictions in the standard contract?

MR. BANES: Objection. Calls for legal conclusion.

THE WITNESS: There were 34 issues that we recognized, we being the department and utilities, that needed to be clarified for whatever the reason.

BY MR. HIRSCH:

Q. And so at minimum, that would have reflected that the standard contract was ambiguous on those issues, isn't that correct?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: No. It could have been, it could have had omissions. It could have had inconsistencies.

I mean there are a host of reasons

why.

BY MR. HIRSCH:

Q. All right. There were 34 issues where there was either an omission, an inconsistency, an ambiguity or a contradiction, is that correct?

MR. BANES: Same objection.

THE WITNESS: To the best of my recollection.

MR. HIRSCH: Mr. Brownstein -- strike that. Let's mark another exhibit.

(Brownstein Exhibit No. 47 was marked for identification.) ^

BY MR. HIRSCH:

Q. Mr. Brownstein, I have handed you what has been marked as Brownstein Deposition Exhibit 47, which is a copy of the March 1995 DOE Acceptance Priority Ranking Annual Capacity Report.

It doesn't appear to have Bates labels.

Do you recognize that this document is a copy of the DOE 1995 APR/ACR?

MR. BANES: Objection -- lack of

# CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

Catherine S. Boyd

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

CERTIFIED COPY

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia

Wednesday, March 13, 2002

Continued deposition of BILLY M. COLE, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

Q. What would be the benefit of campaigning?

A. Permitting is one. Size of the train you can move into a facility, move a train in and pick up three car loads of three casks, load 30 tons instead of one cask of ten tons, it's going to cost less, cost you almost the same to haul one of those cars down the railroad as it does three of them.

You're going to save a lot of money. Campaigning can save money.

Q. Campaigning can save money for DOE?

A. Um-hm. It can also save money for the utilities possibly because you only, you're only interrupting your site one time every maybe three years instead of every year where somebody's coming in where you're loading that stuff, so you only have to, you know, loading crews and stuff once every three years to once a year.

There's benefits to everybody by doing campaigning.

Q. What would, what would be a reason not to do campaigning?

A. The only reason you would not do

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

[signature]

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2002

IN THE U.S. COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC CO., :

MAINE YANKEE ATOMIC POWER CO., :

CONNECTICUT YANKEE ATOMIC POWER :

CO., :

Plaintiffs: : No. 98-126C

vs. : 98-474C

UNITED STATES OF AMERICA : 98-154C

Defendant. :

\- - - - - - - - - - - - - - - x

Washington, D.C.

Tuesday, August 26, 2003

Deposition of:

DR. JOHN BARTLETT

called for examination by counsel for the defendant, pursuant to notice and agreement, commencing at 9:30 a.m., at Department of Justice, 1100 L Street N.W., before Virlana Kardash, RPR, CSR, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

CERTIFIED COPY

You must have dealt with the standard contract in some way; correct?

A Very limited.

Q Let's start from just the beginning of that, then. What's your understanding of, essentially, what is the standard contract?

A Well, it's the contract between the department and the utilities that the department will receive spent fuel for disposal.

Q Did you -- my understanding from what you've already told me is that you had no involvement in making or drafting the standard contract; is that right?

A I did not know it existed until I got to DOE.

Q When is the first time that you actually even read it?

A I don't remember exactly.

Q But it was while you were Director of OCRWM?

A Uh-huh.

Q What involvement did the standard

**contract have in your job while you were at OCRWM?**

A Very limited because of the stage of the program at the time.

**Q Can you explain what limited involvement it did have?**

A Simply an awareness that it existed. And we had the responsibility to do our very best to begin receipt in January of 1998. And the primary thing having to do with that was the siting of the MRS because you could go nowhere without that under the program strategy at the time.

So the involvement with the standard contract and its provisions was absolutely minimal.

**Q I want to break that down just a little bit. You said that you had an obligation to do your very best to start accepting fuel in 1998?**

A Uh-huh.

**Q Was your understanding at the time, while you were Director of OCRWM, that you were contractually obligated to start in 1998?**

premiere award for service.

**Q When did you win that?**

A Two years after the year after I got out of DOE, somewhere in that time frame.

**Q What are the qualifications necessary to be listed in "Who's Who in America"?**

A I really don't know. This resume did it; that's all I can say.

**Q Okay. Fair enough. Dr. Bartlett, how do you keep current in your field?**

A Nowadays? The web sites are by far the best source of information.

**Q Are there web sites that you frequent?**

A Uh-huh.

**Q What are they?**

A The principal one is -- it's called "What's News?" And of all things, it's sponsored by the State of Nevada. And it is very comprehensive in terms of reporting information about things nuclear, globally.

They capture everything and put it on that web site.

**Q So it's not just about Yucca Mountain?**

A Oh, no. No. Yucca Mountain was the instigation, I think, for the web site, but it is very comprehensive in terms of reporting news about things nuclear globally.

**Q Did you ever contribute to that web site?**

A No.

**Q What other web sites?**

A The Nuclear Waste Technical Review Board, which has oversight of the Office of Civilian Radioactive Waste Management. The Nuclear Regulatory Commission program activities. And closely affiliated with that, the Advisory Committee on Nuclear Waste, which is part of the NRC.

**Q Any others?**

A And of course, OCRWM's.

**Q So you still keep up with what's going on at OCRWM?**

A Yes.

**Q Are there any other web sites? Have we**

IN THE U.S. COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC CO., :
MAINE YANKEE ATOMIC POWER CO., :
CONNECTICUT YANKEE ATOMIC POWER :
CO., :
Plaintiffs: : No. 98-126C
vs. : 98-474C
UNITED STATES OF AMERICA : 98-154C
Defendant. :

\- - - - - - - - - - - - - - - - - - x

CERTIFIED COPY

Washington, D.C.
Wednesday, August 27, 2003

Continued Deposition of:

DR. JOHN BARTLETT

called for examination by counsel for the defendant, pursuant to notice and agreement, commencing at 9:30 a.m., at Department of Justice, 1100 L Street N.W., before Virlana Kardash, RPR, CSR, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

paper to confirm and design features and comparing it to regulatory requirements.

**Q I see. Who did that scribbling or that testing?**

A The support contractor, DOE's support contractor.

**Q Do you know who that was?**

A Well, at the time it would have been the TRW team.

**Q Do you know --**

A And now it is Bechtel-SAIC.

**Q Do you know when that was done?**

A It would have been done around mid '90s, over a period of time.

**Q So after you were director at OCRWM?**

A Yes, the idea was conceived after I was director. It was evaluated and studied during, roughly, the mid '90s period.

**Q How is it that you're familiar with that?**

A Well, it was made public; everything about the program is public. And I've maintained,

shall we say, knowledge of the program as a member of the public through the work I was doing for EPA where I would attend these meetings where they would report on what they were doing.

So I just maintained cognizance of the status of the program as an outsider as they reported it at public meetings. Advisory Committee on Nuclear Waste, NRC, Nuclear Waste Technical Review Board; those were the usual venues.

DOE and NRC also have periodic, what they call, technical exchanges, which are noticed and are available to the public if you want to go to the trouble. So there's lots of opportunities if you're interested in maintaining cognizance of what the status of the program is.

**Q Okay. Is the fact that you can't use the same container for transportation -- storage and transportation as you use for disposal, is that another reason why you need that lag facility?**

A Uh-huh.

for everybody. No attention to it.

**Q So did you take any actions, while you were director, to facilitate exchanges?**

A No.

**Q Did you consult with anyone in the industry to determine the viability of exchanges?**

A It was discussed, as I mentioned. I would meet periodically with this American Committee on RAD Waste Disposal, which was a group of CEOs of some of the principal utilities. And we would talk about that, among these 18 issues, and the shut-down issue, et cetera.

And it would be discussed as a concept to be addressed at some appropriate time. They were interested in it; they saw issues in implementing it. And they saw about as many issues as there were members of the committee.

But it was definitely expected, on the basis of what I heard at those meetings, that they would be looking for some capability to do that.

**Q Okay. I have a couple of questions for you based on what you said. When you talk about**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - X

CERTIFIED COPY

YANKEE ATOMIC ELECTRIC :
COMPANY, CONNECTICUT YANKEE :
ATOMIC POWER COMPANY, MAINE :
YANKEE ATOMIC POWER COMPANY, : Case No. 98-126C,
Plaintiff, : 98-154C, 98-474C
vs. : (Senior Judge Merrow)
UNITED STATES OF AMERICA, :
Defendant. : Volume I

- - - - - - - - - - - - - - - X

Washington, D.C.
Tuesday, May 14, 2002

Deposition of LAKE H. BARRETT, a witness herein, called for examination by counsel for the Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 Eye Street, N.W., Washington, D.C., commencing at 9:30 a.m., Tuesday, May 14, 2002, and the proceedings being taken down by Stenotype by CAPPY HALLOCK, RPR-CRR, and transcribed under her direction.

CONTAINS CONFIDENTIAL INFORMATION
PURSUANT TO THE PROTECTIVE ORDER

MS. HERRMANN: Objection. Vague. Speculation.
Q. That that could have been done?
A. It could have been done.
Q. Okay.
A. It technically could have been done.
Q. Now, you again -- some of these things I know we touched on earlier, I'm just attacking it from a different angle here.
You mentioned earlier today shipping campaigns. Do you recall that?
A. Yes.
Q. Now, would you agree that there are advantages to shipping campaigns versus moving over only a small number of assemblies at a time?
A. Yes.
Q. Would you agree that one of the important advantages of shipping campaigns is that efficiencies in transportation operations tend to be realized?
MS. HERRMANN: Objection. Vague.
A. Yes.
Q. Okay, and would you agree that repetitive operations such as cask handling, loading, decontamination, receipt and turnaround

are all more efficiently accomplished per cycle in a campaign versus individual cask transport?

MS. HERRMANN: Objection. Vague, compound.

A. Yes.

Q. Okay. Good.

Now, also earlier today I believe you testified that you thought it was possible -- we looked at I think it was Page 8 from one of the ACRs which had the oldest fuel first queue, if you will. Do you recall that?

A. Yes.

Q. And the question was, do you think it's possible that when DOE commences fuel acceptance in 2010 or some other time that that queue, with minor variations that we put to one side for purposes of the earlier question and I will put aside here, did you think it was possible that that queue would be the actual sequence of pickup of spent fuel. Do you recall that?

A. Yes.

Q. And you said you thought that was possible?

A. It was possible. Unlikely.

Q. Unlikely. That would be my next