IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 98-126 C<br>(Senior Judge Merow) |

YANKEE ATOMIC'S MOTION FOR LEAVE (1) TO SUBSTITUTE IVAN F. STUART AS AN EXPERT WITNESS IN PLACE OF CHARLES W. PENNINGTON; AND, (2) TO SUBPOENA DAN M. COLLIER[1]

A. Motion For Leave To Substitute Ivan F. Stuart As An Expert Witness In Place Of Charles W. Pennington

Yankee Atomic moves for leave to substitute Ivan F. Stuart as an expert witness in the place of Charles W. Pennington because NAC International ("NAC"), Mr. Pennington's employer, seeks to withdraw from providing expert witness services in all spent fuel litigation. Mr. Stuart, who worked at NAC with Mr. Pennington and who has substantially similar expertise as Mr. Pennington, has reviewed the substance of the Pennington expert report and, based on his expertise, opined that the report is accurate and reliable. Mr. Stuart's "Supplemental Expert Witness Report" is attached hereto as Exhibit 1. There are no substantive differences between the opinions set forth in the Stuart and Pennington reports.

[1] This Motion should also be deemed applicable to *Connecticut Yankee v. United States*, Case No. 98-154C, and *Maine Yankee v. United States*, No. 98-474C. If the motion to substitute Mr. Stuart for Mr. Pennington is granted, we will submit identical expert reports from Mr. Stuart in *Connecticut Yankee* and *Maine Yankee*.

Given NAC's desire to withdraw Mr. Pennington as an expert witness, it is appropriate for Yankee Atomic to substitute a new expert witness in place of Mr. Pennington.

1. Yankee Atomic submitted the Pennington report to the Court on August 23, 2000 in a Motion that requested leave to substitute Mr. Pennington as an expert witness in place of James P. Malone.[2] As the Court may recall, Mr. Malone left NAC to work for Exelon, a nuclear utility with (at that time one and now more) spent fuel cases before the Court. Yankee Atomic sought to substitute Mr. Pennington for Mr. Malone at that time to avoid having an employee of another spent fuel plaintiff testify as an expert and at the request of then counsel for Exelon, Robert E. Helfrich, who wanted Mr. Malone to participate in discussions with DOE that led to the settlement (since overturned) between DOE and PECO concerning the Peach Bottom plant.[3] DOE had insisted on Mr. Malone's withdrawal as an expert in this case before permitting him to participate in those settlement discussions.[4] Mr. Pennington's expert report did not differ substantively from Mr. Malone's.

The Court granted the August 23, 2000 Motion in its Order of September 4, 2001. As set out in the Pennington report and the expert witness report of Frank C. Graves, the Pennington report supplies data to Mr. Graves for use in his analyses. The data provided in the Pennington report is largely based on data compiled by NAC. Mr. Pennington, who is an employee of NAC,

[2] *See* August 23, 2000 "Motion for Leave to Substitute Charles W. Pennington As An Expert Witness In Place of James P. Malone." Yankee Atomic had submitted the earlier Malone report pursuant to the Court's pre-trial Orders as part of its pre-trial submissions. The reasons that required the substitution of Mr. Malone are fully set forth in the August 23, 2000 Motion.

[3] *See Alabama Power Co. v. DOE,* 307 F.3d 1300 (11th Cir. 2002).

[4] Mr. Helfrich subsequently became NAC's general counsel. Mr. Helfrich's experience with DOE in the Peach Bottom matter may have contributed to NAC's desire to stop performing expert services in the spent fuel cases.

reviewed the data compiled by NAC and, based on his expertise, opined that the data supplied to Mr. Graves is reliable.

2. On April 6, 2004, counsel for Yankee Atomic, Mr. Robert L. Shapiro, received a communication from Mr. Helfrich, who is now general counsel to NAC, which relayed NAC's new business policy seeking to end its provision of expert opinion testimony in spent fuel litigation as of March 31, 2004. NAC stated:

> NAC is committed to the long-run success of safe and economic spent nuclear fuel storage and transportation. Its core mission is developing and deploying the best storage and transportation solutions it can for all of NAC's customers, thereby serving the industry and our nation in satisfying critical energy policy and national safety needs.
>
> Consistent with its core mission, *NAC recently made a business policy principled decision not to provide paid expert opinion testimony services to governmental or private parties involved in standard contract litigation.* This policy is directed at better aligning NAC in providing spent nuclear fuel transportation and storage solutions for the industry as a whole, rather than focusing on standard contract disputes. *In implementing this policy, NAC has withdrawn its employees from a possible factual supporting opinion testimony role in connection with such litigation and has ended its affiliation with an independent contractor performing such services[, i.e., Ivan F. Stuart,] effective March 31, 2004.*
>
> NAC provides hardware and services to many industry participants who are involved in standard contract litigation. For most such participants, NAC's decision has no effect. NAC stands willing at all times to support the correctness and reasonableness of its actual and estimated costs of providing spent nuclear fuel storage and transportation services, which costs are computed in the ordinary course of NAC's services for its customers. For example, if called upon pursuant to a proper legal request by any party, NAC will provide access to and testimonial support for NAC's information in its usual highly professional manner.
>
> NAC values its relationships in the industry. NAC believes that it is important that industry participants work together as much as possible to solve the difficult national and international problems associated with providing safe and economic transportation and storage of spent nuclear fuel. After much thought, NAC believes that the views outlined above best permit NAC to focus upon its core business of serving its customers and our nation in meeting these pressing interests and needs.

(emphasis added).

NAC's decision to seek to stop providing expert witness testimony in the spent fuel cases was made at least partly in response to a DOE concern about an organizational conflict of interest that was raised in a government contract solicitation dated March 11, 2004. *See* Exhibit 2 at 25-27. The solicitation states that DOE "intends to award multiple fixed-price purchase orders to contractors whose quotes are determined to provide the best value to the Government . . . [of] SNF transportation casks . . . . *Id.* at 1-2.[5] In the same solicitation, DOE also announced that it may potentially exclude contractors "who have been or are now involved in litigation, either administrative or judicial, against the DOE involving the Standard Contract of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR Part 961)." *Id.* at 25. In short, upcoming DOE solicitations for casks that are potentially worth tens of millions of dollars are very important to NAC and Mr. Pennington. NAC wants to ensure that it does not hurt its chances of being awarded that procurement by continuing to be involved in this case.

For these reasons, Mr. Pennington is no longer available as an expert witness in this case and it is entirely appropriate for Yankee Atomic to substitute another expert to sponsor the opinions contained in the Pennington report.

3. Mr. Stuart, as set forth in the attached expert witness report, *see* Exhibit 1, is a former NAC employee and his experience is substantially very similar to Mr. Pennington's, as well as Mr. Malone's. Mr. Stuart has over 40 years of experience in the nuclear industry, approximately 20 of which have been in the field of spent nuclear fuel management, particularly in the areas of

---

[5] The solicitation is for procuring spent fuel transport cask capability assessment reports from contractors with licensed SNF transportation casks. NAC is one of several potential contractors who could supply DOE with SNF transportation casks.

spent fuel transportation and storage. Like Mr. Pennington and Mr. Malone, Mr. Stuart has reviewed the data supplied to Mr. Graves and, based on his expertise, has opined that it is reliable.

4. Although this new testimony from Mr. Stuart may not be necessary because Mr. Graves can rely on Mr. Malone's report pursuant to Fed. R. Evid. 703 and the government does not appear to be offering any conflicting evidence on these issues, Yankee Atomic should be permitted to substitute Mr. Stuart to provide the Court with testimony on these issues and to avoid the potentially awkward need to subpoena Mr. Pennington to testify as an expert witness.

5. There should be no prejudice to the government resulting from the substitution of Mr. Stuart for Mr. Pennington. The government took extensive deposition testimony of both Mr. Stuart and Mr. Pennington (separately) on October 24-26, 2001. To the extent that the government plans to depose Mr. Stuart with respect to the supplemental expert report attached at Exhibit 1, the government would only have to update his prior deposition. Moreover, the government can utilize its earlier exploration of the relevant subject matter from its deposition of Mr. Pennington as an aid to any further deposition of Mr. Stuart. Thus, the government will not suffer any prejudice.

Accordingly, the Court should allow the substitution of Ivan F. Stuart as an expert witness in the place of Charles W. Pennington

B. Motion For Leave To Subpoena Dan M. Collier

Yankee Atomic moves for leave to subpoena Dan M. Collier as a trial witness pursuant to RCFC 45(b)(2). RCFC 45(b)(2) states that "the court upon proper application and good cause shown may authorize the service of a subpoena" at any place not "within 100 miles of the place

of the . . .trial," which will take place at the Court commencing July 12, 2004. The Court should grant this Motion because (a) Mr. Collier's employer, NAC, has asked Yankee Atomic to subpoena him for his appearance as a fact witness, and (b) Mr. Collier is located in the Atlanta, Georgia area, *i.e.,* more than 100 miles from the Court.

Mr. Collier is listed as a fact witness in Yankee Atomic's 2003 Witness List, which was submitted on March 28, 2003, to "testify concerning the experiences of commercial nuclear utilities in trading commodities unique to their industry, particularly commodities that are part of the nuclear fuel cycle." *See* Yankee Atomic Witness List at 5.[6] Mr. Collier is a Senior Vice President for NAC and works in its Atlanta headquarters at 3930 East Jones Bridge Road, Norcross, Georgia 30092. This is more than 100 miles from the Court. Although Mr. Collier is a *fact* witness, and not an *expert* witness, NAC has requested Yankee Atomic to subpoena him consistent with its new business policy noted above. NAC seeks to avoid any appearance that it is continuing to voluntarily support utilities in litigation against DOE.

Accordingly, the Court should allow Yankee Atomic to serve a subpoena upon Mr. Collier to secure his appearance as a fact witness in the trial of this case.

* * *

[6] The government deposed Mr. Collier on October 23, 2001. Mr. Collier also was listed as a fact witness in Yankee Atomic's 1999 pretrial submissions.

For the reasons set forth above, the Court should (a) allow the substitution of Ivan F. Stuart as an expert witness in the place of Charles W. Pennington; and, (b) allow Yankee Atomic to serve a subpoena upon Dan M. Collier to secure his appearance as a fact witness in the trial of this case.[7]

Dated: April 23, 2004

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800 (Tel.)
(202) 682-1639 (Fax)
COUNSEL FOR PLAINTIFF
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Vivek K. Hatti
SPRIGGS & HOLLINGSWORTH

[7] Yankee Atomic has solicited the government's agreement to the substitution of Mr. Stuart and the subpoena of Mr. Collier by letter dated today. *See* Exhibit 3. Yankee Atomic is filing this motion at this time, however, to facilitate its consideration, if necessary, at the May 13, 2004 pretrial conference.