IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO YANKEE ATOMIC'S MOTION FOR LEAVE TO SUBSTITUTE IVAN F. STUART AS AN EXPERT WITNESS IN PLACE OF CHARLES W. PENNINGTON

The Government respectfully responds to "Yankee Atomic's Motion For Leave (1) To Substitute Ivan F. Stuart As An Expert Witness In Place Of Charles W. Pennington; And, (2) To Subpoena Dan M. Collier," which the plaintiff, Yankee Atomic Electric Company, filed on April 23, 2004, upon its own behalf and upon behalf of Connecticut Yankee Atomic Power Company and Maine Yankee Atomic Power Company (collectively, "the Yankees").[1] Although the Government does not oppose the Yankees' request for an order permitting service of a subpoena upon Mr. Collier, the Yankees' request to substitute a new expert witness to replace Mr. Pennington is highly objectionable and represents yet another example of the Yankees' repeated attempts to burden the Government with an aggressive trial schedule, combined with significant and previously undisclosed discovery. The Government respectfully requests that Yankees' motion to substitute be denied. In the alternative, the Government requests that the date of trial be moved to accommodate the additional discovery necessitated by any substitution and that the Government be reimbursed its costs associated with this substitution.

[1] We respectfully request that this response be deemed applicable to Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.).

BACKGROUND

The recent events leading to the trial of the three Yankee cases has been rife with strategic disclosures – and strategic omissions – by the Yankees that have improperly burdened the Government and unfairly prejudiced the preparation of the Government's defense. The strategic omissions began on February 26, 2004, when the Yankees requested and obtained a July 12, 2004 trial date for the three Yankee cases. In seeking the July 12 trial date, the Yankees omitted any reference to the imminent and significant discovery demands that would be placed upon the Government in the three months leading up to trial. Instead, the Yankees disclosed their intentions to take significant, additional fact and expert depositions only after obtaining the trial date they desired.

The Yankees' strategic omissions continued on April 12, 2004, the date on which the Court conducted a status conference to discuss the Yankees' request for additional fact and expert discovery and the scope of any additional discovery. As the Court is aware, during that telephonic status conference, the Government discussed its concerns that the Yankees' continuous discovery would keep the parties focused upon discovery issues for several weeks, would preclude the Government from devoting its attention to its trial preparation activities, and would prejudice the Government's ability to prepare a complete defense of its case at trial. Nevertheless, the Court granted the Yankees' request to take 10 additional depositions prior to trial, but acknowledged the seriousness of the Government's concerns. Based upon the Court's April 13, 2004 order, the Government arranged to produce fact and expert witnesses for a total of 10 depositions taking place over 14 business days. However, just as the Yankees had failed to mention their desire to take numerous additional depositions when they were discussing potential

trial dates with the Court, the Yankees omitted any reference during the parties' April 12, 2004 conference to the withdrawal of one of the Yankees' expert witnesses, even though the Yankees had known about the withdrawal for at least six days before that hearing.[2] Motion, at 2. As had previously occurred during discussions regarding the establishment of the July 12, 2004 trial date, the Yankees disclosed that their expert witness, Charles W. Pennington, had withdrawn and that a substitution would be necessary only after obtaining the additional fact and expert discovery that they demanded. Motion, at 1.

The Yankees acknowledge that they learned, in writing, on April 6, 2004, that Mr. Pennington would no longer testify upon their behalf. Motion, at 2. However, the Yankees waited 17 days after receiving written notice of Mr. Pennington's withdrawal from NAC International, and 11 days after this Court allowed them significant additional deposition discovery, to inform the Government through the filing of the pending motion of Mr. Pennington's withdrawal.

There is no reasonable explanation for the lack of candor exhibited by the Yankees over the past two months. Rather, it appears that the Yankees strategically disclose and omit information so as to limit the appearance of burden upon the Government. Taken individually, the July 12 trial date, 14 days of additional fact and expert depositions, and a potential multi-day expert deposition may not appear wholly unreasonable. Taken together, however – as the Yankees have precluded this Court from doing – the prejudice to the Government is apparent.

---

[2] The Yankees' motion states only that, on April 6, 2004, counsel for the Yankees "received a communication . . . which relayed NAC's new business policy seeking to end its provision of expert opinion testimony in spent fuel limitation as of March 31, 2004." Motion, at 2. It is unclear from the motion whether the Yankees had knowledge of the withdrawal prior to the April 6, 2004 letter. Based upon the content of the letter, the Yankees may have had knowledge of the withdrawal as early as March 31, 2004, the effective date of the withdrawal, if not earlier.

Had the Yankees proposed any combination of a July 12 trial date, 14 days of depositions, and a pretrial substitution of their cost expert, the Government would have vehemently opposed the combination of requests, at least without an extension of the requested trial date, to avoid prejudice to the Government. By taking these demands to the Court serially, the Yankees have attempted to minimize the appearance of burden. However, the burden is clear, and the resulting prejudice is real. The Government now is faced with the prospect of multi-day expert depositions, in addition to 14 days of fact and expert depositions currently being taken and a rapidly-approaching trial date. The Government must be allowed to prepare its defense, and the Yankees' further attempts to impede upon that preparation should be denied.

STATEMENT OF FACTS

The subject matter of the expert report now sought to be adopted by Mr. Stuart has taken a winding road to trial. The original expert report relating to the costs associated with dry and wet storage, dry storage cask capacity, handling and transportation, and fuel discharges, was prepared by then-NAC International employee James P. Malone. However, on August 23, 2000, the Yankees filed their first motion to substitute, that sought leave to substitute Mr. Malone with Mr. Pennington. Motion, at 2 n.2. That motion was granted on September 4, 2001. See Order (Sept. 4, 2001). Thereafter, Mr. Pennington was deposed concerning the opinions expressed in his expert report over three days, from October 24 to October 26, 2001. The vast majority of the testimony concerned the substance of Mr. Pennington's report, as opposed to his qualifications to render the opinions contained within that report.

Mr. Stuart – the witness that the Yankees seek to substitute for Mr. Pennington – also has been deposed in this litigation. Mr. Stuart's deposition concerned the bases for opinions that he

expressed in an expert report regarding the Department of Energy's ability to implement an acceptance schedule that would ramp up to 3,000 MTU per year (see Ivan F. Stuart Expert Witness Report, at 2 (June 30, 1999)), as well as his qualifications for rendering opinions concerning those acceptance issues. Mr. Stuart was never deposed concerning the cost categories and opinions contained in Mr. Pennington's report, nor was he deposed concerning his qualifications for offering opinions relating to costs. As a result, to the extent Mr. Stuart adopts Mr. Pennington's expert opinions, he must be questioned concerning the bases for those opinions and his qualifications for offering those opinions.

## ARGUMENT

### I. THE COURT SHOULD DENY THE YANKEES' REQUEST TO SUBSTITUTE EXPERT WITNESSES AT THIS STAGE OF THE PROCEEDINGS

#### A. The Late Identification Of Mr. Stuart Is Highly Prejudicial To The Government's Preparation Of Its Defense Of This Litigation

The Yankees' attempt to substitute experts at this late date is highly prejudicial to the Government as it attempts to prepare for the trial of this matter. In addition to working diligently upon trial preparation, the Government has been forced to engage in 14 days – almost three full weeks – of fact and expert depositions. Now, through its motion to substitute, the Yankees seek to require the Government to prepare for a new expert witness. Mr. Pennington's departure from the case does not appear to be the result of illness or some other personal difficulty that would preclude his continued participation, but instead appears only to be based upon a business decision that he no longer wishes to participate. See Pl. Motion, at 3. Since Mr. Pennington's deposition concerning the identical subject matter took three days to complete, it is likely that Mr. Stuart's deposition would require a similar amount of time. Between the time involved in the

preparation for and taking of Mr. Stuart's deposition, the Yankees' motion to substitute, if granted, could consume more than a week, well in excess of what is reasonable given the impending July 12, 2004 trial date. The burden upon and resulting prejudice to the Government as a result of any substitution, particularly in the face of the Yankees' continuing and extensive depositions, is clear.

The Yankees' contention that no prejudice will result from the substitution because only an "update" deposition is required, see Motion, at 5, is untenable and is belied by the Yankees' pretrial demands with respect to the Government's expert witnesses. First, characterizing any needed deposition as an "update" is misleading. Mr. Pennington was deposed for three consecutive days concerning cost information provided to the Yankees' damages expert that formed the basis for much of the expert damages report. In contrast, Mr. Stuart was deposed concerning his report regarding acceptance issues. Mr. Stuart has never been questioned concerning the substance of and bases for Mr. Pennington's expert cost report. If Mr. Stuart is to sponsor that cost report, he must be similarly questioned as the Government cannot rely upon the responses provided by an entirely different expert witness. Further, although the Yankees assert that we can use Mr. Pennington's deposition as "an aid" to "any further deposition of Mr. Stuart," Motion, at 5, we presume that the Yankees would strenuously object if we attempted to use Mr. Pennington's deposition transcript to impeach Mr. Stuart's testimony at trial. If the Court were to allow Mr. Stuart's new testimony, we would have to conduct a complete and thorough deposition of Mr. Stuart.

Second, the Yankees' contention that only an "update" is needed is disingenuous, given the significant deposition discovery they seek from, among other witnesses, the Government's

technical expert, Edward Abbott. Mr. Abbott previously was subject to five days of depositions concerning his original technical expert reports. Though his supplemental reports contain significant duplicative information, the Yankees have demanded and obtained three additional days with Mr. Abbott concerning those supplemental reports.

In response to the Yankees' demands for three days of deposition for Mr. Abbott, the Government argued that a three-day deposition concerning a supplemental report was excessive. The Yankees disagreed, even though – unlike Mr. Stuart – Mr. Abbot had provided significant expert testimony concerning reports that were similar in form and in content to the supplemental reports served in February 2004. The Yankees cannot have it both ways. If allowed to substitute expert witnesses, Mr. Stuart will require a level of inquiry similar to that to which Mr. Pennington was subjected. Mr. Stuart is a new expert witness upon the topics covered in his "supplemental" report. An "updated" deposition simply will not adequately address the issues implicated by Mr. Stuart's report.[3]

Certainly, the Court has the authority to preclude the Yankees from adding a new expert witness at this late date. See, e.g., Rushing v. Kansas City S. Ry. Co., 185 F .3d 496, 509 (5th Cir.1999) (upholding trial court's exclusion of expert not identified in accordance with pre-trial order); Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 180 F.3d 542, 549 n.1 (3rd Cir. 1999) (finding "no defect" with district court's refusal to allow party to amend an expert report). Because of the significant additional discovery demanded and obtained by the Yankees and the rapidly-approaching trial date, the time involved in preparing for and taking the

[3] The Yankees' assertion that the work done for Mr. Pennington can simplify any additional deposition of Mr. Stuart is ill-founded. Mr. Pennington was deposed nearly three years ago. As a result, any deposition of Mr. Stuart will nearly start from scratch.

deposition of Mr. Stuart would highly prejudice the Government's trial preparation. As a result, the Yankees' motion should be denied.[4]

B. The Timing Of The Yankees' Serial Motions Is Instructive Of The Prejudice That The Yankees Seek To Impose Upon The Government

The timing of Yankee Atomic's motion to substitute is illustrative of a larger effort by the Yankees to burden the Government with significant pretrial work that impedes the preparation of the Government's defense of the Yankees' excessive and often unsupported claims. Though aware of Mr. Pennington's withdrawal as early as April 6, 2004, Yankee Atomic waited 17 days – until after the parties' April 12, 2004 telephonic status conference with the Court and after this Court ordered extensive deposition discovery on April 13, 2004 – before providing the Government or the Court with notice of Mr. Pennington's withdrawal and request to substitute a new expert witness. In fact, in their motion to substitute, the Yankees admit their failure to notify the Government, stating that the timing of the motion was intended to facilitate adjudication at the May 13, 2004 pretrial conference – eight short weeks before the start of trial. Motion, at 7 n.7.

There is no valid explanation for Yankee Atomic's failure to notify the Court on April 12, 2004 – or the Government at any time before April 23, 2004 – of Mr. Pennington's withdrawal and the possible need to substitute expert witnesses. Instead, the April 12, 2004 hearing left the Government – and, likely, this Court – with the impression that the remaining depositions were

[4] The Government disagrees with Yankee Atomic's statement, see Motion, at 5, that the Government is not offering any conflicting evidence upon the issues raised by Mr. Pennington's report. Indeed, one of the Government's experts, Mr. Abbott, deals with some, if not all, of the cost categories included in Mr. Pennington's report. Further, many of Mr. Pennington's cost opinions conflict with the cost opinions of another of the Yankees' expert witnesses, Mr. Wise. In any event, any opinions must be properly based in fact, and the evidence to be presented at trial will show that Mr. Pennington's expert opinion is unsupported.

the final discovery obligations leading to trial. We now have learned that is not the case. Instead, the Government is faced with a possible multi-day deposition and significant preparation time, in addition to the already onerous deposition schedule. It is either time to try this case or to continue the trial date and engage in additional discovery. To require the Government to continue to defend and, now, pursue significant discovery in the face of a rapidly-approaching trial date would be highly prejudicial. The Yankees' motion to substitute should be denied.

## II. IF THE COURT ALLOWS THE YANKEES TO SUBSTITUTE EXPERT WITNESSES AT THIS LATE DATE, THE COURT SHOULD DEFER THE SCHEDULED TRIAL BY SIX WEEKS TO ALLOW THE GOVERNMENT AN ADEQUATE OPPORTUNITY TO TAKE ADDITIONAL DEPOSITIONS

To the extent that the Court allows the Yankees to substitute Mr. Stuart as a replacement for Mr. Pennington, the Court should allow the Government additional time prior to the start of trial in this case to depose both Mr. Pennington and Mr. Stuart. Specifically, the Government should be entitled to depose Mr. Stuart upon all of the opinions that he will now be offering in this case and the bases of those opinions, including questions regarding any interplay between his new opinions and the opinions that he previously provided regarding other topics. In addition, the Government should be allowed to depose Mr. Pennington regarding the bases of his withdrawal from this case, including whether his decision to withdraw from this litigation is related in any way to a change in his opinions regarding the merit of the Yankees' claims. As the Court is aware, we have previously expressed our concerns that the Yankees' additional fact and expert depositions that the Court is permitting pursuant to its order dated April 13, 2004, could significantly effect our ability to prepare for trial in this matter. Now, with this latest request by the Yankees, and our need to depose both Messrs. Stuart and Pennington, it would be manifestly unfair to require the Government to take the actions necessary to eliminate the prejudice that the

Yankees have imposed through this last-minute expert witness substitution without providing the Government with an adequate opportunity to take these new depositions and subsequently to prepare its case before the commencement of trial. To the extent that the Court allows the Yankees' requested substitution, we respectfully request that the Court defer the start of the scheduled trial by six weeks and issue an order permitting the Government to take this additional expert discovery.

Further, the Court should order the Yankees to reimburse the Government for the costs that it will incur in preparing for and taking these new depositions. We incurred substantial attorney, consultant, and litigation support costs in preparing for and taking Mr. Pennington's deposition in October 2001. We do not yet know the costs that we will incur to depose Messrs. Stuart and Pennington in response to a substitution. In such circumstances, ordering the plaintiffs to reimburse the Government for these costs, made necessary only by a request that benefits only the plaintiffs through no fault of the defendant, is warranted. Hansen Bancorp, Inc. v. United States, 51 Fed. Cl. 737, 738 (2002); see Sithon Maritime Co. v. Holiday Mansion, No. Civ. A. 96-2262-EEO, 1998 WL 433931, at *1-2 (D. Kan. July 30, 1998) (permitting plaintiff's substitution of expert only upon condition that plaintiff "reimburse defendant for a reasonable amount of such expense" associated with substitution; "since the motion seeks relief to benefit plaintiff through no fault of defendant, the latter should not bear all the expense it has incurred").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Yankees' motion for substitution be denied. In the alternative, the Government requests that the Court defer the July 12, 2004 trial date and permit the Government to depose Messrs. Stuart and Pennington.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
RUSSELL A. SHULTIS
MARIAN E. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 12, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 12th day of May 2004, a copy of foregoing "DEFENDANT'S RESPONSE TO YANKEE ATOMIC'S MOTION FOR LEAVE TO SUBSTITUTE IVAN F. STUART AS AN EXPERT WITNESS IN PLACE OF CHARLES W. PENNINGTON" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.