IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JOHN BARTLETT

Defendant, the United States, respectfully submits this reply to Yankee Atomic's Opposition To Motion *In Limine* To Exclude The Expert Report And Testimony Of Dr. John Bartlett.[1] In our motion to exclude the expert report and testimony of John Bartlett we demonstrated that Dr. Bartlett is not qualified to render the opinions promised by Yankee Atomic Electric Company ("Yankee"), Dr. Bartlett's testimony is neither reliable nor relevant, and there are no circumstances under which his opinions would be helpful to the trier of fact. Based upon the testimony given by Dr. Bartlett during his deposition in this case, which differed substantially from the opinions promised in his expert report, it is clear that Dr. Bartlett's expert report and potential testimony should be excluded from evidence. Notwithstanding the Yankees' efforts to distract the Court with hyperbole, plaintiffs do not, and cannot, offer any valid reason to use valuable trial time for the presentation of testimony that will be irrelevant and unhelpful to the Court.

---

[1] We respectfully request that this reply also be deemed applicable in Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C, and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (collectively referred to as "the Yankees").

## DISCUSSION

### I. THE YANKEES' ASSERTION THAT THE GOVERNMENT HAS ACCUSED DR. BARTLETT OF A CRIME IS AN INAPPROPRIATE ATTEMPT TO DISTRACT THE COURT FROM THE ISSUE

As an initial matter, the Government takes very seriously the Yankees' outrageous assertion that we have "accused Dr. Bartlett of being a felon." Pl. Opp. at 1.[2] This assertion is false and misleading and can only be meant to confuse the issues presented in the Government's motion. The Government has never accused Dr. Bartlett of a crime. Rather, as the pleadings throughout this case make clear, the Government moved to strike Dr. Bartlett's expert report and testimony as barred by the Ethics in Government Act, 18 U.S.C. § 207.[3] As officers of the Court, and as representatives of the United States, we were obligated to ensure compliance with the Act. The Yankees' repeated hyperbole and inflammatory misrepresentations do not contribute to constructive efforts to resolve this litigation.

### II. DR. BARTLETT'S DEPOSITION TESTIMONY DID NOT SUPPORT THE OPINIONS PROMISED BY THE YANKEES IN THEIR BRIEFING OR BY DR. BARTLETT IN HIS REPORT

Putting aside their misunderstanding of the Government's earlier motion to strike, the Yankees raise a point which should be addressed. The Yankees refer to the Government's argument, put forth in 2001 and based upon Dr. Bartlett's expert report, that "[i]t cannot be seriously argued that Dr. Bartlett does not rely upon scientific, technical, or other specialized

---

[2] "Pl. Opp. at __" refers to Yankee Atomic's Opposition To Motion *In Limine* To Exclude The Expert Report And Testimony Of Dr. John Bartlett, dated April 16, 2004.

[3] See Defendant's Motion To Strike The Expert Report Of Dr. John W. Bartlett And Exclude Dr. Bartlett From Testifying As An Expert Or Lay Opinion Witness In This Proceeding, dated October 12, 2001.

knowledge in offering his opinions concerning the pace and schedule pursuant to which the DOE would have disposed of the contract holders' SNF." Pl. Opp. at 2. Based upon the information available to us in 2001, which consisted solely of Dr. Bartlett's report, that statement appeared absolutely true. In his report, and as we discussed at page 31 of our October 12, 2001 motion to strike Dr. Bartlett, Dr. Bartlett explicitly stated that he was relying upon his "experience in the field of spent fuel management" in formulating his opinions regarding the amount of SNF that DOE is required to accept in any given year pursuant to the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270, and the Standard Contract.

Yet, in his later deposition, and despite his report, Dr. Bartlett essentially disclaimed that he was offering any opinion regarding the amount of SNF that DOE is required to accept in any given year. Through his deposition, the Government has discovered that, despite his former position as Director of the Office of Civilian Radioactive Waste Management ("OCRWM"), Dr. Bartlett asserted that he had virtually no involvement in the Standard Contract and that his only understanding of the Standard Contract comes from "hearsay" and "lore." A29-30, 46-48.[4] Despite his dealings with the Standard Contract regarding potential exchanges of acceptance allocations, Dr. Bartlett testified that he has no idea how an exchange program would be implemented. A61-62. Despite the promise in his expert report of informed opinions regarding the "proper pace and schedule" for DOE's acceptance of spent nuclear fuel, Dr. Bartlett's deposition reveals that he has no such opinions. Rather, as we have discussed in our motion, Dr. Bartlett offers a "reasonable" rate of acceptance, which he admits is no more reasonable than any other rate of acceptance. A31-33. He offers a suggested ramp-up period, with no opinion as to

[4] "A__" refers to the appendix attached to Defendant's Motion In Limine To Exclude The Expert Report And Testimony Of John Bartlett, dated February 19, 2004.

whether it is the most efficient or a mandatory ramp-up period. A40. He offers the suggestion of transportation campaigns, with no indication of the manner in which such campaigns would work, or even whether they could work in the absence of priority for shutdown reactors, which has never been granted by DOE. A42, 49. And he offers the possibility of exchanges, with no analysis to support his theory. A54-55.

During his deposition, it became clear that, despite the representations contained in Dr. Bartlett's expert report, his actual testimony is nothing more than a series of suggestions to DOE for the administration of the spent nuclear fuel program and the acceptance of spent nuclear fuel. He presents no opinions as to what DOE was required, pursuant to the Standard Contract, to do. It is now clear that Dr. Bartlett's suggestions are designed to be potentially helpful to DOE in the future, but they will be decidedly unhelpful to this Court in determining DOE's obligations with regard to acceptance of spent nuclear fuel.

## III. DR. BARTLETT'S CREDENTIALS DO NOT QUALIFY HIM TO PRESENT EXPERT OPINIONS IN THIS CASE

The Yankees devote the better part of four pages of their opposition brief to a listing of Dr. Bartlett's "qualifications," urging that he is qualified to offer the opinions at issue in this case. The list includes Dr. Bartlett's appointment to the office of Director of OCRWM, membership in the American Nuclear Society, and expertise in "performance assessment," which Dr. Bartlett described during his deposition as "the mathematical modeling of the technical physical features of the repository that determine how it will perform with respect to safety and compliance with the regulatory standards." A9-10. We note that the Yankees adopt a much different and novel definition of "performance assessment," which includes elements never mentioned by Dr. Bartlett during his deposition. Pl. Opp. at 10-11. At any rate, the Government

is not arguing here that Dr. Bartlett's credentials are unimpressive. Rather, they simply do not provide a basis for the opinions offered by Dr. Bartlett. The mere fact that an expert may be qualified in one area does not necessarily mean that he is qualified to testify in other technical or specialized areas, and courts have frequently precluded a witness from testifying as an expert where he has specialized knowledge on one subject, but seeks to opine on a different subject. See, e.g., Surace v. Caterpillar, Inc., 111 F.3d 1039, 1055-56 (3d Cir. 1997); Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir. 1995); Eagleston v. Guido, 41 F.3d 865, 873-74 (2d Cir. 1994), cert. denied, 516 U.S. 808 (1995).

More importantly, Dr. Bartlett's credentials are irrelevant, because his "opinions" are not opinions at all, but rather suggestions that may, or may not, be adopted by DOE. As an example, the Yankees admit that Dr. Bartlett "is not offering an opinion on what each and every utility would have done or providing an itemized list of exchanges that would have taken place" and that Dr. Bartlett "is not being offered as an expert on exchange details," apparently to excuse the fact that Dr. Bartlett has performed no analysis of the proposed exchange process and has no idea how such a process would work. Pl. Opp. at 13. This omission should not be considered in a vacuum. As discussed in the Government's motion to strike the testimony of Frank Graves, the Yankees' proposed exchanges expert has not performed such an analysis either. Without details as to the manner in which exchanges would work, or even if they would work under the circumstances of this case, the opinions of Dr. Bartlett and Mr. Graves amount to nothing more than a belief that exchanges would have been a good idea. This is a far cry from a showing that DOE was required to implement exchanges.

Likewise, with regard to Dr. Bartlett's opinion on the role of transportation campaigns, the Yankees cite Dr. Bartlett's testimony that "[i]t's something we recognized as an ideal option

of running the system." Pl. Opp. at 14. Again, an "ideal option," to use Dr. Bartlett's words, is vastly different from a contractual requirement. In a contract case such as this one, where the court must determine contractual obligations, testimony as to ideals, hopes, and dreams, even from a former Director of the program, are completely irrelevant and of no use to the Court.

With regard to acceptance rate, the Yankees argue that "Dr. Bartlett's fundamental acceptance rate opinion – that the non-breach world acceptance rate would have been 3000 metric tons of uranium per year ("MTU") – is so well-supported that a Judge of this Court held that it is appropriate for determining damages *as a matter of law*." Pl. Opp. at 3 (emphasis in original). There are at least two problems with the Yankees' argument. First, the fact that Judge Hodges adopted a 3000 MTU rate in Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003), is completely irrelevant, particularly in light of this Court's statement in its June 26, 2003 order, discussed below, that DOE, rather than the Court of Federal Claims, is the appropriate body to determine the schedule for spent nuclear fuel acceptance. Second, and more importantly, the Yankees still refuse to acknowledge that, despite what was promised in Dr. Bartlett's report, Dr. Bartlett's "fundamental acceptance rate opinion" is not that the non-breach world acceptance rate "would have been" 3000 MTU per year. Dr. Bartlett admitted as much during his deposition, when he indicated that there could be more than one "proper pace." A31-33. While the Yankees may have hoped Dr. Bartlett would espouse the desired opinion, and, indeed, while the desired opinion may have even appeared in Dr. Bartlett's report, when it came time for Dr. Bartlett to testify under oath during his deposition, it became clear that Dr. Bartlett was not offering an opinion as to what DOE would have done, but rather, what he thought it would be reasonable for DOE to do.

The Yankees cite the Court's June 26, 2003 order regarding acceptance rate in support of their arguments regarding acceptance rate, Pl. Opp. 11, but ignore most of the order's provisions. In its order, this Court acknowledged that "the pretrial evidence indicates that there has been no decision to apply . . . priority [for shut down reactors]." Order at 2. The Court further recognized that the "relatively quick pick-up" upon which the Yankees' claim depends "could be accomplished only by the application of a shut-down priority or by use of 'exchanges.'" Id. at 2-3. Finally, the Court indicated that "the Court of Federal Claims is not an agency tasked with developing a comprehensive schedule for SNF pick-up" and reserved the option of invoking the primary jurisdiction doctrine, allowing DOE to determine the schedule for acceptance of SNF to be used by the Court. Id. at 3. This makes Dr. Bartlett's suggestions regarding rate and schedule even more irrelevant and unhelpful to the Court.

## IV. FACTUAL TESTIMONY GIVEN BY DR. BARTLETT HAS NO BEARING UPON HIS ABILITY TO TESTIFY AS AN EXPERT

The Yankees argue that "Dr. Bartlett can testify, as a fact witness, regarding his understandings and expectations – while Director of the program – regarding how the DOE spent fuel program should and would operate." Pl. Opp. at 5. The Government has never argued that Dr. Bartlett could not testify as a fact witness, even though he appears to have disclaimed any relevant non-hearsay factual knowledge in his deposition, and the purpose of our motion to strike his expert testimony is not an effort to "silence the truth," as the Yankees dramatically put it. Pl. Opp. at 5. However, Dr. Bartlett specifically testified during his deposition that any knowledge he possesses regarding the Standard Contract comes from "off-the-cuff" conversations that were, in his words, "not meant to commit anybody." A29-30. Based upon his testimony at deposition, Dr. Bartlett's "understandings and expectations" are based entirely upon hearsay. The Yankees

are, of course, free to call Dr. Bartlett as a fact witness. The fact that his testimony will be largely inadmissible and completely irrelevant can be brought out by the Government during cross-examination at trial. However, the Yankees' decision to call Dr. Bartlett as a fact witness, unreliable though he may be, has no bearing upon the fact that he is not an expert and should not be allowed to testify as one.

CONCLUSION

For the foregoing reasons, we respectfully request the Court grant the Government's motion *in limine* and exclude the expert testimony of Dr. John Bartlett.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

HEIDE L. HERRMANN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 14, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 14th day of May, 2004, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JOHN BARTLETT," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.