No. 98-126C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE PRESENTATION OF DR. GRAVES' SPECULATIVE THEORY OF 'EXCHANGES' AT TRIAL IN SUPPORT OF YANKEE ATOMIC'S CLAIM FOR DAMAGES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 14, 2004

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE PRESENTATION OF DR. GRAVES' SPECULATIVE THEORY OF 'EXCHANGES' AT TRIAL IN SUPPORT OF YANKEE ATOMIC'S CLAIM FOR DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. YANKEE ATOMIC MUST DEMONSTRATE THAT ITS CLAIMED DAMAGES ARE A DIRECT RESULT OF THE GOVERNMENT'S PARTIAL BREACH OF THE STANDARD CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. DR. GRAVES' MODEL FAILS THE TEST OF REASONABLE CERTAINTY 7

A. Dr. Graves' Failure To Model Actual Exchanges Between Contract Holders Renders The Model Speculative . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Dr. Graves' Assumptions Regarding Ramp-Up Rates And Utility Storage Costs Also Renders The Model Speculative . . . . . . . . . . . . . . . . . . . . . . 12

III. WITHOUT DR. GRAVES' MODEL, YANKEE ATOMIC CAN PROVIDE NO EVIDENCE REGARDING THE SCHEDULE AGAINST WHICH THE COURT SHOULD MEASURE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. Absent Dr. Graves' Model, Yankee Atomic Has No Evidence Regarding The Date By Which DOE Was Required To Have Accepted All Of Its SNF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B. Dr. Graves' Opinions Upon A "Reasonable" Acceptance Rate Are Unnecessary And Should Not Be Heard . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ace Federal Reporters, Inc. v. Barram,
226 F.3d 1329 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Bluebonnet Savings Bank, FSB v. United States,
266 F.3d 1348 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Boyajian v. United States,
191 Ct. Cl. 233, 423 F.2d 1231 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Castle v. United States,
48 Fed. Cl. 187 (2000), aff'd in part, rev'd in part and remanded in part, 301 F.3d 1328 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Chain Belt Co. v. United States,
127 Cl. Ct. 38, 115 F. Supp. 701 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Confederated Tribes of the Warm Spring Reservation of Oregon v. United States,
248 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fawick Corp. v. United States,
149 Ct. Cl. 623, 637 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fifth Third Bank of Western Ohio v. United States,
55 Fed. Cl. 223 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Locke v. United States,
151 Ct. Cl. 262, 283 F.2d 521 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Osage Oil & Refining Co. v. Chandler,
287 F. 848, 852 (2d Cir. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES (con't)

Southern National Corp. v. United States,
57 Fed. Cl. 294 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Willems Industries, Inc. v. United States,
295 F.2d 822 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126C<br>(Senior Judge Merow) |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE PRESENTATION OF DR. GRAVES' SPECULATIVE THEORY OF 'EXCHANGES' AT TRIAL IN SUPPORT OF YANKEE ATOMIC'S CLAIM FOR DAMAGES

Defendant respectfully submits this reply to the opposition filed by plaintiff, Yankee Atomic Electric Company ("Yankee Atomic"), to the Government's motion to preclude the presentation at trial of Dr. Graves' speculative theory of exchanges in support of Yankee Atomic's claim for damages.[1] For the reasons explained in our opening brief and discussed below, Dr. Graves' model cannot provide a basis for the award of damages to Yankee Atomic, rendering Dr. Graves' testimony at trial unnecessary and a waste of the Court's time and resources.

SUMMARY OF THE ARGUMENT

The Government moved to preclude the testimony at trial of Dr. Graves concerning his model because it cannot meet the requirements of reasonable certainty imposed upon all damages claims, including those presented by Yankee Atomic, Connecticut Yankee, and Maine Yankee.

---

[1] The Government requests that this reply also be deemed applicable in Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C ("Connecticut Yankee"), and Maine Yankee Atomic Power Co. v. United States, No. 98-474C ("Maine Yankee").

In its attempt to defeat the Government's motion, Yankee Atomic asserts that Dr. Graves' model plays a "limited role" in Yankee Atomic's damages case and that the test of reasonable certainty does not apply to Dr. Graves' model or any part of Yankee Atomic's claim for damages. Instead, Yankee Atomic asserts that, to recover its claimed damages, it must only provide the Court with a "reasonable approximation" of its damages to be awarded the costs that it has incurred to store its fuel. With this argument, Yankee Atomic seeks to sidestep the requirement to establish causation or the fact of injury. Although the Court has ruled that the Government partially breached the contract, Yankee Atomic still must establish that this breach caused damage and then must establish the amount of damage. Dr. Graves' model, as the only evidence of causation that Yankee Atomic apparently plans to provide, does not satisfy the test of reasonable certainty and, therefore, cannot be used to establish that all of the claimed damages are a result of the breach. Moreover, because Yankee Atomic apparently does not plan to offer any evidence other than Dr. Graves' model to establish causation, Yankee Atomic's case for damages must fail for lack of proof.

## ARGUMENT

### I. YANKEE ATOMIC MUST DEMONSTRATE THAT ITS CLAIMED DAMAGES ARE A DIRECT RESULT OF THE GOVERNMENT'S PARTIAL BREACH OF THE STANDARD CONTRACT

Yankee Atomic states, in its opposition brief, that it intends to establish its damages with "testimony and documentary evidence [which set out] the various expenditures Yankee Atomic has made to store its spent fuel due to the Government's breach." Yankee Atomic's Opposition To The Government's Motion In Limine To Preclude Frank C. Graves Expert Testimony Regarding Exchanges ("Pl. Br.") at 2. Yankee Atomic plans to present evidence that "the

Government would have removed its spent fuel promptly after 1998, therefore obviating the need for additional spent fuel management expenses that constitute the bulk of Yankee Atomic's damages." Pl. Br. at 3. Apparently, other than through that evidence, Yankee Atomic does not intend to establish at trial the schedule by which DOE would have accepted waste from the nuclear utility industry if performance of the Standard Contract had begun in 1998. Id. Instead, Yankee Atomic relies upon Dr. Graves' model to establish that, regardless of the schedule pursuant to which DOE would accept spent nuclear fuel ("SNF") from the various contract holders or the rate of overall SNF acceptance, DOE would have accepted Yankee Atomic's spent fuel by 1999. Appendix to Yankee Atomic's Opposition To The Government's Motion In Limine To Preclude Frank C. Graves Expert Testimony Regarding Exchanges ("Pl. App.") at 3.[2]

To establish that the expenses Yankee Atomic has incurred are damages attributable to the Government's partial breach of contract, Yankee Atomic must "establish by clear proof that it was injured as a direct result of the alleged breach." Boyajian v. United States, 191 Ct. Cl. 233, 423 F.2d 1231, 1235 (1970). Yankee Atomic must establish that these costs "would not have been incurred, but for" the partial breach of contract. Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) (emphasis added) (quoting Osage Oil & Refining Co. v. Chandler, 287 F. 848, 852 (2d Cir. 1923)). "[T]he claimant bears the burden of proving the fact of loss with certainty, as well as the burden of proving the amount of loss with sufficient certainty so that the

[2] Pursuant to the results of Dr. Graves' model, Connecticut Yankee would have delivered all of its spent fuel to DOE by 2001 and Maine Yankee would have delivered all of its fuel by 2002.

determination of the amount of damages will be more than mere speculation." Willems Indus., Inc. v. United States, 295 F.2d 822, 831 (1961).

In its opposition, Yankee Atomic lists the evidence it will present to demonstrate that "DOE would have removed Yankee Atomic's spent fuel without delay." Pl. Br. at 4. The first "evidence" is the provision of the contract which provides that priority may be granted to shutdown reactors. Id. (citing to Art. VI.B.1.(b)). As explained in our pending motion for summary judgment regarding this provision, the provision provides only that priority may be granted, not that it would be granted, despite Yankee Atomic's continued insistence to the contrary. Given that priority was never granted, this provision does not establish that "DOE would have removed Yankee Atomic's spent fuel without delay" and provide the necessary causal link.

Yankee Atomic then states that it will present evidence to show that Yankee Atomic "would have purchased the rights to have DOE remove its spent fuel promptly after 1998" through the exchange of approved delivery commitment schedules ("DCSs"). Pl. Br. at 4. Yankee Atomic describes the purported testimony of Messrs. Mills, Bartlett, and Stuart to support this showing. Id. at 4-5. However, the testimony described, at best, explains that exchanges in some form could have occurred if DOE had begun performance of the Standard Contract in 1998. The testimony of these individuals, as described, does not establish that exchanges would have occurred to allow Yankee Atomic to deliver all of its spent fuel by 1999 had DOE begun performance in 1998 or would have occurred in a particular manner. Moreover, as noted in the Government's motion in limine, there is no evidence that exchanges occurred or were even discussed between contract holders prior to the Government's partial breach of

contract. The only evidence that Yankee Atomic has regarding the manner in which exchanges would have allowed Yankee Atomic to "promptly" deliver its fuel to DOE is the model and opinion of Dr. Graves. However, for the reasons explained in the Government's motion in limine and explained further below, Dr. Graves' model does not establish that exchanges would have occurred with sufficient certainty to allow a damages award upon this basis.

Yankee Atomic devotes several pages to its assertion that the test of reasonable certainty does not apply to its damages model. Instead, Yankee Atomic claims, it need only provide sufficient evidence for the Court to make a "fair and reasonable approximation" of its damages. Pl. Br. at 5, 6-9. However, all of the cases that Yankee Atomic cites as support for this proposition address the proof required to establish the amount of damage, not the fact of damage. These cases do not support the proposition that Yankee Atomic's damages claim and Dr. Graves' model as support for that claim are not subject to the requirements of reasonable certainty.

In Locke v. United States, 151 Ct. Cl. 262, 283 F.2d 521 (1960), the precedent from which all of the cases cited by Yankee Atomic depend, the Court found that the contract at issue had been improperly terminated for default and that there was a "reasonable probability" that the contractor would have obtained business "but for" the Government's termination. Only after determining that injury in fact had been established did the Court decree that the amount of damages could be "approximated." Id. at 524. "If a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery." Id. at 524; see Ace-Federal Reporters, Inc. v. Barram, 226 F.3d 1329, 1333 (Fed. Cir. 2000). Similarly, in Energy Capital Corp. v. United States, 302 F.3d 1314 (Fed. Cir. 2002), the Court reiterated the requirement that plaintiff "demonstrate its entitlement to lost profits by showing . . . 1) causation,

2) foreseeability, and 3) reasonable certainty." The Federal Circuit upheld the award of lost profits upon finding that the claimed lost profits "flowed directly from the Government's breach." Id. at 1328; see Bluebonnet Savings Bank, FSB v. United States, 266 F.3d 1348, 1355 (Fed. Cir. 2001) ("reasonable approximation" is sufficient only once "responsibility for damage is clear."); Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (clearly applying "approximation" standard to amount of damage); Confederated Tribes of the Warm Springs Reservation of Oregon v. United States, 248 F.3d 1365, 1372 (Fed. Cir. 2001) (applying principle regarding approximation for amount of damage in case of a breach of fiduciary trust).

Contrary to Yankee Atomic's citation, none of these cases support the proposition that the test of "reasonable certainty" does not apply to Yankee Atomic's damages claim. Instead, the cases firmly support the requirement that Yankee Atomic must first establish the fact of injury, before any consideration is given to any uncertainties that may exist with regard to the amount of damage. Chain Belt Co. v. United States, 127 Ct. Cl. 38, 59, 115 F. Supp. 701, 714 (1953) ("if the fact of damages, that is, lost profits, is certain, uncertainty as to the precise amount lost is not necessarily fatal to recovery.").

Dr. Graves' model is not the method by which Yankee Atomic seeks to quantify its damages. As Yankee Atomic acknowledges in footnote three of its response brief, the only monetary amounts that result from Dr. Graves' model, the amounts that each of the Yankees allegedly would have paid to or received from other contract holders to obtain earlier acceptance allocations, are not being claimed as damages. Mr. Wise's opinion serves the role of quantifying Yankee Atomic's damages. Pl. App. 48-60. However, Mr. Wise's opinion is based upon the date certain by which Yankee Atomic would have cleared its spent fuel pool formulated by Dr.

Graves. None of the other evidence cited by Yankee Atomic can provide this date certain. However, because of the problems inherent in Dr. Graves' model, the model provides a hypothetical scenario, not a date certain, and must be disregarded.

## II. DR. GRAVE'S MODEL FAILS THE TEST OF REASONABLE CERTAINTY

### A. Dr. Graves' Failure To Model Actual Exchanges Between Contract Holders Renders The Model Speculative

Dr. Graves' model is the means by which Yankee Atomic seeks to establish that, had DOE begun acceptance in 1998, DOE would have cleared its pool by 1999 and saved Yankee Atomic the costs that it seeks as damages in this litigation. Contrary to Yankee Atomic's assertion that Dr. Graves' model "is simply part of Yankee Atomic's showing," Dr. Graves' model is the entirety of Yankee Atomic's evidence regarding "when DOE would have completed removing Yankee Atomic's spent fuel absent the breach." Pl. Br. at 8. Because Dr. Graves' model is the method by which Yankee Atomic hopes to establish the fact of injury, it is subject to the test of reasonable certainty.

Although Yankee Atomic asserts that, at trial, it can present evidence that it would have exchanged approved delivery commitment schedules "to have DOE remove its spent fuel promptly after 1998," Pl. Br. at 4, Yankee Atomic also admits that Dr. Graves did not model bilateral exchanges of approved delivery commitment schedules in his model. Specifically, Dr. Graves did not identify which utilities would have held approved DCSs in amounts equal to those held by each of the Yankees and model which of these utilities would have traded with each of the Yankees to give the Yankees sufficient acceptance allocations to clear their pools on an accelerated basis. Yankee Atomic cannot present a valid damages model that does not follow

the requirements of the contract. See Bluebonnet Savings, 266 F.3d at 1356 (citing Ace-Federal Reporters, Inc. v. Barram, 226 F.3d 1329, 1333 (Fed. Cir. 2000) (determination of appropriate remedy must be tied to the "content" of the contract)). As Yankee Atomic notes in the conclusion to its brief, "the exchange provision is an important part of the parties' contract" and should not be "ignored" in the determination of damages. Pl. Br. at 18. However, Dr. Graves, in modeling the theory of exchanges upon which Yankee Atomic's claim is based, did ignore the requirements of the contract. A damages award that seeks to place Yankee Atomic in the place it would have occupied must be tailored to the requirements of the contract.

Yankee Atomic claims that it is not required to model specific exchanges in presenting its case. As support, Yankee Atomic again cites Locke, Ace Federal, and Energy Capital. As explained above, the precedents cited by Yankee Atomic are concerned with the determination of the amount of damage, not the fact of damage. If Yankee Atomic was able to prove that exchanges would have happened in a particular manner and was seeking damages based upon the value of the exchanges themselves, these precedents might be helpful. However, Dr. Graves' model is not being used to quantify the damages owed to Yankee Atomic. Instead, Dr. Graves' model is being used to establish that, "but for" the breach, Yankee Atomic would have delivered all of its fuel to DOE by 1999. Yankee Atomic must provide evidence the specific exchange that would have occurred to satisfy the reasonable certainty requirement.

Yankee Atomic also says that "the [G]overnment also wrongly seeks to apply standards from the Winstar cases to Mr. Graves' model," arguing that the Winstar cases are distinguishable because, often, they rely solely upon the experts' opinion and nothing more. Pl. Br. at 8. As discussed above, Yankee Atomic provides no other evidence that exchanges "would have"

occurred other than Dr. Graves' model, relying solely upon Dr. Graves' model to establish its entitlement to damages. For this reason, the precedents and guidance provided by the Winstar cases such as Fifth Third Bank of Western Ohio v. United States, 55 Fed. Cl. 223 (2003) and Southern National Corp. v. United States, 57 Fed. Cl. 294 (2003), in which the experts' models were the only support for the plaintiffs' damages claims, are directly applicable to the Court's consideration of Mr. Graves' model.

Yankee Atomic also asserts that the Government has "misread" the decisions in Fifth Third and Southern National. However, as Yankee Atomic notes, the experts' models in those cases were disregarded for the failure to identify "specific activities, opportunities or investments" that the bank would have pursued that would have resulted in profits for the bank. Pl. Br. at 13. Because the expert failed to model specific transactions or acquisitions, the Court could not be satisfied that the profits claimed were reasonably certain. Fifth Third, 55 Fed. Cl. at 241; Southern National, 57 Fed. Cl. at 305-06. Dr. Graves' model fails to identify the specific contract holders with which Yankee Atomic would have exchanged allocations to allow it to clear its pool by 1999. Yankee Atomic cannot establish that it would have, through exchanges, delivered all of its fuel to DOE by 1999.

Yankee Atomic misapprehends the problem created by Dr. Graves' failure to model specific exchanges and the inability to consider non-economic factors, such as political, regulatory, or technical issues.[3] Pursuant to Dr. Graves' model, Yankee Atomic is asking the

---

[3] In footnote six to its opposition brief, Yankee Atomic asserts that Dr. Graves' deposition testimony (cited on page 14 of the Government's brief and contained at Pl. App. 164-67) does not support the Government's assertion that there are non-economic factors to be considered in whether any given utility would have exchanged DCSs with Yankee Atomic. In the deposition pages cited, Dr. Graves acknowledged that there were "logistical problems" that

Court to award it damages based upon a theory that it would have been able to convince several other unidentified contract holders to exchange their early acceptance allocations, regardless of other pressures that may have existed for those contract holders to begin to deliver SNF to DOE. Without identification of which contract holders these would have been, Yankee Atomic is without any ability to establish that there would have been sufficient contract holders that would have been willing to deliver their spent fuel to DOE at a later date. The failure to identify specific exchanges also eliminates the Court's ability to consider whether DOE would have been able to approve all of the exchanges necessary to allow Yankee Atomic to clear its pool by 1999. As the Federal Circuit explained in Wells Fargo Bank, N.A. v. United States,

> [b]ut if [the lost profits/damages] are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.

88 F.3d 1012, 1022-23 (Fed. Cir. 1996). Yankee Atomic's claimed damages flow from Dr. Graves' theory of exchanges, which would have been "independent and collateral undertakings" with other contract holders. Because Dr. Graves failed to identify the contract holders with which Yankee Atomic would have exchanged DCSs, the "exchanges" are too uncertain and remote to be considered as part of the damages to be awarded by the Court.

Yankee Atomic also argues that the Government is seeking to reargue its motion to consolidate all of the SNF cases for the purposes of determining a common schedule. As the

---

individual utilities might face, but that he did not think these were significant. The larger point is that Dr. Graves' model does not allow for a determination of which utilities might face these problems because we do not know with whom Yankee Atomic would have exchanged allocations.

Court is aware, the Government argued that consolidation for the purpose of determining a common schedule was necessary, in part, to avoid the imposition of inconsistent obligations upon the Government as the result of inconsistent rulings on the issue of schedule. The fact that the Court has denied the Government's motion is even more reason to be wary of arguments in which individual judges could be asked to award damages based upon theories of accelerated acceptance in the "but for" world. Because none of the Yankee plaintiffs can identify the contract holder or contract holders with which it would have exchanged acceptance allocations, it cannot be awarded damages based upon Dr. Graves' theory. To award damages based upon this theory would subject the Government to the likelihood of being required to pay different contract holders for the same allocations.

Finally, Yankee Atomic fails to see the significance of Dr. Graves' failure to consider the presence of failed fuel or GTCC at any of the Yankees' plants. As we explained in our opening brief, the presence of failed fuel or GTCC eliminates Yankee Atomic's ability to clear its pool "promptly" through exchanges.[4] Dr. Graves' failure to consider this factor in modeling Yankee

[4] In footnote seven of its response brief, Yankee Atomic correctly states that the deposition pages cited do not support the Government's assertion that Dr. Graves did not consider the delayed acceptance of Greater-Than-Class-C radioactive waste or failed fuel in his model. A. 35 (deposition pages pages 164-167). The support for that assertion is found on page 34 of the Government's appendix to its opening brief. Yankee Atomic fails to address the substance of this assertion.

In footnote eight of its response brief, Yankee Atomic asserts that Dr. Graves' cited deposition testimony does not support the contention that technical issues would have changed a willingness to exchange allocations. However, in the pages cited, Dr. Graves acknowledged that a technical issue, such as the requirement to hold SNF longer to allow it to cool sufficiently, would affect the ability of a utility to clear its pool and its desire to sell its allocations. A. 44.

Atomic's willingness or ability to exchange further demonstrates that the model lacks a factual predicate.

B. Dr. Graves' Assumptions Regarding Ramp-Up Rate And Utility Storage Costs Also Renders The Model Speculative

Once again, in response to the Government's criticism of Dr. Graves' choice of "ramp-up rate," Yankee Atomic argues that the ramp-up rate chosen by Dr. Graves is acceptable because it need only provide a "fair and reasonable approximation" of its damages for the Court. As stated above, Yankee Atomic misapplies the precedent cited. Yankee Atomic must establish that the ramp up rate used by Dr. Graves is the ramp-up rate that DOE was required to use if performance had begun in 1998. This underlying assumption is critical because of the effect upon the results of Dr. Graves' model – if a lower ramp-up rate is used, the dates by which each of the Yankees would clear their pools changes. However, Yankee Atomic cannot establish that the ramp-up rate chosen by Dr. Graves is the one that DOE was required to use or even theoretically would have used. The ramp up rate was for an interim storage facility that was never approved and does not match the ramp-up rates found in any other planning documents. As Yankee Atomic notes, in Castle v. United States, 48 Fed. Cl. 187 (2000), aff'd in part, rev'd in part and remanded in part, 301 F.3d 1328 (2002), the expert's model was rejected in that case because it was based upon assumptions that were contrary to facts in the record. Pl. Br. at 9. "A claim whose basic structural components lack such factual foundation is simply speculation." Castle, 48 Fed. Cl. at 206. Dr. Graves' choice of ramp-up rate renders his model flawed.

Yankee Atomic also states that Dr. Graves' choice of ramp-up rate is supported by the opinion of Dr. Bartlett, who stated in his report that "DOE should not and would not have needed a substantial ramp up rate to achieve a reasonably efficient, full-performance level." Pl. Br. at 15. However, in deposition, Dr. Bartlett said that a ramp-up over three, five, seven or ten years was "feasible." Appendix to Defendant's Motion In Limine To Exclude The Expert Report And Testimony Of John Bartlett, dated February 19, 2004, at 38-39. Dr. Bartlett's opinion does not establish that the ramp-up rate that Dr. Graves assumed for the purposes of his model was the rate that DOE would have followed if it had begun performance in 1998 or, more importantly, that DOE was required to follow.

Yankee Atomic does not dispute that Dr. Graves assumed the same costs of storage for all contract holders in constructing his model. This assumption stands in contrast to the fact that just the storage costs for the Yankees differ. Again, this assumption renders Dr. Graves' model speculative. Castle, 48 Fed. Cl. at 206. Pursuant to the reasoning in Castle, the Court should strike the model.

## III. WITHOUT DR. GRAVES' MODEL, YANKEE ATOMIC CAN PROVIDE NO EVIDENCE REGARDING THE SCHEDULE AGAINST WHICH THE COURT SHOULD MEASURE DAMAGES

### A. Absent Dr. Graves' Model, Yankee Atomic Has No Evidence Regarding The Date By Which DOE Was Required To Have Accepted All Of Its SNF

As explained by Yankee Atomic in its opposition, Yankee Atomic does not plan "to establish precisely how much spent fuel DOE would have removed from utilities each year starting in 1998 or exactly the order in which DOE would accept such waste." Pl. Br. at 3. Instead, Yankee Atomic asks the Court to accept Dr. Graves' model and set the date by which

Yankee Atomic's pool would have been cleared at 1999 (and 2001 for Connecticut Yankee and 2002 for Maine Yankee). As explained above, Dr. Graves' model cannot provide the basis for a damages award because of the speculative nature of the model. Amazingly, Yankee Atomic has provided no alternative evidence of the schedule of acceptance that DOE was obligated to satisfy or even would have followed to accept Yankee Atomic's SNF and, therefore, no schedule against which to measure damages.

As explained above, the testimony of Messrs. Mills and Bartlett, additional witnesses proposed by Yankee Atomic, can only establish that exchanges could have happened, not that they would have happened, which is what the Court must find to award damages based upon Dr. Graves' theory. Moreover, as explained in the priority for shutdown reactors briefing, priority may be accorded shutdown reactors. No priority has been accorded or had been accorded prior to the breach. Accordingly, this priority does not provide a basis for a theory of accelerated receipt of Yankee Atomic's SNF. Absent other evidence regarding the date and schedule by which DOE would have accepted Yankee Atomic's SNF, Yankee Atomic has no evidence to establish the causal link between DOE's partial breach of the Standard Contract and the expenses that Yankee Atomic has incurred and seeks as damages.

Yankee Atomic provides no response to our observation that Yankee Atomic cannot provide evidence that exchanges would have happened absent the breach, arguing only that "the magnitude of the Government's breach has led to an absence of actual experience." Pl. Br. at 8. However, as discussed above, Yankee Atomic must prove the causal link between the breach and its claim for damages based upon its theory of exchanges. Yankee Atomic's attempt to avoid this requirement by claiming that exchanges were precluded by the breach seeks to vitiate the

requirement to prove causation. As discussed in the our motion in limine, Yankee Atomic evaluated as early as 1992 the possibility of exchanges with its fellow New England utilities. A. 70-71.[5] Nothing came of these efforts. Yankee Atomic cannot demonstrate that exchanges would have happened, and would have happened in such a manner to allow Yankee Atomic to empty its wet pool by 1999, absent the breach.

### B. Dr. Graves' Opinions Upon A "Reasonable" Acceptance Rate Are Unnecessary And Should Not Be Heard

Yankee Atomic also explains that Dr. Graves will testify regarding a "reasonable rate" of acceptance, explaining that a rate of 3,000 MTU per year "would generally have been efficient and would have enabled the avoidance of most of the utility costs noted above." Pl. Br. at 4. However, a determination regarding acceptance rate is not necessary for Dr. Graves' model and is not necessary because of Yankee Atomic's choice not to present evidence regarding the schedule by which DOE would have accepted SNF from contract holders beginning in 1998. Moreover, even if Yankee Atomic presented evidence at trial that, at the time of contract formation, the parties had an understanding that the annual acceptance rate would be "efficient," Yankee Atomic does not plan to present evidence regarding the schedule that DOE would have followed or was otherwise obligated to follow. Therefore, Dr. Graves' testimony on this point is superfluous.

Yankee Atomic explains, in the beginning of its opposition brief, that in addition to opining upon the date by which DOE would have accepted all of Yankee Atomic's spent fuel, based upon the results of his economic model, Dr. Graves will also testify that a steady-state

[5] "A. __." refers to the appendix to the Government's opening brief.

acceptance rate of 3,000 MTU is "reasonable." However, the determination of the steady-state rate is not necessary for Dr. Graves' opinion. As explained in our opening brief, Dr. Graves' model results in the acceptance of all of the Yankees' spent fuel by the fourth year of performance, before DOE would have reached a steady-state rate of acceptance. As also explained above, Dr. Graves simply adopted the proposed ramp-up rates for a system that DOE was never authorized to construct.

Moreover, the determination of a "reasonable term" to be supplied by the Court is extraneous to Yankee Atomic's theory of damages. As clearly stated in its opposition brief, Yankee Atomic will not seek to present evidence regarding the schedule that DOE was obligated to follow or otherwise would have followed to accept SNF from contract holders if performance had begun in 1998. If Yankee Atomic does not plan to establish the schedule by which DOE would have accepted SNF from Yankee Atomic and all of the other contract holders beginning in 1998, absent a theory of exchanges, the Court will not need to determine the rate of acceptance upon which to build such a schedule. Accordingly, Dr. Graves' testimony on this point is unnecessary.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Government's opening brief, the Government respectfully requests that the Court find that Dr. Graves' theory and model of exchanges is too speculative to support the award of damages and preclude the presentation of evidence at trial regarding this theory.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s David M. Cohen
DAVID M. COHEN
Director

/s Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 14, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of May 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE PRESENTATION OF DR. GRAVES' SPECULATIVE THEORY OF 'EXCHANGES' AT TRIAL IN SUPPORT OF YANKEE ATOMIC'S CLAIM FOR DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan