IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING PLAINTIFF'S REQUEST FOR PRE-BREACH DAMAGES AND ALTERNATIVE RESTITUTION CLAIM

Defendant, the United States, respectfully submits this reply to plaintiff's response to defendant's motion *in limine* regarding plaintiff's request to recover pre-breach damages and the requests of Connecticut Yankee Atomic Power Company and Maine Yankee Atomic Power Company to recover restitution damages.[1]

[1] Defendant respectfully requests that the Court deem this reply brief to apply to Connecticut Yankee Atomic Power Company v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Company v. United States, No. 98-474C (Fed. Cl.) (collectively, "the Yankees"). The Government filed its original motions *in limine* regarding pre-breach damages in this case, the Connecticut Yankee case, and the Maine Yankee case. Although the motion *in limine* filed in this case only sought relief regarding the pre-breach damages claim, the motions *in limine* filed in Connecticut Yankee and Maine Yankee also sought relief relating to those two plaintiffs' restitution claims. (The plaintiff in this case does not seek restitution.) The three Yankee plaintiffs all filed a single response brief addressing both the pre-breach damages claim and the restitution claim. Accordingly, we are submitting a single reply brief that replies to the Yankees' single response brief.

## ARGUMENT

### I. THE YANKEES' PRE-BREACH DAMAGES CLAIMS ARE LEGALLY UNSUPPORTED

The Government previously established in its motion *in limine* filed on February 19, 2004, that, because there is no cause of action for anticipatory repudiation in a partial breach case, damages allegedly incurred by the Yankees prior to the partial breach of the Standard Contract by the Department of Energy ("DOE") are not recoverable as a matter of law. See Def. Mtn. 11-16. In its responses to the Government's briefs concerning pre-breach damages, the Yankees have failed to identify a single case that supports the concept of anticipatory repudiation in a partial breach case. Instead, the Yankees' response is limited to exceedingly expansive interpretations of case law and simultaneous attempts to blur the distinction between the base availability of pre-breach damages as a matter of law and concepts of reasonable mitigation that arise only after it is determined that pre-breach damages are available.

The Yankees disclaim that they are basing their pre-breach claims upon an anticipatory repudiation and, instead, are relying only upon their right to recover mitigation costs. See PBr 7-10; see also PBr 3 ("Yankee has not sued for anticipatory repudiation . . ."). However, as established in the same comments to the Restatement (Second) of Contracts that the Yankees have cited in their brief, "[u]nder the doctrine of mitigation the injury party is expected to mitigate damages 'within a reasonable time *after* he learns of the *breach*.'" Restatement (Second) of Contracts § 350 cmt. f (1981) (emphasis added), cited at PBr 3; see "Defendant's Motion *In Limine* To Exclude Testimony And Evidence Regarding Plaintiff's Request For Pre-Breach

Damages," dated Feb. 19, 2004 (citing and discussing cases).[2] Absent an anticipatory repudiation sometime prior to January 31, 1998, there is no "breach" about which the Yankees could learn. It appears that the Yankees believe that they can simply avoid the fact that no anticipatory "partial" repudiation legal doctrine exists by asserting that they can predict a future breach and begin mitigating their damages before any breach ever occurs.

However, the Yankees have the burden of establishing that the breach in question directly and proximately "caused" the damages that the Yankees seek to recover. See Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 743 n.3 (1980) (damages are recoverable if "they are directly and proximately caused by the contract breach"); Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) ("the cause must produce the effect inevitably and naturally, not possibly nor even probably") (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)); Spartan Aircraft Co. v. United States, 120 Ct. Cl. 327, 100 F. Supp. 171, 173 (1951) (burden on plaintiff to prove that breach "caused" damage). That is, "[t]he party complaining must show, not only that he has suffered the loss, but also that it would not have been incurred, but for the wrongful act of his adversary." Fawick, 149 Ct. Cl. at 637 (1960) (quoting Osage Oil & Refining Co. v. Chandler,

---

[2] The Yankees also quote from another comment in section 350 of the Restatement (Second) of Contracts, which states that, "once a party has reason to know that performance by the other party will not be forthcoming . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Restatement (Second) of Contracts § 350 cmt. b (1981), quoted at PBr. 4. The Yankees rely upon this assertion to support their contention that they may recover pre-breach mitigation costs. The Yankees are taking this sentence from the Restatement out of context, omitting the quotation's reference to four illustrations of the concept that comment b is intended to identify. In each of the four illustrations, one contracting party has already breached the contract by anticipatory repudiation or by an affirmative breach of the contract terms when the non-breaching party begins mitigation or fails to mitigate. See Restatement (Second) of Contracts § 350 cmt. b, illus. 1, 2, 3, & 4 (1981). The Yankees' quotation of this out-of-context sentence does not support their argument.

287 F. 848, 852 (2d Cir. 1923)). Here, costs incurred prior to an actual breach are not incurred solely as a consequence of , or naturally and inevitably from, the breach. At best, such "mitigation" costs might be incurred in anticipation of the possibility that the other party might breach the contract. These facts do not establish the "causation" element that the Yankees are required to prove.

In fact, and as we discussed in our motion *in limine*, this Court's predecessor, the Court of Claims, has expressly rejected the argument that a plaintiff may obtain mitigation costs that actually precede the actual breach of contract. See Middleton v. United States, 175 Ct. Cl. 786, 792 (1966); Def. Mtn. 17-18. The Yankees' only attempt to distinguish the precedential Middleton decision from the facts of this case is by asserting that the Middleton case "is not even a contract case" and that it instead involved "a dispute of the type the Federal Circuit has held is not founded in contract, but instead is a creature of administrative law." PBr 8. Yet, the Yankees fail to mention that the text of the Middleton decision expressly and definitively relied upon contract doctrines in deciding the Middleton case, finding that, under the law of contract, a party cannot obtain damages for mitigation that precede the actual breach of contract at issue:

prior to the breach:

> [I]t should also be noted that a defendant's right to rely upon this 'duty to mitigate' does not depend upon express statutory authorization, rather, **its functioning is as integrally related to the law of contracts as the notion of consideration itself**. However, neither of the parties here may insist upon an expansion of this concept so as to encompass items which relate to a period *antedating* defendant's breach. Both the defendant's right to a setoff and the plaintiff's duty to mitigate are defined in terms of the same fixed time period; like opposites of the same coin, they are inextricably bound together. Thus, plaintiff could no more seek to reduce defendant's setoff by alleging expenses incurred prior to his

> discharge, than defendant could enlarge his setoff by seeking the inclusion of income which plaintiff earned prior to his erroneous dismissal. . . . It follows, therefore, that all expenses which arose prior to plaintiff's discharge that he seeks to include, may not be considered within the framework of the setoff question.

Id. at 792 (italics in original; underlining and boldface type added). To the extent that the Yankees claim that costs incurred prior to DOE's partial breach are recoverable under principles of mitigation, the Yankees' arguments are in direct conflict with the precedential decision in Middleton. The Yankees' efforts to assert that the Middleton Court did not decide contract principles in issuing that decision are meritless and cannot resurrect their claims for pre-breach damages.

The Yankees' primary response to the Government's argument is by reference to the Court of Claims' decision in Chain Belt Co. v. United States, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953). The Yankees describe that decision as awarding pre-breach mitigation damages resulting from the plaintiff's removal of machinery left upon its property by the Government. However, the Chain Belt decision does not establish the Yankees' right to recover pre-breach damages. First, contrary to the Yankees' assertion, the Chain Belt case involved a total, not a partial, breach of contract. See Chain Belt, 127 Ct. Cl. at 45, 115 F. Supp. at 706-07 (pursuant to agreement to sell property, machinery required to be removed by a date certain, December 10, 1946). Although the Yankees assert that the facts in Chain Belt could not involve a total breach because the contract there had already been partially performed at the time of the breach, see PBr 5, the fact that the contract was already partially performed does not preclude a total breach claim. "A claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance." Restatement (Second) of Contracts § 236(1), at 214 (1981) (emphasis added).

Under the Yankees' theory, virtually every contract breach case would involve only a partial breach, given that few contracts are totally breached before contract performance ever begins. The Chain Belt case simply does not support the existence of anticipatory repudiation or pre-breach "mitigation" in a partial breach case.

Second, the Chain Belt decision does not support an award of pre-breach mitigation damages, given that it awarded mitigation costs only after an anticipatory repudiation of the contract at issue. While the Court of Claims never used the term "repudiation" in its order, it found, as a matter of fact, that, when the plaintiff began the removal of the Government's machinery in November 1946, the Government was physically unable to remove the equipment by December 10, 1946, a process that would take the "better part of . . . 90 days" to complete. Chain Belt, 127 Ct. Cl. at 43, 115 F. Supp. at 705; see id. at 56, 115 F. Supp. at 713 ("By November 1946, it was apparent that under no circumstances could defendant move out all its machinery by December 10, as provided in the contract."). The Court also determined that, "[w]hile there was not specific permission granted by defendant to plaintiff to do this work, defendant knew that it was being done and did not object." Id. at 57, 115 F. Supp. at 713. As a result, the contract was necessarily repudiated when the plaintiff commenced mitigation efforts.

In any event, even if the Chain Belt decision could stand for the proposition that a plaintiff could potentially recover pre-breach mitigation costs, the pre-breach costs in that case were so closely tied in time to the actual breach, and so minor in nature, that it is not comparable to the Yankees' claimed costs. Specifically, any costs that the plaintiff in Chain Belt sought to recover were incurred no more than a month prior to the December 10, 1946 breach, when the breach was inevitable and impossible for the Government to avoid. Id. at 56-57, 115 F. Supp. at

713-14. Further, those costs were only an extremely small percentage of the total mitigation costs incurred by plaintiff in connection with the removal of the machinery, as "the bulk of [the $2,191.52 in work] was done subsequent to [December 10, 1946]." Id. at 57, 115 F. Supp. at 713. In awarding the mitigation damages in total, the Court noted that the pre-breach damages were nominal and that the record did not show precisely what work was performed prior to December 10, 1946, and what work was performed after that date. Id. In this case, the Yankees are seeking to recover millions of dollars in damages incurred between years before the actual partial breach, including reracking work that was completed long before January 31, 1998. Even if the Yankees have properly interpreted the Chain Belt decision, it does not support recovery of pre-breach damages incurred before it was impossible for the Government to avoid the future breach. Accordingly, the Yankees' claims for pre-breach damages should be excluded from the trial of this matter.

## II. THE YANKEES' RESTITUTION CLAIM SHOULD BE REJECTED

In response to the Government's arguments that the Yankees cannot recover restitution damages in this case, the Yankees do not, and cannot, contest the Government's argument that they may not recover restitution damages for a partial breach of contract. As the United States Court of Appeals for the Federal Circuit has recently reiterated, "the remedy of restitution is available only if the breaching party's conduct amounts to a total breach of its contractual duties." Hansen Bancorp, Inc. v. United States, Nos. 03-5029, -5061, 2004 WL 1048186, at *5 (Fed. Cir. May 11, 2004) (emphasis in original); see id. at *8 ("relief in restitution is 'available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach'" (quoting Restatement (Second) of Contracts § 373)). As the Federal Circuit

held, "[t]he goal of restitution, to return the parties to their precise state before the contract, is incompatible with the situation of partial breach . . . ." Id. at *17 n. 10 (emphasis added).

Conceding that they cannot recover restitution damages for a partial breach, the Yankees contend only that they are entitled to maintain an alternative theory of recovery and that they have not waived any claim for damages based upon a total breach of contract. PBr 10-16. With regard to the Yankees' ability to allege alternative grounds of relief, in this particular case, this Court has already granted the Yankees' motion for partial summary judgment regarding liability under Count I, in which the Yankees allege that DOE's inaction is a "partial breach" of the Standard Contract. Yankee Atomic Elec. Co. v. United States, 42 Fed. Cl. 223, 225, 235-26 (1998), aff'd sub nom. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000). Given that this Court has already made the determinations regarding the existence of a partial breach of contract in this case, the Yankees' desire now to seek damages for a total breach of contract, despite the existence of the partial breach finding, is completely inconsistent with the law of this case, affirmed by the appellate court. Although, according to the Yankees' quotations from cited cases, a "plaintiff need not make a pretrial electron between" two conflicting theories on breach of contract and quantum meruit where "there is a genuine dispute as to the existence of a contract," PBr 11 (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996), this Court and the appellate court have eliminated the question of whether a partial breach exists in this case. Accordingly, given the procedural status of this litigation, the Yankees' more recent addition of a restitution claim, which by definition can only apply to a total breach of contract, should be rejected.

Further, in addition to the appellate court's ruling regarding a partial breach, it is too late for the Yankees to allege that, back in 1998 or earlier, the Department of Energy ("DOE") totally breached the Standard Contract for two reasons. First, none of the Yankees alleged that DOE had totally breached the Standard Contract when they filed their complaints in 1998, when the Court ruled upon the Yankees' partial summary judgment motions upon Count I of their complaints, or when they submitted their first set of pre-trial submissions in 1999. After the Yankees submitted their pre-trial submissions, the Government took extensive discovery and prepared its own pre-trial submissions. In 2003, five years after filing their complaints, Connecticut Yankee and Maine Yankee, in their "rebuttal" pre-trial submissions, identified for the first time their alleged "restitution" claims. Although the Yankees have identified a case in which a plaintiff was allowed to allege a contract rescission claim two years after first alleging a contract breach claim, the Yankees waited five years here. More importantly, it identified them only after it had completed its opening pre-trial submissions, the Government had taken extensive discovery and completed its opening pre-trial submissions, and it had completed its "rebuttal" discovery. Given that stage of proceedings, the Yankees' new allegations come too late.

Second, DOE would be prejudiced by the Yankees' delayed allegations of restitution based upon a total breach of contract at this point. Since 1998, the Yankees have consistently argued that DOE is obligated to accept their spent nuclear fuel and never identified any total breach claim until, at the earliest, their most recent round of pre-trial submissions, in which they alleged entitlement to restitution damages. The Court can take judicial notice of the fact that DOE has continued to spend extraordinary amounts of money since 1998 attempting to develop a

repository that would allow DOE to begin SNF acceptance under the Standard Contract. The source of those funds is the Nuclear Waste Fund ("NWF"), which includes the fee payments that the Yankees have paid pursuant to the requirements of their Standard Contracts. Had the Yankees and the other Standard Contract holders claimed a total breach of contract back in 1998, or even earlier based upon an anticipatory repudiation theory, the Government potentially could have eliminated or at least substantially reduced the need to spend these extraordinary amounts of money to develop the repository in the expeditious manner in which it is attempting to proceed. The Yankees' delay in identifying this allegation of total breach has severely prejudiced DOE and should not be permitted.

## CONCLUSION

For the foregoing reasons, as well as those discussed in our motion *in limine*, we respectfully request the Court to preclude plaintiff from presenting testimony and evidence at trial regarding damages for costs it incurred prior to DOE's breach of the Standard Contract on January 31, 1998, and that it preclude any testimony or evidence regarding Connecticut Yankee and Maine Yankee's restitution claims.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEFAN SHAIBANI
MARIAN E. SULLIVAN
HEIDE L. HERRMANN
KEVIN B. CRAWFORD
RUSSELL A. SHULTIS
R. ALAN MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 21, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 21st day of May 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING PLAINTIFF'S REQUEST FOR PRE-BREACH DAMAGES AND ALTERNATIVE RESTITUTION CLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.