IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow)<br>Filed electronically: May 28, 2004 |

# YANKEE ATOMIC'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING FOUR GOVERNMENT DAMAGES "SCENARIOS" THAT (1) HAVE NO RELEVANCE TO YANKEE ATOMIC'S DAMAGES CLAIM, AND (2) HAVE NO BASIS IN THE GOVERNMENT'S PROPOSED FINDINGS IN ITS PRETRIAL SUBMISSIONS

JERRY STOUCK
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (Fax)

Counsel for Plaintiff
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
SPRIGGS & HOLLINGSWORTH

Dated: May 28, 2004

TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 2

ARGUMENT ........ 3

1. The Government's "Scenario 1" Is Not Only Fanciful, But Contrary To The Court's Summary Judgment Rulings On The Rate Of Acceptance Issue. ........ 3

2. The Government's "Scenario 2" and "Scenario 3" Likewise Have No Basis In Fact Or In The Government's Proposed Findings of Fact. ........ 8

3. "Scenario 5" Is Also Not Based On Any Finding Of Fact Proposed By The Government, Much Less On Any Actual Fact. ........ 9

4. The Government's Position On Failed Fuel And GTCC Waste Multiplies The Complexity Of The Irrelevant Damages Scenarios It Seeks To Present ........ 12

CONCLUSION ........ 15

INDEX TO APPENDIX

| Description | Page |
|---|---|
| Transcript of Hearing on May 4, 1999 [Excerpts] | 1 |
| Deposition of Edward Abbott (May 10, 2004) [Excerpts] | 5 |
| Analysis of the Total System Life Cycle Cost of the Civilian Radioactive Waste Management Program, December 1998 [Excerpts] | 15 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) ............................. 5, 6, 11, 13

**Statutes and Rules**

Fed. R. Evid.401 ........................................................................................................... 3

Fed. R. Evid. 402 ........................................................................................................... 3

Fed. R. Evid. 403 ........................................................................................................... 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow)<br>Filed electronically: May 28, 2004 |

YANKEE ATOMIC'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING FOUR GOVERNMENT DAMAGES "SCENARIOS" THAT (1) HAVE NO RELEVANCE TO YANKEE ATOMIC'S DAMAGES CLAIM, AND (2) HAVE NO BASIS IN THE GOVERNMENT'S PROPOSED FINDINGS IN ITS PRETRIAL SUBMISSIONS

Plaintiff Yankee Atomic Electric Company ("Yankee Atomic") respectfully moves the Court, *in limine*, to preclude the government from offering at trial evidence regarding four damages "scenarios" discussed by the government's experts in their reports, because evidence regarding these four damages "scenarios" (1) has no relevance to Yankee Atomic's actual damages claim, and (2) has no basis in any factual finding proposed by the government in the "Amended Stipulation of Facts" included with the government's pretrial submissions. Yankee Atomic is presenting this motion in advance of trial because the evidence in question appears to be voluminous, and granting this motion will significantly streamline the trial and Yankee Atomic's trial preparation efforts.[1]

---

[1] This Motion should also be deemed applicable to *Connecticut Yankee v. United States*, No. 98-154C, and *Maine Yankee v. United States*, No. 98-474C.

INTRODUCTION

It goes without saying that the Pretrial Order that has governed proceedings in this case for five years is intended to narrow and focus issues for trial. Contrary to that purpose, expert reports that the government submitted in February 2004 with its final pretrial submissions introduce for the first time complex discussions of five different damages "scenarios," four of which have no relevance to Yankee Atomic's damages claim. Only one of the five damages "scenarios" discussed by the government's experts, Messrs. Abbott and Johnson – what their reports call "Scenario 4" – addresses Yankee Atomic's actual damages claim.

Moreover, the four irrelevant damages scenarios discussed by Messrs. Abbott and Johnson are premised on "assumptions" about the Department of Energy's contractual spent fuel removal schedule that have no basis in fact and, more importantly for present purposes, no basis in the government's proposed findings of fact (titled "Amended Stipulation of Facts") included with the government's paragraph 3(b) pretrial submissions. That is, the government has not even proposed that the Court find as a fact that the spent fuel removal "assumptions" that underlie the four irrelevant damages scenarios are factual, reasonable, or consistent with the intent of the contract parties or of the Nuclear Waste Policy Act ("NWPA"). Nor do Messrs. Abbott or Johnson offer any opinion on whether any of the multiple, differing spent fuel removal "assumptions" underlying the four irrelevant damages scenarios they discuss are factual, reasonable or consistent with the intent of the parties or the NWPA.

In short, the spent fuel removal assumptions underlying the government's four irrelevant damages scenarios are just that – "assumptions." Consistent with the purpose of the Pretrial Order to narrow the issues for trial, the government should not be permitted to introduce at trial evidence that is based upon assumptions the government does not even *propose* as facts.

Evidence concerning the government's four irrelevant damages "scenarios" is inconsequential to the determination of this action and, thus, has no proper place at trial. Fed. R. Evid. 401 and 402.

At bottom, the elaborate discussions of the four irrelevant damages scenarios in the reports of Messrs. Abbott and Johnson appear to be an attempt by the government to confuse the real issues and complicate the trial. The Court should not permit that. Fed. R. Evid. 403. Instead, the Court should enter an Order directing that evidence addressing the four irrelevant damages "scenarios" discussed by the government's witnesses will not be heard, thereby confirming what should be obvious – the only relevant damages scenario in this case is the actual damages claim submitted by Yankee Atomic.

ARGUMENT

1. The Government's "Scenario 1" Is Not Only Fanciful, But Contrary To The Court's Summary Judgment Rulings On The Rate Of Acceptance Issue.

The fanciful nature of the government's alternate damages scenarios is well illustrated by "Scenario 1" discussed by its witnesses. "Scenario 1" addresses the following hypothetical situation: "If it is assumed that in the non-breach world DOE [beginning in 1998] would have picked up spent fuel at the 1995 ACR rates, the last fuel assembly would be removed from [Yankee Atomic] in 2024. If it is further assumed that in the breach world, DOE [beginning in 2010] will accept spent fuel at the 1998 DOE TSLCC rates, the last fuel assembly would be removed from [Yankee Atomic] in 2020." Abbott Expert Report at 7-8 (footnote omitted).

This scenario is wholly imaginary, and should not be entertained at trial for several independent reasons. First, as noted at the outset, the government's proposed factual findings do not even allege that the assumptions underlying "Scenario 1" have any factual basis. The government does not ask the Court to find as a fact that, as this scenario assumes, in the "non-breach" world DOE would have picked up spent fuel at the rate set forth in the 1995 ACR

("Annual Capacity Report"). The government's proposed findings also do not allege that, as this scenario also assumes, in the "breach" world DOE eventually will pick up spent fuel at the rates set forth in the 1998 DOE TSLCC, a 1998 DOE document entitled "Analysis of the Total System Life Cycle Cost of the Civilian Radioactive Waste Management Program," *see* Abbott Expert Report at 2; Gov't Trial Exhibit DX619. In fact, the government's proposed findings do not ask the Court to make any findings *at all* regarding the actual removal schedule that DOE would have followed in the "non-breach" world if DOE had commenced performance in 1998 and otherwise performed as required by the contract with Yankee Atomic. Nor does the government request any factual findings *at all* about the actual schedule that DOE will follow in the "breach" world, if and when DOE ever starts removing spent fuel from Yankee Atomic's site. The government's experts do not offer opinions about DOE's schedule in the breach or the non-breach worlds, and these matters are also not addressed anywhere else in the government's pretrial submissions. In short, the government's "assumptions" about DOE's spent fuel removal schedule in both the breach and non-breach worlds – in Scenario 1 and in all the government's alternate damages scenarios – are entirely fanciful.[2]

Second, the assumption in "Scenario 1" regarding DOE's spent fuel removal schedule in the "non-breach" world – that DOE "would have picked up spent fuel at the 1995 ACR rates" – rests on legal arguments that have already been rejected by the Court in its ruling denying the government's partial summary judgment on the rate of acceptance issue. These same legal

---

[2] Both the 1995 ACR and the 1998 DOE TSLCC presume that individual fuel assemblies will be picked up by DOE on the basis of "oldest fuel first." Thus, although unstated by the government's experts, "Scenario 1" assumes – contrary to Yankee Atomic's pretrial submissions and evidence – that in the "non-breach" world, where DOE would be performing as intended beginning by 1998, there would be no swaps, no shipping campaigns, and no other effort to develop an efficient spent fuel pickup schedule. *See* further discussion below at pp. 9-12 in connection with "Scenario 5."

arguments underlie the one and only "factual" finding the government does propose about DOE's spent fuel removal schedule in the "non-breach" world, proposed government finding number 171. That proposed finding, however, does not address the spent fuel removal schedule that DOE *actually* would have followed had it commenced spent fuel removal in 1998 and otherwise performed its contract obligations. As noted above, the government's pretrial submissions disclose absolutely no position on that issue. Instead, in proposed finding 171, the government asks the Court to make a finding about the schedule that DOE is "obligated" to follow:

> 171. Pursuant to the terms of the Standard Contract, the only acceptance schedule under which the Government was obligated to perform if it had begun accepting SNF on January 31, 1998 was the schedule established by approved delivery commitment schedules ("DCSs"), which mirrored rates contained in the 1995 Annual Capacity Report ["ACR"] that ramped up to 900 MTU per year.

Gov't Amended Stipulation of Facts ¶ 171.

But these very same assertions about DOE's contract "obligations" were rejected as a matter of law in *Commonwealth Edison Co. v United States*, 56 Fed. Cl. 652 (2003), the "well reasoned ruling" that this Court has "adopted here." *See* Order of June 26, 2003 at 2. *Commonwealth Edison* squarely held, contrary to the government's proposed finding 171 quoted above, that "DCSs *did not* create a contractually binding *obligation* for either party" and "the ACR and DCS process *does not* contain or create a SNF acceptance rate." *Commonwealth Edison* at 663, 666 (emphasis added). There is no sense wasting time at trial on elaborate damages evidence that rests on a legal position this Court has already rejected.[3]

---

[3] *Commonwealth Edison* also noted that DOE's "'Specific Instructions for Completion of DCS' . . . informed utilities that 'the total quantity of SNF designated for delivery must not exceed the allocation in the ACR; exceeding the allocation will result in disapproval of the DCS(s).'" 56 Fed. Cl. at 665. The Court held that this "DOE [] position," which is essentially identical to the

Third, "Scenario 1" – and, indeed, each of the government's four alternate scenarios – depends upon assumptions about when, in the real or "breach" world, DOE will actually commence (and the schedule on which DOE will continue) removal of Yankee Atomic's spent fuel in the future. For example, each of the government's four alternate scenarios assumes that DOE commences performance in 2010. *See* Abbott Yankee Atomic Expert Report at 7-8, 14-15, 17-18, and 55 (discussing or noting, respectively, assumed 2010 DOE start-date in Scenario 1, 2, 3, and 5). Once again, however, the government does not even ask the Court to make any such factual finding. What the government does propose as a fact is that "DOE currently *plans* to begin accepting waste . . . in 2010. . . ." Gov't Amended Proposed Stipulation 196 (emphasis added). That may or may not be true, but it is very different from asking the Court to find that DOE will *in fact* begin removing Yankee Atomic's spent fuel in 2010. Having not even asked the Court to make that finding, the government should be precluded from offering evidence of when DOE will begin removal of Yankee Atomic's spent fuel – a necessary foundational assumption of "Scenario 1," and all the government's other alternate scenarios.

More fundamentally, the question of when (if ever) DOE will perform in the future, and if so on what schedule, has no proper place in this case. That question need not be considered, much less determined, in order to award Yankee Atomic the damages it is seeking here. Yankee Atomic's "minimum damages" claim set out in its pretrial submissions does not involve any projection of when DOE actually will perform. Rather, it rests on the government's own

---

government's assertion in its proposed finding 171 that DCSs "mirrored" the ACR, "is inconsistent with plaintiff's justified expectation that ACRs were negotiable and to be used for 'planning purposes'" and "may be a breach of the defendant's duty of good faith and fair dealing." 56 Fed. Cl. at 656-66. (emphasis added). (The 1995 ACR mentioned in the government's proposed finding 171 is materially identical, for present purposes, to DOE's 1991 ACR discussed in *Commonwealth Edison*.)

acknowledgment of the earliest possible date for DOE to begin actual removal of Yankee Atomic's spent fuel, 2010, and on a subsequent schedule for completion of removal of that spent fuel that is more rapid than is likely to obtain in the real world. *See* Yankee Atomic 2003 Report of Ken Wise at 4; Yankee Atomic's 2003 Proposed Findings of Fact ¶ 173 & 180. Yankee Atomic has thus structured its claim to avoid any consideration of DOE's actual spent fuel removal schedule in the future, if any. Notably, the Court long ago agreed, at an early discovery hearing in this case, that the actual future removal schedule should not be an issue at trial: "COURT: . . . As you see, I'm trying to avoid having a trial on when they are actually going to pick it up." 5/4/1999 Hearing Transcript at 25:20-21, copy attached as Exhibit 1 at 3.

Finally, it is worthwhile to observe that the substance of "Scenario 1" is non-sensisical. As quoted above, at p. 3, the assumptions underlying this scenario create a hypothetical situation where in the "non-breach" world, with DOE *performing* its contract obligations, Yankee Atomic's spent fuel is assumed to remain on its site until 2024, but in the "breach" world, with DOE *not* performing (and possibly never performing), Yankee Atomic's spent fuel is assumed to be removed in 2020 – four years *earlier* than if DOE had in fact performed in accordance with the contract. It is difficult to imagine, and indeed quite strange for the government to suggest, that this is the kind of "performance" by DOE that Congress had in mind when it enacted the NWPA, or that the parties had in mind when they signed their contract.

At bottom, the assumptions underlying "Scenario 1" expose the government's assumptions for what they are and reveal what they are not. These assumptions are simply the products of the fertile imaginations of the government's counsel. *See* 5/10/04 Abbott Depo. Tr. at 100:1-107:1, copy attached as Exhibit 2 at 7-14 (government counsel provided the four alternate scenarios; Abbott has no opinion whether any such scenario is reasonable); *id.* at 11,

Tr. 104:2 ("I don't know if they [the underlying "pickup dates and the rates," *see id.* at 9, Tr. 102:5-6] are reasonable or unreasonable"). These assumptions are not anything the government can support factually, and the government does not even *propose* that these assumptions are factually-based.[4]

Rather than wasting trial time on the government's unalleged and unsupportable scenarios, the parties and the Court should focus on what actually happened: DOE has not begun to remove any spent fuel for Yankee Atomic, and, as a result, Yankee Atomic has incurred enormous costs of storing the spent fuel on-site. Those facts are real, not imaginary. Those facts are properly alleged and backed by substantial evidence. Those facts, accordingly, frame the only damages "scenario" that is relevant in this case.

2. The Government's "Scenario 2" and "Scenario 3" Likewise Have No Basis In Fact Or In The Government's Proposed Findings of Fact.

"Scenario 2" and "Scenario 3" assume that DOE follows the same spent fuel acceptance rate in both the "breach" and "non-breach" worlds, and for illustration purposes these scenarios assume that in both worlds DOE follows the acceptance rate in the 1998 DOE TSLCC. The government then assumes that DOE starts removing spent fuel 12 years later in the "breach" world (1998 in the "non-breach" world and 2010 in the breach world). *See* Abbott Expert Report at 14-15, 17.

The assumptions about DOE's spent fuel removal schedule that underlie "Scenario 2" and "Scenario 3" are unfounded and unalleged. First, although each of these scenarios rest on assumptions about DOE's removal schedule in both the breach and non-breach worlds, as noted

---

[4] Mr. Johnson confirmed at his deposition this week that he also has no opinion regarding the reasonableness of any one of the government's alternate scenarios, and that the assumptions underlying those scenarios were provided by government counsel.

above, the government does not propose any factual finding at all (or otherwise disclose any position in its pretrial submissions) about the removal schedule DOE actually would follow in either world. Second, and relatedly, the government also does not propose as a fact that DOE would follow the *same* schedule in both worlds.[5] But whether the actual future removal schedule will differ from what would have happened if DOE had performed by 1998 is ultimately irrelevant in this case, because, as also noted above, the actual damages claim that Yankee Atomic has submitted can be addressed fully without speculating about DOE's actions in the future.

"Scenario 2" is fanciful for an additional reason: it assumes that Yankee Atomic continues to store its spent fuel on-site in wet storage in its spent fuel pool in the real, "breach" world until 2010 or later. Abbott Expert Report at 16 ("Assuming . . . that [Yankee] had simply stored its spent fuel in the spent fuel pool an additional 12 years. . . ."). That assumption is not only unfounded, it is *contrary* to the actual facts: Yankee Atomic's spent fuel pool is today completely empty and is being dismantled; all of Yankee Atomic's spent fuel has already been transferred to dry storage. It makes no sense to waste trial time with evidence about a damages scenario, like "Scenario 2," that rests on an assumption that is not only unfounded but flat-out wrong.

3. <u>"Scenario 5" Is Also Not Based On Any Finding Of Fact Proposed By The Government, Much Less On Any Actual Fact.</u>

Central to "Scenario 5 " is that "exchanges of allocations are assumed to not occur in the non-breach world." Abbott Expert Report at 6. "Scenario 5" also assumes that DOE would

---

[5] In fact, there are substantial reasons to believe that DOE will not follow the same schedule if and when it actually beings removing spent fuel as it would have followed had it begun removal in 1998 as the contracts require. *See, e.g.*, Expert Report of Frank C. Graves at 16-19.

remove utilities' spent fuel at the 1998 DOE TSLCC rates in both the breach and non-breach worlds, *id.* at 55, and that DOE starts to remove spent fuel beginning in 2010. *Id.* at n.196. The other significant assumption underlying "Scenario 5" is embedded in the 1998 DOE TSLCC, which "assumes fuel is picked up from the sites with the oldest fuel first, in accordance with the [1995] Annual Capacity Report...." 1998 DOE TSLCC (Gov't Trial Exhibit DX619), excerpt attached as Exhibit 3 at 18. Scenario 5 assumes this "oldest fuel first" removal sequence in both the breach and non-breach worlds. *See* Abbott Expert Report at 55.

The government's proposed findings do not ask the Court to find that any of these assumptions underlying "Scenario 5" are true, or reasonable or consistent with the NWPA or the intent of the contracting parties. With respect to the first assumption noted above – that exchanges of removal allocations would not occur in the "non-breach" world – the government's proposed findings do not ask the Court to make any such finding of fact. Indeed, as discussed previously, the government does not request any finding at all about the actual spent fuel removal schedule that DOE would have followed, with or without exchanges, in the "non-breach" world.

What the government's proposed findings do ask the Court to find, with respect to allocation exchanges, is that no such exchanges have occurred in the "breach" world. For example, the government's proposed finding 102 states "No purchaser, including the Yankee plaintiffs, has entered into an agreement with another nuclear utility to exchange an approved DCS or to exchange the allocations identified in any ACR or APR. No purchaser, including the Yankee plaintiffs, has submitted any exchange requests to DOE for approval." *See* Gov't proposed findings 149-156b (noting Yankee Atomic's attempts to arrange exchanges in the

1990's, after DOE's inability to meet the 1998 start date seemed clear). These proposed facts may be true, but they are not a disputed issue in this case.[6]

Both the "DOE schedule" and "DOE start-date" assumptions underlying "Scenario 5" – that DOE would remove spent fuel according to "the 1998 DOE TSLCC rates for DOE pickup [] in both the breach and non-breach worlds," Abbott Expert Report at 55, and that DOE would commence spent fuel removal in 2010 – are likewise not the subject of any factual finding proposed by the government, as discussed above in connection with the government's other hypothetical damages scenarios.

The same is true regarding the final key assumption of Scenario 5 – that DOE's removal schedule in both the breach and non-breach worlds would follow the "oldest fuel first" sequence set out in the1995 Annual Capacity Report. The government's proposed findings nowhere request that the Court find as a fact that DOE actually would follow that schedule, either in the "non-breach" world or in the "breach" world.[7]

---

[6] What is relevant to Yankee Atomic's damages claim is the fact that exchanges would have occurred in the "non-breach" world *if DOE had commenced spent fuel removal beginning in 1998 and otherwise performed as the contract requires.* On that issue, as Yankee Atomic's proposed findings and evidence make amply clear – and the government's proposed findings do not dispute – the exchanges that are provided for explicitly in the parties' contract would have occurred in the non-breach world, and indeed would have been necessary in order "to 'effectuate the spirit and purpose' of the entire contract." *See Commonwealth Edison,* 56 Fed. Cl. at 662.

[7] For DOE to actually remove spent fuel according to this oldest fuel first ranking would require DOE's trucks and trains to make numerous visits to each utility site, sometimes only a year or two apart, to remove each time only that small fraction of the utilities' spent fuel assemblies that happen to be the "next-oldest." That makes no sense, as Yankee Atomic's proposed findings and evidence demonstrate *and the government's proposed findings of fact do not dispute.* Rather, as Yankee Atomic's proposed findings and evidence also show, the oldest fuel first sequence mentioned in the contract is at most simply an initial allocation of removal priority, which, if DOE had commenced spent fuel removal in 1998 as the contract requires, would have been adjusted by the parties into a more efficient, campaign-based removal schedule. The government's proposed findings do not even ask the Court to find that this description is untrue.

Like the other irrelevant damages scenarios discussed by Messrs. Abbott and Johnson, "Scenario 5" appears to be nothing more than a creation of government counsel. *See* 5/10/04 Abbott Depo. Tr. at 100:1-107:1, copy attached at Exhibit 2 at 7-14. Absent proper disclosure in the government's pretrial submissions that the government believes and can prove that the assumptions underlying "Scenario 5" are true – and there has been no such disclosure – evidence regarding "Scenario 5" should also be precluded at trial.

4. The Government's Position On Failed Fuel And GTCC Waste Multiplies The Complexity Of The Irrelevant Damages Scenarios It Seeks To Present.

The government's four alternate damages scenarios actually represent *twelve* different scenarios, because in each of the four principal alternate scenarios, Messrs. Abbott and Johnson also overlay the government's position that removal of "failed fuel" may be delayed, and, separately, the government's position that removal of GTCC waste is not required. *See* Abbott Expert Report at 3 ("For each of the five scenarios described above [including "Scenario 4," which is Yankee Atomic's actual damages claim], I have evaluated what the effect on calculated possible damages would be if in the breach and non-breach worlds prolonged storage of Greater Than Class C Waste (GTCC) and/or other than standard fuel assemblies was required, independent of the pickup of standard fuel assemblies.") In these evaluations, Messrs. Abbott and Johnson assume that Yankee Atomic's failed fuel and GTCC waste would not be removed by DOE, but rather would have to be stored on-site by Yankee Atomic for an extended period. Damages thus are purportedly reduced because Yankee Atomic is assumed to incur costs to store failed fuel and GTCC waste even in the "non-breach" world where DOE is otherwise performing its contract obligations.

This approach literally heaps unfounded assumptions on top of unfounded assumptions. First, both variations of each of the four principal scenarios (one variation addressing GTCC waste and the other addressing both GTCC waste and failed fuel) rest on all the same alleged assumptions that underlie the pertinent principal scenario. Second, each variation introduces additional alleged assumptions. With respect to failed fuel, the government does not ask the Court to find that even if DOE were otherwise performing its contract obligations, Yankee Atomic would *in fact* continue to possess failed fuel for an extended period. Instead, the government asks the Court to find that "[e]ven if DOE fully performed pursuant to the Standard Contract, [Yankee Atomic] *might* still possess failed fuel at its site for an indefinite amount of time." Gov't Amended Stipulation of Facts ¶ 136 (emphasis added). This equivocation, which does not even join the issue, traces back again to the government's reliance on a legal position the Court has already rejected, namely the government's assertion in proposed finding 119 that "DOE is not *obligated* by the Standard Contract to dispose of Failed Fuel according to the same schedule as Standard Fuel." Gov't Amended Stipulation ¶ 119 (emphasis added). But as discussed above, *Commonwealth Edison* holds that the contract involved here does not "obligate" DOE to *any* specific removal schedule, 56 Fed. Cl. at 663, and therefore the government's whole position on failed fuel is beside the point.

The issue is whether DOE, had it been performing the contract as required beginning in 1998, would *in fact* have completed removal of Yankee Atomic's failed fuel at the same time as it completed removal of the rest of Yankee Atomic's fuel. The government has disclosed no position on that issue in its proposed findings of fact, and therefore should be precluded from introducing evidence on the point. At a minimum, since the government advances its same "not obligated" theory for failed fuel in the context of "Scenario 4," which is Yankee Atomic's actual

damages claim, *see* Abbott Expert Report 49-52, the government should be required to litigate the failed fuel issue in that context, rather than burdening the trial further with this same unfounded variation on each of its four principal irrelevant damages scenarios.

With respect to GTCC waste, the government's proposed findings also fail to take any position – or request any factual findings – on an ultimate issue. The government does allege that "[t]he Standard Contract does not require DOE to accept or dispose of [Yankee Atomic]'s GTCC." Gov't Amended Stipulation ¶ 138. That proposed finding joins one issue, because Yankee Atomic contends that its contract does require DOE to remove spent fuel. *See* Yankee Atomic's 2003 Proposed Findings of Fact ¶ 3. But the only other finding the government proposes regarding removal of GTCC is the following: "[e]ven if DOE fully performed the Standard Contract, [Yankee Atomic] still would have been *obligated* to store its GTCC for an indefinite amount of time." *Id.* (emphasis added) Initially, this case is about DOE's obligations, not Yankee Atomic. Yankee Atomic is only "obligated" to store its GTCC waste, as the government puts it, because DOE has failed to remove this waste – despite DOE's undisputed statutory obligation to do so. More fundamentally, the government never asks the Court to make a finding, and ultimately takes no position regarding, whether, if DOE had otherwise been performing the contract as intended beginning in 1998, it would *in fact* have removed Yankee Atomic's GTCC waste along with its spent fuel. Yankee Atomic has asked the Court to find as a fact that DOE would have done so – it would have removed Yankee Atomic's GTCC waste, consistent with DOE's undisputed statutory obligation. *See* Yankee Atomic's Proposed Findings of Fact ¶ 118c. Because the government does not meet or contest that proposed finding, the government should be precluded from introducing evidence to contest Yankee Atomic's properly-alleged position at trial. Moreover, as with the failed fuel issue, at a minimum the

government should be required to litigate its position concerning GTCC waste in the context of "Scenario 4" – Yankee Atomic's actual damages claim – rather than multiplying the complexity of the trial by superimposing the same off-point assertions regarding GTCC waste onto each of the government's four unalleged and unfounded alternate damages "scenarios."

## CONCLUSION

The damages trial in this case should focus on Yankee Atomic's actual damages claim, which is based on what has actually happened because of DOE's breach of contract. Evidence concerning other damages "scenarios" is irrelevant and also unfounded, as shown above.

Respectfully submitted,

Dated: May 28, 2004

s/Jerry Stouck by s/Monica Freas
JERRY STOUCK
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (Fax)

Counsel for Plaintiff
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
SPRIGGS & HOLLINGSWORTH