IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF FUTURE DAMAGES

Defendant, the United States, respectfully files this motion *in limine* to exclude evidence of damages incurred after the plaintiff, Yankee Atomic Electric Company, and the plaintiffs in the two cases that have been consolidated with this case for purposes of trial, Connecticut Yankee Atomic Power Company and Maine Yankee Atomic Power Company (collectively, "the Yankees"),[1] filed their complaints with the Court or, at the very latest, allegedly to be incurred after the date of the trial in this matter. Because of the nature of the contract breach that the Yankees have asserted in these cases – a partial breach, rather than a total breach – the Yankees cannot recover an award of future or prospective damages. In support of this motion, we rely upon the parties' pleadings and the following brief.

ARGUMENT

I. THE YANKEES SEEK TO RECOVER DAMAGES FOR A PARTIAL, RATHER THAN TOTAL, BREACH OF CONTRACT

The Yankees have made a careful decision in identifying the type of contractual breach upon which they are relying in this litigation. In their complaints and in all of the briefing that

[1] The Government requests that this motion be deemed applicable not only to this case, but also to Connecticut Yankee Atomic Power Company v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Company v. United States, No. 98-474C (Fed. Cl.).

they have submitted to this Court, the Yankees have uniformly and consistently alleged that the Department of Energy's ("DOE") failure to begin acceptance of the nuclear utilities' spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") by January 31, 1998, constitutes a partial breach of the Standard Contract at issue in this litigation, see Compl. ¶ 3, and this Court has already granted the Yankees' motions for partial summary judgment regarding liability under Count I, in which the Yankees allege that DOE's inaction constitutes a "partial breach" of the Standard Contract. Yankee Atomic Elec. Co. v. United States, 42 Fed. Cl. 223, 225, 235-26 (1998), aff'd sub nom. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000). As will be discussed below, the Yankees' reliance upon a partial breach of contract theory, as opposed to a total breach of contract theory, affects the scope of damages the Yankees may recover here and the parties' continuing obligations under the Standard Contract.

The distinction between a total and a partial breach of contract is extremely important here. If the Yankees wanted to pursue a claim for a total breach of contract, they certainly could have attempted to have done so. However, as explained below, had they pursued and prevailed upon such a theory, DOE would have had no further obligation to perform under the Standard Contract or to accept the Yankees’ SNF and HLW. Instead, DOE only would have been liable to the Yankees for damages resulting from the total breach. We presume that, because the Yankees want DOE to continue to perform the Standard Contract and want to ensure that DOE will accept their SNF and HLW to preclude them from having to find an alternative means of long-term

storage for that waste, the Yankees consciously elected not to pursue claims for total breach and limited their claims to partial breach claims.[1]

## II. A PLAINTIFF SEEKING DAMAGES FOR A PARTIAL BREACH OF CONTRACT IS NOT ENTITLED TO RECOVER DAMAGES INCURRED AFTER THE DATE THAT ITS COMPLAINT WAS FILED OR, AT THE VERY LATEST, THE DATE OF TRIAL

### A. Courts Distinguish Between A Total Breach Of Contract And A Partial Breach Of Contract

"The terms total breach and partial breach are frequently used by the courts in determining the remedies available to the injured party." 9 A. Corbin, Corbin on Contracts § 946, at 717-18 (interim ed. 1979). "A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." 9 A. Corbin, supra, § 946, at 718; see Restatement (Second) of Contracts § 236(1), at 214 (1981) ("[a] claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance").[2] "[I]t is clear that, wherever the court will hold that

[1] To the extent that the Yankees now wish to seek claims for total breach, they cannot now, as explained in our reply to the Yankees' response to our motion *in limine* regarding pre-breach damages, change their theory of breach. Further, if they were allowed to claim a total breach of contract, they could not be permitted to "reserve" their rights, as they request, to bring another lawsuit seeking additional damages after 2010, given that they have no right to "split" their cause of action in a total breach case. See Restatement (Second) of Judgments § 26 cmt. g, at 240-41 (1982). As this Court recently recognized in another spent nuclear fuel ("SNF") case, although the Department of Energy has publicly represented that it anticipates being able to begin SNF acceptance by 2010, "[t]he year 2010 is irrelevant because the parties have not agreed to a new contract" with a beginning SNF acceptance date of 2010. Indiana Michigan Power Co. v. United States, No. 98-486C, 2004 WL 1161880, at *28 n.19 (Fed. Cl. May 21, 2004). The Yankees have identified no basis upon which they could return to this Court in 2010 to seek additional damages upon a total breach claim that allegedly arose in 1998.

[2] The United States Court of Appeals for the Federal Circuit recently held that "[t]he Restatement of Contracts is recognized as an appropriate source of authority in contract cases." Hansen Bancorp, Inc. v. United States, No. 03-50029, -5061, 2004 WL 1048186, at *17 (Fed.

A's breach is a total breach, B can regard A's performance as at an end and at once maintain action for damages for all of his injury, past, present, and future." 9 A. Corbin, supra, § 946, at 718.

"While in the case of a total breach the injured party can at once get judgment for his entire injury, it is not always necessary for him to elect this remedy." 9 A. Corbin, supra, § 946, at 720. "In some cases he may elect to regard the breach as partial, proceed with his own performance, sue for the partial injury, and maintain a second suit in case a further breach occurs." Id., quoted in Indiana Michigan Power Co. v. United States, No. 98-486C, 2004 WL 1161880, at *27 (Fed. Cl. May 21, 2004); see Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953) ("even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract").[3] "If the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said instead to be one for damages for partial breach. For example, an injured party who claims damages in addition to specific performance claims damages for partial breach." Restatement (Second) of Contracts § 236 cmt. b, at 214 (1981).

---

Cir. May 11, 2004) (citing Mobil Oil Exploration v. United States, 530 U.S. 604, 608 (2000)). Similarly, the Federal Circuit has repeatedly relied upon the Restatement (Second) of Judgments (to which we will cite in this motion) as authority. See, e.g., Christopher Village, L.P. v. United States, 360 F.3d 1319 (Fed. Cir. 2004) (citing repeatedly to *Restatement (Second) of Judgments*); Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003) (recognizing that court is broadly guided by the *Restatement (Second) of Judgments*); Young Engineers, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983) ("[i]n our analysis we will be guided by the *Restatement (Second) of Judgments* (1982) . . . .").

[3] "A partial breach of contract is a breach where remedial rights provided by law can be substituted by the injured party for only part of the existing contractual rights." Restatement (First) of Contracts § 313(2) (1932).

The concept of "partial" breach is particularly applicable to contracts that involve a requirement for a series of performances, or installments, over an extended period of time. Professor Corbin has described the election that the non-breaching party to an installment contract can make when the other party fails to satisfy the requirements of an installment of the contract:

> If the seller of goods delivers an instalment of nonconforming goods, in breach of some warranty, even though the breach may be such as to operate as a total breach the buyer is not required to treat it so. He may keep the defective instalment, retaining his right to damages or recoupment, and demand delivery of the remaining instalments required by the contract. When sued for the price of the instalments received by him, he may recoup for breach of warranty and claim damages for the seller's failure to deliver the subsequent instalments. The seller has committed one breach, treated by the buyer as partial, and a second breach that is total.

9 A. Corbin, supra, § 946, at 720. Professor Corbin considers a contract that requires continuing performance similar to an installment contract and potentially capable of a series of partial breaches:

> There are contracts, however, that have been said to require continuing (or continuous) performance for some specified period of time, a period that may be definite or indefinite when the contract is made. These contracts too are capable of a series of "partial" breaches, as well as of a single total breach by repudiation or by such a material failure of performance when due as to go "to the essence" and to frustrate substantially the purpose for which the contract was agreed to by the injured party. For each "partial" breach a separate action is maintainable, just as in the case of an "instalment" contract: and for a series of "partial" breaches occurring before any action is brought only one action is maintainable.

Id. § 956, at 746.[4]

B. Courts Distinguish Between The Remedies Available For A Total Breach Of Contract And A Partial Breach Of Contract

The damages that a plaintiff can seek in a suit for a partial breach differ substantially from those that are recoverable in a suit for a total breach. Generally, "[i]f the initial breach is accompanied or followed by a 'repudiation' (see Restatement, Second, Contracts § 250)" – that is, if the breach is total – "and the plaintiff thereafter commences an action for damages, he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract." Restatement (Second) of Judgments § 26 cmt. g, at 240 (1982) (emphasis added). "In the event of a 'material' breach (see Restatement, Second, Contracts § 241) that is not accompanied or followed by a repudiation, the plaintiff is entitled to treat the contract as at an end and to recover damages for performances not yet due as well as those already due on the theory that there has been a total breach of contract." Restatement (Second) of Judgments § 26 cmt. g, at 240-41 (1982). "If a plaintiff does this, a judgment extinguishing the claim under the rules of merger or bar precludes another action by him for further recovery on the contract." Id. at 241. Accordingly, if a plaintiff seeks damages for a total breach of contract, he must seek to recover all damages that he has or will incur as a result of the total breach, given that the parties' obligations to continue contract performance are terminated and a judgment for the non-breaching party will conclude all obligations under the breached contract.

---

[4] Professor Corbin concluded that there is "no essential difference between a 'continuing' contract and an 'instalment' contract." 9 A. Corbin, Corbin on Contracts § 956, at 748.

"On the other hand, although the breach is material, the plaintiff may elect to treat it as being merely a partial breach." Id. "A claim for damages for partial breach is one for damages based on only part of the injured party's remaining rights to performance." Restatement (Second) of Contracts § 236(2), at 214 (1981) (emphasis added). As previously discussed, a partial breach of contract does not conclude the parties' continuing contract obligations, but instead requires continued contract performance. When a plaintiff elects to treat a breach of contract only as a partial breach, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as only 'partial.'" 9 A. Corbin, supra, § 956, at 747 (emphasis added). Specifically, if the non-breaching party elects to treat a breach as a partial breach, "he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date." Restatement (Second) of Judgments § 26 cmt. g, at 241 (1982) (emphasis added); see Kaiser v. Northwest Shopping Ctr., Inc., 587 S.W.2d 454, 457 (Tex. Civ. Ct. 1979) (suggesting that, under Texas state law, plaintiffs seeking damages for partial breach may recover damages incurred through date of filing the pleading).

Alternatively, other courts, including this one, have found that damages may be recovered under a partial breach to the extent that they were incurred by the time of trial. In Coughlin v. Blair, 41 Cal. 2d 587, 262 P.2d 305 (1953), the California court held that, "[i]f the breach is partial only, the injured party may recover damages for non-performance only to the time of trial and may not recover damages for anticipated future non-performance." Id. at 598, 262 P.2d at 311, quoted in May v. Morganelli-Heumann & Assocs., 618 F.2d 1363, 1367 n.2 (9th Cir. 1980);

see Quick v. American Steel & Pump Corp., 397 F.2d 561, 564 (2d Cir. 1968) ("we see no reason not to apply the usual rule that contracts to pay money in instalments are breached one instalment at a time"). This Court recently adopted the holding in the Coughlin decision in Indiana Michigan Power Co. v. United States, No. 98-486C, 2004 WL 1161880 (Fed. Cl. May 21, 2004), finding that "[d]amages for partial breach of contract are measured by costs incurred between the breach and the date of trial." Id. at *9 (citing Coughlin, 41 Cal. 2d at 598, 262 P.2d at 311). Given that this Court's jurisdiction is determined by the circumstances existing upon the date that the complaint is filed, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992) (post-filing conduct cannot create jurisdiction that did not exist at outset of litigation); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"), and given the problems that will always arise in identifying and verifying claimed damages incurred between the conclusion of fact discovery and the commencement of trial, the rules identified in the Restatement (Second) of Contracts and Restatement (Second) of Judgments, establishing an end date for damages for a partial breach at the filing of a complaint, appear correct. However, at the very most, a plaintiff in a suit alleging a partial breach can recover damages for non-performance no further than the time of trial.

In San Carlos Irrigation & Drainage District. v. United States, 23 Cl. Ct. 276 (1991), this Court considered a contract that it concluded was a "continuing contract" subject to a series of partial breaches. In that case, the United States was required to operate and maintain the "Project Works" (Coolidge Dam, San Carlos Reservoir, including spillways and an electrical generating system) for the irrigation district in the best possible manner, pursuant to a "Repayment Contract"

entered in 1931. Apparently, the spillways became inoperable no later than 1966, and possibly as early as the 1940s, and the irrigation district stopped receiving its share of water or power in 1980. However, in 1983, a storm caused the dam to be shut down and evacuated, leaving the district no way to generate electrical power or store water. In response to the Government's argument that the irrigation district's claims had accrued for statute of limitations purposes no later than 1980, and possibly in 1966 or the early 1940s, the Court held that the Repayment Contract was a "continuing contract" potentially subject to a series of partial breaches, that the alleged 1983 breach was not time-barred by the applicable six-year limitations period because each "partial" breach created a new claim, and that the "fact that other partial breach claims, not raised in this litigation, are now time-barred is of no consequence." Id. at 279-80;[5] see Keefe Co. v. Americable Int'l, Inc., 755 A.2d 469, 472-75 (D.C. Ct. App. 2000) (discussing installment contracts); Kaiser, 587 S.W.2d at 457-58 (discussing continuing contracts); Restatement (First) of Contracts § 313 cmt. c (1932) (for partial breach, "the promisor may perform the remainder of the contract and be subject merely to a remedial duty to give compensation in damages" for the partial breach, but not for future anticipated partial breaches).

Here, the Yankees have elected to treat DOE's failure to meet the January 31, 1998 date for beginning SNF acceptance as a partial, rather than total, breach. Accordingly, their damages are limited to those for the partial breach, or partial breaches, that occurred by the time that they filed their complaints or, at the outside, that have occurred to date. See 9 A. Corbin, supra,

---

[5] The Court distinguished the situation before it from the "continuing claim" doctrine, in which "a continuing course of action by the United States constitutes a continuing breach of a duty." San Carlos Irrig., 23 Cl. Ct. at 280. It recognized that, as with the Yankees' claims, "[t]he District is not claiming a continuing breach of the Repayment Contract, but rather that there were partial breaches of a continuing contract." Id.

§ 950, at 728 ("[o]ne judgment bars any further action for breaches that existed at the time suit was brought and that might then have been included in a single action"). To the extent that additional partial breaches occur in the future, the Yankees may attempt to seek appropriate relief at that time. See Indiana Michigan, No. 98-486C, 2004 WL 1161880, at *27 ("[w]hen [plaintiff] can show that it has incurred costs related to defendant's breach, plaintiff may have causes of action that are not speculative" and may elect to "maintain a second suit in case a further breach occurs" (quoting 9 A. Corbin, supra, § 946, at 720)). Currently, the Yankees' damages should be limited to damages, if any, specifically caused by the delay in beginning SNF and/or HLW acceptance upon which their complaints are based, and should not be extended to other possible future delays in continuing SNF and/or HLW acceptance or future damages that have not yet occurred. In any event, the existence of future delays in continuing SNF and/or HLW acceptance is speculative in light of the possible effects of future events, precluding an award of future damages.

The fact that the Yankees cannot seek future damages for future partial breaches of the Standard Contract is supported by the absence of a legal remedy for an anticipatory partial breach. Indeed, "an anticipatory breach cannot be predicated on a partial breach of the contract." City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) (emphasis added), cert. denied, 440 U.S. 914 (1979); see 9 A. Corbin, supra, § 972, at 798 ("there seems to be no authority for saying that, for such a partial anticipatory repudiation, an action for damages can be at once maintained"). To the contrary, an anticipatory repudiation gives rise only to a claim for total breach that concludes the parties' further performance obligations. See Restatement (Second) of Contracts § 253 cmt. b, at 287 (1981) ("a breach by

repudiation alone can only give rise to a claim for total breach . . .," effectively ending any further performance obligations by the contracting parties). This Court has recently recognized that "[a]nticipatory repudiation does not apply in a partial breach situation." Indiana Michigan Power, No. 98-486C, 2004 WL 1161880, at *9. Accordingly, the Yankees, having elected not to seek damages for a total breach of contract and to continue to seek performance under the Standard Contract, cannot anticipate partial breaches of the Standard Contract that may occur in the future or seek damages at this time for partial breaches of the Standard Contract that may occur in the future.

As a result, this Court need not investigate and make decisions about the speculative events that may, or may not, occur in the future. The only damages that the Court need consider are those that the Yankees allegedly have incurred based upon the actual partial breach of the Standard Contract upon which their complaints are based: DOE's failure to begin accepting spent nuclear fuel and/or high-level radioactive waste on January 31, 1998.[6] The Court can review those incurred costs to determine whether they were actually caused by DOE's partial breach. Even as so limited, there will be a sizeable controversy to resolve because a large proportion of the damages claimed by the Yankees are past damages.[7] To the extent that

---

[6] To the extent that the Court allows the Yankees to establish damages based upon partial breaches that occurred after the dates upon which they filed their complaints and to recover damages through the date of trial, the Yankees should identify those additional "partial breaches," establish the existence of those partial breaches at trial, and identify the damages associated with those partial breaches.

[7] More than $109 million of Yankee Atomic's so-called "minimum damages" claim (of approximately $191 million through the year 2010) consists of alleged past damages. Likewise, more than $89 million of Connecticut Yankee's minimum damages claim (of approximately $197 million through the year 2010) are alleged past damages, and Maine Yankee's minimum damages claim (of approximately $168 million through the year 2010) includes in excess of $84

additional partial breaches occur in the future, the Yankees can attempt to resolve any claims arising from those partial breaches without litigation as they arise or, alternatively, may maintain another suit based upon those partial breaches. However, the Yankees may not recover damages at this time for partial breaches that have yet to occur.

## III. BY RECOGNIZING A RIGHT TO FUTURE CAUSES OF ACTION BASED UPON FUTURE PARTIAL BREACHES, THE YANKEES IMPLIEDLY RECOGNIZE THE LIMITATIONS UPON THEIR ABILITY TO RECOVER FUTURE OR PROSPECTIVE DAMAGES

In this case, the Yankees have limited their claims to damages allegedly accruing by 2010, the year in which DOE currently anticipates that it will begin SNF acceptance from the nuclear utility contract holders. In so doing, the Yankees apparently believe that they have a right – under a partial breach theory – to petition this Court at some point after 2010 for damages arising after that date. The recognition of a right to future actions based upon future partial breaches impliedly recognizes the nature of a partial breach claim. While the Yankees seek to litigate damages through 2010, any damages beyond the date that the Yankees submitted their complaints or, at the very latest, the date of trial constitute future or prospective damages. However, courts do not distinguish between "near" future damages and "far" future damages. Instead, based upon the Yankees' partial breach claims, all future or prospective damages – whether accruing in 2005, 2006, or 2011 – are barred.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court exclude all evidence regarding future or prospective damages from the trial of this matter.

million in alleged past damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
RUSSELL A. SHULTIS
MARIAN E. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

June 1, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 1st day of June 2004, a copy of foregoing "DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FUTURE DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.