IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow)<br><br>Filed electronically: June 1, 2004 |

YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM KENNETH W. BLAIR

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Michael R. Miner
SPRIGGS & HOLLINGSWORTH

Dated: June 1, 2004

## Table of Contents

Page

ARGUMENT ....................................................................................................................1

I. MR. BLAIR'S EXPERT TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT UNDER FEDERAL RULES OF EVIDENCE 401 AND 702, AND INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 402. ......................1

A. Mr. Blair's Testimony Is Irrelevant And Unhelpful Because It Fails To Address The Reasonableness Of Plaintiffs' ISFSI-Related Conduct. .....................2

B. Mr. Blair's Testimony Is Irrelevant And Unhelpful Because It Consists At Bottom Of Inadmissible Legal Conclusions. ..........................................................5

II. MR. BLAIR'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS INHERENTLY UNRELIABLE. ...........................................................................................8

CONCLUSION ..............................................................................................................14

# INDEX TO APPENDIX

**Description** **Page**

Kenneth W. Blair Summary of Opinion (2/18/04) ..........001

Deposition Transcript of Kenneth W. Blair (5/3/04) [Excerpts] ..........044

Expert Witness Report of Edward C. Abbott [Excerpt] ..........084

# Table of Authorities

Page

## Cases

*American Nat'l Ins. Co. v. United States*, 690 F.2d 878 (Ct. Cl. 1982)........................................ 6

*Baskett v. United States*, 2 Cl. Ct. 356 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986).................. 1, 2

*Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297 (Fed. Cir. 2001) .............................. 2, 8

*Bourjaily v. United States*, 483 U.S. 171 (1987) ............................................................... 8

*Carchia v. United States*, 485 F.2d 622 (Ct. Cl. 1973).................................................. 3

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995)......................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)................................................ 2, 5, 8

*Eagleston v. Guido*, 41 F.3d 865 (2d Cir. 1994)................................................................ 7

*Hardin v. Ski Venture, Inc.*, 50 F.3d 1291 (4th Cir. 1995) ........................................................ 7

*Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913 (S.D. Ind. 2000).... 6

*In re Kellett Aircraft Corp.*, 186 F.2d 197 (3d Cir. 1950) ......................................................... 3

*INSLAW, Inc. v. United States*, 35 Fed. Cl. 295 (1996)........................................................ 2

*Koby v. United States*, 53 Fed. Cl. 493 (2002) ........................................................................ 3

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ......................................................... 2, 8

*Lappe v. American Honda Motor Co.*, 857 F. Supp. 222 (N.D.N.Y. 1994) ................................. 7

*Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ................................................ 6

*New Hampshire Ins. Co. v. A. Luurtsema Truck Lines, Inc.*, 1992 WL 71385 (W.D. Mich. Mar. 24, 1992) ........................................................................................................ 7

*Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875 (8th Cir. 1998) ............................................... 6

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997).................................................... 6

*Northern Helex Co. v. United States*, 524 F.2d 707 (Ct. Cl. 1975) ............................................... 3

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983)......................................................... 6

**Table of Authorities**

Page

*Principal Mut. Life Ins. Co. v. United States*, 26 Cl. Ct. 616 (1992)............................................. 6

*Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir. 1997)............................................................. 7

*United States v. Cruz*, 363 F.3d 187 (2d Cir. 2004)........................................................................ 7

*United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985).............................................................. 5

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544 (2003) .................................................. 6

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................................................ 11

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................................ 10

Fed. R. Evid. 401 ................................................................................................................... 2, 5

Fed. R. Evid. 402 ........................................................................................................................ 2

Fed. R. Evid. 702 ......................................................................................................... 2, 5, 8, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow)<br><br>Filed electronically: June 1, 2004 |

## YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM KENNETH W. BLAIR[1]

Yankee Atomic moves pursuant to RCFC 7(b) and RCFC 16 to exclude testimony from Kenneth Blair. The Court should exclude such testimony because Mr. Blair's opinions are irrelevant, unreliable and constitute improper and erroneous legal conclusions.

## ARGUMENT

### I. MR. BLAIR'S EXPERT TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT UNDER FEDERAL RULES OF EVIDENCE 401 AND 702, AND INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 402.

Under RCFC 16, this Court has the authority to rule in advance of trial on the admissibility of documentary or testimonial evidence "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." *Baskett v. United States*, 2 Cl. Ct. 356, 367-68 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986). "In this manner the court filters out irrelevant evidence and performs its function of 'simplifying issues for trial.'"

[1] This Motion should also be deemed applicable to *Connecticut Yankee Atomic Power Co. v. United States*, Case No. 98-154C, and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C. Mr. Blair submitted a single "Summary of Opinion" (dated February 18, 2004) that encompasses his opinions in each of the three Yankee plaintiffs' cases. *See* A001 ("A___" refers to the Appendix to the instant Motion). Although this Motion addresses only those opinions relating to Yankee Atomic, Mr. Blair's opinions as to each of the three plaintiffs follow the same pattern and are equally devoid of relevance and reliability.

*INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (quoting *Baskett*, 2 Ct. Cl. at 359). The Court's gatekeeping function in this regard permits the Court to exclude the testimony of proposed expert witnesses. *See Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1303 (Fed. Cir. 2001) (one purpose of gatekeeping role is to ensure that all expert testimony is both relevant and reliable); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending the basic gate-keeping obligation for scientific testimony established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), to all expert testimony).

The Federal Rules of Evidence define as "relevant" that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Further, Rule 702 requires that expert testimony "'assist the trier of fact to understand the evidence or determine a fact in issue.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). Mr. Blair's proposed testimony does not meet these threshold requirements and is therefore inadmissible. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

### A. Mr. Blair's Testimony Is Irrelevant And Unhelpful Because It Fails To Address The Reasonableness Of Plaintiffs' ISFSI-Related Conduct.

Mr. Blair opines in his "Summary of Opinion" that "contractor delays to the fuel preparation activities," and not actions or inactions of DOE, resulted in an eleven-month delay in completion of fuel transfer to Yankee Atomic's ISFSI. *See* A012. Mr. Blair confirmed this position during his deposition. *See* Blair Transcript ("Blair Tr.") at 191:2-191:10, A079.

The government apparently intends to offer Mr. Blair's opinion testimony to support its argument that "the government should not have to pay for costs arising from ISFSI delays." Defendant's Amended Proposed Stipulation of Facts, at 80; *see also*, Expert Witness Report of Edward C. Abbott, A088 ("[Yankee Atomic] did not account for the schedule delays which

would have lessened its claim."). Indeed, the Court presupposed in its August 29, 2003 Order (addressing Defendant's First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents After Submission of Plaintiff's 2003 Pretrial Filing) that the government was "considering asserting, in its final pretrial submission, that plaintiff failed to mitigate damages to the extent of unreasonable costs it incurred in [ISFSI] construction, or costs incorrectly assigned as damages." Order dated August 29, 2003, at 3. The Court properly explained, however, that to the extent the government seeks to prove that certain portions of plaintiff's damages can be attributed to "problems engendered by plaintiff or its contractors," the government – as the breaching party – bears the burden of demonstrating that those portions of plaintiff's damages are attributable to plaintiff's failure to exercise reasonable commercial judgment. *See id.* at 3-4 ("[T]he issue with respect to mitigation of damages is grounded in a determination as to reasonable commercial judgment on the part of plaintiff. . . . This presents a more limited area of inquiry than contract claim dispute resolution.") (citing *Northern Helex Co. v. United States*, 524 F.2d 707, 718 (Ct. Cl. 1975); *Carchia v. United States*, 485 F.2d 622, 630 (Ct. Cl. 1973)). *See also Koby v. United States*, 53 Fed. Cl. 493, 497 (2002) ("'Whether or not the [non-breaching party's] obligation to mitigate damages has been discharged depends on the reasonableness of its conduct.'") (quoting *In re Kellett Aircraft Corp.*, 186 F.2d 197, 198 (3d Cir. 1950)).

Mr. Blair's testimony, though, is devoid of *any* opinions regarding the reasonableness of the commercial judgment exercised by Yankee Atomic. Tellingly, when pressed on the point during his deposition, Mr. Blair testified that as far as he knows, there was nothing unreasonable about Yankee Atomic's ISFSI-related conduct:

> Q: If I understand your opinion noted in [your Summary of Opinion], page ten, paragraph four correctly, you're not attributing any of this eleven month delay to Yankee Atomic, are you?
>
> A: Only to the extent that Yankee Atomic is responsible for its contractors which you alluded to as a legal opinion.
>
> Q: Do you have any opinion as to whether Yankee Atomic acted unreasonably in selecting NAC as the contractor here?
>
> A: I have no specific knowledge of any unreasonable decision, no.
>
> Q: Do you have any opinion as to whether or not Yankee Atomic administered that contract in an unreasonable manner in any way?
>
> A: Not at the present time. We're still looking at the electronic schedules that we just got.
>
> * * *
>
> Q: Once again, if Yankee Atomic is correct that the Department of Energy's breach of its contract to remove its spent fuel caused it to have to build the ISFSI at all, isn't in some manner then delays in that project attributable in some manner to Department of Energy's breach of that contract?
>
> A: Not if the causation for this is imprudent construction management or negligent construction management, although I have not found that specifically.
>
> Q: You haven't found that generally either, have you?
>
> A: No.

Blair Tr. at 193:12-195:9, A081-A083.

Plaintiff does not dispute that certain activities took longer than originally anticipated, and it has never alleged that DOE actions or inactions caused delays in completion of its ISFSI. Rather, plaintiff has argued that its need to build and load an ISFSI was caused by the government's breach. *See* Yankee Atomic 2003 Proposed Stipulation of Facts ¶¶ 154-55, 160, 174-5. Mr. Blair's opinions do not address this issue; thus, his testimony fails to satisfy Rule

401's requirement that evidence speak to the existence or non-existence of some fact of consequence to the determination of the action.

For the same reasons, Mr. Blair's testimony fails to satisfy Rule 702's requirement that expert testimony assist the trier of fact to understand the evidence or to determine a fact in issue, a condition that "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Id.* (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], pp. 702-18 (1988); *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702 – and another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")).

B. Mr. Blair's Testimony Is Irrelevant And Unhelpful Because It Consists At Bottom Of Inadmissible Legal Conclusions.

Even assuming Mr. Blair has correctly identified a delay associated with plaintiff's ISFSI project, and has correctly concluded that this delay was caused by Yankee Atomic's contractor, the balance of Mr. Blair's testimony amounts to nothing more than a legal conclusion regarding the responsibility of the parties for that delay. Specifically, Mr. Blair opines that Yankee Atomic is responsible for any delays associated with its ISFSI project, merely by virtue of the fact that Yankee Atomic hired NAC as its contractor:

> Q: If I understand your opinion noted in [your Summary of Opinion], page ten, paragraph four correctly, you're not attributing any of this eleven month delay to Yankee Atomic, are you?
>
> A: Only to the extent that Yankee Atomic is responsible for its contractors which you alluded to as a legal opinion.

Blair Tr. at 193:12-193:18, A081.

The Federal Circuit and its predecessors have recognized that such legal conclusions are not of assistance to the trier of fact, and therefore are properly excludable. *See Markman v. Westview Instr., Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (trial court has complete discretion to exclude expert testimony that amounts to no more than legal opinion); *Principal Mut. Life Ins. Co. v. United States*, 26 Cl. Ct. 616, 625 (1992) (affidavits comprised entirely of expert legal opinions "cannot be considered helpful, and therefore admissible, expert testimony"); *American Nat'l Ins. Co. v. United States*, 690 F.2d 878, 888 (Ct. Cl. 1982) (questions of law require expert testimony only in "exceptional circumstances"); *see also Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 574 (2003) (expert testimony not helpful, and thus not relevant, if it "'draws inferences or reaches conclusions within the [trier of fact's] competence or within an exclusive function of the [trier of fact].'") (quoting *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998)) (alterations in original). That is particularly true here, where the Court has already addressed the applicable legal standard – reasonable commercial judgment – and the legal opinion Mr. Blair purports to offer is irreconcilable with that standard.

Moreover, at least eight other circuit courts have held that the Federal Rules of Evidence prohibit testimony by experts regarding applicable principles of law, with certain limited exceptions not applicable here. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (citing decisions by seven other circuit courts). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 922 n.6 (S.D. Ind. 2000) (declining to consider expert's report on grounds that it contained expert legal opinions, which were "unnecessary and irrelevant" to the court's ultimate decision); *New Hampshire Ins. Co. v.*

*A. Luurtsema Truck Lines, Inc.*, No. 1:90-CV-747, 1992 WL 71385, at *8 n.4 (W.D. Mich. Mar. 24, 1992) (legal conclusions of experts "both irrelevant and inappropriate").

Further, Mr. Blair's legal opinions are derived not from any specialized knowledge or valid methodology, but instead from Mr. Blair's "experience." *See* Blair Tr. at 179:4-180:1, A077-A078. Mr. Blair is a civil engineer, not a lawyer. *See* Summary of Opinion, Appendix 1, A014-A016. As such, his legal conclusions are unreliable – even if somehow relevant – because an expert witness "must . . . stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline." *Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994); s*ee also Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055-56 (3d Cir. 1997); *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995); *Eagleston v. Guido*, 41 F.3d 865, 873-74 (2d Cir. 1994).

As a result, whatever minimal probative value Mr. Blair's testimony might have would be substantially outweighed by its tendency to confuse the issues, waste time and result in needless presentation of cumulative evidence, particularly given Mr. Blair's admitted inability to opine as to the reasonableness of plaintiff's actions. Accordingly, the Court should exclude Mr. Blair's expert testimony in its entirety under Rule 403. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *see*, *e.g.*, *United States v. Cruz*, 363 F.3d 187, 195-96 (2d Cir. 2004) (district court failed to satisfy its obligations as gatekeeper where court allowed expert to stray from the scope of his expertise; expert testimony should have been excluded under Rule 403).

## II. MR. BLAIR'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS INHERENTLY UNRELIABLE.

The purpose of the Court's gatekeeping role is "to ensure that all expert testimony . . . is not only relevant, but also reliable." *Biovail Corp.,* 239 F.3d at 1303 (citing *Kumho Tire*, 526 U.S. at 147). Any given expert's testimony must have "'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592) (alteration in original). The proponent of the expert testimony bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See* Fed. R. Evid. 702 advisory committee notes (2000 Amendments) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).

Here, Mr. Blair admits that his opinions are incomplete and subject to amendment pending his review of additional documents identified in Appendix 3 of his Summary of Opinion. *See* Summary of Opinion, Appendix 3, A039 ("Any remaining existing documents *are required* in order to complete the schedule delay analysis.") (emphasis added). During his deposition, Mr. Blair testified that his conclusions could potentially be subject to major changes:

> Q: Do you anticipate revising your opinions?
>
> A: It's possible, depending on if we get any of this information and if, in fact, it's relevant to the analysis or other information becomes available.
>
> * * *
>
> Q: You are saying even if you don't receive any other documents in this case that the opinions that you've offered in [your Summary of Opinion] are reliable?
>
> A: Depends on what the other information out there is. If there's something I just didn't anticipate, I can't speculate on what might be out there. We're looking at additional information during the month of May. We haven't totally done that yet. We just got Framatome documents, for example.

*     *     *

Q: What possible revisions are you anticipating?

Mr. Shultis: Objection, mischaracterizes prior testimony.

A: I really don't know specifically but it hasn't been unusual in my career to find that documents show up to cause me to change my opinion in some cases. It may be minor. Rarely is it major, but it is possible.

*     *     *

Q: Is there a chance that your opinion as to the cause of those delays would change if you review more documents?

A: It's possible, or at least a portion of the delay. Perhaps it would be a portion definitely.

*     *     *

Q: Is that part of your opinions that those [ISFSI] delays are not attributable to actions or inactions of the Department of Energy, is that opinion subject to change upon review of more documents?

A: It's possible.

Blair Tr. at 83:19-90:16, A058-A065.

Thus, even if somehow relevant, Mr. Blair's conclusions are inherently unreliable in that they are admittedly incomplete and potentially subject to material revision.

Mr. Blair's expert testimony is also unreliable in that Mr. Blair cannot state with even a minimal degree of certainty that he is the primary author of his own report. *See* Blair Tr. at 62:9-67-10, A046-A051. Indeed, Mr. Blair acknowledges that as far as he is concerned, he and his colleague Kelly Heuer *co-authored* the February 18, 2004 Summary of Opinion. *See* Blair Tr. at 62:15-63:2, A046-A047. When pressed to estimate how much of the report he actually authored himself, Mr. Blair was unable to do so:

> Q: Was there any part of [the Summary of Opinion] that you actually wrote the words of yourself?
>
> A: The wording in here was in many cases my language. What percentage of it I originally authored so that she typed it, I can't say, but we passed the draft several times and I would write things down, she would type them, she would offer some statements and so forth and we would do it together.
>
> * * *
>
> Q: You and Ms. Heuer discussed the findings and then Ms. Heuer went off and typed up the first draft?
>
> A: I don't recall. She may very well have done that. She did the typing so she obviously typed it, yes.
>
> Q: Did you provide her with a written outline that she used to type up the report?
>
> A: I drafted parts of it. I don't recall what percentage I provided to her. I don't recall giving her an outline. The format of the report she and I discussed, as I understand, with counsel and we finished the report.
>
> Q: You said that you drafted portions of [the Summary of Opinion]. What portions did you draft?
>
> A: I don't recall.

Blair Tr. at 63:12-65:10, A047-A049.

When asked how many times he edited drafts of the Summary of Opinion and communicated the edits to Ms. Heuer, Mr. Blair was again unable to provide even a rough estimate: "I don't know. Somewhere between five and – I don't know. I just don't recall. We worked on it together and sometimes you wouldn't even call it a draft. I would talk to her about it. Do you consider that a draft?" Blair Tr. at 66:15-66:19, A050. The fact that Mr. Blair cannot state with even a modicum of certainty that he took the leading role in the preparation of his own report casts additional doubt on the reliability of Mr. Blair's conclusions and testimony. *See* Fed. R. Civ. P. 26(a)(2)(B) (disclosure of experts retained to provide testimony at trial "shall . . . be

accompanied by a written report *prepared and signed by the witness*.") (emphasis added); Order dated November 4, 1998, at 2 (applying the requirements of Fed. R. Civ. P. 26(a)(2)(B) to expert disclosures in this case).

The reliability of Mr. Blair's testimony is further undermined by Mr. Blair's blatant disregard for the requirements of Fed. R. Civ. P. 26(a)(2) and this Court's November 8, 2001 Order respecting expert witness disclosures. As the government is well aware, Rule 26 requires for each expert witness the submission of a report containing "a complete statement of all opinions to be expressed [by the expert] and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2). *See also* Fed. R. Civ. P. 26 advisory committee notes (1993 Amendments) (expert report must be "detailed and complete" and must "stat[e] the testimony the witness is expected to present during direct examination, together with the reasons therefor."). Even a cursory examination of Mr. Blair's "Summary of Opinion" reveals that Mr. Blair failed to include *any* of the bases or reasons for his conclusion that the delay on plaintiff's ISFSI project was "not related to the actions or inactions of the DOE." Summary of Opinion at 10, A012. As noted above, Mr. Blair took the position in his deposition that his opinions in this regard are informed solely by his "experience," presumably in the field of engineering. *See supra*, at 7; Blair Tr. at 179:4-180:1, A077-A078. However, as the Advisory Committee Notes to Fed. R. Evid. 702 make clear, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee notes (2000 Amendments) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their

conclusions and their assurances of reliability. Under *Daubert*, that's not enough.")). Rather than have Mr. Blair explain the bases for his conclusion that the ISFSI delays were "not related to the actions or inactions of the DOE," the government simply asks plaintiff – and the Court – to take Mr. Blair's word for it. The Court should decline to do so.

Whatever bases Mr. Blair might have for his opinions have been further obscured by Mr. Blair's admitted destruction of workpapers, drafts and other materials created in formulating his conclusions:

> Q: Do you know what happened to the drafts of [your Summary of Opinion] that you looked at prior to signing a version of this on February 18?
>
> Mr. Shultis: Objection, vague and asked and answered.
>
> A: [Ms. Heuer] kept the electronic copy on the server or on her laptop. It superseded the earlier version. The hard copies I would discard in the normal course of reviewing them.
>
> Q: What about your written comments on the prior drafts? What happened to those?
>
> A: Those would be discarded.
>
> Q: Why were the electronic drafts written over instead of preserved?
>
> A: I don't think I've ever preserved a copy of a report.
>
> Q: Are you aware in this case that the court has ordered the parties to produce from their experts drafts of their expert witness reports?
>
> A: Other than the draft that we submitted to the Department of Justice, no.
>
> Q: No one ever communicated to you that you needed to preserve your drafts of your expert witness report?
>
> A: No.

* * *

> Q: Did you preserve all of your work product in preparing your expert witness report or did you end up discarding some of it?
>
> A: Some of it was discarded.
>
> * * *
>
> Q: What's your recollection of what work product was discarded?
>
> A: Depends on how you define work product. I define work product as that which I turned over to you. The evolution of that work product is an earlier version of it and I discarded paper that I wrote on.

Blair Tr. at 67:11-70:1, A051-A054.

In all, Mr. Blair believes he discarded preliminary sketches, notes of conversations between Mr. Blair and his staff relating to the preparation of Mr. Blair's report, notes of conversations between Mr. Blair and other government witnesses and consultants including Ed Abbott and Warren Brewer, notes of conversations between Mr. Blair and his superiors as to what Mr. Blair's tasks would be in the three Yankee cases, and various drafts of his Summary of Opinion. *See* Blair Tr. at 67:11-72:21, A051-A056. Such conduct is in direct contravention of this Court's November 8, 2001 Order requiring that "[a]ll material considered by a testifying expert (including that rejected) or material generated by the expert in formulating opinions should be produced. . . . This would include any communications from persons, including counsel, addressing or commenting on the substance of the testimony to be presented." Order dated November 8, 2001, at 2. Not only has Mr. Blair not made certain of his workpapers and drafts available to plaintiffs, he has destroyed or disposed of them such that production is now impossible. These actions have unnecessarily complicated and prejudiced plaintiff's ability to evaluate the relevance and reliability of Mr. Blair's testimony.

CONCLUSION

The Court should hold the government to its burden of proving that plaintiff's ISFSI-related decisions and activities were unreasonable. Because Mr. Blair's testimony purports to assign responsibility to plaintiff for the various ISFSI-related delays without any such assessment of reasonableness, the government cannot establish either the relevance or reliability of Mr. Blair's testimony. Accordingly, the Court should enter an Order excluding Mr. Blair from testifying at trial.

Dated: June 1, 2004

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Michael R. Miner
SPRIGGS & HOLLINGSWORTH