IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-126 C
(Senior Judge Merow)

YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM DANIEL FISCHEL

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
Tel. (202) 898-5800
Fax (202) 682-1639

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Robert E. Johnston
SPRIGGS & HOLLINGSWORTH

Dated: June 1, 2004

Table of Contents

Page

ARGUMENT ....................................................................................................................2

I. Expert Testimony Must Be Helpful and Reliable ..............................................................2

II. Fischel's Opinions Do Not Meet The Rule 702 Standard for Admissibility .......................3

A. The Court Should Not Hear Mr. Fischel's Causation Opinion ...............................4

B. The Court Should Not Hear Mr. Fischel's Speculativeness Opinion ......................6

1. The Speculativeness Opinion Is Not Useful to the Court ...........................6

2. The Speculativeness Opinion Is Not Reliable ............................................7

3. The Subsidiary Opinions Underlying the Speculativeness Opinion Are Neither Useful Nor Reliable ..................................................8

CONCLUSION ..............................................................................................................11

# INDEX TO APPENDIX


| **Description** | **Page** |
|---|---|
| Expert Report of Daniel R. Fischel Re: Yankee Atomic | 1 |
| Expert Report of Daniel R. Fischel Re: Connecticut Yankee | 46 |
| Expert Report of Daniel R. Fischel Re: Maine Yankee | 89 |
| Deposition Transcript of Daniel Fischel (9/4/2002)[Excerpts] | 134 |
| Deposition Transcript of Daniel Fischel (9/6/2002) [Excerpts] | 153 |
| Deposition Transcript of Daniel Fischel (10/8/2002) [Excerpts] | 159 |
| Transcript of Teleconference on September 9, 2002 | 173 |
| Deposition Transcript of Daniel Fischel (10/9/2002) [Excerpts] | 178 |

Table of Authorities

Page

**Cases**

*American Nat'l Ins. Co. v. United States*, 690 F.2d 878 (Ct. Cl. 1982)........................................ 3

*Biovail Corp. Int'l v. Andrx Pharm., Inc.,* 239 F.3d 1297 (Fed. Cir. 2001) ................................. 2

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003)........................................... 4

*Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194 (4th Cir. 2001) .................................................. 2

*Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993) ....................................................... 2

*Eastern Minerals Int'l, Inc. v. United States*, 39 Fed. Cl. 621 (1997), *rev'd on other grounds, Wyatt v. United States*, 271 F.3d 1090 (Fed. Cir. 2001) ......................... 12

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)......................................................................... 2

*Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88 (2003).......................................... 5

*Khumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................. 2

*Markman v. Westview Instrument, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)......................................... 2

*Principal Mut. Life Ins. Co. v. United States*, 26 Cl. Ct. 616 (1992)............................................ 2

*Seaboard Lumber Co. v. United States*, 308 F.3d 1283 (Fed. Cir. 2002).................................... 11

*United States v. Barile*, 286 F.3d 749 (4th Cir. 2002) ................................................................. 7

*United States v. Barsanti*, 943 F.2d 428 (4th Cir. 1991) ........................................................... 10

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987)........................................................................................................................ 2

*United States v. Maman*, 332 F.3d 475 (7th Cir. 2003)............................................................. 11

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988)...................................................................... 3

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544 (2003) ................................................. 3

*Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997)...................................................................... 7

Table of Authorities

Page

## Rules

Fed. R. Evid. 403 .......... 7

Fed. R. Evid. 702 .......... 2, 7, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126 C<br>(Senior Judge Merow) |

YANKEE ATOMIC'S MOTION TO EXCLUDE
TESTIMONY FROM DANIEL FISCHEL

Yankee Atomic moves pursuant to RCFC 7(b)(1) and RFCF 16 for the Court to exclude testimony from Daniel Fischel.[1] Although the government offers Mr. Fischel as an expert witness, his opinions are neither reliable nor useful to the Court. As established in Mr. Fischel's Expert Witness Report ("Report") and at his deposition, Mr. Fischel's opinions are not based on any valid methodology and instead spring forth as *ipse dixit*. Indeed, Mr. Fischel's opinions are made up of legal conclusions or other opinions that are properly within the province of the Court. At bottom, Mr. Fischel's proposed testimony constitutes a government effort to imbue its erroneous legal arguments and meritless attacks on plaintiff's experts with the cachet of "expert" opinion. The Court should not permit such testimony.

[1] This motion should also be deemed applicable to *Connecticut Yankee v. United States*, No. 98-154C and *Maine Yankee v. United States*, No. 98-474C.

ARGUMENT

I. EXPERT TESTIMONY MUST BE HELPFUL AND RELIABLE

This Court functions as a "gatekeeper," ensuring expert testimony "will assist the trier of fact to understand the evidence or determine a fact in issue," Federal Rule of Evidence 702, and is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993); *Khumo Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) (applying the holding of *Daubert* to non-scientific expert testimony); *Biovail Corp. Int'l v. Andrx Pharm., Inc.,* 239 F.3d 1297, 1303 (Fed. Cir. 2001) (recognizing gatekeeper function).

This Court must exclude any expert opinions that cannot be shown by the proponent to be admissible under 702 by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001); *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987). Accordingly, when this Court finds that offered expert testimony is either not helpful to the resolution of issues before the Court or not reliable, it may exclude such expert testimony at trial. *Kuhmo Tire*, 526 U.S. 152 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) (trial court decision on admissibility of expert testimony reviewed on an abuse of discretion standard).

The Federal Circuit and its predecessors have recognized that expert opinions that offer legal conclusions are not of assistance to the trier of the fact, and are properly excludable on that ground. *See Markman v. Westview Instrument, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (expert testimony regarding the proper construction of a patent "amounts to no more than legal opinion . . . as to these types of opinions, the Court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it"); *Principal Mut. Life Ins. Co. v. United States*, 26 Cl. Ct. 616, 625 (1992) (affidavits containing only expert legal opinion "cannot be considered helpful, and therefore admissible expert

testimony"); *American Nat'l Ins. Co. v. United States*, 690 F.2d 878, 888 (Ct. Cl. 1982) (questions of law do not require expert testimony except in "exceptional circumstances"); *see also United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (expert legal opinions invade the province of the Court and are therefore inadmissible). Moreover, where expert testimony otherwise encroaches on decisions that are properly committed to the Court, as arbiter of the law, or the trier of the fact, as arbiter of the facts, they should similarly be excluded as unhelpful. *See Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 574 (2003) (Hewitt, J.) ("expert testimony 'is not helpful if it draws inferences or reaches conclusions . . . within an exclusive function of the [trier of the fact]" (alteration in original)). In the same vein, where expert testimony offers nothing more than conclusions that are within the ordinary competence of the trier of the fact, it is unhelpful and should be excluded. *Id.* ("expert testimony 'is not helpful if it draws inferences or reaches conclusions within the [trier of the fact's] competence" (alteration in original)).

## II. FISCHEL'S OPINIONS DO NOT MEET THE RULE 702 STANDARD FOR ADMISSIBILITY

Mr. Fischel claims to have reached two principal opinions: (1) that plaintiff's "claimed damages do not result from DOE's failure to commence disposing of SNF and HLW by January 31, 1998 (the "Causation Opinion"), and (2) "[p]laintiff's damage claim is speculative because it depends on future events, assumes that DOE should have implemented a particular schedule for the disposal of Purchasers' SNF and HLW, assumes that DOE would accept [GTCC] waste and 'failed fuel' under this acceptance schedule, and assumes that exchanges of allocation slots between program participants would minimize aggregate-reactor storage costs" (the "Speculativeness Opinion").

A. The Court Should Not Hear Mr. Fischel's Causation Opinion

As reflected by the fact that Mr. Fischel devotes only a single paragraph in his Report to the Causation Opinion, *see* Report ¶ 8, A3-4, A48-49, A92,[2] there is not much to it. In that paragraph, Mr. Fischel argues that "[t]he claimed damages do not result from DOE's failure to commence disposing of SNF and HLW by January 31, 1998 . . . In other words, the claimed damages do not result from the partial breach of contract found by the Court." As Mr. Fischel explained at his deposition, "what I think [paragraph 8 of ] the report does say . . . that the damage claim is not based on the failure to start but rather it's based on removal of all of plaintiffs' nuclear waste prior to 2010." Fischel Tr. at 14:13-22, A135.

If Mr. Fischel's "opinion" sounds familiar, it should, because it is one of the government's legal arguments that this Court rejected when it denied the government's motion for partial summary judgment on the rate of spent nuclear fuel acceptance. In its Order of June 26, 2003 at 2, the Court adopted the "well reasoned ruling" in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 664 (2003). In *Commonwealth Edison Co.*, the Court observed that "Defendant argues that because 'DOE intentionally excluded from the Standard Contract any obligation, after it had beg[u]n SNF and/or HLW acceptance, to continue that acceptance at any minimum rate,' that DOE was obligated only to 'begin" SNF and/or HLW acceptance." 56 Fed. Cl. at 664 (citation to, and notation of alteration from, government brief omitted). The Court squarely rejected this argument: "Defendant's argument that it is not obligated to continue the acceptance of SNF at any minimum rate is in direct conflict with the plain language of the

[2] Citations to the Appendix appear as "A_." Citations to paragraphs in the "Report" are to the "Report of Daniel R. Fischel Re: Yankee Atomic Electric Company v. United States" (A1), "Report of Daniel R. Fischel Re: Connecticut Yankee Atomic Power Company v. United States" (A46), and "Report of Daniel R. Fischel Re: Maine Yankee Power Company v. United States" (A89). The relevant paragraphs are substantially identical in each of the three reports.

Standard Contract." *Id.* (citing Art. II of parties' contract); *see also Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88, 97 (2003).

Lest there be any doubt that this is the "opinion" Mr. Fischel intended to set forth in ¶ 8 of his opinion, Mr. Fischel made this point clear at his deposition.

> Q: So your statement, the last sentence in paragraph 8 referring to the partial breach of contract that you're referring to in paragraph 8 is limited to what you've set out in the last sentence of paragraph 5 [which states, "I understand that the court has found that DOE partially breached Yankee Atomic's contract by failing to commence acceptance by the January 31, 1998 deadline."].
>
> A: That's what it refers to, correct.

Fischel Tr. at 60:7-12, A136. At his deposition, Mr. Fischel went on to make clear that the first opinion of his report is that Yankee Atomic's damage "claim is not based on when the government was obligated to begin removing spent nuclear fuel" (which is "the breach" in Mr. Fischel's opinion, *see* quote below), but rather is based on "removal of spent nuclear fuel by a certain date," *i.e.*, DOE's failure to continue acceptance of Yankee Atomic's spent fuel at a reasonable rate until such acceptance is completed ("which is not the breach" in Mr. Fischel's opinion, *see* quote below):

> Q: . . . Is it your opinion that that date, the date when the government would complete removal of plaintiff's spent fuel in the absence of a breach, that that date is irrelevant to the opinion that you reached, your first opinion noted in paragraph seven?
>
> * * *
>
> A: . . . . The report I think makes clear, and certainly my testimony about it, my opinion that the fundamental conceptual flaw of the plaintiffs' damage claim which was highlighted in my first opinion is that the claim is not based on when the government obligated to begin removing spent nuclear fuel which is the breach, but rather focuses on removal of spent nuclear fuel by a certain date which is not the breach. And because the costs of storing the nuclear fuel will exist in both the breach and the nonbreach world to use the plaintiffs' terminology, for that reason the plaintiffs' damage claim is fundamentally flawed from its inception.

> It's measuring the wrong thing. There are many other flaws as well but that's certainly a fundamental flaw.

Fischel Tr. at 168:5-9; 169:8-23, A154-155.

Because Mr. Fischel's first opinion is nothing more than a legal opinion (and a rejected legal opinion at that), it is not the proper subject of expert testimony and the Court should not hear it.

B. The Court Should Not Hear Mr. Fischel's Speculativeness Opinion

1. The Speculativeness Opinion Is Not Useful to the Court

Mr. Fischel's speculativeness opinion is either an inadmissible legal opinion or too vague to be useful to the Court. On the one hand, Mr. Fischel, a law professor, acknowledges that there is a legal definition of "speculative" and that speculative damages are ordinarily not recoverable:

> Q. You're aware that in, that there's a legal definition of speculative as well, aren't you?
>
> MS. POWELL: Objection to the extent it calls for a legal conclusion.
>
> THE WITNESS: I guess I'm generally aware that the term speculative is used in the legal context.
>
> BY MR. SHAPIRO:
>
> Q. And that one of the contexts that it's used is that speculative damages are not recoverable?
>
> MS. POWELL: Objection, again, to the extent it calls for a legal conclusion.
>
> THE WITNESS: I really haven't systemically studied that. I don't have a formal opinion about it but I think it's fair to say that once damages are characterized as speculative, that's usually a reason why they should not be recoverable.

Fischel Tr. at 79:6-23, A138. Yet, Mr. Fischel testified that he "wasn't intending to place a special meaning on the word other than its ordinary meaning." Fischel Tr. at 78:6-8, A137.

On the other hand, Mr. Fischel appears to use a special definition of "speculative:" "assumptions for which there is not – an adequate basis in reality or relevant economic evidence." Fischel Tr. at 79:2-5, A138. And Mr. Fischel testified that, under this definition, he might deem an event shown within a likelihood of 99 percent to be true to nonetheless not have a sufficient basis in reality. Fischel Tr. at 87, A139 ("It sounds like it generally speaking but again, it depends on the facts and circumstances as to what the assumption is."); *see also* Fischel Tr. at 174:17-22, A156 ("Q: Let me give you a specific example. In my common understanding of the word speculative, if an event is 90 percent likely to happen, I would say it's not speculative, is that consistent with your understanding of speculative? A: It depends on the facts and circumstances."). Mr. Fischel's use of a word with an important legal significance is confusing and appropriately excludable pursuant to Fed. R. Evid. 403. In addition, such an opinion is not useful to the Court as trier of fact and, thus, excludable under Fed. R. Evid. 702. *See United States v. Barile*, 286 F.3d 749, 760-61 (4th Cir. 2002); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is also appropriate to exclude 'ultimate issue' testimony on the ground that it would not be helpful to the trier of fact when 'the terms used by the witness have a separate, distinct and specialized meaning in the law'").

2. The Speculativeness Opinion Is Not Reliable

Mr. Fischel's speculativeness opinion is also not reliable. Mr. Fischel is not applying a discernable methodology to reach his speculativeness opinion. Indeed, Mr. Fischel couldn't even find a name for his supposed methodology. As the Court may recall, at his deposition Mr. Fischel initially refused to say whether the methodology by which he concluded that plaintiff's damages are speculative has a name, necessitating a conference with the Court. *See* Conference of Sep. 6, 2002, Fischel Tr., A173-77. After the conference with the Court, Mr. Fischel admitted that his analysis has no name. *See* Fischel Tr. at 239-41, A157-58A.

3. The Subsidiary Opinions Underlying the Speculativeness Opinion Are Neither Useful Nor Reliable

The subsidiary opinions underlying Mr. Fischel's speculativeness conclusion are no more useful or reliable when considered individually. Mr. Fischel asserts that Mr. Graves' analysis is speculative because it assumes future events. Report at ¶ 10, A4, A49, A93. At his deposition, Fischel was asked "which particular future event assumptions" he had in mind in concluding that the report is speculative because it assumes future events. Fischel Tr. at 92:3-4, A140. Mr. Fischel responded "I don't really have anything specific in mind. I can imagine lots of different possible developments in the future . . .". Fischel Tr. at 92:5-7, A140. Nevertheless, Mr. Fischel was unable to identify any particular future events that might affect plaintiffs' damage analysis. *See* Fischel Tr. at 92-93, 97-100, A140-41, A142-45. He also admitted that he had made no effort to quantify how speculative the Yankee Atomic's damage claim is based on their assumptions regarding future events and admitted that he has no expertise that would allow him to render such an analysis (and believes that no on has such expertise). Fischel Tr. at 93:10-19, A141.

Similarly, Mr. Fischel criticizes Dr. Bartlett's and Mr. Graves' analyses on the ground that their analysis fails to take into account "program costs," "loading costs," and "societal costs," and focuses exclusively on "at-reactor storage costs." Mr. Fischel acknowledged at his deposition, however, that not only does he not know whether Dr. Bartlett's and Mr. Graves' analyses are sensitive to changes in such costs, but also he lacks the expertise to evaluate whether differing schedules for the acceptance of spent fuel would have any effect on loading costs, program costs or societal costs. Fischel Tr. at 125:12-127:15, A146-48 (stating that the only "societal cost" he can think of are accidental discharges and he has no expertise or basis upon which to rely in determining whether the danger of discharges varies with particular

acceptance schedules); Fischel Tr. at 130-132, A149-51 (indicating that he has no expertise upon which to rely in evaluating whether faster pickup schedules reduce program costs). In sum, in ¶ 12 of his Report (A5, A50, A93-94), Mr. Fischel raises a number of issues regarding Yankee Atomic's damage analysis, but makes no effort to evaluate whether those issues actually have any bearing on that analysis.

In ¶¶ 13 and 14 (A6-7, A51-52, A94-95), Mr. Fischel appears to advocate the government's position that the only schedule of acceptance that would be consistent with the terms of the Standard Contract is the government's 1991 ACR Schedule. In his deposition testimony, Mr. Fischel conceded that he was not offering any opinions in these two paragraphs regarding the proper acceptance schedule (and lacks the expertise to do so), but was simply pointing out the existence of other possible acceptance schedules. Fischel Tr. at 115:21-25, A145A; 134:22 to 135:25, A151A-151B; 137:18 to 139:18, A151C-52; 148:6-151:6, A152A-152D. To the extent that these paragraphs contain any opinions, they are legal conclusions regarding the meaning of the terms of the Standard Contract and, therefore, inadmissible.

In ¶ 16 (A7-8, A52, A96),[3] Mr. Fischel cites to Article V.E and IV.B.5.b of the Standard Contract and concludes that, based on his interpretation of those sections, "[p]urchasers could not exchange allocations that had not been projected, requested, and approved." This is nothing more than Mr. Fischel's legal opinion regarding an interpretation of the terms of the Standard Contract, and it is not useful to the Court.

[3] Paragraph 15 simply quotes certain provisions from the Standard Contract and characterizes the assumptions of Yankee Atomic's experts regarding exchanges thereunder. Though the paragraph seems to contain an opinion that Yankee Atomic's experts' assumptions are speculative and implausible, it is apparent that the support for that opinion, to the extent that it is supported, is contained to paragraphs 16-21.

In ¶ 18 of his Report (A8, A53, A96), Mr. Fischel, opines that the bilateral exchanges contemplated by the Standard Contract might produce less efficient results than those predicted by Mr. Graves' analysis based on a last-bid auction procedure, but makes no effort to quantify this potential lower efficiency. Fischel Tr. at 326, A170. And more generally, Mr. Fischel has no opinion as to how short of completely optimal the allocation of acceptance rights would have been in the non-breach world, Fischel Tr. at 367, A172, or even whether that allocation would have been efficient taking into account the various rules governing exchanges described in his report. Fischel Tr. at 365, A171.

In ¶ 20 (A9, A54, A97), Mr. Fischel points out that there have been no exchanges of spent fuel pick up slots in the "breach" world. Although suggesting this fact does not support Yankee Atomic's assumption of a robust exchange market in the "non-breach" world, Mr. Fischel does not offer any opinion regarding how this fact actually affects plaintiff's analyses. Ultimately, Mr. Fischel is no better able to evaluate the relevance of this fact to plaintiff's damage claims than the Court. There is no reason to think that any expertise is required to evaluate the impact of this fact. Thus, Mr. Fischel's "opinion" is simply of no use to the Court in evaluating the testimony of Mr. Graves. *See, e.g., United States v. Barsanti*, 943 F.2d 428, 433 (4th Cir. 1991) (where no expert testimony is required for the trier of fact to understand the evidence, it is proper to exclude the witness).

In ¶¶ 17 and 22 of the Report (A8, A10, A53, A55, A96, A98), Mr. Fischel opines that in the event that GTCC waste and failed fuel are not within the scope of the Standard Contracts, the incentives for exchanges would be reduced and the Yankees would have been required to operate fuel storage facilities on site, notwithstanding the breach. At his deposition, however, Mr. Fischel conceded that he does not even know whether Yankee Atomic, Connecticut Yankee or

Maine Yankee have GTCC waste or failed fuel at their facilities, Fischel Tr. at 286-287, A160-61 (GTCC waste), Fischel Tr. at 307:9-11, A166 (failed fuel), conceded that he doesn't know how many nuclear utilities have GTCC waste or failed fuel, Fischel Tr. at 288:5-11, A162 (GTCC waste); Fischel Tr. at 307:20-25, A166 (failed fuel), and conceded that he has no knowledge or expertise regarding how GTCC waste and failed fuel must be stored or maintained or even what GTCC waste and "failed fuel" are. Fischel Tr. at 310-11, 315:16-25, A167-68, A169 (failed fuel); Fischel Tr. at 290:9-24, A163; 445:11 to 446:13, A178-80 (GTCC waste). Moreover, Mr. Fischel has made no effort to quantify the effect that continued storage of GTCC waste or failed fuel would have on Yankee Atomic's damages. *See, e.g.*, Fischel Tr. at 299:22-301:7, A164-65A. Thus, Mr. Fischel's opinions regarding the impact of GTCC waste and failed fuel fail do not meet the standards of Rule 702 both because Mr. Fischel lacks the relevant expertise on these subjects and because of the lack of data available to Mr. Fischel upon which to base such opinions. *See* Fed. R. Evid. 702 (requiring "sufficient facts and data" for expert to reliably opine on); s*ee United States v. Maman*, 332 F.3d 475 (7th Cir. 2003) (where expert lacked sufficient facts and data upon which to base opinions, expert testimony is properly excluded).

## CONCLUSION

Mr. Fischel's opinions lack the requirements of helpfulness and reliability of Rule 702. His testimony should be excluded in this case, even though trial is before the Court. *See Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002). Indeed, in light of the lack of quantification and reliability in his analysis and his frequent assertions of legal opinions, Mr. Fischel's proposed testimony as expressed in his Report is more in the nature of advocacy than expertise. Such advocacy should be limited to the lawyer's lectern and not be

offered from the witness box. *See Eastern Minerals Int'l, Inc. v. United States*, 39 Fed. Cl. 621, 627 (1997), *rev'd on other grounds, Wyatt v. United States*, 271 F.3d 1090 (Fed. Cir. 2001) ("An expert should not be an advocate.").

For the foregoing reasons, the Court should exclude testimony from Daniel Fischel.

Respectfully submitted

Date: June 1, 2004

s/ Jerry Stouck________
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
Tel. (202) 898-5800
Fax (202) 682-1639

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
SPRIGGS & HOLLINGSWORTH