IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - X

YANKEE ATOMIC ELECTRIC :

COMPANY, et al., :

Plaintiffs, :

v. : Case Nos.

THE UNITED STATES, : 98-126C, 98-154C,

Defendant. : 98-474C

\- - - - - - - - - - - - - - - - - - X

Washington, D.C.

Friday, September 6, 2002

Telephone conference with Judge Merow, in the above-entitled matter, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., at 2:22 p.m., Friday, September 6, 2002, and the proceedings being taken down by Stenotype by CYNTHIA R. SIMMONS, RMR, CRR, and transcribed under her direction.

Page 2

APPEARANCES:

On behalf of the Plaintiffs Yankee Atomic, Maine Yankee and Connecticut Yankee:
ROBERT SHAPIRO, ESQ.
DEAN MURPHY, ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D. C. 20005-3305
(202) 898-5884

On behalf of the Defendant:
ERIN E. POWELL, ESQ.
KEVIN CRAWFORD, ESQ.
United States Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
(202) 514-7300

Page 3

PROCEEDINGS

MR. SHAPIRO: Your Honor, I appreciate your taking the time to talk with us this afternoon. We had a couple of questions this morning. One in particular I was trying to get the answer to, and for whatever reason the witness, and this is an expert witness deposition, was declining to answer the question other than to say, other than to refer to previous statements, which certainly in my opinion did not answer the question.

I'm pausing, I'm trying to see if I can find in our rough transcript as best I can the specific question rather than simply characterizing it.

JUDGE MEROW: Who is the witness, while you're at it?

MR. SHAPIRO: This is Daniel Fischel who is one of the government's experts who purports to be, again, I'm looking for the exact language in his report, he says he's been asked to analyze plaintiffs' damage claim from an economic perspective.

JUDGE MEROW: Right.

MR. SHAPIRO: And in one of Mr. Fischel's conclusions, he has two principal conclusions in his

Page 4

report. One of those as a shorthand could be said that plaintiffs' damage claim is speculative. Mr. Fischel testified that he did not do a quantitative analysis in order to reach that conclusion, and I asked was there a name for the analysis that he did do in order to reach that conclusion, and that's really the question that I'm trying to get an answer to. And he has declined to answer that question. Let me see if I can find the particular exchange.

Question: Mr. Fischel, you said Wednesday, I believe you said Wednesday that you did not perform a quantitative analysis in order to determine the plaintiffs' damage claim is speculative. Is there a name that you would use for the type of analysis that you did do?

Answer: Not other than what I've already described at great length.

Question: So this analysis does not have a particular name, it just needs to be described at great length.

Answer: No, I didn't say that either. I've just said I've covered it so extensively that I don't know if there's anything that I can add to what I've already said, particularly on Wednesday.

Page 5

I had another question, I didn't see it, what's the name of the analysis that you did perform to determine that plaintiffs' damage claim is speculative?

The witness says, as I said, I don't really have anything to add to what I've said.

Your Honor, I'm trying to determine, does the analysis have a name or not, seems like a fairly straightforward question.

JUDGE MEROW: Are you looking for economic jargon, so to speak? In other words, sort of a professional characterization of some kind of analysis in his report?

MR. SHAPIRO: That's right. We're trying to frankly test the reliability of Mr. Fischel's opinions and as best as I can determine there's no particular analysis that was done that you can put your name on, you know, that someone else could test, that it's the same analysis that comparable experts are used to doing.

At least there's certainly nothing that so far I've been able to get that I can find in the four corners of the report or, or in the testimony, what Mr. Fischel would call the analysis.

I mean, I certainly asked the question, if

he had a, if there's a name for what he did, it's easy enough to answer the question and for whatever reason he's declined to do so. And if there isn't a name, I'd just like to know that, too, that's not necessarily conclusive of anything. But gee, I ought to be able to get a simple answer to a simple question. And thus far I've been thwarted from doing so.

JUDGE MEROW: Ms. Powell, do you have anything?

MS. POWELL: Yes, Your Honor, we would not, we certainly don't accept Mr. Shapiro's characterization of Mr. Fischel's testimony. We don't have the realtime in front of us as Mr. Shapiro does, however, I do have to say that Mr. Fischel answered that question many times on Wednesday and also this morning.

Again, he explained in detail the methodology. I also have to say that it's not my recollection that Mr. Fischel testified that he did not do a quantitative analysis. I think in one of the questions that Mr. Shapiro asked this morning, Mr. Fischel corrected Mr. Shapiro and stated that he would not say that, that he did not do a quantitative analysis.



So in short what Mr. Fischel has done, he has talked most of Wednesday afternoon and approximately an hour this morning rehashing the methodology that he did in fact use in his report. And we got to a point where Mr. Shapiro's looking for I think a quick one or two-word phrase to summarize what Mr. Fischel did. And Mr. Fischel's point was that, it was not a one or two-word phrase that could summarize in fact the methodology that he used.

He explained it extensively Wednesday and he rehashed it again this morning, and only after repeated questions, to which the government did of course object "asked and answered," did Mr. Fischel say he could not add in fact anything more to what he's already said. And unfortunately, that's what's brought us before you this afternoon.

MR. SHAPIRO: Your Honor, I mean Ms. Powell has implied that the analysis, again, I think she said, you know, does not necessarily have a specific name, and if that's the answer I get, that's fine. But I haven't been able to clearly get an admission that that's the case. I asked that question and the response was, no, I didn't say that either. I just said I've covered that extensively.

Again, it's not conclusive that an



analysis that an expert purports to use does not have a name as it's used in the regular course by comparable experts, but I'd like to be able to know that one way or the other. If Mr. Fischel was able to characterize the kind of analysis that he's done with a name so that we could check to see, is there a literature that uses the same sort of name that refers to that kind of analysis or not, I'd like to be able to do that. But right now I can't even get an answer to the question as to whether or not it has a name.

JUDGE MEROW: Well, did somebody ask him if he relied on any literature in terms of the support for the analysis that was made, any --

MR. SHAPIRO: Well there's certain -- we haven't gotten to all of that. There are certain parts of Mr. Fischel's analysis that does cite, that does cite literature, but not the, for the overall conclusion that plaintiffs' damage claim is speculative. There's no particular literature cited for a methodology there.

JUDGE MEROW: So that would be the Fischel analysis?

MR. SHAPIRO: I guess that would be a shorthand way to characterize it. I'm trying to see



if there is anyone else who uses that analysis. I mean, I asked, it's further back but I think this was yesterday, how Mr. Fischel would characterize at least the field; was this economic analysis? And my recollection is the answer was more that he's a, in this respect in determining that a damage claim is speculative, that he's simply a damage expert; there might be some aspect to economics to it but he's a damage expert.

And I'd like to know, well, gee, in order for a damage expert to determine that plaintiffs' damage claim was speculative, is there a particular analysis that you have to do or is it one of those "you know it when you see it" kinds of things. And at the moment I'm left with that latter conclusion.

JUDGE MEROW: That is a very good question because, like in lost profits claims, one of the problems is determining whether or not analysis used by, you know, presenting cases for trial, lost profits is too speculative. We just went through that in a recent decision by the circuit.

And I don't know if that's a legal conclusion or whether it's a, you know, whether it's something that economics experts or accounting experts or someone else can put a factor on, some

Page 10

kind of a risk factor in terms of determining whether it's more likely to happen or not likely to happen, or something of that nature. But that's a very interesting question.

I don't know who would be, you know, within the literature or the expertise. Judges have to reach that decision as a matter of reaching an opinion from his presentation. So I guess we could use all the help we could get in reaching that conclusion, but I don't know what you'd call the analysis.

MR. SHAPIRO: I guess you're getting to the nub of, you know, the point to my questions, Your Honor, that of course, and I think it might have even been mentioned by Mr. Fischel who himself is a distinguished law professor that, of course, ultimately the question of whether or not plaintiffs' damage claim is speculative is an issue for the court. And the question in some significant respect is going to be as to whether or not his proposed testimony can properly assist the court, and frankly one of the things I'm looking at is the Daubert question, is it reliable testimony, reliable expert testimony or not.

JUDGE MEROW: Right.

Page 11

MR. SHAPIRO: We're not going to question that Mr. Fischel is a distinguished academician is extremely smart; but there's certain indicia that an analysis has to have. And at least I was trying to get to first base and determine whether or not well, gee, does this analysis have a name and I can't even find out yes or no to that question.

JUDGE MEROW: Well if there is, it's been a long time since I've taken economics courses but I, you know, I just don't know. Whether or not, it seems to me a question that would be capable of an answer if there is some sort of expert analysis that has a literature-based background to it that you would apply risk analysis or something of that nature that you could characterize this, then fine, I assume Mr. Fischel would know.

So if he can answer, he should. If he can't answer, he should say he can't answer it; he doesn't know.

MS. POWELL: Your Honor, this is Erin Powell, I think the point is that Mr. Fischel can answer it and has in fact answered it numerous times and that was what, that is what I think brought the case before you. Most of Wednesday afternoon was spent explaining his analysis.

Page 12

JUDGE MEROW: Right.

MS. POWELL: And we again went to it this morning. And I believe even in the portion that Mr. Shapiro read to you, he was not declining to answer but he was just referencing all of his previous answers that he had already given.

JUDGE MEROW: Right. Well, if there's some famous economist who's done this same kind of analysis in the past that he's relying on as support for that and, you know, and the literature has the name of this person who's done, who's won a Nobel Prize for making this kind of analysis, something like that is the kind of thing you could disclose that that that's the basis for doing it this way.

If however it's logic and his own analysis, then that's fine.

I take it that's what Mr. Shapiro is looking for.

MR. SHAPIRO: That's right. I'd like to know, is there something, there doesn't have to be obviously a Nobel laureate's name to it, but is there a particular nomenclature that this sort of analysis is known by in the field? Or is this just, as you put it, Your Honor, Mr. Fischel's own logical reasoning?

Page 13

JUDGE MEROW: There always has to be an initial, this could become known as the Fischel theory later on. So --

THE WITNESS: Forgive me, Your Honor, I'm here, this is Dan Fischel. I'm listening to the colloquy and flattered that anything that I might say could get that level of distinction. Very unlikely.

JUDGE MEROW: Right. Well, Mr. Fischel, if you do know of any past literature or expertise or something of this nature, fine, answer the question. If you don't, then that's fine too, you just have to say that you, you're not sure of any, if anyone has reached this level of analysis before, but sufficiently to put it in papers and be awarded prizes for it.

THE WITNESS: Your Honor, I understand your, the import of your comments. I've tried to do that, I believe in my previous answers but I'm happy to do it again so that there's a clear record of the issue as presented to you.

JUDGE MEROW: All right. I'm satisfied with that. Anything else, Mr. Shapiro?

MR. SHAPIRO: Not at the present time, Your Honor. I appreciate your assistance. I hope we don't have anything further.

Page 14

JUDGE MEROW: Okay. Fair enough. Call in if you do.

MR. SHAPIRO: Thank you very much.

MS. POWELL: Thank you, Your Honor.

JUDGE MEROW: Thank you Ms. Powell and Mr. Crawford. I'll sign off now.

(Whereupon, at 2:36 p.m., the conference was adjourned.)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - -X

CERTIFIED COPY

YANKEE ATOMIC ELECTRIC :
COMPANY, MAINE YANKEE ATOMIC, :
POWER CO., and CONNECTICUT :
YANKEE ATOMIC POWER CO., : C.A. Nos. 98-126C,
Plaintiffs, : 98-154C, 98-474C
v. :
UNITED STATES OF AMERICA, : (Senior Judge Morrow)
Defendant. : (VOLUME IV)

- - - - - - - - - - - - - - - - - - -X

Washington, D.C.

Wednesday, October 9, 2002

Deposition of DANIEL FISCHEL, a witness herein, called for examination by counsel for Plaintiff in the above-entitled matter, pursuant to notice, the witness being duly sworn by LORI G. MACKENZIE, a Notary Public in and for the District of Columbia, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., 9th Floor, Washington, D.C., at 9:06 a.m. on Wednesday, October 9, 2002, and the proceedings being taken down by Stenotype by LORI G. MACKENZIE, RPR, and transcribed under her direction.

One of them was do you have knowledge of what the requirements are for a nuclear utility to store greater than Class C waste.

Does this legal brief enable you to check on that?

MS. POWELL: Same objection as yesterday. You can answer.

THE WITNESS: I don't know, if you want me to look again.

BY MR. SHAPIRO:

Q. But, the question is, you don't know what the requirements are, do you?

A. No. I would have to, if I wanted to figure them out, I would have to check, to research, whatever.

Q. And, it is not that you knew the requirements, but simply couldn't remember yesterday or today, it is not something that you are expert on.

A. That is for sure.

Q. And, in fact, you could read the whole legal brief, but I will represent to you it is not in that legal brief, it is not something that you knew and forgot.

MS. POWELL: Objection, argumentative.

THE WITNESS: Well, that is a different issue in the sense that having looked at a lot of material, it is possible that, at some point in time, while looking to familiarize myself with certain issues in the case, trying to get background for the case, I did see some discussion of the subject matter of your various questions of greater than Class C waste, and just don't remember. That is possible.

But, I do not hold myself out as an expert on the technical requirements of storing or disposing of greater than Class C waste.

BY MR. SHAPIRO:

Q. All right. Let's go to a new subject. We spoke at some length yesterday, and the first two sessions of your deposition, about your opinion that Plaintiffs's damage claim, particularly Mr. Graves's expert witness report, his opinions are speculative.

And I want to ask how you would compare that to damage analysis in a different legal case, which you are familiar with, Lexicon v. Milberg Weiss case. Are you familiar with that case?

A. Very familiar with it.

MS. POWELL: I am just going to say that