IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE CONCERNING
THE GOVERNMENT'S ALTERNATIVE DAMAGES SCENARIOS

Defendant, the United States, respectfully responds to the motion *in limine* that plaintiff, Yankee Atomic Electric Company ("Yankee Atomic"), filed to preclude the Government from presenting evidence concerning four alternative damages scenarios that may be offered by the Government's expert damages witness at trial.

SUMMARY OF ARGUMENT

Among other reasons, Yankee Atomic's motion should be denied as premature. As the defendant, the Government is tasked with responding to the evidence and damages theories presented by the Yankee plaintiffs[1] in their cases in chief. To that end, the Government's experts have presented analyses of five damages scenarios, each based upon unique assumptions concerning the rate and schedule of acceptance of spent nuclear fuel ("SNF") and a variety of combinations of wet and dry storage alternatives that would have been or – given the exponential cost increases associated with dry storage construction – should have been employed by the

[1] The terms "the Yankee plaintiffs" and "the Yankees" refer to the plaintiffs in Yankee Atomic Electric Company v. United States, No. 98-126C (Fed. Cl.); Connecticut Yankee Atomic Power Company v. United States, No. 98-154C (Fed. Cl.); and Maine Yankee Atomic Power Company v. United States, No. 98-474C (Fed. Cl.). The Government requests that this motion be deemed applicable to each of the three Yankee cases listed above.

Yankees. Yankee Atomic's motion primarily is founded upon its contention that it will introduce evidence concerning only the "exchange scenario" ("Scenario 4") – Yankee Atomic's belief that exchanges of acceptance allocations with other nuclear utilities would have resulted in early removal of all of Yankee Atomic's spent nuclear fuel – and that the presentation of any alternative scenario by the Government would be improper. However, prior to the presentation of any evidence by Yankee Atomic, it is impossible to determine whether one or more of the alternative scenarios properly would be before the Court, or will be offered, in connection with the Government's responsive case. To the extent that Yankee Atomic ultimately presents evidence that goes beyond Scenario 4 or seeks damages predicated upon alternative "non-breach" and "breach" world assumptions, the Government's alternative scenarios would be relevant and admissible. As a result, any decision to preclude the presentation of the alternative damages scenarios should be reserved until after Yankee Atomic has completed its case in chief <u>and</u> until the Government offers an alternative damages scenario into evidence.

In addition to being premature, Yankee Atomic's motion appears to be based upon a serious misconception of its burden of proof at trial and upon mischaracterizations of the Government's pretrial filings. Yankee Atomic appears to believe that, where its stipulations of fact have been contested but have not been expressly contradicted – that is, where the Government has not provided a rote, alternative finding in its proposed stipulations of fact – the issue has not been joined and the proposed stipulation must be accepted by this Court as uncontested. Not only is the mechanical application of the parties' proposed stipulations of fact absurd, Yankee Atomic ignores the burden of proof that it must carry upon each and every factual finding it asks this Court to enter.

Yankee Atomic also mischaracterizes the alleged deficiencies in the Government's stipulations of fact. In fact, the assertion that the Government has failed to dispute many of Yankee Atomic's key proposed stipulations of fact is belied by the Government's Amended Proposed Stipulations of Fact filed with this Court. Yankee Atomic also ignores the significant pretrial briefing upon issues such as GTCC, failed fuel and exchanges – as well as numerous relevant exhibits and witnesses identified by the Government – through which the Government clearly challenges Yankee Atomic's entitlement to damages. Yankee Atomic must try its case, and it must prove each and every element of that case. Yankee Atomic's pretrial attempts to skirt that obligation should be denied.

## ARGUMENT

### I. YANKEE ATOMIC'S MOTION SHOULD BE DENIED AS PREMATURE

The Government's expert reports, and each of the five scenarios presented within those reports, are intended to respond to evidence and damages theories that may be offered by Yankee Atomic at trial. Therefore, it is premature to exclude scenarios that may be responsive to evidence or to alternative damages theories presented by Yankee Atomic in its case in chief. See, e.g., Sperling v. Hoffman-La Rouche, Inc., 924 F. Supp. 1396, 1413 (D.N.J. 1996) (denying as premature motion *in limine* to preclude offer of evidence upon grounds that "[i]t is often useful to wait to see how trial unfolds."); Violette v. Armonk Assoc., L.P., 849 F. Supp. 923, 931 (S.D.N.Y. 1994) (denying motion *in limine* upon grounds that "this matter is not on trial, and it is unknown whether any of these items will be offered as evidence, and further, in what context these documents may be used at the time of trial."); Arnett v. Aspin, 846 F. Supp. 1234 (E.D. Pa. 1994) (denying as premature motion *in limine* to exclude evidence); United States v. Feola, 651

F. Supp. 1068, 1129 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989) (denying motion *in limine* as premature because it would be "improper . . . to speculate as to the circumstances that might surround the introduction of this evidence at trial.").

To the extent that Yankee Atomic's evidence and damages theories ultimately are limited to Scenario 4 – and accepting the consequences of that limitation (discussed in Section IV below) – the Government may not seek to introduce any alternative damages scenario in its responsive case. However, it would not be correct, prior to the presentation of any evidence, to exclude the alternative damages scenarios altogether. Instead, Yankee Atomic's motion should be revisited following the presentation of the Yankees' cases, and only upon the Government's affirmative presentation of one or more of its alternative scenarios to this Court.

## II. YANKEE ATOMIC'S MOTION IS PREDICATED UPON A SERIOUS MISCONCEPTION OF YANKEE ATOMIC'S BURDEN OF PROOF AT TRIAL

Yankee Atomic's motion appears largely to be based upon a misconception as to the burden of proof that it bears at the trial of this matter. Yankee Atomic appears to believe that even though the Government fully complied with its obligations to "circle" proposed finds of fact that it contested, any of Yankee Atomic's proposed stipulations of fact that are not met by the Government with mechanical, contradictory stipulations are uncontested and, by implication, must be accepted by the Court. Amazingly, this belief extends to critical assumptions underlying Yankee Atomic's damages claim – without which causation cannot be established – including Yankee Atomic's contention that exchanges would have occurred in the "would have been world" and would have occurred in the manner set forth in the Graves expert report. See, e.g., Plaintiff's Motion, at 10-11.

Yankee Atomic's hopes to avoid trial concerning key damages assumptions based upon its mechanical application of the Government's proposed stipulations of fact fails as a matter of law. Contrary to Yankee Atomic's unsupported contentions, Yankee Atomic bears the burden of proof upon each and every element of its damages claim. See Doninger Metal Prods., Corp. v. United States, 50 Fed. Cl. 110, 128 (2001) (plaintiff bears burden of establishing liability and causation at trial); Jones v. United States, 49 Fed. Cl. 516, 521 (2001) (trial burden discussed in connection with Rule 56 motion); Alder v. United States, 7 Cl. Ct. 542, 547 (1985) (plaintiff bears burden of proof concerning alleged improper land valuation); Ball v. United States, 1 Cl. Ct. 180, 184 (1982) (discussing trial burdens in connection with summary judgment). As a result, Yankee Atomic must establish each of its proposed stipulations of fact by a preponderance of the evidence, regardless of whether the Government has expressly contradicted each proposed stipulation with its own proposed stipulation of fact. Yankee Atomic's burden extends to whether it is more likely than not that exchanges would have occurred in the non-breach world, as it alleges, and whether any exchanges would have occurred in the manner set forth in its expert reports.[2]

Yankee Atomic also bears the burden of establishing damages arising from its exchange assumptions with reasonable certainty. Home Sav. of Am., F.S.B. v. United States, 57 Fed. Cl. 694, 727 (2003). Yankee Atomic's damages model cannot be based upon "mere speculation and hypotheticals." Id. (citing Franklin Fed. Sav. Bank v. United States, 55 Fed. Cl. 108 (2003); Willems Indust., Inc. v. United States, 155 Ct. Cl. 360, 295 F.2d 822 (1961)). As the Court is

---

[2] Specifically, Yankee Atomic must prove that its theory that exchanges of SNF acceptance allocations would have occurred in a specific manner that would result in early SNF acceptance for all of the Yankees is not pure speculation.

well aware, speculative damages are not compensable. See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562-63 (1931); William Green Constr. Co. v. United States, 201 Ct. Cl. 616, 626, 477 F.2d 930, 936-37 (1973), cert. denied, 417 U.S. 909 (1974); Neely v. United States, 152 Ct. Cl. 137, 285 F.2d 438, 443 (1961). If Yankee Atomic fails to establish that exchanges would have occurred in the precise manner underlying its damages claim, or otherwise fails to prove its damages with reasonable certainty, Yankee Atomic's damages claims also fail.

Yankee Atomic's motion ignores the burdens that Yankee Atomic possesses as a matter of law and seeks, instead, to focus upon the mechanical application of the stipulations of fact submitted by the parties as evidence of what issues have been joined and what facts are in dispute. Even assuming Yankee Atomic is correct in asserting that the Government has not met certain key proposed stipulations with contrary stipulations – and it is not – Yankee Atomic would still be required to prove each and every finding it seeks from this Court, except those to which the Government expressly agreed, by a preponderance of the evidence.

## III. YANKEE ATOMIC MISSTATES THE GOVERNMENT'S STIPULATIONS OF FACT AND IGNORES THE PROCEDURAL RECORD IN THIS CASE

Yankee Atomic's motion is predicated upon allegations that many issues central to Yankee Atomic's damages claim and the Government's defenses to that claim either are not contested by the Government or are not affirmatively offered as proposed factual stipulations by the Government. The alleged deficiencies include, among others, stipulations concerning the exchanges assumption that forms the factual predicate for Yankee Atomic's entire damages

claim, and stipulations concerning the collection of Greater-Than-Class-C waste ("GTCC") and failed fuel by the Department of Energy ("DOE").

Yankee Atomic seriously misstates the Government's proposed stipulations of fact and ignores the signification procedural history in this case. In contrast to Yankee Atomic's assertions, and pursuant to this Court's instruction, the Government circled each stipulation of fact proposed by Yankee Atomic that we would be contesting at trial. Yankee Atomic's argument fairs no better when analyzing specific alleged deficiencies in the Government's proposed stipulations. For example, Yankee Atomic contends that the Government's proposed stipulations of fact do not dispute that "exchanges that are provided for explicitly in the parties' contract would have occurred in the non-breach world." Plaintiff's Motion, at 11 n.6. Likewise, Yankee Atomic asserts that the Government fails to ask this Court to find as untrue its assertion that DOE would have engaged in a campaign-based removal schedule, as opposed to adhering to the oldest-fuel-first schedule required by the Standard Contract. Id. at 11 n.7; see id. at 13 (alleging Government has disclosed no position in its stipulations of fact upon the issue of whether DOE would have removed "failed fuel at the same time as it completed removal of the rest of Yankee Atomic's fuel");[3] id. at 14 (same assertions, but with respect to collection of GTCC waste). These contentions are either blatantly false or are based upon a serious misunderstanding of the Government's litigation position upon these key issues.

---

[3] Based upon this assertion, Yankee Atomic alleges that the Government should be precluded from presenting any evidence upon this point. Even if Yankee Atomic is correct concerning the Government's stipulations of fact – and it is not – Yankee Atomic certainly has had notice through the pretrial briefing, the expert reports, and the Government's exhibit and witness lists that failed fuel would be an issue in this case.

Concerning the central issue of exchanges – the issue upon which all of Yankee Atomic's damages hinge – the Government proposes stipulations of fact that concern the viability of the exchanges underlying Yankee Atomic's damages claim. For example, the Government proposes that this Court find that no purchaser entered into any exchange agreement or submitted any exchange requests to DOE (Amended Proposed Stipulations ¶ 102), and that the Yankees "were unable to obtain an agreement with any other utility to exchange their SNF acceptance allocations for reasons unrelated to DOE's breach of the Standard Contract." Id. ¶ 103. Indeed, contrary to Yankee Atomic's assertion that the Government's stipulations refer only to the breach world (Plaintiff's Motion, at 11), the Government's stipulations expressly involve the "non-breach world" and rely upon documents that pre-date the Government's breach by five years. Amended Proposed Stipulation ¶ 103 (citing 1993 letter from Yankee Atomic to OCRWM). Moreover, the Government proposes at least 14 additional stipulations that contradict Yankee Atomic's theory of exchanges (id. ¶¶ 149-156 (including subparts)), and another 16 stipulations relating to the speculative Graves model that underpins Yankee Atomic's exchanges theory. Id. ¶¶ 157-170. Yankee Atomic also ignores numerous Government exhibits detailing the failed attempts undertaken by the Yankees to exchange SNF allocations with other utilities. Yankee Atomic likewise omits any reference to the Government's pending motion to strike the speculative Graves model upon which its entire claim hinges. As this Court has recognized, the issue of exchanges – an assumption upon which Yankee Atomic's entire damages claim will rise or fall – has been joined. See Order, at 3 (June 26, 2003).

Yankee Atomic's assertion that the Government "never asks this Court to make a finding, and ultimately takes no position regarding, whether, if DOE had otherwise been performing the

contract as intended beginning in 1998, it would *in fact* have removed Yankee Atomic's GTCC waste along with its spent fuel" (Plaintiff's Motion, at 14) is similarly incorrect. Moreover, the contention that the Government should therefore be "precluded from introducing evidence to contest Yankee Atomic's properly-alleged position [that GTCC would have been accepted] at trial" (id.) is belied by the Government's proposed stipulations. Though Yankee Atomic bears the burden of proof upon each and every element of its claim, the Government expressly respectfully requested that this Court find that "[h]ad DOE fully performed the Standard Contract, [Yankee Atomic] would have still possessed and would still be required to store SNF, failed fuel and GTCC." Amended Proposed Stipulations ¶ 142; see id. ¶ 143.[4] Yankee Atomic's remaining assertions concerning the Government's alleged silence upon failed fuel, GTCC, and acceptance schedules are equally contradicted by the proposed stipulations. See, e.g., id. ¶¶ 104-111 (GTCC not covered by the Standard Contract); id. ¶¶ 136-141 (Yankee Atomic would have possessed GTCC and failed fuel even if DOE had performed); id. ¶¶ 116-120 (failed fuel need not be accepted pursuant to current allocations); id. ¶¶ 76-82, 171 (examples of stipulations concerning rate). Moreover, contrary to Yankee Atomic's position, the Government has proposed stipulations of fact that go to Scenarios 1 through 3 and Scenario 5 from the Government's expert damages report. See e.g., id. ¶¶ 172-179.

---

[4] Yankee Atomic's motion ignores the significant briefing that has placed the issue of GTCC waste upon the Yankees' damages claim squarely at issue at trial, as well as the numerous exhibits and witnesses identified by the Government concerning GTCC waste and the Standard Contract. In fact, this Court has recognized that, based "[u]pon review of the substantial evidence cited by the parties it appears that, at present, defendant has the better argument as to the lack of a contract obligation for defendant to dispose of GTCC." Order, at 4 (June 26, 2003).

Plainly, the Government is contesting the factual bases for Yankee Atomic's damages claim. To that end, the Government has proposed numerous stipulations of fact, has identified countless exhibits and witnesses, and has engaged in significant pretrial briefing. All of the facts and issues to be tried by this Court have been joined by the Government, and Yankee Atomic's "evidence" will be met by significant cross-examination and the presentation of contradictory evidence.

## IV. THE IMPLICATIONS OF YANKEE ATOMIC'S MOTION TO THE TRIAL OF THIS MATTER ARE SIGNIFICANT

The four scenarios subject to Yankee Atomic's motion are founded upon SNF acceptance assumptions that differ from the exchange assumption underlying Yankee Atomic's damages claim. That is, Scenarios 1 through 3 and Scenario 5 all assume different dates upon which SNF should have been removed from the Yankees' sites, based upon application of the contractual "oldest-fuel-first" requirement and varying rates of acceptance that the Court potentially could consider as a contractual "rate" of SNF acceptance. Additionally, the assumptions account for different courses of action that potentially could have been undertaken – and, based upon evidence developed in discovery, likely would have been undertaken – by the Yankees under different acceptance scenarios. By evaluating each of the scenarios the Government is attempting to identify the effects of a variety of acceptance scenarios that this Court potentially could consider in the event that Yankee Atomic fails to establish exchanges likely would have occurred as set forth in the Graves report.

As this Court is aware, Yankee Atomic seeks to have any alternative theory of causation and damages barred from this Court's consideration. Instead, Yankee Atomic purportedly is

resting its entire damages claim upon the exchange assumption. See Deposition of Dr. Kenneth Wise, at 158:2-10; see also id. at 158:18-159:2 (exchanges assumption "key component" for determining causation). As a result, if this Court finds that Yankee Atomic has failed to meet its burden concerning the exchanges assumption underlying its damages claim, Yankee Atomic will be entitled to nothing. See Indiana Michigan Power Co. v. United States, No. 98-486C, 2004 WL 1161880, at *16-17 (Fed. Cl. May 21, 2004) (in awarding no damages to plaintiff, noting that plaintiff's future damages rely in significant part upon full core reserve assumption that was not established at trial).

The Government expects to establish at trial that Yankee Atomic's proposed SNF acceptance scenario – resulting in the acceptance of all of Yankee Atomic's SNF within a year or two after 1998 – is simply insupportable. If the Court agrees with the Government's position, Yankee Atomic has left the Court with no other means of evaluating whether DOE's delay in beginning SNF acceptance actually caused any of Yankee Atomic's alleged damages. Our concern is that, during trial, Yankee Atomic will attempt to introduce evidence to provide some evidence of causation based upon other acceptance theories or that it will ask the Court to award damages through some type of "jury verdict" method of damages analysis. Of course, a "jury verdict" award would be wholly inappropriate in this case, given that Yankee Atomic could have established its damages with actual evidence and has failed to do so because it elected not to present evidence based upon alternative SNF acceptance scenarios. See Columbia First Bank, F.S.B. v. United States, 60 Fed. Cl. 97, 109 (2004) (jury verdict available only where plaintiff demonstrates justifiable inability to substantiate damages through any more reliable method).

To the extent that Yankee Atomic affirmatively disclaims any ability to recover any damages in this litigation if the Court rejects Yankee Atomic's "exchanges" theory of SNF acceptance, the Government may not need to present any of its alternative scenarios. Nevertheless, the Government should have the option of presenting defenses to any efforts that Yankee Atomic makes at trial to rely upon scenarios or "jury verdict" arguments outside the context of the single acceptance scenario upon which it is currently relying. In addition, the Government should have the option of establishing at trial the substantial effects that even slight changes in the mandatory minimum SNF acceptance rates that the Court, in any trial of this action, might identify as contractually required.[5] Any such evidence should establish that Yankee Atomic's damages claims are simply unwarranted.

CONCLUSION

For the reasons outlined above, the Government respectfully requests that Yankee Atomic's motion *in limine* be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

[5] As we have established in other briefing in this case, and contrary to Yankee Atomic's assertions, damages in this or any other SNF case pending before this Court cannot be based upon DOE's failure to accept SNF at a rate that the Court or a plaintiff believes DOE "would have" used had it begun SNF acceptance in 1998. Instead, the Court must identify that minimum mandatory rate at which DOE was obligated to perform in order to satisfy its contractual obligations to "begin" SNF acceptance by January 31, 1998.

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
RUSSELL A. SHULTIS
MARIAN L. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

June 14, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of June 2004, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING THE GOVERNMENT'S ALTERNATIVE DAMAGES SCENARIOS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.