IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C (Senior Judge Merow) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO YANKEE ATOMIC'S MOTION
TO EXCLUDE TESTIMONY FROM KENNETH W. BLAIR

Plaintiffs, Yankee Atomic Electric Company ("Yankee Atomic"), Maine Yankee Atomic Power Company ("Maine Yankee"), and Connecticut Yankee Atomic Power Company ("Connecticut Yankee"), (collectively, "the Yankees"), have sought to exclude expert testimony from the Government's scheduling expert, Kenneth W. Blair, at trial.[1] For the reasons discussed below, the Yankees' motion should be denied.

SUMMARY OF THE ARGUMENT

Each of the Yankees has elected to transfer its spent nuclear fuel ("SNF") from its spent fuel pool ("wet storage") to dry storage casks ("dry storage") on an Independent Spent Fuel storage Installation ("ISFSI"). The Yankees are seeking to recover both the construction costs of building their ISFSIs as well as the cost of maintaining their SNF in wet storage even though the Yankees admit that they have experienced delays in the course of these construction projects which have caused them to keep their SNF in wet storage longer than anticipated and have increased the Yankees' claims against the Government. The Government intends to offer

---

[1] As noted in the Yankees' motion, this response applies to Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C and Maine Yankee Atomic Power Co. v. United States, No. 98-474C as well as Yankee Atomic Electric Co. v. United States, No. 98-126C.

testimony from a scheduling expert, Mr. Kenneth Blair, to quantify the delay so that the Yankees' excess wet storage costs can be removed from their claims.

The Yankees have asked the Court to exclude Mr. Blair's testimony because his opinion is allegedly inconsistent with this Court's August 29, 2003 order. Additionally, the Yankees contend that Mr. Blair's opinion is nothing more than an inadmissible legal conclusion. Moreover, the Yankees argue that Mr. Blair's opinion is unreliable because he was denied access to documents that the Yankees retained, because he is continuing to monitor the progress of the Yankees' ISFSI projects, and because he collaborated with his colleagues in writing his report. Because the Yankees' arguments are based upon the wrong law, a jaundiced reading of Mr. Blair's opinion, and an absurd view of an expert's duties, the Yankee's motion to exclude Mr. Blair should be denied.

## ARGUMENT

### I. MR. BLAIR'S OPINION IS CONSISTENT WITH THE COURT'S ORDER

Assuming that the Government is offering Mr. Blair's opinion to establish that the Yankees failed to satisfy their duty to mitigate, the Yankees argue that Mr. Blair's opinion is not relevant to issues relating the management of their ISFSI projects. (Pl. Br. pp. 2-5). The Yankees contend that the Government must show that they failed to exercise reasonable commercial judgment when they experienced delays in these projects. Yankee Atomic Electric Company v. United States, No. 98-126, slip op. at 3 (Fed. Cl. Aug. 29, 2003) (citing Northern Helex Co. v. United States, 207 Ct. Cl. 863, 883, 524 F.2d 707, 718 (1975)).

However, the Government does not argue that the Yankees attempted to mitigate damages by building their ISFSIs. The evidence shows that factors other than the pure need for

spent fuel storage caused the Yankees to shift to dry storage. Moreover, to the degree that the Yankees wish to argue that their ISFSI projects mitigated their damages, it is clear that their ISFSIs were failed mitigation attempts that exceeded the cost of continued wet storage. Thus, Mr. Blair's opinion is relevant to show that, through no fault of the Government, the Yankees are improperly seeking damages arising from delays in their ISFSI projects which extended the period during which the Yankees have claimed both wet and dry storage costs. That is precisely the standard that was set out by the Court in its December 24, 2003 order. Yankee Atomic Electric Company v. United States, No. 98-126, slip op. at 3 (Fed. Cl. Dec. 24, 2003) ("Plaintiff cannot complain in that its decision to move to dry storage was, at least in part, premised on saving cost. If this saving did not occur, through no fault of the government, additional damages over the cost of assumed continued wet storage should remain plaintiff's responsibility.") Therefore, Mr. Blair's opinion addresses precisely the legal standard stated in this Court's order.

## II. MR. BLAIR'S OPINION IS RELEVANT

The Yankees have characterized Mr. Blair's opinion as an "inadmissible legal conclusion" because he stated that "Yankee Atomic is responsible for its contractors." (Pl. Br. p. 5-7). It is well-settled that a nonbreaching party has a duty to avoid incurring damages as a result of the other party's action. Midwest Industrial Painting of Florida, Inc. v. United States, 4 Cl. Ct. 124 (1983) (citing Ford Motor Co. v. Dallas Power & Light Co., 499 F.2d 400, 414-15 (5th Cir. 1974); Alcoa Steamship Co. v. Charles Ferran & Co., 251 F. Supp. 823, 832 (E.D. La. 1966) aff'd 383 F. 2d 46 (5th Cir. 1967) cert. denied 393 U.S. 836 (1968)) Just as a contractor is responsible for the performance of its subcontractor, see Johnson Management Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1252-53 (Fed. Cir. 2002), the Yankees are responsible for delays in

the caused by their contractors' untimely performance. Those delays gave rise to increased damages claims because the Yankees are now seeking greater wet storage costs than they would have experienced if the had moved their SNF to dry storage in a timely way.[2] Damages must be direct - there can be no intervening incident to the breach, the cause must produce the effect inevitably and naturally, not possibly or even probably. Ramsey v. United States, 101 F. Supp. 353, 356 (Ct. Cl. 1951) (citing Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)). The Yankees admit that the Government did not cause the delays that increased their damages claims. (Pl. Br. p. 4) Therefore, whether the Yankees' delays were caused by the Yankees or its contractors, those costs cannot be charged to the Government.[3]

As he stated in his report, Mr. Blair was directed to quantify the delay incurred in each of the Yankees' ISFSI projects and to determine the causes of the critical delays. Mr. Blair was not required to distinguish between the fault of the Yankees versus that of their contractors. All that was required was analysis of the amount of the Yankees' delays and a determination as to whether those delays were caused by the actions or inactions of the Government. Mr. Blair's

---

[2] In the case of Connecticut Yankee, the causes of those delays are being litigated between Connecticut Yankee and its decommissioning contractor, Bechtel, Inc. In addition to its excess wet storage costs, Connecticut Yankee is also seeking to recover a partial settlement of one of Bechtel's delay claims from the Government.

[3] Further, to the extent that the Yankees claim that their efforts to build ISFSIs were in an attempt to mitigate their damages, they were required to mitigate in a manner that was at the "least cost" to the Government. LaSalle Talman Bank F.S.B. v. United States, 45 Fed. Cl. 64, 111 (1999), vacated in part on other grounds , 317 F.3d 1363 (Fed. Cir. 2003). To the extent that the Yankees did not properly monitor their contractors, that their contractors incurred unnecessary costs (for which the Yankees presumably could charge the contractors), or that the Yankees themselves were responsible for unnecessary costs, the Government should not be responsible for those costs under the "least cost" principle and the Yankees' obligation, pursuant to their duty to mitigate, to minimize the costs incurred as part of mitigation.

opinions satisfy that criteria. Therefore, Mr. Blair's opinion is clearly relevant.[4]

## III. MR. BLAIR'S OPINION IS NOT INCOMPLETE BECAUSE HE IS CONTINUING TO REVIEW INFORMATION REGARDING THE YANKEES' ISFSI PROJECTS

The Yankees argue that Mr. Blair's opinion is incomplete and unreliable because he is continuing to review information regarding their ISFSI projects and because Appendix 3 to his opinion lists the documentation that the Yankees failed to provide. (Pl. Br. pp. 8-9). The Yankees' contention that Mr. Blair admitted that his opinion is "incomplete" is simply wrong. Mr. Blair stated that his opinion was based upon the information that he had available to him. That Mr. Blair admits that his opinion could change if he discovered that the facts, as he understands them, are incorrect is a truism regarding the basis of deductive reasoning - if the facts upon which an opinion was based were changed, the conclusion that is drawn from those facts might change as well. Nor is Mr. Blair's opinion incomplete because he's continuing to review information as it is being gathered. Connecticut Yankee's ISFSI project is currently under construction. The Government continues to monitor information that is issued regarding the status of Connecticut Yankee's ISFSI project. Additionally, even after the Yankees failed to provide information regarding their ISFSI projects, the Government continued to gather information from third-party sources. It would be curious, to say the least, if Mr. Blair, having

[4] The Yankees also suggest that Mr. Blair's opinion should be excluded because it based upon his experience. (Pl. Br. p. 7). Even though only time Mr. Blair based his opinion solely upon his experience was in response to the question regarding the Yankees being responsible for their contractors, it is customary for an expert to apply his experience in arriving at an opinion. See Fed.R.Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.") (emphasis added).

only recently gained access to relevant information, elected to ignore it because he had finished writing his report.

The Yankees' suggestion that Mr. Blair's opinion should be excluded because he concedes that the Yankees possess documents that Mr. Blair would like to review, but that the Yankees refused to produce, is circular nonsense. Because the Yankees have the documentation that Mr. Blair listed in the Appendix 3, the Yankees could easily produce those documents if they disputed the facts upon which Mr. Blair's opinion is based. Rather than producing those documents to challenge Mr. Blair's opinion, the Yankees seek to discredit Mr. Blair because he did not have them. It is simply unfair for the Yankees to challenge Mr. Blair's opinion because he lacked the documents that the Yankees refused to provide.

## IV. MR. BLAIR'S OPINION IS NO LESS CREDIBLE BECAUSE HE WROTE HIS REPORT IN COLLABORATION WITH COLLEAGUES

The Yankees also challenge Mr. Blair's opinion because he wrote his report in collaboration with colleagues in his office. (Pl. Br. pp. 9-11). Mr. Blair was not alone when he wrote his report. The task began with his charging several colleagues with the tasks involved in analyzing the Yankees' ISFSI projects. Mr. Blair supervised those colleagues while they gathered information and reported their findings to him. When it came time to begin drafting the report, Mr. Blair did so along with the colleagues who performed the initial analysis. The Yankees have cited no authority for the proposition that Mr. Blair must be the sole author of his report. Given that there were three ISFSI projects and that Mr. Blair is a Principal in his firm, it would be odd, to say the least, if Mr. Blair were the only person who worked on his expert report. That fact does not make his opinion or report less credible.

## V. THE YANKEES HAVE BEEN PROVIDED WITH ALL THE DRAFTS OF MR. BLAIR'S REPORT

The Yankees' final argument is that Mr. Blair failed to make drafts of his report available to the Yankees because he discarded some of them. (Pl. Br. pp. 12-13). This argument was addressed before Mr. Blair's deposition concluded:

By Mr. Shultis:

Q. Ken, you testified earlier today about the types of things you threw out that weren't part of the work papers we provided Robert. Could you explain that a little further?

A. There were a variety of categories of documents I prepared.

I take notes when I have phone calls so I can follow up on issues. I follow up on those issues and I throw out the notes to make sure that I complete those kinds of tasks administratively. I discard those in the normal course of business.

The other thing I do is I take notes on documents and I believe I've shared all those that I have on Friday with the other side. A lot of that is my handwriting.

During the course of the analysis, in order to better understand various issues I take notes.

Sometimes those notes make it into a chronology and sometimes those notes make it into a graphic that ultimately is adopted in the analysis but in all instances I discard those in the normal course of what I do, and I've always done that.

So, I believe that summarizes what you're asking with respect to notes that I've taken since I started on the job.

Q. The information, the final work product has made it into the work product documents that we provided Robert?

A. Absolutely, yes.

(Blair Deposition, May 3, 2004, pp. 229-30, App. 2).

In other words, Mr. Blair admitted that he threw out scrap paper in the course of forming

his opinion and writing his report, and nothing more. No "drafts" or any other information regarding Mr. Blair's analysis were withheld. The Yankees' efforts to insinuate something more sinister is wholly unsupported and, in any event, provides no basis for excluding Mr. Blair as an expert witness.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's motion to exclude testimony from Kenneth W. Blair

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

June 14, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on this ___ of June, 2004, I caused to be placed in the United States mail (first-class, postage prepaid), and served by telecopy, a copy of "DEFENDANT'S RESPONSE TO YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM KENNETH W. BLAIR" to:

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005-3305

s/Harold D. Lester, Jr.