# APPENDIX

# TRANSCRIPT OF PROCEEDINGS



In the United States Court of Federal Claims

-----------------------------------x

Yankee Atomic Electric Company :
: NO. 98-126C
v. :
:
United States of America :

-----------------------------------x

May 3, 2004

**DEPOSITION OF:**

**Kenneth W. Blair,**

a witness, called by counsel pursuant to notice, commencing at 9:30 a.m., which was taken at Spriggs and Hollingsworth, 1350 Eye St., NW, Washington, DC

This transcript has been completely indexed for your convenience. It will help you locate the testimony you want **FAST**. The index is located in the back pages of this volume.

Overnite
Court Reporting Service
Serving Washington, D.C. metro area
(301) 593-0671

MR. SHULTIS: I'd just like to ask Ken one question about something he testified about earlier.

CROSS EXAMINATION:

BY MR. SHULTIS:

Q. Ken, you testified earlier today about the types of things you threw out that weren't part of the work papers we provided Robert. Could you explain that a little bit further?

A. There were a variety of categories of documents I prepared.

I take notes when I have phone calls so I can follow up on issues. I follow up on those issues and I throw out the notes in order to make sure that I complete those kinds of tasks administratively. I discard those in the normal course of business.

The other thing I do is I take notes on documents and I believe I've shared all those that I have on Friday with the other side. A lot of that is my handwriting.



During the course of the analysis, in order to better understand various issues I take notes.

Sometimes those notes make it into a chronology and sometimes those notes make it into a graphic that ultimately is adopted in the analysis but in all instances I discard those in the normal course of what I do, and I've always done that.

So I believe that summarizes what you're asking with respect to notes that I've taken since I started on the job.

Q. The information, the final work product has made it into the work product documents that we provided to Robert?

A. Absolutely, yes.

Q. And as an example -- and I thought this could illustrate it -- exhibit number nine which is your handwritten graphic notes, I think you told me earlier that this wasn't your first draft but this has all the information that you put together in your analysis.

A. That's an example of it. I think I



started up here and I quickly ran out of space, I threw it away and I ended up getting it on one piece of paper.

That's an example. I did not keep the original start to that exercise.

MR. SHULTIS: I just wanted to make sure you understood what it was he was talking about that he threw out versus what he kept. I think that once you take a look at this, you can understand you don't do it on the first try, at least I certainly couldn't.

Those are all the questions I have.

MR. SHAPIRO: Let me just clarify with respect to the notes.

RE-DIRECT EXAMINATION:

BY MR. SHAPIRO:

Q. I believe Mr. Shultis asked you whether the final work product has made it into the work product documents that you provided to the plaintiffs and you said "Absolutely, yes."

The final work product made its way to us



but the notes themselves would have been discarded in the ordinary course?

A. Yes, unless I'm not understanding your question correctly.

Q. You did.

Those notes might include, for example, your consideration of issues that ultimately didn't find their way into the final summary of opinion that was submitted?

A. Certainly notes of administrative issues as to when things were to be done or due or copied or whatever, certainly they never made their way into work product.

But notes in general I followed through on and discarded.

I don't know how other to explain that.

MR. SHULTIS: Do you want to define "issues," explain what "issues" are?

MR. SHAPIRO: I don't need to. I'm satisfied with the clarification.

MR. SHULTIS: I mean, his