No. 98-126C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S OPPOSITION TO YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM DANIEL FISCHEL

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

June 16, 2004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

DEFENDANT'S OPPOSITION TO YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM DANIEL FISCHEL ........ 1

SUMMARY OF THE ARGUMENT ........ 1

ARGUMENT ........ 2

I. Yankee Atomic's Criticism Of Mr. Fischel's Opinions Regarding The Absence Of A Causal Link In Plaintiff's Damages Claim Is Based Upon A Fundamental Misunderstanding Of Those Opinions ........ 2

II. Yankee Atomic's Criticism Of Mr. Fischel's Opinions Regarding The Speculative Nature Of Mr. Graves' Model And Other Aspects Of Yankee Atomic's Damages Claim Is Similarly Unfounded ........ 5

A. Mr. Fischel's Determination That Yankee Atomic's Damages Claim Is Based Upon Speculative And Implausible Assumptions Will Aid The Court In Its Examination Of This Matter ........ 6

B. Mr. Fischel's Examination Of And Opinions Regarding The Assumptions Upon Which Yankee Atomic's Claim Is Built Will Aid The Court In Determining That Yankee Atomic's Damages Cannot Be Established By The Evidence Presented ........ 8

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) ..... 8

Kuhmo Tire Co. , Ltd. v. Carmichael,
526 U.S. 137 (1999) ..... 8

United States v. Barile,
286 F.3d 749 (4th Cir.2002) ..... 3

Westfed Holdings Inc. v. United States,
55 Fed. Cl. 544 (2003) ..... 8

## FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 702 ..... 7

Fed. R. Evid. 704 ..... 7

## OTHER AUTHORITIES

Weinstein's Federal Evidence (2d ed. 2001) ..... 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 98-126C<br>(Senior Judge Merow) |

DEFENDANT'S OPPOSITION TO YANKEE ATOMIC'S
MOTION TO EXCLUDE TESTIMONY FROM DANIEL FISCHEL

Pursuant to the Court's orders issued May 19, June 8 and June 14, 2004, defendant respectfully files this response to the motion to exclude the testimony of one of defendant's experts, Daniel Fischel, filed by plaintiff, Yankee Atomic Electric Company ("Yankee Atomic").[1] Yankee Atomic's motion is founded largely upon a misunderstanding of the scope and basis of Mr. Fischel's expert opinions in this matter.

SUMMARY OF THE ARGUMENT

Mr. Fischel, an expert in the field of law and economics who has testified repeatedly before this Court regarding damages models, will testify at trial regarding his opinions of the problems with the damages claims offered by the Yankees. Specifically, he is critiquing the damages model that Yankee Atomic's proposed expert, Mr. Graves, has created. In Mr. Fischel's opinion, the damages claims proffered by each of the Yankees are not built upon an analysis of damages arising from the Government's failure

[1] The Government requests that this opposition be deemed applicable not only to this case, but also to Connecticut Yankee Atomic Power Company v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Company v. United States, No. 98-474C (Fed. Cl.).

to begin acceptance of spent nuclear fuel from their facilities and the commercial nuclear industry in 1998. Instead, Yankee Atomic's damages are founded upon the "speculative and implausible" assumptions that the Government would have completed removal of SNF from each of the Yankees' facilities by a date certain. These assumptions are the result of the model of exchanges built by Mr. Graves. As set forth in his expert report and explained over four days of deposition, Mr. Fischel has examined Mr. Graves' model, the assumptions upon which it is based, and the results that it generates. Mr. Fischel has found them not be the measure of damages resulting from the Government's partial breach of contract.

## ARGUMENT

### I. Yankee Atomic's Criticism Of Mr. Fischel's Opinions Regarding The Absence Of A Causal Link In Plaintiff's Damages Claim Is Based Upon A Fundamental Misunderstanding Of Those Opinions

In paragraph seven of each of his reports, Mr. Fischel identifies his two principal conclusions from his review of the damages claims presented by each of the Yankees. Mr. Fischel's conclusions are:

1. The claimed damages do not result from DOE's failure to commence disposing of SNF and HLW by January 31, 1998

2. Plaintiff's damages claim is speculative because it depends on assumptions about future events, assumes that the DOE should have implemented a particular schedule for the disposal of Purchasers' SNF and HLW, assumes that DOE would accept Greater-Than-Class-C ("GTCC") waste and "failed fuel" under this acceptance schedule, and assumes that exchanges of allocation slots between program participants would minimize aggregate at-reactor storage costs.

Appendix to Yankee Atomic's Motion ("Pl. App.") 3, 48 and 91. The remainder of Mr. Fischel's report describes these conclusions in greater detail and the basis for these

conclusions. Mr. Fischel, in a deposition conducted over three-and-a-half days that resulted in a deposition transcript of more than 500 pages, further explained these opinions and the basis for them to counsel for Yankee Atomic. Despite this record, Yankee Atomic fails to understand the nature of Mr. Fischel's opinions regarding its damages claim.

Yankee Atomic criticizes Mr. Fischel's first opinion based upon the mistaken impression that Mr. Fischel is opining about the nature and scope of the Government's obligation to accept waste from utilities in 1998. In fact, Mr. Fischel's criticism of Yankee Atomic's damages claim is that it is not based upon any determination of the scope of that obligation followed by a determination of damages flowing from the breach of that obligation. Instead, as Mr. Fischel repeatedly explained during his deposition, Yankee Atomic's damages claim is "not linked to a failure to start but rather is linked on a series of speculative and implausible assumptions relating to the time of removal independent of the time of commencement." A. 7 (Tr. 47:9-13).[2] In Mr. Fischel's opinion, there is a "fundamental disconnect, a lack of causal connection between the alleged breach and the claimed damages." A. 5 (Tr. 36:10-12). Because of this "fundamental conceptual problem," A. 8 (Tr. 51:9), Yankee Atomic's experts have failed to "measure what the damages are as a result of failing to begin removal as of January 31, 1998." A. 11 (Tr. 66:7-9).

Yankee Atomic's contention that Mr. Fischel's opinion represents a legal conclusion that has already been rejected by the Court is confused and wholly

---

[2] "A. __" refers to the appendix to this brief.

unsupported. As Mr. Fischel repeatedly explained during his deposition, he is not offering an opinion upon the scope of the Government's obligation after January 31, 1998. See, e.g., A. 3 (Tr. 17:3-5) and 4 (Tr. 19:10-15) ("I am not making any independent assessment of any obligation that the DOE either had or didn't have. I am focused on the claims that the plaintiffs have made in connection with their damage claim and the opinions and analyses of plaintiffs' damages experts."). As explained above and during his deposition, Mr. Fischel's opinion is tied to the fact that plaintiff's experts have failed to tie Yankee Atomic's damages claim to the Government's obligation regarding acceptance after 1998. Instead, plaintiff's experts have built a claim for damages based upon a theory about when all of the SNF could have been removed from Yankee Atomic's site that is independent of any obligation DOE had to Yankee Atomic or any other contract holders. Pl. App. 3-4, ¶ 8 of Mr. Fischel's report; A. 7 (Tr. 47:9-13).

Moreover, the quotes excerpted by Yankee Atomic from Mr. Fischel's deposition do not support Yankee Atomic's assertion that Mr. Fischel's opinion is only in the nature of a legal opinion that has been rejected by the Court. The first block quote is taken from a larger discussion in which Mr. Fischel was asked to identify the "partial breach" ruling to which he referred in his report. A. 9 (Tr. 60:7-12). As seen from the text of the deposition, Mr. Fischel was not opining upon the nature of the Government's obligation to continue acceptance or even upon the effect of the Court's ruling. A. 9 (Tr. 59-61). The second block quote is yet another explanation by Mr. Fischel regarding the nature and basis of his opinion regarding a lack of a causal connection between the Government's partial breach and the damages claim assembled by plaintiff's experts.

A. 23 (Tr. 168:5-169:23). Yankee Atomic neglected to excerpt the discussion that followed this quote, in which Mr. Fischel clearly stated that he was "not offering any legal opinions on what legal obligations the [G]overnment would have had, if any, after commencing removal in the end of January 1998." A. 23 (Tr. 170:20-23). At the time of the deposition, counsel for Yankee Atomic stated that he understood that Mr. Fischel was not "reaching a legal opinion." A. 23 (Tr. 170:24-25).

Yankee Atomic is also incorrect in its assertion that Mr. Fischel "devotes only a single paragraph" to this opinion in his report. Yankee Atomic's Motion to Exclude Testimony from Daniel Fischel ("Pl. Br.") at 4. As Mr. Fischel explained to counsel for Yankee Atomic during his deposition, the explanation of his opinion and the basis for that opinion is found in paragraph eight and throughout the report. A. 2 (Tr. 11:20-12:3). Mr. Fischel stated that "every paragraph in the report is related to the point made in paragraph eight." A. 2 (Tr. 12:23-25).

## II. Yankee Atomic's Criticism Of Mr. Fischel's Opinions Regarding The Speculative Nature Of Mr. Graves' Model And Other Aspects Of Yankee Atomic's Damages Claim Is Similarly Unfounded

Yankee Atomic's criticism of Mr. Fischel's opinion that the damages claims are built upon speculative and implausible assumptions is also confusing and unfounded. Yankee Atomic claims not to understand Mr. Fischel's definition of "speculative" as applied in his report and his understanding of the problems with plaintiff's experts claims, and Yankee Atomic criticizes Mr. Fischel's inability to name his "methodology." Finally, Yankee Atomic asserts that none of Mr. Fischel's findings with regard to the unsupported nature of Mr. Graves' assumptions will assist the Court. As explained below, Mr. Fischel's opinions are based upon his review of Mr. Graves' model and

methodology and will aid the Court in analyzing the problems with that model, if necessary.[3]

A. Mr. Fischel's Determination That Yankee Atomic's Damages Claim Is Based Upon Speculative And Implausible Assumptions Will Aid The Court In Its Examination Of This Matter

As set forth in his report and explained at length at his deposition, Mr. Fischel concluded, based upon his review of Yankee Atomic's damages claim, that

> those speculative and implausible assumptions that are described in connection with the [second conclusion set forth in his report] make the [first conclusion] not only a conceptual error but also emphasize even more strongly that the damage claim is not persuasive or credible because the claims about removal are based on these speculative and implausible assumptions.

A. 6 (Tr. 44:3-11). Mr. Fischel also explained that the term "speculative" meant

> there are a series of assumptions that there [is] either no basis for or to the extent that it's possible to analyze whether there's a basis for the assumptions[, t]he reality is inconsistent with the assumptions. It's not only speculative but also implausible.

A. 13 (Tr. 78:9-14). The assumptions to which Mr. Fischel refers include the assumptions by Yankee Atomic's experts regarding a single acceptance rate, that DOE's acceptance would include GTCC and failed fuel on the same schedule, and that exchanges would have occurred exactly as Mr. Graves' model predicts. Pl. App. 4, ¶ 9. The effect of these assumptions, according to Mr. Fischel, is

[3] Mr. Fischel is, of course, a responsive witness. If the Court determines that Yankee Atomic cannot establish a causal link between the partial breach of contract and its damages based upon the results of Mr. Graves' model, Mr. Fischel's testimony will not be necessary.

> that the analysis of the plaintiffs and their damages experts is a house of cards, because you have to assume so many different things in order to get to their ultimate conclusion. And, if you change anything, the whole analysis falls apart like a house of cards.

A. 28 (Tr. 228:20-25); Pl. App. 10-11, ¶ 24.

Yankee Atomic first asserts that Mr. Fischel's definition of "speculative" is confusing or that it should be excluded because the term "speculative" has "important legal significance." The fact that the Court will ultimately decide whether Yankee Atomic's damages are too speculative to support an award of damages does not provide a reason to strike Mr. Fischel's testimony. Pursuant to Federal Rule of Evidence 704, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Testimony on "ultimate issues" to be decided is allowable if it is otherwise admissible pursuant to the rules of evidence. United States v. Barile, 286 F.3d 749, 759 (4th Cir. 2002) (citing Weinstein's Federal Evidence § 704.03[1] (2d ed. 2001)). Mr. Fischel's opinions regarding the speculative nature of the assumptions made by Yankee Atomic's experts is based upon his review of these claims as an expert in economics and damages analysis. Because Mr. Fischel is an expert in damages matters and his opinions will aid the Court in examining Mr. Graves' model and Yankee Atomic's damages claims built upon that model, his testimony is otherwise admissible. See Fed. R. Evid. 702 (standard for admission of expert testimony); A. 16 (Tr. 100:15-102:17) (Mr. Fischel's explanation of his areas of expertise).

Yankee Atomic also incorrectly claims that Mr. Fischel's opinion is not reliable because Mr. Fischel has no "discernable methodology." Expert testimony must "have a

reliable basis in the knowledge and experience of the discipline." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993)). However, "there is no 'definitive checklist or test' to determine if testimony is reliable, instead the 'inquiry must be tied to the facts of a particular case.'" Westfed Holdings Inc. v. United States, 55 Fed. Cl. 544, 573 (2003) (quoting Kumho Tire, 526 U.S. at 150). Mr. Fischel's opinions concern the methodologies applied by Yankee Atomic's own expert and examined by Mr. Fischel.

Contrary to Yankee Atomic's allegation, Mr. Fischel repeatedly explained during his deposition the manner in which he examined Yankee Atomic's claims. See, e.g., A. 25 (Tr. 185:12-186:18); A. 29-30 (Tr. 236:6-239:15). The second cited explanation came after the conference call with the Court regarding the need of counsel for Yankee Atomic for Mr. Fischel to assign a "name" to his methodology. However, as counsel for Yankee Atomic stated to the Court, it does not matter that there is no "name" for Mr. Fischel's analysis. Pl. App. 175 (Tr. 7:25-8:3). Mr. Fischel was able to explain to counsel for Yankee Atomic how he conducted his analysis and will provide the same information for the Court at trial, if necessary. This explanation satisfies the need to establish a "reliable" basis for Mr. Fischel's opinions.

B. Mr. Fischel's Examination Of And Opinions Regarding The Assumptions Upon Which Yankee Atomic's Claim Is Built Will Aid The Court In Determining That Yankee Atomic's Damages Cannot Be Established By The Evidence Presented

Yankee Atomic concludes its motion with a discussion of those opinions of Mr. Fischel to which it apparently objects. However, as shown below, these further criticisms

are based upon either an incomplete understanding of the basis for Mr. Fischel's opinions or an incomplete review of the deposition transcript.

One of Mr. Fischel's observations about Yankee Atomic's damages claim is that part of it is speculative because it depends upon future events. Pl. App. 4, ¶ 10. Yankee Atomic argues that this opinion is not "useful" because Mr. Fischel has not identified the specific future events to which this opinion is tied and cannot "quantify" the effect of these future events upon Yankee Atomic's damages claim. Pl. Br. at 8. Yankee Atomic incorrectly ascribes Mr. Fischel's criticism entirely to the opinion and model of Mr. Graves. As is apparent from Mr. Fischel's report and his deposition testimony, Mr. Fischel's criticism regarding the "continuing costs" portion of Yankee Atomic's damages claim is tied to the report of Mr. Wise, who forecasts future costs in his model of Yankee Atomic's damages. Pl. App. 4, ¶ 10; A. 18 (Tr. 108:10-12); A. 27 (Tr. 196:17-19) (explaining that the opinions of Messrs. Graves and Wise interact so that Mr. Fischel responds to both experts). Mr. Fischel did not identify specific events that could affect future damages, but observed that these could include "possible changes in legal and regulatory environment, possible technological changes, possible changes of behavior of the utilities." A. 15 (Tr. 97:5-8). Moreover, contrary to Yankee Atomic's criticism, Mr. Fischel need not identify specifically the future events that may affect the future costs. Instead, as he explained with regard to his methodology and analysis generally, Mr. Fischel applied his expertise in the areas of economics and damages analysis to understand "the extent to which a particular damage analysis was sensitive to particular assumptions." A. 16 (Tr. 100:21-25). Finally, Yankee Atomic correctly points out that Mr. Fischel could not quantify "how speculative the Yankee Atomic's damage claim is

based upon [Yankee Atomic's] assumptions regarding future events." Pl. Br. at 8. As Mr. Fischel explained during his deposition, "I don't think anybody has the expertise to [quantify the extent to future events may affect future damages] because it is very hard to predict future events." A. 14 (Tr. 93:17-19). Instead, as Mr. Fischel explained, "I'm simply pointing out that in circumstances such as this one, predicting the future is difficult, and therefore a damage claim which is premised upon predictions about the future is speculative for that reason." A. 15 (Tr. 94:12-16). The fact that one cannot "quantify" how future events may affect future costs is the point of Mr. Fischel's criticism.[4]

Yankee Atomic next criticizes Mr. Fischel's opinions regarding Messrs. Bartlett and Graves' failure to account for all types of costs when determining "economic efficiency." Pl. Br. at 8. As Mr. Fischel explained during his deposition, an analysis of "economic efficiency" requires an analysis that allows the expert to determine all of the private and societal costs and then to "internalize" those costs to determine whether the benefits outweigh the sum of the costs. A. 19 (Tr. 127:16-21). Mr. Fischel's criticism of Messrs. Bartlett and Graves' analysis is that they "have not shown that the assumed acceptance schedule minimizes the sum of" these societal and private costs. Pl. App. 5, ¶ 12. Yankee Atomic is correct that Mr. Fischel does not purport to have the expertise to opine what these costs may be. However, this is irrelevant because Mr. Fischel's

---

[4] If the Court decides that Yankee Atomic cannot receive damages past the date that it filed its complaint or, at the very latest, the date of trial based upon a claim of partial breach of contract, Mr. Fischel's criticism of this portion of Yankee Atomic's damages claim will become unnecessary. See Defendant's Motion In Limine To Exclude Evidence of Future Damages, filed June 1, 2004.

expertise in law and economics allows him to opine that, "if you're going to reach an opinion about what is an economically efficient outcome, you can't do so without taking social costs into account and that wasn't done in connection with Mr. Graves' opinion about economic efficiency . . .." A. 19 (Tr. 126:15-20); A. 20 (Tr. 133:21-134:3). To the extent that Mr. Graves or Mr. Bartlett are allowed to provide testimony regarding the spent nuclear fuel acceptance rate that the Court should adopt as the contractual "economically efficient" rate of acceptance, Mr. Fischel will offer testimony about the types of costs that should have been, and were not, considered in the determination of such a rate.

Yankee Atomic next criticizes Mr. Fischel's opinion regarding the fact that, contrary to Mr. Graves' assumptions that form the basis of his model, there is more than the one possible acceptance "rate" or schedule that the Court could find supported by the contract language. Pl. App. 6-7, ¶¶ 13-14. Yankee Atomic again does not appear to understand that Mr. Fischel's opinion regarding different possible acceptance rates forms the basis for criticism of Mr. Graves' model and the results that form the basis of Yankee Atomic's damages claim. As Mr. Fischel explained in his deposition,

> I'm suggesting that Mr. Graves' analysis is extremely sensitive to the particular acceptance schedule which he has chosen and in light of the insufficient justification for the choice of that particular acceptance schedule . . . those factors taken together make his ultimate conclusion very sensitive and speculative but also this particular assumption about choice of this particular acceptance schedule also speculative.

A. 22 (Tr. 139:19-140:5). Mr. Fischel is not offering an opinion regarding what the acceptance rates or schedule should be. Instead, he is criticizing Mr. Graves' failure to take other possible rates or schedules into account.

Yankee Atomic continues with its criticism of Mr. Fischel's conclusions, arguing that Mr. Fischel is offering "legal conclusions" with his recitation of the terms of the Standard Contract and that he has failed to"quantify" how modeling bilateral exchanges would alter the results of Mr. Graves' model. Pl. Br. at 9-10. Mr. Fischel explained that he referred to the terms of the Standard Contract as "background" for what would have happened with regard to exchanges. A. 31 (Tr. 249:3-10). Mr. Graves has failed to identify "what bilateral exchanges would occur, how many, who would trade with whom, that is again one of the problems with the model. All of these real world considerations are simply assumed away by Mr. Graves." A. 36 (Tr. 334:23-325:3). It is Mr. Graves' failure to follow these contract requirements that forms the basis of Mr. Fischel's opinion.

In the penultimate criticism of Mr. Fischel's opinions, Yankee Atomic criticizes Mr. Fischel's observation that "no exchanges have occurred." Pl. Br. at 10; Pl. App. 9, ¶ 20. Mr. Fischel, during his deposition, explained that the point of this observation is

> That it is a piece of data which is inconsistent with Mr. Graves' radical and implausible assumptions about how the countless exchanges, which he can't identify, would instantaneously and costlessly occur and get [G]overnment approval.

A. 37 (Tr. 410:14-19). This explanation provides the "relevance" of this information that Yankee Atomic apparently missed.

Yankee Atomic’s final criticism of Mr. Fischel’s opinion concerns Mr. Fischel’s opinion that Mr. Graves’ failure to account for the existence of GTCC and failed fuel at

each of the Yankees' facilities renders his model and the resulting damages claims flawed. As Mr. Fischel explained at his deposition, to the extent that any contract holder must continue to store nuclear waste on its site, that fact will affect a contract holder's willingness to exchange allocations with other contract holders and the results of Mr. Graves' model. A. 32 (Tr. 295:1-7), 33 (Tr. 299:15-19), and 34 (Tr. 301:15-17).

As Yankee Atomic correctly notes, Mr. Fischel does not purport to have the expertise in issues relating to the storage of GTCC or failed fuel or the costs of such storage. Yankee Atomic also notes that Mr. Fischel has not attempted to quantify "the effect that continued storage of GTCC waste or failed fuel would have on Yankee Atomic's damages." The Government has identified other individuals, Messrs. Abbott and Johnson, who are experts in these matters and who are expected to testify in this litigation. Mr. Fischel, as an expert in what should be considered in a damages analysis, has properly considered the effect of Mr. Graves' failure to consider these issues. Mr. Graves constructed a model built purportedly upon the principles of rational economic actors that allowed each of the Yankees to remove all of its nuclear waste from its site very quickly in the "but for" world. However, as Mr. Graves' himself acknowledged, he did not account for the existence of GTCC. Mr. Fischel, in examining Mr. Graves' model, properly criticizes that failure and opines that the acceptance of either GTCC or failed fuel on a different schedule than that assumed by Mr. Graves will affect the results of the model.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Yankee Atomic's motion to exclude the testimony of Mr. Daniel Fischel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

June 16, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 16th day of June 2004, a copy of foregoing "DEFENDANT'S OPPOSITION TO YANKEE ATOMIC'S MOTION TO EXCLUDE TESTIMONY FROM DANIEL FISCHEL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan