IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC CO.,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126C<br>(Senior Judge Merow)<br>Filed electronically: June 21, 2004 |

YANKEE ATOMIC'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING FOUR ALTERNATE DAMAGES "SCENARIOS"

Plaintiff Yankee Atomic Electric Company ("Yankee Atomic") respectfully submits this reply in support of its motion *in limine* to preclude the government from introducing evidence concerning four imaginary "scenarios" that are unrelated to Yankee Atomic's actual damages claim and have no proper evidentiary basis.[1]

1. Remarkably – and revealingly – the government's opposition does not contest, *or even address,* the central point of Yankee Atomic's motion, namely that the government has not requested findings or made any claim that the "assumptions" underlying its four alternate damages "scenarios" are factual, or reasonable, or consistent with the intent of the contracting parties or the purpose of the Nuclear Waste Policy Act ("NWPA"). The government plainly cannot contest that point, and does not even try.

In fact, the government's named expert witnesses expressly concede the point. Mr. Abbott noted at his deposition that "[t]he pickup information, the allocations as it were for each

[1] This reply should also be deemed applicable to *Connecticut Yankee v. United States*, No. 98-154C and *Maine Yankee v. United States*, No. 98-474C.

plant were given to us by the Department of Justice." 5/10/04 Abbott Depo. Tr. at 102:8-10 (relevant pages from the Abbott transcript are attached as Exhibit 1). Mr. Abbott then testified as follows:

> Q. Would you say that you don't know whether any of the assumptions about rates in any of the scenarios are reasonable or not?
>
> A. That's correct.

5/10/04 Abbott Depo. Tr. at 104:7–10. Mr. Johnson testified similarly:

> Q. . . . Do you yourself have any opinions about whether any one of the scenarios is reasonable? . . . the schedule assumptions in each of the five scenarios . . .
>
> A. I do not have an opinion about that. . . .
>
> A. I don't have any opinion on the reasonableness of the acceptance scenarios.

5/24/04 Johnson Depo. Tr. at 54:10–12, 16, 18; 57:3–4 (relevant pages from the Johnson deposition transcript are attached as Exhibit 2).

Nor are Messrs. Abbott and Johnson alone in their unwillingness, or inability, to attest to the reasonableness of any of the schedule "assumptions" underlying the four alternate damages scenarios they discuss. As noted above and explained at length in Yankee Atomic's motion, the government does not even ask the Court to find that any of these underlying "schedule" assumptions are factual, or reasonable, or consistent with the parties' contractual intent or the purpose of the NWPA. At bottom, these assumptions are entirely imaginary – they have absolutely no evidentiary basis, and the government does not even *claim* that they have an evidentiary basis. It would therefore be both improper and a waste of trial time and resources to allow the government to present elaborate damages evidence based on the unalleged assumptions that underlie the government's four alternate "scenarios."

2. Rather than seeking to establish that the four alternate damages "scenarios" have a proper evidentiary foundation – which they plainly do not – the government' opposition addresses a different matter, namely the government's strategy for defending against Yankee Atomic's actual damages claim. The government explains in its opposition that its defense of Yankee Atomic's actual damages claim will be entirely responsive. That is, the government will seek to discredit Yankee Atomic's evidence, but will not necessarily present any affirmative damages evidence of its own. *See* Gov't Opp. at 4-6 (noting Yankee Atomic's burden to prove its case). But that strategy cannot justify the confusion and waste of time at trial from elaborate expert damages testimony that rests on underlying assumptions that the government does not even allege are factual or reasonable.

3. The government's assertion that Yankee Atomic's motion is "premature," *see* Gov't Opp. at 3-4, is simply wrong under the Court's Pretrial Order. The procedures established by the Court do not allow the government to lie in wait with undisclosed evidence, and then spring such evidence on Yankee Atomic after it has presented its case. The whole purpose of the Pretrial Order is to require full disclosure by both parties in advance, to narrow the issues for trial. In any event, the mere passage of time will not make the "assumptions" underlying the government's four alternate "scenarios" any more factual or reasonable – attributes the government does not even allege that those assumptions have.

The government's related argument that it must reserve the right to present evidence to support unalleged factual findings because Yankee Atomic might change its own damages evidence at trial similarly disregards the Pretrial Order. But even apart from the requirements of the Pretrial Order, Yankee Atomic is entirely comfortable with its damages evidence and has no need to make any material change.

4. More fundamentally, the government's conception of the basic issues now before the Court is completely wrong. The focus of the upcoming trial is the amount of damages Yankee Atomic has incurred as a result of the government's breach. A subsidiary issue – and that is all it is, despite the government's obsession with the issue – is the particular pickup schedule the Department of Energy ("DOE") would have followed had it commenced performance as required in 1998. The government's opposition, consistent with its prior theories regarding the so-called "schedule issue," posits that determination of DOE's pickup schedule in the non-breach world involves a mechanical and ultimately arbitrary selection of one or another appropriate "rate" (and "start-date") from among those set out in various DOE planning documents. In essence the government suggests throwing darts at those DOE documents, with no consideration of the reasonableness of the resulting pickup schedule, the intent of the contracting parties or the purpose of the NWPA.

Of course the Court, in this very case, has already laid down a very different understanding of the DOE pickup schedule issue. By adopting (in relevant part) Judge Hewitt's opinion in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003), *see* Order of June 26, 2003, this Court recognized that Yankee Atomic's contract with DOE neither dictates a pickup schedule nor prescribes a "mechanism" for determining a schedule. *See* 56 Fed. Cl. at 662. Instead, under *Commonwealth Edison,* the DOE pickup schedule is a term that is missing from the parties' contract. Under black letter law, the Court must therefore enforce a "reasonable" term. *See* Restatement (Second) of Contracts § 204 (1981); *see also David Nassif Assocs. v. United States*, 557 F.2d 249, 259 n.6 (Ct. Cl. 1977) ("*Nassif I*") ("[I]t is a fair inference to say that what the parties had in mind was a cafeteria of a size *reasonable under the circumstances"* (emphasis added)), *after remand*, 644 F.2d 4 (Ct. Cl. 1981) ("*Nassif II*").

Yankee Atomic's proposed trial evidence, as detailed in its pretrial submissions, fits squarely within this proper legal context. Yankee Atomic will present overwhelming evidence that the DOE pickup schedule it proposes is "reasonable under the circumstances," *David Nassif I*, 557 F.2d 259 n.6, including the circumstance emphasized by the Federal Circuit in *Roedler v. Department of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001), which involved one of the same DOE contracts involved in this case: "[f]or determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose." *See also Alvin Ltd. v. Unites States Postal Serv.,* 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("If the principal purpose of the parties is ascertainable it is given great weight") (quoting Restatement (Second) of Contracts § 202(1) (1981)).

The government, in the course of defending against Yankee Atomic's damages claim, may certainly attempt to discredit Yankee Atomic's witnesses or to explain away the DOE documents that also support the reasonableness of the schedule Yankee Atomic proposes. What the government may *not* do, under the Pretrial Order as well as basic notions of fair litigation practice, is burden the trial with complex damages evidence that rests on underlying "assumptions" that have no evidentiary support and that the government does not even *claim* are factual or reasonable.[2]

5. Finally, the government's repeated suggestion that Yankee Atomic's entire damages claim stands or falls on a "precise" determination of how exchanges would have worked is also

[2] Though unnecessary to a decision of the present motion, the government's discussion of its proposed factual stipulations, *see* Gov't Opp. at 6-9, contains numerous significant misstatements. Suffice it to say here that the government does not and cannot identify a single factual stipulation proposed by it that asserts that *any* DOE pickup schedule in either the breach or non-breach worlds is either reasonable, or consistent with the parties' contractual intent or the purpose of the NWPA.

incorrect. *See, e.g.* Opposition at 6 ("If Yankee Atomic fails to establish that exchanges would have occurred in the precise manner underlying its damages claim . . . Yankee Atomic's damages claims also fail."); *id.* at 8 (referring to "the central issue of exchanges – the issue upon which all of Yankee Atomic's damages hinge"). Evidence of how exchanges would have worked need not be more precise than other evidence Yankee presents to support a "fair and reasonable approximation" of its damages. *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002).

More importantly, the trial evidence will demonstrate that Yankee Atomic has already constructed an on-site dry storage facility for spent fuel and GTCC waste (an "ISFSI") to ameliorate the effects of DOE's breach of contract in this case. The costs of that ISFSI have actually been incurred, the spent fuel and GTCC waste have been placed into that ISFSI, and Yankee Atomic's spent fuel pool is in the process of being decommissioned. The evidence will show that the costs of constructing the ISFSI would not have been incurred had DOE not breached Yankee Atomic's contract. Although the determination of a specific DOE pickup schedule in the non-breach world may affect certain components of Yankee Atomic's damages claim, such as the date upon which wet pool storage costs would have ceased in the non-breach world, Yankee Atomic's entire damages claim is by no means dependent upon a determination of DOE's specific pickup schedule.

## CONCLUSION

The trial of this case should address what has actually happened, not imaginary "scenarios" that the government does not even allege are reasonable or consistent with the applicable contractual intent or statutory purpose. What actually happened is straightforward: DOE breached its contract obligation to remove Yankee Atomic's spent fuel and GTCC waste,

and, as a result, Yankee Atomic has been required to incur very substantial costs, including significant sums to design, develop, license and load on-site long-term dry storage facilities for its spent fuel and GTCC waste. The issue at trial is the quantum of damages Yankee Atomic should recover for DOE's breach of contract, an issue that turns on real facts, not imaginary ones.

Yankee Atomic's motion to preclude evidence of the government's four alternate damages scenarios should be granted.

Dated: June 21, 2004

Respectfully submitted,

s/ Jerry Stouck____________________________
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Robert E. Johnston
SPRIGGS & HOLLINGSWORTH