IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FUTURE DAMAGES

Defendant, the United States, respectfully submits this reply to "Yankee Atomic's Opposition To Government Motion *In Limine* To Exclude Evidence Of Future Damages," which the plaintiffs, Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, and Maine Yankee Atomic Power Company (collectively, "the Yankees"), filed with the Court on June 11, 2004.[1]

ARGUMENT

I. ALL APPLICABLE COURT DECISIONS SUPPORT THE CONCLUSION THAT FUTURE DAMAGES CANNOT BE AWARDED UPON A PARTIAL BREACH OF CONTRACT CLAIM

A. Yankee Atomic Has Not Identified A Single Case In Which A Court Awarded A Plaintiff Future Damages In Response To A Partial Breach Claim

In response to the Government's motion to exclude evidence of future damages from the trial of this matter and, in essence, to preclude Yankees' recovery of future damages in this action, the Yankees have argued at length that they should be allowed to recover prospective

[1] The Government requests that this motion be deemed applicable not only to this case, but also to Connecticut Yankee Atomic Power Company v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Company v. United States, No. 98-474C (Fed. Cl.).

damages through 2010 and, then, should be allowed to return to this Court to seek additional damages. Yet, although the Yankees engage in great efforts attempting to distinguish the cases that we cited in our motion *in limine* from the situation at hand, the Yankees have not cited a single case in which a court has awarded future or prospective damages – not yet incurred or obligated – to a plaintiff in response to a partial breach claim. In fact, without suggesting that their request is unprecedented and unsupported by any case law involving partial breach claims, the Yankees simply assert that the Court should issue a decision in direct conflict with every other court that has considered this issue. The Yankees have identified absolutely no basis for this Court to disagree with the treatises and case precedent, including a decision of this Court, that we discussed in our motion *in limine*.

The only support that the Yankees cite in response to our demonstration that damages for future partial breaches are not available to a claimant in a partial breach case is a sentence from a supplement to the Corbin on Contracts treatise. PBr. 5 (quoting 9 J. Murray, Corbin on Contracts § 956, at 550-51 (interim ed. 2003 Fall Cumulative Supp. 2003). In the Corbin supplement, the author, Professor Murray, discusses a decision from the California Court of Appeal, Guntert v. City of Stockton, 55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976), in which the California court reversed an award of future damages for a partial breach of contract. In response to a partial breach of a lease contract, the trial court, in addition to ordering previously incurred damages and an injunction for specific performance, had ordered the defendant to pay a particular sum of money each month from the date of the trial court judgment through the identified end date of the lease, "unless the lease ended earlier." Id. at 150, 126 Cal. Rptr. at 701. The appellate court recognized, however, that, "[i]f the breach is partial only, the injured party may recover damages

for non-performance only to the time of trial and may not recover damages for anticipated future nonperformance." Id. at 150-51, 126 Cal. Rptr. at 702 (quoting Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)). The Guntert court determined that an injunction requiring specific performance of the contract would absolutely preclude the contract holder from incurring any damages and that, therefore, an award of lost future profits and entry of an injunction would be inconsistent:

> Here plaintiffs elected to remain in possession, continue to pay rent and sue for a partial rather than total breach. The lease, whose prime objective was the letting of property, remained alive; the law's remedies were substituted for only a part of the injured party's election, the breach was partial and not total. That election was confirmed by the injunction issued at the tenant's behest. That injunction prevented the landlord from interfering with the tenant's quiet possession and use of the leased premises during the remainder of the tenancy.
>
> By granting an injunction which assured specific performance and, in addition, a judgment for future profits available only on the theory of a total breach of the lease, the trial court awarded something akin to double recovery. Plaintiffs occupy an inconsistent position – they argue (correctly) that their right to damages was not dependent upon eviction, yet they seek a measure of damages available to an evicted tenant, that is, one who no longer has a lease. The breach being only partial, the trial court erred by awarding prospective loss of profits.

Id. at 151, 126 Cal. Rptr. at 702. Nevertheless, the Guntert court found that "[t]he unavailability of prospective damages does not preclude future awards of past damages flowing from the partial breach" and that "[p]laintiffs may, within the period of limitations, file a new lawsuit seeking additional damages." Id. at 153, 126 Cal. Rptr. at 703.

Professor Murray discusses the Guntert case and describes it as holding that "it would be a double recovery to allow both an injunction to protect against future harm and also to allow

damages for future harm." 9 J. Murray, supra, § 956, at 550. Based upon that description, he states that, "[a]ctually, the result here is not sound," that "[i]t is not true that damages to be suffered in the future are always prevented by an injunction," and that "[a]n injunction may lessen or prevent a particular kind or item of damage without preventing another one." Id. at 550-51. Professor Murray then states that "[a] partial breach should be subject to both injunctive and future damage remedies in a proper case, because neither one may offer a complete cure alone." Id. at 551. Finally, in discussing the result in Guntert, he states that "a good example of this is First Nat'l State Bank of N.J. v. Commonwealth Fed. Sav. & Loan Ass'n, 610 F.2d 164 (3d Cir. 1979), where both specific performance and damages were awarded." Id.

Although Professor Murray's discussion of the Guntert case is somewhat confusing, it appears that he is contesting the Guntert court's finding that an injunction should preclude the existence of any future damages, rather than the means by and manner in which future damages are awarded. Because the United States Court of Appeals for the District of Columbia Circuit has expressly declined to order specific performance by the Department of Energy, see Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 759 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the issue of whether specific performance would eliminate the Yankees' future damages is not before this Court. The issue here is whether it is appropriate to preclude, at the present time, an award of damages that might be caused by future partial breaches, but to allow the plaintiff to return to court if and when future partial breaches cause it to incur damages. In the Corbin on Contracts treatise, Professor Corbin expressly and unambiguously states that, in a partial breach claim, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ –

that he must treat the breach as only 'partial.'" 9 A. Corbin, Corbin on Contracts § 956, at 747 (interim ed. 1979) (emphasis added). Plainly, the long-standing rule is that a plaintiff claiming a partial breach may only recover damages "to the date of the writ," id., and Professor Murray, in his supplement, certainly cannot intend to disagree with that long-standing principle. To the extent that he has intended to contradict that long-standing rule, he has cited absolutely no authority to support that new theory.[1]

In any event, Professor Murray, in his supplement to the Corbin treatise, did not discuss or acknowledge the Guntert court's second basis for declining to award future damages for a partial breach: that "[t]he award of prospective profits accruing [more than five years after the date of judgment] offends another tenet of damage law – the requirement of reasonable certainty . . . ." Guntert, 55 Cal. App. 3d at 152, 126 Cal. Rptr. at 703. The trial court in Guntert "indulged in a shaky prognostication – that [the plaintiff's] plant could not be reopened or profitably utilized within the remaining years of tenancy." Id. As the appellate court found, the plaintiff "alone had made the decision to close down the plant," and the trial court viewed this decision "as an expression of economic prudence dictated by prevailing uncertainties over outcome of the lawsuit." Id. "Although the trial court found that plant closure was a natural

---

[1] Although Professor Murray cites to the Third Circuit's decision in First National State Bank to support his assertion that specific performance and damages are not incompatible, the First National case did not involve an award of any future damages. To the contrary, the court in First National affirmed the trial court's award of "damages incidental to the breach covering reimbursement for interest and for losses sustained in operating the mall:" that is, "to reimburse with interest the amount First National has lost," in the past, "in operating the mall." First Nat'l, 610 F.2d at 169 & 174 (emphasis added). Although the court affirmed the trial court's order that the defendant "pay interest at eight percent on the amount of the loan from the time the loan should have been made until such time as the money is turned over to First National," id. at 169, neither the trial nor appellate courts made an award of future damages of costs yet to be incurred.

foreseeable consequence of the breach, it did not find that reopening the plant would be uneconomical or unfeasible." Id. at 153, 126 Cal. Rptr. at 703. As the appellate court found, this uncertainty in the fact of damage, or the manner in which damages would accrue in the future based upon the plaintiff's future business decisions, also precluded an award of future damages:

> A claim for future damage may be maintained despite uncertainty of amount; it may not be maintained in the face of uncertainty as to its occurrence; a mere contingency will not support a claim for damages.

Id. (emphasis added). The appellate court in Guntert determined that "[t]hese two rules – one denying prospective damages for partial breach, the other denying contingent future damages – combine to invalidate that portion of the [trial court] judgment awarding monthly 'lost profits' commencing February 1974." Id.

In its opposition to our arguments that future damages may not be awarded for a partial breach or for future partial breaches that have not yet occurred, the Yankees have not cited to a single court decision in which future damages were awarded in response to a partial breach claim. The Yankees are asking the Court to disregard all existing case precedent regarding partial breach damages claims and award it several years' worth of future damages and the right to return to this Court to supplement future damages claims. The Yankees have identified no valid basis for this request and no precedent for this type of award.

B. Courts Uniformly Have Precluded An Award Of Future Damages In Response To A Partial Breach Claim

As established in our motion *in limine*, courts have uniformly held that a plaintiff seeking damages for a partial breach cannot recover future damages, but, instead, must seek any damages incurred in the future in response to continuing partial breaches after they have been incurred. In

our motion *in limine*, we identified several of those court decisions, including this Court's decision in Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), in which this Court expressly held that "[d]amages for partial breach of contract are measured by costs incurred between the breach and the date of trial," id. at 648 (citing Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)), and that, "[w]hen [plaintiff] can show that it has incurred costs related to defendant's breach, plaintiff may have causes of action that are not speculative" and may elect to "maintain a second suit in case a further breach occurs." Id. at 664 (quoting 9 A. Corbin, supra, § 946, at 720)); see Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 678 (2004) (finding in spent nuclear fuel case that, pursuant to Restatement (Second) of Judgments § 26(1)(b) & (e), plaintiff cannot recover future damages for partial breach).

## II. IN SEEKING FUTURE DAMAGES, THE YANKEES ARE ASKING THIS COURT TO CONFLICT WITH THE *RESTATEMENT*, DESPITE THE ABSENCE OF ANY AUTHORITY IN SUPPORT OF THEIR DAMAGES REQUEST

In their response brief, the Yankees not only fail to cite a single court decision that supports their request for future damages, they ask this Court to issue a decision that would conflict with the rules set forth in the Restatement (Second) of Judgments and the Restatement (Second) of Contracts. As we explained in our motion *in limine*, the United States Court of Appeals for the Federal Circuit has repeatedly relied upon the Restatement (Second) of Judgments as an authoritative source. See, e.g., Christopher Village, L.P. v. United States, 360 F.3d 1319 (Fed. Cir. 2004) (citing repeatedly to *Restatement (Second) of Judgments*); Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003) (recognizing that court is broadly guided by the *Restatement (Second) of Judgments*); Young Engineers, Inc. v. United States Int'l

Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983) ("[i]n our analysis we will be guided by the *Restatement (Second) of Judgments* (1982) . . . ."). Further, the Federal Circuit recently held that "[t]he Restatement of Contracts is recognized as an appropriate source of authority in contract cases." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1308 n.9 (Fed. Cir. 2004) (citing Mobil Oil Exploration v. United States, 530 U.S. 604, 608 (2000)).

As we explained in our motion *in limine*, the Restatement (Second) of Judgments explains that, if a non-breaching party elects to treat a breach of contract as a total breach, "and the plaintiff thereafter commences an action for damages, he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract." Restatement (Second) of Judgments § 26 cmt. g, at 240 (1982) (emphasis added). "In the event of a 'material' breach (see Restatement, Second, Contracts § 241) that is not accompanied or followed by a repudiation, the plaintiff is entitled to treat the contract as at an end and to recover damages for performances not yet due as well as those already due on the theory that there has been a total breach of contract." Restatement (Second) of Judgments § 26 cmt. g, at 240-41 (1982). "If a plaintiff does this, a judgment extinguishing the claim under the rules of merger or bar precludes another action by him for further recovery on the contract." Id. at 241. Accordingly, pursuant to the Restatement (Second) of Judgments, if a plaintiff seeks damages for a total breach of contract, he must seek to recover all damages that he has or will incur as a result of the total breach, given that the parties' obligations to continue contract performance are terminated and a judgment for the non-breaching party will conclude all obligations under the breached contract. See Restatement (Second) of Contracts § 236(1), at 214

(1981) ("[a] claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance").

However, the Restatement (Second) of Judgments further explains that, even if a "breach is material, the plaintiff may elect to treat it as being merely a partial breach," id., as the Yankees did in this case. If the non-breaching party elects to treat a breach as a partial breach, "he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date." Restatement (Second) of Judgments § 26 cmt. g, at 241 (1982) (emphasis added); see Restatement (Second) of Contracts § 236 cmt. b, at 214 (1981) (discussing "partial breach"). In their response brief, the Yankees' only reference to the authority of the Restatement (Second) of Judgments is by stating the Restatement comment deals "only with the preclusive effect of a prior suit" and not as "limit[ing] damages in such a prior suit." PBr. 6. Unfortunately, the Yankees' interpretation of the Restatement comment is wholly unrelated to the actual language of the comment. By asking this Court to allow them to recover future or prospective damages in response to a partial breach, the Yankees are asking this Court to issue a decision in direct conflict with the Restatement (Second) of Judgments, without citing a single court decision that supports their requested relief.

In fact, since we filed our motion *in limine*, this Court issued its decision in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (June 2, 2004), in which the Court, like the Court in Indiana Michigan, precluded an award of future damages for partial breaches that had not yet occurred, relying upon the Restatement (Second) of Judgments as the basis for its decision. In their response to our motion *in limine*, the Yankees cite to the TVA decision, but

assert that it held as follows: "[p]ursuant to TVA's request, the Court set the cutoff date for determining TVA's damages there as the end of the last fiscal year prior to trial, a reasonable structure in the context of that case." PBr. 7 (citing TVA v. United States, No. 01-249C, 2004 WL 1211893, at *13). However, the Yankees' suggestion that the Court's decision not to allow an award of future damages was based upon the fact that TVA did not request future damages is misleading. In actuality, the TVA Court followed section 26(1)(b) and (e) of the Restatement (Second) of Judgments. See TVA, 60 Fed. Cl. at 677-78. Section 26(1)(e) of the Restatement provides as follows:

> For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to date of suit, and chooses the latter course . . . .

Restatement (Second) of Judgments § 26(1)(e) (1982) (emphasis added). Comment g to section 26 of the Restatement, which we have discussed extensively above, provides the explanation and rationale for the rule identified in section 26(1)(e) as it applies to contractual breaches. Accordingly, the Court in TVA expressly adopted the rationale of the Restatement (Second) of Judgments in finding that TVA could not recover future damages in a partial breach case.

## III. THE YANKEES' SUGGESTION THAT THEY SHOULD RECOVER FUTURE DAMAGES WOULD CREATE A NEW LEGAL DOCTRINE OF "ANTICIPATORY PARTIAL BREACH," WHICH OTHERWISE DOES NOT EXIST

By seeking damages now for future partial breaches that have not yet occurred, the Yankees are actually anticipating that the Department of Energy will commit additional partial breaches of the Standard Contract in the future. The fact that the Yankees cannot seek future

damages for future partial breaches of the Standard Contract is supported by the absence of a legal remedy for an anticipatory partial breach. Indeed, "an anticipatory breach cannot be predicated on a partial breach of the contract." City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) (emphasis added), cert. denied, 440 U.S. 914 (1979); see 9 A. Corbin, supra, § 972, at 798 ("there seems to be no authority for saying that, for such a partial anticipatory repudiation, an action for damages can be at once maintained"). To the contrary, an anticipatory repudiation gives rise only to a claim for total breach that concludes the parties' further performance obligations. See Restatement (Second) of Contracts § 253 cmt. b, at 287 (1981) ("a breach by repudiation alone can only give rise to a claim for total breach . . .," effectively ending any further performance obligations by the contracting parties). This Court has recently recognized that "[a]nticipatory repudiation does not apply in a partial breach situation." Indiana Michigan, 60 Fed. Cl. at 648. Accordingly, the Yankees, having elected not to seek damages for a total breach of contract and to continue to seek performance under the Standard Contract, cannot anticipate partial breaches of the Standard Contract that may occur in the future or seek damages at this time for partial breaches of the Standard Contract that may occur in the future.

Even the Yankees appear to recognize that costs which they may incur between now and 2010 will arise from future partial breaches of the Standard Contract. In justifying their ability to return to this Court after 2010 to recover additional damages resulting from the Department of Energy's partial breach, the Yankees assert that, "in the case of a continuing contract, each subsequent breach by the government gives rise to a new cause of action (and a new statute of limitations)." PBr. 8 (citing cases). They further acknowledge that a "claim for breach does not

accrue until the claimant suffers damages." PBr. 8 (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). Yet, the Yankees cannot yet have "suffered damages" for breaches that have not yet occurred. To the contrary, the Yankees will not suffer damages for those future potential partial breaches until those partial breaches, in fact, occur. Based upon the case law that the Yankees themselves cite, it is clear that the Yankees' recovery of damages for partial breaches of the Standard Contract that may occur in the future cannot precede the actual partial breaches for which the Yankees are seeking those damages.

The Yankees assert that, unlike the plaintiff's case in Indiana Michigan, "[i]t is clear in this case that the future damages that Yankee seeks are certain to occur and that the amount of such damages can be determined with reasonable certainty." PBr. 7. It is interesting that the Yankees believe that they can predict with future with absolute "certainty." It would be impossible for anyone to predict, with absolute certainty, events that will occur tomorrow, much less all events that will occur in the next six years. Although, in a total breach case, a court may be required to attempt to decide the most likely set of future events because of the nature of the suit, which concludes all parties' obligations under the contract at issue for all time and provides the non-breaching party with a single recovery, no such requirement exists in a partial breach case. Instead, the Yankees can sue again, at some point in the future, for damages allegedly incurred after the date of the filing of the complaint or, at the latest, the date of trial.

Moreover, the Yankees cannot rely upon the doctrine of anticipatory repudiation within the context of a continuing contract, as the two concepts are mutually exclusive. Here, the Yankees seek to assert an anticipatory repudiation of the contract while simultaneously seeking continued performance. As set forth above, an anticipatory breach cannot be predicated upon a

partial breach of contract. See, e.g., Indiana Michigan, 60 Fed. Cl. at 648; City of Fairfax, Va., 582 F.2d at 1331; 9 A. Corbin, supra, § 972, at 798; Restatement (Second) of Contracts § 253 cmt. b, at 287 (1981). This is because an anticipatory repudiation by one party – and the declaration of an anticipatory breach by the other – terminates all obligations under the contract as a matter of law. As a result, because the Yankees seek continued performance into the future, there can be no repudiation and anticipatory breach.[2]

IV. BY RECOGNIZING A RIGHT TO FUTURE CAUSES OF ACTION BASED UPON FUTURE PARTIAL BREACHES, THE YANKEES IMPLIEDLY RECOGNIZE THE LIMITATIONS UPON THEIR ABILITY TO RECOVER FUTURE OR PROSPECTIVE DAMAGES

In this case, the Yankees have limited their claims to damages allegedly accruing by 2010, the year in which DOE currently anticipates that it will begin SNF acceptance from the nuclear utility contract holders. In so doing, the Yankees apparently believe that they have a right – under a partial breach theory – to petition this Court at some point after 2010 for damages arising after that date. Yet, the Yankees' attempt to claim some future damages now, while at the same time reserving their right to return to the Court at a later date to seek additional future

[2] Public policy supports the incompatibility of an anticipatory repudiation within a partial breach claim. The election of remedies doctrine – that is, the election to assert an anticipatory breach or await the date performance and assert a total or partial breach – and the limitations imposed by each course of action establish definitive dates from which damages are litigated. A party either elects to litigate anticipatory breach remedies from the date of the anticipatory breach, which constitutes an election to view the contract as totally breached, or elects to litigate breach remedies from the actual due date for contract performance. In a breach case, as we have here, by focusing upon dates certain, the courts eliminate significant potential litigation concerning pre-breach conduct by both parties (for example, statements by the breaching party alleged to constitute an anticipatory repudiation of contract, never declared as such by the non-breaching party at the time the statements were made, or an alleged failure by the non-breaching party to mitigate damages prior to the breach) that would significantly and unnecessarily complicate contract litigation and would render unclear the elections regarding continuing contract performance that the parties were making.

damages, is internally inconsistent and, further, in conflict with existing law. Although the Yankees assert that "[t]here are additional future damages, beyond those included in Yankee Atomic's 'minimum' damages claim, that may well be unduly uncertain at this time," PBr. 3, the Yankees have cited absolutely no precedent providing them with the right to do so. In fact, from their briefing, it appears that, if and when they return to the Court to seek additional future damages, they may well attempt to recover additional damages for the period between the date of trial and 2010 if, in fact, their damages exceed the Court's award of future damages through 2010. See PBr. 3 (citing only as an "example" of future damages that may be sought later costs incurred if the Government does not begin SNF acceptance in 2010). The Yankees' proposal apparently provides no method for precluding the Yankees from splitting their causes of action.

Here, if the Court grants the Yankees an award of future damages, which the Yankees allege they most probably will incur, the Yankees will have a minimum "baseline" of monies that they may retain. If, by 2010, it becomes apparent that the Yankees did not need the amount of money that the Court awarded to continue storage operations through 2010, the Yankees will not return that money to the Federal Government, but will keep it. However, if the Yankees incur additional costs through 2010 beyond those that the Court awards, the Yankees, apparently, will seek to recover those additional costs from the Government. In the Yankees' view, an award of future damages through 2010 is a no-lose situation, at least for the Yankees. If the Court awards future damages that exceed the Yankees' eventual costs, the Yankees win because they have obtained additional monies than the costs that they actually incurred. If the Court awards future damages that fail to cover the Yankees' future costs, the Yankees apparently will simply return to the Court and ask for more. The Yankees offer no precedent for this type of request for relief.

The Yankees assert that our suggestion that the Court, as a matter of law, should not award future damages in a partial breach situation makes no sense and that the Court should always look into the future to determine when it is next reasonably probable that the Department of Energy might begin SNF acceptance. PBr. 5. Yet, it is the Yankees' approach – constant discovery about when future events might occur and constant evaluations and decisions regarding the likelihood of future activities and their timing – that makes no sense. By establishing a "rigid rule," as the Yankees describe it, limiting damages awards in a partial breach situation to those incurred as of the date of the complaint's filing or, at the very latest, by the date of trial, the Court eliminates the need for expensive and time-consuming discovery into future events, current activities designed to precipitate future events, and current program deliberations about policy decisions that might affect future events. In fact, under the Yankees' theory, SNF plaintiffs would constantly be taking discovery of individuals responsible for the development of and for decisions about the Yucca Mountain repository, potentially micro-analyzing every effort that they take in an effort to support arguments about increased future damages that the Court allegedly ought to award and precluding those individuals from focusing upon the work upon which they need to be focused: the completion of the Yucca Mountain facility.

Conversely, a legal rule that allows plaintiffs to recover, in a partial breach situation, only those costs that have been incurred creates a situation in which the need for discovery would be extensively reduced and narrowed. Instead of having to engage in repetitive extensive discovery about the Department of Energy's program, about what might happen, and about when it might happen, as the Yankees's request for recovery of <u>some</u> but not all future damages would repeatedly require, discovery in response to a damages claim that seeks only the recovery of

actual incurred costs could be limited to an analysis of whether the costs at issue were actually incurred, whether those costs would have been incurred even without the partial breach, whether the need for the cost incurrence was "caused" by the partial breach, and whether the plaintiff has adequate support for the incurred costs. There would be little or no need for repeated discovery of Department of Energy employees to learn their current up-to-the-moment thinking about when the Department of Energy will be able to begin SNF acceptance and the schedule for that acceptance. Instead, damages will be litigated as they arise, without the need for repeated and repeatedly expensive (in attorney and agency time and cost) discovery into the latest activity or policy.

The relief that we request in our motion *in limine* – barring the Yankees' recovery of future damages – is consistent with existing case precedent and authority. It is also consistent with sound judicial policy and encourages economy of resources. The Court should grant our motion and preclude the Yankees' request for future damages beyond the date of their complaint or, at the very latest, the date of trial.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court exclude all evidence regarding future or prospective damages from the trial of this matter.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
RUSSELL A. SHULTIS
MARIAN E. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

June 21, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 21st day of June 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FUTURE DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.