# EXHIBIT 2

U.S. Department of Justice

FWH:DMC:HDLester
154-98-126

Telephone:
(202) 307-6288

*Washington, D.C. 20530*

March 1, 1999

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Robert L. Shapiro
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005-3305

Re: Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.); Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.); Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.)

Dear Messrs. Stouck and Shapiro:

This letter is in response to your letter dated February 18, 1999, and its accompanying notice of deposition. As I agreed with Mr. Shapiro on February 26, 1999, we are providing you with this letter in lieu of the Rule 30(b)(6) deposition, which you had noticed for this morning.[1]

---

[1] In a letter dated February 26, 1999, Mr. Shapiro confirmed our agreement that we would provide this letter in lieu of the deposition noticed for today. He also asserted in his letter that we "agreed that if we did need to proceed with the deposition that it would take place by the end of the week of March 1st." I have no recollection of any representation or discussion that any deposition would take place "by the end of the week of March 1st." If, after reviewing this letter, plaintiffs continue to seek a deposition upon the matters identified in the notice of deposition, we are willing to discuss the scope of that deposition and a date for such a deposition with you. However, we made no agreement regarding a specific date for that deposition.

Prior to responding to the information requested in your Rule 30(b)(6) deposition notice, we note that a Rule 30(b)(6) deposition is not an appropriate vehicle for the discovery that you seek. First, there is no central record keeping system for all of the information that you seek, particularly with regard to your request for "the nature of [each individual's] involvement with and knowledge of the subject matter in question." In fact, to respond completely to your requests for information about the "nature" of each individual's "involvement and knowledge of the subject matter in question," you would presumably have to depose each and every individual identified, as it would be impossible for us to extract all such information regarding each person and provide it either in written form or in a Rule 30(b)(6) deposition.

Further, in light of the documents that have already been produced to you (including the contract files for the plaintiffs in these three cases), the documents that you presumably already have in light of your clients' contemporaneous involvement in the matters at issue in this case, and the access that you will have to the electronic database of documents maintained by the Department of Energy, you should be able to identify the contracting officers assigned to these contracts and the individuals with knowledge of the matters about which you seek information. Further, the documentation produced to you should provide you with adequate means to identify the "nature of [each individual's] involvement and knowledge" of the identified topics. The Advisory Committee Notes to Rule 30(b)(6) of the Federal Rules of Civil Procedure indicate that the rule was intended to assist parties otherwise unable to identify who within the organization has knowledge of particular facts. Fed. R. Civ. Pro. Rule 30(b)(6), Notes of Advisory Committee on 1970 Amendment. We have identified below the individuals who have knowledge of the "particular facts" that you have identified. Your request that we go beyond that task and identify "all" facts known on every topic identified is beyond any reasonable interpretation of Rule 30(b)(6). Given that some of the information that you currently seek is similar in nature to information that you sought in your second set of interrogatories, it also conflicts with the purposes of Rule 33(c) of the Rules of the Court of Federal Claims, which allows us to produce business records through which you can obtain the information that you seek.

Without waiving these objections, we have attempted to identify eight or more individuals for the categories that you have identified, with the exception of clearly irrelevant categories of information that are not designed to lead to the discovery of admissible evidence in the proceedings before the Court of Federal Claims. We specifically object to your request for all information regarding "the nature of [each individual's] involvement with and knowledge of the subject matter in

question," as vague, ambiguous, and unduly burdensome, as well as for the reasons set forth above. Each individual listed under each topic has knowledge of the topic at issue, with the individuals listed in descending order of involvement in the particular matter (with the exception of contracting officers, who are listed after other Federal employees).

Unless otherwise indicated below, the business address for all listed Federal employees is the Department of Energy, 1000 Independence Avenue, S.W., Washington, D.C. 20585, (202) 586-5000. Further, unless otherwise indicated below, the business address for all contractor personnel is TRW Environmental Safety Systems, Inc., 2650 Park Tower Drive, Suite 800, Vienna, Virginia 22180. We are precluded from providing home addresses for individuals, pursuant to the Privacy Act, 5 U.S.C. § 552a (1994).

**QUESTION 1: The identities of the eight (8) PERSONS with the most personal knowledge concerning the schedule (measured in terms of metric tons of uranium or assemblies per year or by some other measure) by which DOE is obligated to remove SPENT FUEL from the site of PLAINTIFFS' reactors pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Alan Brownstein (1985-91, Nuclear Industry Specialist, Management & Support Division; 1991-94, Supervisory Industry Specialist, Logistics & Utility Interface Branch, 1994-95, Supervisory Industry Specialist, Waste Acceptance Division; 1995-present, Supervisory Program Analyst, Regulatory Integration Division)
Nancy Slater (1991-95, Industry Specialist, Logistics & Utility Interface Branch; March 1995 to August 1995, Supervisory Industry Specialist, Waste Acceptance Division; August 1995 to present, Industry Specialist, Regulatory Coordination Division)
Dave Zabransky (1991-95, General Engineer, Logistics & Utility Interface Branch; 1995 to 1997, General Engineer, Waste Acceptance Division; 1997 to present, Industry Specialist, Regulatory Coordination Division)
Beth Tomasoni, Contracting Officer
Chris Jedrey, Former Contracting Officer (address unknown)
Rich Leotta, Former Contracting Officer

Contractor

Billy Cole, Manager, TESS Waste Acceptance
Scott Vance (1988-93, Research Engineer, Battelle PNL, Waste Management Department; 1993-94, Consultant CH2MHill; Senior Consultant, JAI, Inc., TESS Waste Acceptance),

current address: JAI, Inc., 1210 Virginia Circle, Nampa, Idaho 83687

Ed Benz (1979-81, Project Manager, Battelle, Columbus; 1983-88, Jacobs Engineering (Weston Teammate), Waste Package Program Manager; 1988-91, Jacobs Engineering, Waste Acceptance Task Leader; 1994-96, Jacobs Engineering, Waste Acceptance Task Leader; 1997 to present, JAI, Inc. (TESS Teammate), Senior Consultant, Waste Acceptance)

**QUESTION 2: The identities of the eight (8) PERSONS with the most personal knowledge concerning the date by which DOE is obligated to finish removing all of the SPENT FUEL from PLAINTIFFS' reactors pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Alan Brownstein
Nancy Slater
Dave Zabransky
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 3: The identities of the eight (8) PERSONS with the most personal knowledge concerning the effect that the permanently shut down status of PLAINTIFFS' reactors has on the timing of the removal of SPENT FUEL from the site of PLAINTIFFS' reactors pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Alan Brownstein
Nancy Slater
Lake Barrett (1985-89, Director, Transportation & Waste Systems Division; 1989-91, Deputy Associate Director for External Relations & Policy; 1993-97, Deputy Director of OCRWM; 1997 to present, Acting Director, OCRWM)

Ronald P. Milner (April 1984 to March 1985, Supervisory Program Analyst, Operations Division; March 1985 to May 1986, Supervisory General Engineer, Finance & Cost Analysis Division; May 1986 to September 1986, Supervisory General Engineer, Analytical Services Branch; September 1986 to July 1988, Supervisory General Engineer, Financial Management Analysis Division; July 1988 to June 1991, Supervisory General Engineer, Program Control Division; June 1991 to January 1995, Associate Director for Office of Storage and Transportation; January 1995 to May 1997, Director, Office of Program Management & Transportation; May 1997 to June 1997, Director, Office of Waste Acceptance & Transportation; June 1997 to present, Acting Deputy Director, OCRWM)
Dave Zabransky
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 4: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's role, pursuant to PLAINTIFFS' spent fuel disposal contracts, with respect to agreements — between a PLAINTIFF and any other CONTRACT HOLDER — that concern exchanges of approved delivery commitment schedules.**

Federal

Alan Brownstein
Nancy Slater
Dave Zabransky
Ronald P. Milner
Lake Barrett
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Pat MacDuffee, Retired Principal Investigator PNL (address unknown)

**QUESTION 5: The identities of the eight (8) PERSONS with the most personal knowledge concerning the treatment or handling of Greater Than Class C Waste pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Alan Brownstein
Nancy Slater
Dave Zabransky
Ronald P. Milner
Lake Barrett
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Pat MacDuffee

**QUESTION 6: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's interpretation of PLAINTIFFS' obligations under Article IV.A.2(a) of PLAINTIFFS' Spent Fuel Disposal Contracts to prepare its SPENT FUEL for transport and/or storage.**

Federal

Alan Brownstein
Nancy Slater
James Carlson (1983-84, Nuclear Engineer, Office of Systems & Storage Development; 1984-88, Supervisory General Engineer, Storage & Engineering Division; 1988-91, Supervisory General Engineer, Program Relations Branch; 1991-94, Supervisory General Engineer, Transportation & Logistics Division; 1994-97, Supervisory General Engineer, Systems Engineering Division; 1997 to present, Supervisory General Engineer, Waste Acceptance and Transportation Division)
Dwight Shelor, Acting Director, Office of Acceptance, Transportation and Integration
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole

Scott Vance
Ed Benz

**QUESTION 7: The identities of the eight (8) PERSONS with the most personal knowledge concerning the effect of the annual capacity reports issued by DOE and mentioned in Article IV.B.5(b) of PLAINTIFFS' Spent Fuel Disposal Contracts on the schedule by which DOE is obligated to remove SPENT FUEL from the site of PLAINTIFFS' reactors.**

Federal

Alan Brownstein
Nancy Slater
Dave Zabransky
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 8: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's plans, projections and/or objectives, as of June 30, 1983, with respect to the annual acceptance rate of SPENT FUEL at the DOE facility(ies) to which PLAINTIFFS' SPENT FUEL would be removed pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Robert L. Morgan, Former Acting Director, OCRWM (no current address)
Michael J. Lawrence, Former Acting Deputy Director, OCRWM (no current address)
Robert Rosselli, Former Acting Associate Director, OCRWM Management Development (no current address)
Robert Bauer, Former Associate Director, OCRWM Storage and Systems (no current address)
J. William Bennett, Former Acting Associate Director, OCRWM Geologic Repository Deployment (no current address)

Contractor

Daryl Newman, PNL Principal Investigator (no current address)

Bob McKee, Retired Principal Investigator PNL (no current address)
Billy Cole

**QUESTION 9: The identities of the eight (8) PERSONS with the most personal knowledge concerning the creation of or amendments to DOE's plans, projections and/or objectives with respect to the annual acceptance rate of SPENT FUEL at the DOE facility(ies) to which PLAINTIFFS' SPENT FUEL would be removed pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Jeff Williams, Director, Office of Acceptance, Transportation and Integration's Systems Engineering and International Division
James Carlson
Stephen Brocum, Acting Director for Licensing and Regulatory Integration, YMSCO, 1551 Hillshire Drive, Las Vegas, Nevada 89134
Roger Hilley, title and address not currently available
Christopher Kouts, Former Director Storage and Engineering Technology Division

Contractor

Billy Coles
Scott Vance
Pat MacDuffee

**QUESTION 10: The identities of the eight (8) PERSONS with the most personal knowledge concerning the creation of or amendments to the annual acceptance priority rankings issued by DOE and mentioned in Article IV.B.5(a) of PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Nancy Slater
Thomas Pollog (1988-90, Nuclear Engineer, Office of System & Storage Development; 1990-91, Nuclear Engineer, Integration Branch; 1991-92, Nuclear Engineer, Logistics & Utility Interface Branch; 1992-95, detailed to IAEA; January 1995 to September 1995, Nuclear Engineer, Logistics & Utility Interface Branch; September 1995 to February 1997, Nuclear Engineer, Engineering Division; February 1997 to present, Nuclear Engineer, Waste Acceptance and Transportation Division)
Alan Brownstein

Robert P. Milner
James Carlson
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Ronald MacDonald, Principal Investigator, TESS (no current address)

**QUESTION 11: The identities of the eight (8) PERSONS with the most personal knowledge concerning the effect of the annual acceptance priority rankings issued by DOE and mentioned in Article IV.B.5(a) of PLAINTIFFS' Spent Fuel Disposal Contract on the schedule by which DOE is obligated to remove SPENT FUEL from the site of PLAINTIFFS' reactors.**

Federal

Alan Brownstein
Nancy Slater
Thomas Pollog
Dave Zabransky
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Ronald MacDonald

**QUESTION 12: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's rights and obligations, pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts, with respect to the approval or disapproval of delivery commitment schedules furnished by PLAINTIFFS pursuant to Article V.B.1. of PLAINTIFFS' Spent Fuel Disposal Contracts.**

Federal

Alan Brownstein
Nancy Slater
James Carlson
Beth Tomasoni

Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Scott Vance
Doug Williamson, TESS Scientific Consultant

**QUESTION 13: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 16 of Yankee Atomic's Complaint.**

Federal

Daniel A. Dreyfus, Former Director, OCRWM, current address: Smithsonian Institute, Washington, D.C.
John Bartlett, Former Director, OCRWM (no current address)
Ben Rusche, Former Director, OCRWM (no current address)
Lake Barrett
Frank Peters, Former Acting Director, OCRWM

Contractor

Robert Strickler, Former General Manager, TESS
Robbie Robertson, Former General Manager, TESS
Colin Heath, Assistant General Manager, TESS

**QUESTION 14: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 17 of Yankee Atomic's Complaint.**

Federal

Alan Brownstein
Nancy Slater
Thomas Pollog
Dave Zabransky
Beth Tomasoni
Chris Jedrey
Rich Leotta

**QUESTION 15: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 23 of Yankee Atomic's Complaint.**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner
Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 16: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 24 of Yankee Atomic's Complaint.**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner
Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 17: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 25 of Yankee Atomic's Complaint.**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner

Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 18: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 27 of Yankee Atomic's Complaint.**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner
Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 19: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base your denial of paragraph 39 of Yankee Atomic's Complaint.**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner
Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 20: The identities of the eight (8) PERSONS with the most personal knowledge concerning the factual grounds upon which you base the contention in paragraph 21 of your Answer to Yankee Atomic's Complaint that "plaintiff would have been required to incur substantially all of its claimed additional costs even had the Department of Energy commenced disposal operations in 1998."**

Federal

Dave Zabransky
James Carlson
Thomas Pollog
Ronald P. Milner
Beth Tomasoni

Contractor

Billy Cole
Scott Vance
Ed Benz

**QUESTION 21: The identities of the eight (8) PERSONS with the most personal knowledge concerning the extent and manner of the government's current storage of SPENT FUEL originating from commercial nuclear power reactors.**

For the same reasons specified in response to Interrogatory No. 46 of plaintiff's second set of interrogatories, we object to this request.

**QUESTION 22: The identities of the eight (8) PERSONS with the most personal knowledge concerning movements of SPENT FUEL into or within the United States by or on behalf of the United States since January 1, 1990.**

For the same reasons specified in response to Interrogatory No. 47 of plaintiff's second set of interrogatories, we object to this request.

**QUESTION 23: The identities of the eight (8) PERSONS with the most personal knowledge concerning places in the United States in which SPENT FUEL has been stored since January 1, 1983 at a site other than at a commercial nuclear power reactor.**

For the same reasons specified in response to Interrogatory No. 48 of plaintiff's second set of interrogatories, we object to this request.

**QUESTION 24: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's rights and obligations, pursuant to PLAINTIFFS' Spent Fuel Disposal Contracts, with respect to the timely provision of casks necessary for the removal of SPENT FUEL from the site of PLAINTIFFS' reactors.**

Federal

William Lemeshewsky, Team Leader for Transportation within the Office of Acceptance, Transportation and Integration's Waste Acceptance and Transportation Division
James Carlson
Dwight Shelor
Beth Tomasoni
Chris Jedrey
Rich Leotta

Contractor

Billy Cole
Ed Benz
Bill Teer, Senior Transportation Consultant, TESS

**QUESTION 25: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's physical capability to transport SPENT FUEL from PLAINTIFFS' reactors.**

We object to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**QUESTION 26: The identities of the eight (8) PERSONS with the most personal knowledge concerning DOE's physical capability to store SPENT FUEL removed from PLAINTIFFS' reactors.**

We object to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**QUESTION 27: The identities of the eight (8) PERSONS with the most personal knowledge concerning any effort undertaken by or on behalf of DOE to examine the manner in which DOE would remove SPENT FUEL from PLAINTIFFS' reactors.**

Federal

James Carlson
Lake Barrett
Ed Wilmont, title and address not currently available
Thomas Pollog

Jim Osborne, General Engineer, Engineering Division, 1551 Hillshire Drive, Las Vegas, Nevada 89134

Contractor

Bill Teer
Nigel Mote, NAS, address not known
Ron Kelly, Former TESS, address not known

We are currently attempting to locate additional information about the employment histories of some of the individuals listed above and will supplement this letter with that information at a later date. Otherwise, we presume that this information more than adequately responds to your requests for information. Additional information may be found in the documents that we have produced to you and in the electronic database to be made available to you.

Very truly yours,

Harold D. Lester

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------------------------------X

YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY, MAINE YANKEE ATOMIC POWER COMPANY,

CERTIFIED COPY

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CASE NO. 98-126C 98-154C 98-474C

-----------------------------------------X

Washington, D.C.

Thursday, June 13, 2002

Deposition of ROBERT ALLEN CAMPBELL

a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Suite 1010, Washington, D.C, at 9:32 a.m, on Thursday, June 13, 2002, and the proceedings being taken down by Stenotype by CINDY L. SEBO, and transcribed under her direction.

and C which can go to commercial low-level waste disposal sites.

Class C has an upper limit, and it's -- it's in two tables in the regulation, and if you exceed that limit, it's then Greater-Than-Class C.

Q And if I understand correctly, your work with the Navy did not involve GTCC --

A Yes.

Q -- is that correct?

A Yes. I did not work with Greater-Than-Class C in the Navy.

Q Thank you. And then in 1992, you joined the Department of Energy?

A Yes.

Q What was your position with the Department of Energy at that time?

A I was a nuclear engineer program manager.

Q And what was the program you were managing?

A Well, basically everyone is called a program manager. So I was dealing with what's called off-site waste, which was anything -- any materials or waste that was outside the Department of Energy complex, maybe on loan to a university or to a private company, that needed to come back, I

worked on. And I also worked on the acceptance of Greater-Than-Class C sealed sources.

Q And what branch of the Department of Energy did you begin work at as a program manager in '92?

A The Office of Environmental Management.

Q And what EM number is that, that office?

A They've reorganized a couple times. It was EM32 then.

Q Okay. And what was the title of that branch of the office?

A It was -- that was the Office of Waste Operations.

Q And, in general, what were the areas of responsibility of EM32, the Office of Waste Operations?

A That office was responsible for any waste management activities at all DOE sites.

Q So, organizationally, your -- I guess you would call it an office -- EM32 is called an office?

A Yes.

Q So the EM32 office underneath it had different programs?

A Yes. There were three different

there was a transition from taking sealed sources to the nearest DOE site to centralizing the storage out of Los Alamos?

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: When we started, we didn't have a program in place. We didn't know the scope of the program or how many requests we were going to get from the NRC. As we began to respond to more requests, it was obvious that this trend was going to continue and that we needed a more -- a more routine ability to accept sources.

And so the decision was made to -- to pick a single site that had experience in this area and use a single location.

BY MR. SKALABAN:

Q How many sealed sources -- I'm not limiting my question to just 1992 -- from 1992 forward to the present, how many sealed sources have been moved from the original site to a DOE site?

A From 1992 forward, over 3,000.

Q And how large are the sealed sources -- I mean, what's the fit -- what's the average kind of physical characteristics of a sealed source? What

does it look like? What's its size?

MS. HERRMANN: Objection, vague.

THE WITNESS: There's a wide variety. Some are -- come out of gauges and portable equipment and they're very small, maybe an inch high or even smaller, you know, maybe the size of a pencil eraser, up to -- the sources are the size of a 12-ounce soda can.

They're basically radioactive material encompassed in metal, usually double encased with welds, and, typically one of the layers is stainless steel.

BY MR. SKALABAN:

Q How are they -- what's the mode of transportation that's used to take the sealed sources from a site to a DOE facility for storage?

A Commercial carrier.

Q Is that truck?

A Typically.

Q Do you know if there's been transportation of GTCC sealed sources other than by truck?

A It is -- no, I don't know. It's possible that they could go by rail. But in most cases, we have the owner of the source arrange for the

shipment to us. In the cases where we do the shipment, it goes by truck, commercial carrier.

Q And with approximate -- I realize it's approximately -- approximately 3,000 sealed sources that have been moved, would that be 3,000 separate shipments have been made or would that be -- what's the number of shipments that have been made of sealed sources?

A It would not be 3,000 individual shipments. Some of the shipments have been 200 sources in a drum. Some have been one. It's probably been more than a thousand, probably less than 2,000, but I don't have -- I don't know the exact answer.

Q Have there been any problems that you're aware of in the approximately 1,000 to 2,000 shipments of GTCC sealed sources?

MS. HERRMANN: Objection, vague as to problems.

THE WITNESS: I'm not aware of any.

BY MR. SKALABAN:

Q Have there been any planned shipments of GTCC sealed sources that have been stopped because of a transportation issue?

MS. HERRMANN: Objection, vague.

a shipment of GTCCs in sealed sources?
MS. HERRMANN: Objection, vague.
THE WITNESS: Not that I'm aware of.
BY MR. SKALABAN:
Q In 1992, you testified you began work at EM32 under Mr. Harmon. How long did you work in that position as a program manager?
A I'm still a program manager. Basically the same job, but I have more responsibilities now. But I continue to do that.
Q Okay. Well, did your responsibilities -- have your responsibilities changed over time? What's the -- can you let me know when the -- starting in 1992 when you were program manager, one of your responsibilities was for GTCC sealed sources.
What has been the next substantial change in any of your responsibilities? When did that occur?
A I received a paygrade promotion in 1994, and I took on additional responsibilities dealing with DOE waste management and interfacing with the Department of the Navy's Office of Naval Reactors.
Q And, in general, what did -- your duties and responsibilities, what were they in connection

interfacing with the Navy and your prior responsibilities which included GTCC sealed sources?

A Nothing significant. I mean, we're always assigned short-term projects, but I don't believe I had a major change in duties.

Q Okay. And during this period of '92 to '95, outside of GTCC sealed sources, who was responsible -- who had responsibility for GTCC for other -- other types of GTCC waste?

MS. HERRMANN: Objection, foundation.

THE WITNESS: Terry Plummer.

BY MR. SKALABAN:

Q Was there a name of Mr. Plummer's office that you recall?

A I don't remember. He was effectively in the same organization he was before, but I don't remember what they were called. That organization didn't last a long time. I don't remember.

Q Now, in the '95 reorganization, you were still an EM32?

A No, I was now an EM35, I believe.

Q Okay. Okay. How about in 1995 forward, when was the next time you took on a new duty or responsibility or -- actually, let me rephrase