IN THE UNITED STATES COURT OF FEDERAL CLAIMS

------------------------------------------x
YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese, J.) :
DUKE POWER, a Division of DUKE ENERGY CORP.:
(98-485C)(Sypolt, J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, et al. :
(98-614C)(Merow, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C) (Allegra, J.) :
GPU NUCLEAR, INCORPORATED :
(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :VOLUME
(00-703C)(Damich, J.) : I
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :Discovery
(01-116C)(Sypolt, J.) :Judge:
TENNESSEE VALLEY AUTHORITY :(Judge
(01-249C)(Bruggink, J.) :Sypolt)
Plaintiffs, :PAGES
v. :1 - 241

THE UNITED STATES, :

Defendant. :

---------------------------------------------x

Deposition of Victor W. Trebules, Jr.

Washington, DC

Wednesday, April 17, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144458

whatever reason, as long as a question is not pending, I would be more than happy to accommodate you in taking a break.

A. (Nods head).

Q. Could you just quickly just describe your education after high school.

A. All right. I went to Ohio University for five years. I got a degree in engineering and a bachelor's degree in physics. I then did graduate work at Lehigh University in Bethlehem, Pennsylvania. I got a master's degree in mechanical engineering.

Q. And when did you receive that final degree?

A. 1972 I graduated from Lehigh.

Q. And that was the master's?

A. Yes. Master's degree in mechanical engineering.

Q. Okay. When did you first -- strike that.

Do you presently work for the Department of Energy?

A. Yes, I do.

Q. Okay. When did you first -- when did you start working for the Department of Energy?

A. Actually, I started working for the Atomic Energy Commission in 1972, which became the Energy Research and Development Administration, which became the Department of Energy. I don't remember the exact year ERDA became the Department of Energy. I think it was about -- I don't remember.

Q. Okay. But you were there when the Department of Energy was first formed it sounds like?

A. Yes. Yes.

Q. What was your first position in the Department of Energy?

A. The Department of Energy or the Atomic Energy Commission?

Q. I'm going to start with the Department of Energy.

A. Okay. Again, I don't remember exactly when name changed, but I spent the first five years working for the Pittsburgh Naval Reactors Office after I graduated from college, and then I transferred to the Atomic Energy Commission headquarters in Germantown, Maryland and I worked in the Office of Nuclear Energy Programs.

Radioactive Waste Management?

A. I don't remember the title of my first position. It was probably program analyst or something like that, but I'm not exactly sure.

Q. What did that position entail? What were your responsibilities in that position?

A. First major assignment I could remember was coordinating the preparation of the mission plan for the Civilian Radioactive Waste Management Program.

Q. Was there anything else that your role entailed in that position?

MR. SHULTIS: Objection, vague.

THE WITNESS: That preparation of the mission plan was pretty much a full-time activity for a number of years. So there might have been other minor assignments I was given, but, you know, overall it was primarily the mission plan.

BY MR. EIDUKAS:

Q. Okay. Did there come a time when your position at the Office of Civilian Radioactive Waste Management changed from program analyst working on the mission plan?

ESQUIRE DEPOSITION SERVICES
1020 19TH STREET, NORTHWEST
SUITE 620
WASHINGTON, D.C. 20036

ERRATA SHEET

Case Name: Yankee Atomic Electric Co., et al. v. The United States
Witness Name: Victor W. Trebules, Jr.
Deposition Date: April 17, 2002
Job No.: 144458

Page No. Line No. Change

Page 13, Line 17, change "Fish" to "Fission"; Page 14, Line 11, change "Fish" to Fission"; Page 15, Line 4, change "Whitewater" to "Light Water"; Page 17, Line 19, change "technical" to "executive"; Page 33, Line 1, change to read "...one which was our..."; Page 33, Line 3, place a period after "that.", delete "where", start new sentence with "We"; Page 56, Line 11, change "field" to "fuel"; Page 64, Line 16, change "Al" to "Alan"; Page 82, Line 11, change "in" to "and"; Page 98, Line 3, change to read "...would be more than..."; Page 102, Line 10, change "or" to "were"; Page 117, Line 5, change "ground" to "round"; Page 126, Line 17, change "overview" to "for review"; Page 138, Line 12, change "1994" to "1984"; Page 153, Line 14, change "change" to "changed"; Page 168, Line 4, delete "fold"; Page 192, Line 1, change "1995" to "1985"; Page 205, Line 15, change "50,000" to "15,000"; Page 226, Line 16, change "When" to "Then" and delete "in here"; (Cont'd on 241a)

Signature Victor W. Trebules, Jr. Date 5-20-02

ERRATA SHEET (CONTINUED) Page 241a

Witness Name: Victor W. Trebules, Jr.

Page 226, Line 17 and 18, bring Line 18 up to Line 17, should be incorporated as same paragraph, should read as "...Waste Negotiator. When Congress created..."; Page 236, Line 13, change "WIP" to "WIPP"; Page 188, Line 10, delete "past or"; Page 188, Line 16,change "a" to "not".

Signature Victor W. Trebules Jr. Date 5-20-02

ORIGINAL

In the U.S. Court of Federal Claims

---------------------------------x

Yankee Atomic Electric Co., :
et al :
: NO. 98-126C
v. : 98-154C
: 98-474C
United States of America :

---------------------------------x

April 19, 2002

DEPOSITION OF:

Victor W. Trebules, Jr.

a witness, called by counsel pursuant to notice, commencing at 9:00 a.m., which was taken at Spriggs and Hollingsworth, 1350 I St., NW, Washington, DC

(Morning Session)

Stipulations

(It is stipulated and agreed by and between counsel for the respective parties that the reading and signing of this transcript by the witness are not waived.

It is further stipulated and agreed that the filing of this transcript with the clerk of the court be and the same is hereby waived.)

* * * * *

Whereupon,

Victor W. Trebules, Jr.

was called for examination by counsel and, having been previously sworn, was recalled and testified as follows:

DIRECT EXAMINATION:

BY MR. STOUCK:

Q. Good morning, Mr. Trebules. Would you

agree that at the time that you were working on the plan in 1984 and 1985 it was an objective of the spent fuel program that that program be operated in an economically efficient manner?

MR. SHULTIS: Objection as to "economically efficient." It's vague.

A. I believe we said words to that effect in the mission plan, that's correct.

Q. Why was that an objective?

A. To the best of my recollection, I think we used phrases like fiduciary responsibility. People working in the program felt that they had an obligation to try to execute the program efficiently and effectively.

Q. Why was that an objective?

A. We knew the program was going to cost a lot of money over its lifetime.

I guess it's my opinion that the people felt they ought to try to be efficient in carrying out that program.

Q. Let's pull out the mission plan which I think is exhibit six, if you would, please.

In the U.S. Court of Federal Claims

----------------------------------x

Yankee Atomic Electric Co., :

et al :

: NO. 98-126C

v. : 98-154C

: 98-474C

United States of America :

----------------------------------x

April 19, 2002

DEPOSITION OF:

Victor W. Trebules, Jr.

a witness, called by counsel pursuant to notice, commencing at 9:00 a.m., which was taken at Spriggs and Hollingsworth, 1350 I St., NW, Washington, DC

Errata Page of Deponent

Please note any errors on this sheet. The reasons may be general, such as "to correct stenographic error" or "to clarify the record." When completed, send this page to the attorney who took your deposition, NOT the court reporter.

Page Line Correction Reason For Change

Page 8, Line 1, change "depository" to "repository"; Page 10, Line 5, change "and" to "in" and change "operations" to "operation"; Page 20, Line 17, change "some what" to "somewhat", Page 22, Line 5, change "cast" to "cask", Page 22, Line 9, change "cast" to "cask"; Page 26, Line 19 and 20, should be incorporated as same paragraph and same sentence, change to read as "...Robert Rosselli in the early..."; Page 26, Line 20, delete "," after "stages"; Page 30, Line 10 and 13, change "Wellington" to "Mellington"; Page 30, Line 22, change "Troutner" to "Trautner"; Page 35, Line 21, change "in" to "and"; Page 52, Line 6, change to read as "...that part of it. It would be...".

Victor W. Trebules, Jr.
5-20-02

# EXHIBIT 9

**Plaintiffs' July 7, 2004 Possible Rebuttal Deposition Designations**

**Yankee Atomic Electric Company v. United States, 98-126;**
**Connecticut Yankee Atomic Power Company v. United States, 98-474;**
**Maine Yankee Atomic Power Company v. United States, 98-154.**

B. Alan Brownstein (Organized by Date of Deposition)

1) April 9, 2002

Tr. 54: 1 - 55: 20; Tr. 64:5-16; Tr. 146:23 -148:9; Tr. 150:7 - 151:17

2) April 10, 2002

Tr. 376: 22 - 378: 5

3) May 23, 2002

Tr. 152: 6 - 155: 25; Tr. 165: 7 - Tr. 167: 3; Tr. 214:17 - 220:17; Tr. 233:1-21

4) June 14, 2002

Tr. 423:20 - 428:5

C. Nancy Slater-Thompson (Organized by Date of Deposition)

1) April 22, 1999

Tr. 244:5-15; Tr. 273: 11 - 274: 5

2) June 13, 2002

Tr. 94:16 - 96:16; Tr. 97:6 - 99: 6; Tr. 109:3 -110:13; Tr. 159:7 - 160:2; Tr. 161:2-17

D. Ronald Milner (Organized by Date of Deposition)

1) May 3, 2002

Tr. 574:5 - 575:19

2) May 7, 2002

Tr. 28:11- Tr. 32:11

3) May 8, 2002

Tr. 155:4-156:1

# EXHIBIT 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Tuesday, April 9, 2002

Deposition of ALAN BROWNSTEIN, a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

Q. What were the responsibilities of the department with respect to the disposal of spent nuclear fuel?

A. We were responsible --

MR. BANES: Objection -- I'm sorry. Objection. Calls for a legal conclusion.

Go ahead.

THE WITNESS: Okay. Ultimately we were responsible for accepting that fuel for permanent disposal.

BY MR. TOMASZCZUK:

Q. Was there a date by which the department was to undertake that effort?

MR. BANES: Objection. Calls for a legal conclusion.

Go ahead.

THE WITNESS: I believe and the department believed that we had to begin accepting that fuel upon commencement of the facility operations.

BY MR. TOMASZCZUK:

Q. Not by a particular date?

A. There was a date, but that date was conditional.

We believed that the January 31st,

1998 date was clear as we responded to written questions from the Hill and others, that that date was conditional based on the commencement of facility operations.

Q. Did the department have the responsibility to take title to the spent nuclear fuel or high-level waste involved as expeditiously as practicable?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: Yes, but, and the but is based upon commencement of facility operations.

BY MR. TOMASZCZUK:

Q. Is it your understanding, Mr. Brownstein, that if the facility never opens, then DOE never has an obligation under the contract?

MR. BANES: Objection. Calls for a legal conclusion, and vague.

THE WITNESS: Yes.

BY MR. TOMASZCZUK:

Q. Did you have any understanding at or about the time you became a DOE employee with respect to the spent nuclear fuel acceptance rate that DOE was using with respect to the

understand my question?
A. I don't.
MR. BANES: Same objection.
BY MR. TOMASZCZK:
Q. Well, is it true that DOE under the contract is committed to accept waste from the signatories of standard disposal contracts on a firm schedule that begins no later than January 31, 1998?
MR. BANES: Objection. Calls for a legal conclusion.
Go ahead.
THE WITNESS: I don't believe that. I believe that this is a, a goal.
I don't believe that it accurately represents what the contract calls for.
BY MR. TOMASZCZUK:
Q. Did you ever discuss that view with anyone?
A. I'm sure that I must have, but I don't recall specifically who or circumstances.
Q. You would at least agree the first sentence doesn't talk about goals, does it?
MR. BANES: Objection -- vague, argumentative.

A. Yes.
Q. And the sentence which I quoted has the phrase contractually binding Delivery Commitment Schedules.
What provision of the contract indicates that DCSs, Delivery Commitment Schedules, are contractually binding?
MR. BANES: Objection. Calls for a legal conclusion.
THE WITNESS: I have to go back and refresh my memory and read it.
BY MR. TOMASZCZUK:
Q. Sure.
A. But I'm referring to Article V.B. of the contract which addresses Delivery Commitment Schedules.
Q. Okay. Take your time and have a look at it.
(The witness reviewed the document.)
THE WITNESS: Okay. I have reviewed it.
BY MR. TOMASZCZUK:
Q. Okay. And what language in that section of the contract supports the view that you expressed in this letter that the DCSs were

contractually binding?

A. Well, in retrospect, I, I don't really agree with what I wrote at that time.

I think I was trying to juxtapose the idea that we can meet either as a goal or as a contractual commitment accepting a single assembly versus a process which is more than that as referred to in the contract.

I think, today I think that was unfortunate, personally think it was an unfortunate choice of words by using the word contractually binding, but referred to in the contract as Delivery Commitment Schedule.

Q. So sitting here today, you can't identify a provision of the contract that says the DCSs are binding, right?

A. In reading Article VI.B, I didn't see that word.

Q. Indeed do you have the understanding that the DCSs are not binding?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: I go back to my previous testimony which guided, you know, my thinking the entire ten-year period that I was working

with the contract, which was we had many goals. We had many objectives, but in terms of contractual commitments, the, the, contractually we had a responsibility to begin waste acceptance following commencement of facility operations.

That's what I believed then. That's what guided me. That's what I believe today as you have asked me, I have stated.

BY MR. TOMASZCZUK:

Q. I understood that. Thank you, but I'm not sure that was responsive to my question.

A. Okay.

Q. My question was sitting here today, isn't it true that the DCSs are not binding?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: I do believe that's, that is a legal matter.

I mean I'm not a lawyer.

BY MR. TOMASZCZUK:

Q. Well, with all due respect, sir, I think that answer's also not responsive.

What is your understanding, having worked on the program for more than ten years,

was a change made in the concurrence process by
an attorney or a policy change.
Fifteen years ago, I just, I'm having
a difficult time explaining what I meant by that
word, one word.
BY MR. TOMASZCZUK:
Q. Okay. And my question was sitting
here today, is it your understanding that the
DCSs are binding or not?
MR. BANES: Objection -- asked and
answered.
MR. TOMASZCZUK: Well, I've asked it.
I'm not sure he has answered.
MR. BANES: I think he has answered
it. I think what he said is he can't divorce it
from the commencement of facility operations, so
if there is no facility in operation, then it
wouldn't be binding.
I think that's what he said.
THE WITNESS: That's exactly right.
We can go down two paths here, you know. If
there was a facility, if --
BY MR. TOMASZCZUK:
Q. Go ahead.
A. If there was a facility, and if the