# In the United States Court of Federal Claims

No. 98-126 C
(Filed July 9, 2004)

*******************************
YANKEE ATOMIC *
ELECTRIC COMPANY, *
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
Defendant. *
*******************************

**ORDER**[1/]

This matter is before the court on plaintiffs' Motion *In Limine* to Preclude Evidence Concerning Four Government Damages "Scenarios" that (1) Have no Relevance to Yankee Atomic's Damages Claim, and (2) Have no Basis in the Government's Proposed Findings in its Pretrial Submissions. Defendant filed its Response; plaintiffs filed their Reply. Having reviewed the materials, the court deems oral argument unnecessary.

Plaintiffs seek to preclude the introduction of evidence at trial of four damages "scenarios" discussed by government experts in their reports because they have no relevance to plaintiffs' damage claim and are not supported by any proposed facts in defendant's "Amended Stipulation of Facts." Asserting this evidence is voluminous and would consume considerable trial time, plaintiffs request such be excluded in order to streamline the trial.

According to plaintiffs, five different, complex damages "scenarios" were presented for the first time in expert reports of Messrs. Abbott and Johnson submitted by defendant in February 2004. Of the five, only "Scenario 4" addresses plaintiffs'

---

[1/] This should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154 and *Maine Yankee v. United States*, No. 98-474.

damages claim; four have no relevance. In addition to relevance, plaintiffs also object to the four damage theories because they are based on assumptions concerning contractual obligations of the Department of Energy ("DOE") that are not included in the defendant's proposed facts. Accordingly, plaintiffs, citing Federal Rules of Evidence 401, 402, and 403, argue that "the government should not be permitted to introduce at trial evidence that is based upon assumptions the government does not even *propose* as facts." Pltfs' Motion, p. 2, emphasis in original.

In addition, "Scenario 1" is assertedly contrary to the court's summary judgment ruling on the rate of acceptance issue. "Scenario 1" is presented by defendant's expert Abbott: "[i]f it is assumed that in the non-breach world DOE [beginning in 1998] would have picked up spent fuel at the 1996 ACR[2/] rates, the last fuel assembly would be removed from [Yankee Atomic] in 2024. If it is further assumed that in the breach world, DOE [beginning in 2010] will accept spent fuel at the 1998 DOE TSLCC[3/] rates, the last fuel assembly would be removed from [Yankee Atomic] in 2020." *Id.*, p.3, citing Abbot Expert Report, Appendix at 7-8. As the court previously rejected ACR as the acceptance rate, this damage scenario should be precluded, plaintiffs assert. Plaintiffs also complain that this hypothetical damage scenario assumes that acceptance would be based on "oldest fuel first" which is contrary to plaintiffs' position that queue positions could and would be swapped.

As plaintiffs point out, defendant proposes a finding that limits DOE's liability under the Standard Contract to a schedule confined by approved delivery commitment schedules ("DCSs") under the 1995 ACR that ramped up to 900 MTU[4/] per year. These assumptions were rejected as a matter of law in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) which the court here adopted in relevant part. Therein, contrary to this hypothetical, *Commonwealth Edison* held that "DCSs did not create a contractually binding obligation for either party" and "the ACR and DCS process does not contain or create a SNF acceptance rate." *Commonwealth Edison* at 666, 663. As a result, plaintiffs assert this evidence should be precluded.

---

[2/] Annual Capacity Report.

[3/] Total System Life Cycle Cost of the Civilian Radioactive Waste Management Program.

[4/] metric tons of uranium.

Plaintiffs also point out that the four damage scenarios assume DOE will commence performance in 2010; defendant's proposed factual finding is that DOE currently *plans* to begin accepting waste in 2010. Accordingly, "[h]aving not even asked the Court to make that finding, the government should be precluded from offering evidence of when DOE will begin removal of Yankee Atomic's spent fuel – a necessary foundational assumption of 'Scenario 1,' and all the government's other alternate scenarios." Pltfs' Motion, p. 6.

These assumptions are nonsensical according to plaintiffs. On the one hand, in the "non-breach world" assuming DOE was performing under the Standard Contract, Yankee Atomic's spent fuel would remain on its site until 2024; but in the "breach world," Yankee Atomic's spent fuel is assumed to be removed in 2020 – four years earlier. These are the assumptions underlying Abbott's opinion. "It is difficult to imagine, and indeed quite strange for the government to suggest, that this is the kind of 'performance' by DOE that Congress had in mind when it enacted the NWPA,[5/] or that the parties had in mind when they signed their contract." Pltfs' Motion at 7. Moreover, these assumptions were provided to Abbott by government counsel; Abbott has no opinion whether these scenarios are reasonable according to plaintiffs.

"Scenario 2" and "Scenario 3" likewise have no basis in fact or in defendant's proposed findings of fact according to plaintiffs. These scenarios assume that DOE would follow the same spent fuel acceptance rate of the 1998 DOE TSLCC in both the "breach" and the "non-breach world." Again, plaintiffs complain this assumption is irrelevant to plaintiffs' claim and is not based on any proposed finding of fact. Plaintiffs also complain that "Scenario 2" is fanciful because it assumes Yankee Atomic would store its spent fuel in the spent fuel pool an additional twelve years, an assumption that is not only unfounded, it is contrary to the actual facts – Yankee's spent fuel pool is empty – all of its spent fuel has already been transferred to dry storage. "It makes no sense to waste trial time with evidence about a damages scenario, like "Scenario 2," that rests on an assumption that is not only unfounded but flat-out wrong." Pltfs' Motion at 9.

Plaintiffs also object to "Scenario 5" which assumes (1) that "'exchanges of allocations are assumed to not occur in the non-breach world,'" (2) that the 1998

[5/] Nuclear Waste Policy Act.

TSLCC acceptance rate would commence in 2010 in both the "breach" and the "non-breach world," and (3) that oldest fuel would be removed first. *Id.* at 9-10. Again, plaintiffs point out that defendant does not propose any finding about an actual spent fuel removal schedule that DOE would have followed, with or without exchanges, in the "non-breach world," although defendant does submit a proposed finding that no exchanges have occurred in the "breach world."

Plaintiffs also object to defendant's experts' opinions in each of the four alternate damages scenarios that removal of "failed fuel" may be delayed and, separately, that removal of GTCC[6/] waste is not required. Abbott "evaluated what the effect on calculated possible damages would be if in the breach and non-breach worlds prolonged storage of Greater Than Class C Waste (GTCC) and/or other than standard fuel assemblies was required, independent of the pickup of standard fuel assemblies." Pltfs' Motion at 12, citing Abbott Expert Report at 3. Assuming failed fuel and GTCC waste would not be removed by DOE, but would have to be stored on-site, damages could be reduced. While defendant does propose a factual finding concerning failed fuel – "'even if DOE fully performed pursuant to the Standard Contract, Yankee Atomic might still possess failed fuel at its site for an indefinite amount of time'"(Pltfs' Motion, p. 13, citing Gov't Amended Stipulation of Facts ¶ 136) – plaintiffs do not object to litigating this issue confined to "Scenario 4," plaintiffs' actual damages claim. "[T]he government should be required to litigate the failed fuel issue in [the context of "Scenario 4"], rather than burdening the trial further with this same unfounded variation on each of its four principal irrelevant damages scenarios." Pltfs' Motion, p. 14. Defendant argues that plaintiffs would have been obligated to store GTCC for an indefinite period of time even if DOE fully performed its contractual obligations. Plaintiffs' obligations are irrelevant, plaintiffs argue; the issue is whether DOE would have removed GTCC along with spent fuel, a finding plaintiffs propose as consistent with DOE's undisputed statutory obligation. As with the failed fuel issue, questions concerning GTCC should be limited to plaintiffs' actual damage theory – "Scenario 4."

Defendant responds that it should not be precluded from offering evidence concerning these four alternatives, should it decide to present them. First, defendant posits the motion is premature. As defendant's burden is to respond to plaintiffs' case, as plaintiffs' case has not been presented, it is impossible to determine whether

---

[6/]Greater Than Class C.

one or more of the alternative theories would or will be offered in the government's responsive case. "[A]ny decision to preclude the presentation of the alternative damages scenarios should be reserved until after Yankee Atomic has completed its case in chief <u>and</u> until the Government offers an alternative damages scenario into evidence." Def. Resp., p. 2. Defendant also comments that plaintiffs' arguments about defendant's proposed factual findings misconstrue plaintiffs' burdens of proof and ignore extensive litigation in this case concerning GTCC, failed fuel and exchanges as well as exhibits and witnesses which clearly challenge plaintiffs' damages claims.

On its argument plaintiffs' motion is premature, defendant may decide not to introduce any alternative damages scenario in its responsive case. However, responsive damage theories should not be precluded prior to the presentation of any evidence. "Instead, Yankee Atomic's motion should be revisited following the presentation of the Yankees' cases, and only upon the Government's affirmative presentation of one or more of its alternative scenarios to this Court." Def. Resp. p. 4.

Defendant also asserts that plaintiffs seriously misunderstand their burden of proof at trial. As provided by the pretrial orders, defendant circled proposed findings of fact that it contested. Plaintiffs' Motion is asserted to assume that any failure by defendant to propose contradictory stipulations results in plaintiffs' proposals becoming uncontested, and by implication, subject to acceptance by the court. According to defendant, plaintiffs must establish the facts set forth in each of their proposed stipulations by a preponderance of the evidence, regardless of whether defendant has expressly proposed contradictory stipulations. That burden includes, for example, whether it is more likely than not that exchanges would have occurred in the "non-breach world." Even if defendant has not met certain key proposed stipulations with express contrary proposed stipulations, except for those expressly agreed to by defendants, *i.e.*, those not circled by defendant, plaintiffs are required to prove each finding by a preponderance of the evidence.

Responding to plaintiffs' contention that defendant's proposed stipulations of fact (1) do not dispute that exchanges that are provided for in the Standard Contract would have occurred in the "non-breach world," and (2) fail to reject plaintiffs' assertion that DOE would have engaged in a campaign-based removal schedule rather than accept oldest fuel first, defendant asserts these contentions are false or are based

upon a serious misunderstanding of defendant's previously expressed position on these issues. Specifically, defendant points out that its proposed facts contest plaintiffs' central theme of exchanges, including Amended Proposed Stipulation ¶ 102 that would find that no purchaser entered into any exchange agreement or submitted any exchange requests to DOE, and Amended Proposed Stipulation ¶ 103 that declares that for reasons unrelated to DOE's breach, plaintiffs were unable to reach any exchange agreement with any other utility, as well as fourteen additional proposed stipulations countering plaintiffs' exchange theory and another sixteen countering Graves' damage model that depends upon exchanges.

Similarly, the question of whether DOE would have removed plaintiffs' GTCC waste is squarely reserved, defendant states. Not only are plaintiffs' held to their burden of proof, but this issue was briefed and defendant has proposed factual findings that GTCC was not covered by the Standard Contract.[7/]

Defendant denies that "Scenarios 1 through 3" and "Scenario 5" are not matched or supported by corresponding proposed facts and predicts that plaintiffs' evidence will be met by significant cross-examination as well as presentation of contrary evidence.

Defendant characterized plaintiffs' motion as one to prohibit the court from considering anything other than the exchange theory; that is, "Scenarios 1 through 3 and 5" assume either oldest-fuel-first or varying rates of acceptance. "By evaluating each of the scenarios the Government is attempting to identify the effects of a variety of acceptance scenarios that this Court potentially could consider in the event that Yankee Atomic fails to establish exchanges likely would have occurred as set forth in the Graves report." Def. Response at 10. Defendant predicts that plaintiffs' exchange approach – that would have resulted in the acceptance of all their SNF within a year or so after 1998 – will not be supportable; consequently, with the failure of proof, no damages are due, citing *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004). Defendant's concern is that during trial plaintiffs will "attempt to introduce evidence to provide some evidence of causation based upon other

[7/] As defendant notes, the court in its June 26, 2003 order recognized that, based "[u]pon review of the substantial evidence cited by the parties it appears that, at present, defendant has the better argument as to the lack of a contract obligation for defendant to dispose of GTCC." Order, at 4.

acceptance theories or that it will ask the Court to award damages through some type of 'jury verdict' method of damages analysis."[8/] Def. Response at 11.

In sum, defendant represents that if plaintiffs disclaim any ability to recover any damages if the court rejects the exchange theory, then defendant may not need to present any of its alternative scenarios. However, defendant asserts it has the option of presenting defenses should plaintiffs rely on scenarios other than exchanges, and the right to present the significant ramifications that even slight variations in acceptance rates would have on damages.

Finally, defendant states its position that the court must establish a mandatory minimum required by the Standard Contract rather than a rate(s) that the court believes would have been used had DOE commenced acceptance in 1998.

> As we have established in other briefing in this case, and contrary to Yankee Atomic's assertions, damages in this or any other SNF case pending before this Court cannot be based upon DOE's failure to accept SNF at a rate that the Court or a plaintiff believes DOE "would have" used had it begun SNF acceptance in 1998. Instead, the Court must identify that minimum mandatory rate at which DOE was obligated to perform in order to satisfy its contractual obligations to "begin" SNF acceptance by January 31, 1998.

Def. Resp. at 12, n.5.

In their Reply, plaintiffs' state that defendant failed to address the central point of the Motion – that the government has not requested any findings or made any claim that the assumptions underlying its four alternate damages scenarios are factual, reasonable or consistent with the NWPA. Defendant's experts were given these hypothetical scenarios by the Department of Justice; they cannot attest to the reasonableness of any of the schedule assumptions underlying the four alternate scenarios. As defendant's litigation strategy is defensive; defendant will not necessarily present any affirmative damages evidence, according to plaintiffs, it would therefore be a waste of time to elicit testimony on irrelevant damage theories.

---

[8/] At this time, the court does not address defendant's argument that a jury verdict analysis would not be appropriate in these cases.

Plaintiffs represent they are "entirely comfortable" with their damage evidence and have no need to make "any material change," which would be counter to the court's Pretrial Order. Pltfs' Reply at 3. Accordingly, defendants' concern that plaintiffs may switch horses mid-stream is unfounded.

More fundamentally, plaintiffs' state that trial concerns damages; a subsidiary issue is DOE's acceptance schedule – which is not an arbitrary and mechanical selection of a rate(s) and start date(s) from among the various DOE planning documents. Rather, by adopting in relevant part, *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003), the court found that the Standard Contract neither dictates a schedule nor prescribes a mechanism for doing so. Accordingly, the court must divine a "reasonable term." Plaintiffs predict the evidence of exchanges will support a "fair and reasonable approximation" of their damages, citing *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002). Furthermore, trial evidence will include actual costs for the construction of an on-site dry storage facility for spent fuel and GTCC waste – an Independent Spent Fuel Storage Installation ("ISFSI") – costs which would not have been incurred but for DOE's breach. Accordingly, "[a]lthough the determination of a specific DOE pickup schedule in the non-breach world may affect certain components of [plaintiffs'] damages claim[s], such as the date upon which wet pool storage costs would have ceased in the non-breach world, [plaintiffs'] entire damages claim is by no means dependent upon a determination of DOE's specific pickup schedule." Pltfs' Reply at 6.

Upon consideration of the briefing in this matter, it is concluded that it is premature to rule on the admissibility of the damage "scenarios" contested by plaintiffs. Defendant has provided the requisite pretrial notice as to these scenarios but has indicated that their presentation will depend upon plaintiffs' actual trial evidence. In short, the issue of admissibility may never arise, and a ruling at this point is not deemed to be prudent. A factor to be considered, however, if a ruling becomes necessary, is the status of this matter as only the second trial of these SNF breach damage claims. A precedential ruling has not, as yet, been obtained as to the nature and extent of the liability stemming from the breach of contract which has been established. To avoid, if possible, the need for any further trial proceedings in these three cases, it may be preferable for the trial record to be inclusive with respect to matters such as SNF removal on the basis of oldest fuel first, with or without

exchanges, or with or without campaigns. However, that is a matter for further consideration as the trial progresses.

Accordingly, it is **ORDERED** that plaintiffs' *Motion In Limine* to Preclude Evidence Concerning Four Government Damages Scenarios, filed May 28, 2004, shall be **DENIED**, without prejudice to any objections as to admissibility of the evidence to be raised at trial.

s/ James F. Merow
James F. Merow
Senior Judge