would be sound policy or desirable to leave Greater-Than-Class C waste at the site of decommissioned reactors after the spent fuel has been removed?

MS. HERRMANN: Objection, vague as to sound policy and desirable.

THE WITNESS: I do not remember any such conversation.

BY MR. SKALABAN:

Q From a transportation perspective, prior to 1998, did the technology exist to transport nuclear utility activated metal for storage or disposal?

A That's not my area of expertise, but I believe it did.

Q Has the Government ever moved either Greater-Than-Class C waste or material comparable under a DOE or Defense classification system of Greater-Than-Class C waste, has it ever moved it prior to 1998?

MS. HERRMANN: Objection, foundation, speculation, vague.

THE WITNESS: Yes.

BY MR. SKALABAN:

Q What do you think the effect of the

Policy Act, and I've not -- I don't believe I've read enough of the Nuclear Waste Policy Act to be able to imply something from the context of the Act. I'm not -- I've not looked at that before, so I do not know.

BY MR. SKALABAN:

Q Is that a concept that you're familiar with at all, any awareness of the permanent isolation is the equivalent of deep geologic disposal?

MS. HERRMANN: Objection. It assumes facts not in evidence. It calls for a legal conclusion.

THE WITNESS: I don't believe I've ever tried to juxtapose those two in this manner before, but I assume I've -- they mean the same thing. That would be my assumption all along is that those two would have been synonomous.

BY MR. SKALABAN:

Q Just as a general understanding as someone working in the nuclear material field and as someone that works in the industry and works at DOE, your general understanding of that permanent isolation would be the equivalent to deep geologic disposal?

MS. HERRMANN: Objection, calls for a legal conclusion.

THE WITNESS: Yes.

BY MR. SKALABAN:

Q In the second bullet point, it says numerous provisions in the NWPA show that the term high-level radioactive waste is not limited to DOE-generated weapons-related waste.

Do you see that?

A Yes.

Q Do you agree with that statement?

MS. HERRMANN: Objection, calls for a legal conclusion.

THE WITNESS: Again, I've not read the Nuclear Waste Policy Act in its entire, especially the sections on high-level radioactive waste. But my assumption is is that it was not limited to DOE-generated weapons-related waste. It was broader than that.

BY MR. SKALABAN:

Q Is that assumption just based on kind of a working knowledge of the law from having worked at DOE and in the area of the industry?

A Yes.

Q What about the next statement, it was

(Whereupon, at 5:05 p.m., the taking of the instant deposition adjourned.)

Robert A Campbell

Signature of the Witness

SUBSCRIBED AND SWORN TO before me this 9 day of July, 2002.

[signature]

NOTARY PUBIC

My Commission Expires: 02/11/05

ER. TA SHEET FOR THE TRANSCRIPT OF:

Notice Date: June 17, 2002
Case Name: Yankee Atomic vs. United States
Case Number: 98-126C-987 4C
Dep. Date: June 14, 2002
Deponent: Robert Campbell (continued)
Place: Washington DC
Ref. No.: 4269-47

CORRECTIONS:

| Page | Line | Now Reads | Should Read | Reasons Therefore |
|---|---|---|---|---|
| 264 | 3 | nothing on | ~~nother~~ nothing other than | sentence makes no sense as typed ~~[illegible]~~ |
| 289 | 14 | hadn't done | hadn't not done | typo |
| 295 | 25 | Head and EM | Head in EM, | typo |
| 295 | 25 | David Zabransky, again RW | David Zabransky in RW | typo |
| 315 | 25 | Arenaze | Arenaz | typo |
| 316 | 17 | Arenaze | Arenaz | typo |
| 319 | 1 | Arenaze | Arenaz | typo |
| 399 | 24 | now currently | not now currently | typo |
| 428 | 13 | a GMC30 | in GC30 | typo |
| 430 | 7 | Bupar | Bubar | typo |
| 430 | 13 | Gowen | Cohen | typo |
| 438 | 11 | Weese | Wiess | typo |
| 438 | 12 | Weese | Wiess | typo |

Robert A. Campbell
Signature of Deponent

July 9, 2002

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC :
COMPANY, et al., :
Plaintiffs, :
v. : Case Nos.
THE UNITED STATES, : 98-126C, 98-154C,
Defendant. : 98-474C
- - - - - - - - - - - - - - - - x

Washington, D.C.
Wednesday, January 29, 2003

Continued deposition of ROBERT ALLEN CAMPBELL, a witness herein, called for examination by counsel for Plaintiffs Yankee Atomic, Maine Yankee and Connecticut Yankee, in the above-entitled matter, pursuant to notice, the witness being duly sworn by MARY GRACE CASTLEBERRY, a Notary Public in and for the District of Columbia, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., at 9:30 a.m., Wednesday, January 29, 2003, and the proceedings being taken down by Stenotype by MARY GRACE CASTLEBERRY, RPR, and transcribed under her direction.

Q. Are you still spending about 50 percent of your time on GTCC matters?
A. Yes.
Q. Who else is currently working with you on GTCC-related issues?
A. Working with me? No one.
Q. Is anyone supporting your work on GTCC? Personnel. I'm looking for names.
A. Are you asking for something different than when we went through this before?
Q. The current status, what the current status is, who is working on GTCC issues in addition to yourself at the Department of Energy at this time?
A. For sealed sources and the recovery effort in the Department of Energy, it is Joel Grimm at the Albuquerque office. Other than that, other than our management in terms of how we work on anything, there isn't anyone else who works for DOE.
Q. Are there any contractors who are doing work on GTCC waste for DOE at the present time?
A. Yes.
Q. And who are they, sir?
A. The sealed source recovery at Los Alamos. There are a number of employees in that program.
Q. Who are the contractors? What are the

paragraph.

A. All right.

Q. Are there any efforts within DOE to develop any kind of an intermediate disposal capacity for GTCC waste? And when I say intermediate disposal capacity, I mean something less than geologic disposal.

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. To your knowledge, no?

MS. HERRMANN: Same objections.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. Has DOE ever made any proposals to NRC to dispose of GTCC waste in a facility other than geologic disposal?

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. You are not aware of any such proposals, is that correct?

MS. HERRMANN: Asked and answered,

foundation, speculation.

THE WITNESS: I'm not aware of any.

(Campbell Exhibit No. 12 was marked for identification.)

BY MR. SKALABAN:

Q. In particular, if I can call your attention to the first paragraph.

A. All right.

Q. What is your understanding of the extent the utility-generated nonfuel-bearing component waste will be accepted by RW as part of the standard contract?

MS. HERRMANN: Objection, foundation, speculation, calls for a legal conclusion.

THE WITNESS: Could you repeat the question?

MR. SKALABAN: Can you read that back?

THE REPORTER: "Question: What is your understanding of the extent the utility-generated nonfuel-bearing component waste will be accepted by RW as part of the standard contract?"

BY MR. SKALABAN:

Q. What is your understanding of the extent that RW will accept greater than Class C waste that are nonfuel-bearing components under the DOE spent

MS. HERRMANN: Objection, speculation.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. Did you ever talk about that subject with him, other than what's reflected here in this memo, this note?

A. I may have. I don't remember.

Q. Do you ever recall Mr. Huizenga expressing to you that it was DOE's plan to leave GTCC at utilities beyond the date by which DOE begins to accept spent fuel?

MS. HERRMANN: Objection, foundation.

THE WITNESS: No.

BY MR. SKALABAN:

Q. Has anyone -- in all of your time at DOE, has anyone ever expressed to you that DOE plans to leave GTCC at utilities beyond the date by which DOE begins to accept spent fuel?

MS. HERRMANN: Objection, foundation.

THE WITNESS: Not that I recall.

MR. SKALABAN: Let's go off the record.

(Discussion off the record.)

(Whereupon, at 12:25 p.m., the deposition in the above-entitled matter was recessed, to reconvene at 1:25 p.m., this same day.)

THE REPORTER: "Question: Have you ever been involved in any presentations to the NRC, either giving them yourself or assisting in the preparation of them, of any presentations to the Advisory Committee on Nuclear Waste?"

THE WITNESS: Yes.

BY MR. SKALABAN:

Q. Can you tell me about that?

A. I was invited to give a presentation to the Advisory Committee on Nuclear Waste. I prepared a presentation and then my presentation was canceled so I never gave it.

Q. And how were you invited? Who invited you to give that presentation?

A. As I remember, Jim Kennedy from the NRC called me and asked me to do that.

Q. And when was this?

A. To the best of my memory, it was sometime in the first half of 2001. I'm not positive, though.

Q. When was the meeting of the Advisory Committee on Nuclear Waste? When was that scheduled?

A. I don't know.

Q. Did you actually prepare your presentation?

A. Yes.

Q. When was it canceled? Canceled right before you gave it or was scheduled to give it? Let me ask you this. When were you scheduled to provide the presentation?
A. I do not remember the exact date.
Q. Okay. Well, ballpark the date. What do you think, in terms of the ballpark timing?
A. I think it was the first part of 2001. Maybe it was the first part of 2002. I don't remember at this point exactly.
Q. Was it the summer? Was it this year, summer of 2002?
MS. HERRMANN: Objection, asked and answered.
THE WITNESS: I just don't remember. I'm sorry.
BY MR. SKALABAN:
Q. What happened to your presentation?
MS. HERRMANN: Objection, vague.
THE WITNESS: I'm not sure I know what you mean.
BY MR. SKALABAN:
Q. Did you prepare slides?
A. Yes.
Q. Did you prepare any other material besides

slides?

A. No, I don't believe so.

Q. Now, the slides you prepared, did you provide them to counsel here to give to us in discovery?

A. I made them available for discovery, yes. But I did not give them specifically to counsel here.

Q. When you said make them available for discovery, you turned them over to someone who was working on -- or pointed it out to someone who was working on collecting documents?

A. Yes.

Q. Now, what were you planning to communicate to the Advisory Committee on Nuclear Waste in your presentation? What were the major themes?

A. The presentation was going to center on what DOE's plans were for greater than Class C at that time.

Q. And it's your testimony you don't remember if that's 2001 or 2002?

MS. HERRMANN: Asked and answered.

THE WITNESS: That's correct.

BY MR. SKALABAN:

Q. And what were the plans -- what were DOE's plans that you were planning to communicate to the

not in evidence.

THE WITNESS: I believe it was Suzanne Rudzinski.

BY MR. SKALABAN:

Q. Was the reason this presentation to the Advisory Committee on Nuclear Waste was canceled because of this litigation?

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. Did Ms. Rudzinski give you any indication of that?

A. Yes.

Q. What did she tell you?

A. Her discussion was with counsel.

MS. HERRMANN: To the extent you have to reveal communications with counsel, I instruct you not to answer.

THE WITNESS: I don't have an answer, then.

BY MR. SKALABAN:

Q. Okay, Mr. Campbell. Were you told not to give a presentation to the nuclear regulatory's Advisory Committee on Nuclear Waste regarding DOE's

disposal of GTCC waste because of this litigation?

MS. HERRMANN: To the extent that question requires you to reveal communications with counsel, I instruct you not to answer. If you have an answer that doesn't implicate those communications, you can go ahead and answer.

BY MR. SKALABAN:

Q. I'm not asking for any specific legal advice. I'm asking for a fact. I want you to answer my question, Mr. Campbell.

A. Could you read the question back?

THE REPORTER: "Question: Were you told not to give a presentation to the nuclear regulatory's Advisory Committee on Nuclear Waste regarding DOE's disposal of GTCC waste because of this litigation?"

MS. HERRMANN: Before you answer, if he was told to or told not to or told anything of the kind by an attorney, I am instructing him not to answer that question.

BY MR. SKALABAN:

Q. Go ahead and answer my question, Mr. Campbell.

MS. HERRMANN: With my instruction in mind.

BY MR. SKALABAN:

Q. I want the answer, Mr. Campbell, not a qualification.

MS. HERRMANN: You don't get to give him permission to answer the question. I do. And he's going to answer with my instruction in mind or he's not going to answer at all.

MR. SKALABAN: I'm entitled an answer to my question unless you're instructing him not to answer.

MS. HERRMANN: I'm instructing him not to reveal any communications that came from an attorney. If he's got another answer, he can give it to you. That's fine.

THE WITNESS: Could you read back the question one more time, please?

THE REPORTER: "Question: Were you told not to give a presentation to the nuclear regulatory's Advisory Committee on Nuclear Waste regarding DOE's disposal of GTCC waste because of this litigation?"

THE WITNESS: Yes.

MR. SKALABAN: Could you read back that question and answer?

THE REPORTER: "Question: Were you told

not to give a presentation to the nuclear regulatory's Advisory Committee on Nuclear Waste regarding DOE's disposal of GTCC waste because of this litigation?

"Answer: Yes."

BY MR. SKALABAN:

Q. And after that instruction, your presentation was canceled, is that correct?

A. Yes.

Q. Do you know, does DOE have any plans to again talk to the Advisory Committee on Nuclear Waste about GTCC waste disposal?

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: I don't know.

BY MR. SKALABAN:

Q. You're not aware of any?

MS. HERRMANN: Same objection, asked and answered.

THE WITNESS: I'm not aware of any, correct.

MR. SKALABAN: Mark this as Campbell Exhibit 22.

(Campbell Exhibit No. 22 was marked for identification.)

that it be disposed of in a deep geologic repository.

BY MR. SKALABAN:

Q. I believe this -- putting aside that opinion, what about the statement here that says, will likely require disposal in a deep geologic repository? Do you see that?

A. Yes.

Q. Do you think that GTCC waste will not likely require disposal in a deep geologic repository ultimately?

MS. HERRMANN: Objection, foundation, speculation, calls for a legal conclusion.

THE WITNESS: Putting aside my own answer to that question, what do I think? I don't have an answer, then.

BY MR. SKALABAN:

Q. Where do you think it's likely that GTCC will be required to be disposed of?

MS. HERRMANN: Objection, foundation, speculation and we'll add relevance.

THE WITNESS: I don't know. Can we take a break?

MR. SKALABAN: Sure.

(Recess.)

(Campbell Exhibit No. 23 was

A. Since September 11th, there has been a lot of meetings at a lot of different levels of management above me concerning sealed sources, dirty bombs and related issues that I've prepared my management for in a variety of different ways.

Q. Let's limit it to nuclear -- anything related to nuclear utility GTCC waste, GTCC waste at commercial nuclear power plants. Have you been involved in any -- preparing your management for any meetings with NRC relating -- people higher than you in the DOE management chain for meetings that related to or would recover nuclear utility GTCC? Do you understand my question? I'm trying to limit the sealed sources and that kind of thing, put that aside.

A. Other than what we've already discussed, I'm not remembering any other discussions.

MR. SKALABAN: Let's mark this as Exhibit 32.

(Campbell Exhibit No. 32 was marked for identification.)

BY MR. SKALABAN:

Q. Mr. Campbell, I've handed you Exhibit 32 which is Bates Number HQR 2510213. Is this teleconference call summary something you prepared?

A. No.

Q. Have you ever seen this document before?

A. It does not look familiar to me.

Q. Do you see in the first sentence it makes reference to a teleconference call that was held Thursday, June 22nd, 1999 at 11:30 a.m. and do you see that you are listed as one of the attendees of the call?

A. Yes.

Q. Who is MaryJane Wisenbaker?

A. She was a DOE headquarters Office of Environmental Management employee.

Q. Was she above you or below you or equal to you in the management chain at EM?

A. Equal to.

Q. And it says here, "Greg Duggan presented an overview of the proposed strategy which will focus in the following three areas." First of all, who was Greg Duggan?

A. Greg is a DOE Idaho employee.

Q. And did he work on greater than Class C waste issues?

A. Yes.

Q. And was he involved in helping formulate a proposed strategy for greater than Class C waste?

A. I believe so, yes.

Q. Now, there is a list of key points that came from the discussion. Three points down, it said, "Mark Frei indicated that there is an understanding between GC, RW and EM that GTCC waste will go to the repository."

And do you recall, Mr. Campbell, a teleconference where Mark Frei indicated that there is an understanding between the Office of Civilian Radioactive Waste Management, the Office of Environmental Management and the Office of General Counsel that GTCC waste will go to the repository?

A. I recall this conference call, yes.

Q. And you recall that being discussed?

A. I believe so, yes.

Q. Do you recall Mr. Frei indicating that there is an understanding between GC, RW and EM that GTCC waste will go to the repository?

A. Yes.

Q. And what did Mr. Frei say about that understanding?

A. I don't remember specifically.

Q. Did you have any understanding of what this understanding entails between GC, RW and EM?

MS. HERRMANN: Objection to the

foundation, speculation.

THE WITNESS: No.

BY MR. SKALABAN:

Q. Now, underneath that, there is a bullet point that says, "Options other than the repository are considered politically undesirable in light of overall DOE waste management objectives." Do you see that?

A. Yes.

Q. Can you explain to me what's meant by that sentence?

MS. HERRMANN: Objection, foundation, speculation.

THE WITNESS: No.

BY MR. SKALABAN:

Q. So participating in this conference call, it's not clear to you what's being referred to?

MS. HERRMANN: Same objections.

BY MR. SKALABAN:

Q. Do you have any idea what's being referred to?

MS. HERRMANN: Same objections.

THE WITNESS: I can't explain this sentence on this call summary. In participating on the conference call, I do remember Mr. Frei

discussing politics associated with this.

BY MR. SKALABAN:

Q. What did he say about it?

A. In reference to the second bullet on this page where it says, "Mark specifically noted that borehole disposal of GTCC waste in Nevada was not an option," was his main concern relating to politics.

Q. So his concern was that politically, borehole disposal of GTCC waste in Nevada was not an option?

MS. HERRMANN: Objection to the extent it mischaracterizes his testimony, foundation.

THE WITNESS: That was his opinion in June of 1999, yes.

BY MR. SKALABAN:

Q. Now, did he say anything more about this understanding between GC, RW and EM, that GTCC waste will go to the repository? Did he give any more information about it other than what's indicated here, that there is that understanding?

A. My memory of this is that he directed Mr. Duggan to not pursue any other disposal options other than that at that time.

Q. Did he say why, other than this -- did he say the reason was because there was this

item 1.

Q. And the longer term disposal option would be putting it in the repository?

MS. HERRMANN: Objection, foundation.

THE WITNESS: My memory is that Mr. Duggan presented a broader approach than that and that according to the paper, Mr. Frei said no and left the instruction that the only thing that would be pursued at that point was the repository.

BY MR. SKALABAN:

Q. Has Mr. Frei provided any additional guidance or any further guidance since that time about what should be pursued?

A. Not that I'm aware of.

MR. SKALABAN: Let's go off the record here.

(Discussion off the record.)

(Robert Shapiro enters deposition room.)

(Whereupon, a conference call was commenced with the court.)

BY MR. SKALABAN:

Q. Mr. Campbell, we were talking about the presentation to the Advisory Committee on Nuclear Waste. Do you still have the presentation you prepared, the one that was canceled for -- that was

disposal or handling of GTCC waste?
MS. HERRMANN: Objection, foundation.
THE WITNESS: My management.
BY MR. SKALABAN:
Q. And who is that?
A. I think it would depend on the specific aspects of the policy.
Q. Who currently would you say is making policy on the storage or disposal or handling of GTCC waste?
MS. HERRMANN: Same objection.
THE WITNESS: Jessie Roberson and higher than her in the Department of Energy.
BY MR. SKALABAN:
Q. If there are questions that arise regarding greater than Class C waste within the Department of Energy, are you one of the lead contacts within DOE for answering those questions?
MS. HERRMANN: Objection, speculation, vague.
THE WITNESS: I don't know.
BY MR. SKALABAN:
Q. Is there anyone who spends more time within DOE than yourself on greater than Class C waste issues?

Q. In that role the whole time?
A. No.
Q. How long has she been in the role of reviewing documents on GTCC waste?
A. Oh, I'm sorry, in that role? There was a period of six months where she was not my immediate supervisor. She was Patty Bubar's technical assistant, but she was probably still in the role of reviewing those same documents.
Q. Since 1999?
A. Yes.
Q. And how about Patty Bubar?
A. She was not in my management chain in late 1999. She came into that role a little later. I don't remember exactly when.
Q. How about Donna Atkins. What does she work on in the greater than Class C waste area?
A. She's the secretary in the office I work in, so any document I've ever produced has been worked on by her.
Q. Now, although you've testified that you don't make policy decisions on the storage of greater than Class C waste, it is true, is it not, that you do a substantial amount of work for those policy makers?

MS. HERRMANN: Objection, vague.
BY MR. SKALABAN:
Q. Relating to greater than Class C waste?
MS. HERRMANN: Objection, vague.
THE WITNESS: Yes.
BY MR. SKALABAN:
Q. And that from time to time you make recommendations to them, isn't that correct, on policy for greater than Class C waste?
A. Yes.
Q. I think we're done.
(Whereupon, at 6:00 p.m., the taking of the instant deposition ceased.)

______________________________

Signature of the Witness

SUBSCRIBED AND SWORN to before me this _______ day of _______________, _____.

______________________________

Notary Public

My Commission Expires:________________

MS. HERRMANN: Objection, vague.

BY MR. SKALABAN:

Q. Relating to greater than Class C waste?

MS. HERRMANN: Objection, vague.

THE WITNESS: Yes.

BY MR. SKALABAN:

Q. And that from time to time you make recommendations to them, isn't that correct, on policy for greater than Class C waste?

A. Yes.

Q. I think we're done.

(Whereupon, at 6:00 p.m., the taking of the instant deposition ceased.)

Robert A Campbell
Signature of the Witness

SUBSCRIBED AND SWORN to before me this 5 day of February, 2003.

[signature]
Notary Public

My Commission Expires: 02/11/05

ERRATA SHEET FOR THE TRANSCRIPT OF:

Notice Date: January 30, 2003
Case Name: Yankee Atomic vs. United States
Case Number: 98-126C-987 4C
Dep. Date: January 29, 2003
Deponent: Robert Campbell (continued)
Place: Washington DC
Ref. No.: 4269-76

CORRECTIONS:

| Page | Line | Now Reads | Should Read | Reasons Therefore |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Robert Campbell

Signature of Deponent

Feb 5, 2003

Date of Signature