# EXHIBIT 6

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Wednesday, May 1, 2002

Deposition of RONALD A. MILNER, a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

pre-1998 backlog of 40,809 metric tons?

A. Yes.

Q. Correct? And that number basically decreases over time, and the table shows a backlog as of 2020 of 23,775 metric tons, right?

A. Correct.

Q. Showing that the backlog is being reduced over time?

A. Correct.

Q. And was that a fair statement of DOE's intentions at or about this time, to work off the backlog of spent nuclear fuel that utilities were storing?

MR. SHULTIS: Objection. Calls for a legal conclusion, and Mr. Milner is not a 30(b)(6) witness.

THE WITNESS: Well, at this specific point in time, I don't know what the department's intent was.

At the point I joined the program, my understanding of the intent was to work off the backlog.

(There was a pause in the proceedings.)

MR. TOMASZCZUK: Mr. Milner, I'm going

Q. It appears to be a bullet listing of four problems with disposal contract?

A. Um-hm.

Q. And the first is that it's general?

A. That's correct.

Q. It says general there?

A. Correct. It says general.

Q. Second bullet says incomplete?

A. It does say incomplete.

Q. The third says dated?

A. It does say dated.

Q. And the fourth says unclear?

A. It does say that.

Q. All right. Do you have any understanding sitting here today as to what is being referred to in that listing of problems?

MS. HERRMANN: Objection -- foundation, and speculation, and vague.

THE WITNESS: No, I do not know what was being referred to here.

BY MR. TOMASZCZUK:

Q. Sitting here today, do you have any understanding that the standard contract is either general, incomplete, dated, or unclear?

MS. HERRMANN: Objection --

speculation, and compound.

THE WITNESS: I have personal opinions in some regards.

BY MR. TOMASZCZUK:

Q. Okay. And I'm anxious to hear about those.

Would you tell me what your personal opinions in that area are?

MS. HERRMANN: Objection -- vague.

THE WITNESS: Well, one opinion is that in some areas, I do believe it is incomplete.

One example would be that the contract doesn't clearly define how you would deal with non-standard fuel.

It doesn't clearly define how you deal with non-fuel bearing components of the fuel assembly.

BY MR. TOMASZCZUK:

Q. Any other opinions that fall within these four areas?

MS. HERRMANN: Objection -- vague.

THE WITNESS: No.

(There was a pause in the proceedings.)

Annual Capacity Report.
I can represent that I believe it's a draft document.
(Milner Exhibit No. 19 was marked for identification.)
BY MR. TOMASZCZUK:
Q. Have you seen this document before today, Mr. Milner?
A. I don't recall.
Q. My characterization of the document as a draft is, seems fair to you?
A. It appears to be, yes.
Q. Do you know whether a, an ACR was issued in final form for 1989?
A. I don't know.
Q. In June of '89, were you or personnel in your office responsible for ACRs?
A. I believe it was.
Q. Do you know who prepared this draft?
A. No, I don't.
Q. Who in your office at this time would have been working on ACRs?
A. I don't recall.
Q. Was Mr. Brownstein reporting to you at



this time?
A. I don't recall offhand. He may have been.
Q. Sitting here today, do you recall whether there was anything about this draft that caused an ACR not to be issued in 1989 in final form?
MS. HERRMANN: Objection -- vague, foundation.
THE WITNESS: I don't recall, no.
MR. TOMASZCZUK: Let's mark as Milner 20 a November 1989 report to Congress on reassessment of the Civilian Radioactive Waste Management Program.
(Milner Exhibit No. 20 was marked for identification.)
MR. TOMASZCZUK: Actually it's six o'clock.
I propose we adjourn.
(The transcript continues on the following page.)

MS. HERRMANN: We have no problem with



that.
MR. SHULTIS: Okay.
(Whereupon, at 6:00 p.m., the deposition was recessed, to reconvene Thursday, May 2, 2002, at 9:15 p.m.)

Ronald A. Milner
RONALD A. MILNER

SUBSCRIBED AND SWORN to before me this 24th

day of May, 2002

Pat L. Justin
NOTARY PUBLIC

My commission expires: 5/19/06



CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages 1 through 196, do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to the proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia
My commission expires:
February 28, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Thursday, May 2, 2002

Continued deposition of RONALD A. MILNER, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

One was not actively under consideration.
Q. All right. The reason I asked the question is because Section 6.2 on the following page has ramp-up rates for a second repository?
A. Yes.
Q. And then finally, we have Section 6.3, which is the repository in a single repository system, and a listing of waste acceptance ramp-up rates in that table, right?
A. Correct.
Q. And that table shows a, an initial acceptance rate of 300 metric tons and then ramping up to 3,000 metric tons in 2014, correct?
A. Correct.
Q. And then staying at that steady-state 3,000 metric ton rate for a period of 25 years?
A. Correct.
Q. Am I correct in understanding that at least as of November of '94, if not sooner, the MRS siting effort was dead?
A. We no longer assumed an MRS in the system, that's true, and for all intents and purposes, yes, it was dead.

Page 402

does.
Q. It appears that these rates are based on the existence of an MRS?
A. Apparently so.
MR. TOMASZCZUK: It's 6:20.
(Whereupon, at 6:20 p.m., the deposition was recessed, to reconvene at 9:00 a.m. May 3, 2002.)

RONALD A. MILNER

SUBSCRIBED AND SWORN to before me this 24th day of May, 2002.

NOTARY PUBLIC

My commission expires: 5/14/06

Page 403

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - - - - X
YANKEE ATOMIC ELECTRIC COMPANY, (98-126C) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY (98-154C) :
MAINE YANKEE ATOMIC POWER COMPANY (98-474C) :
FLORIDA POWER & LIGHT COMPANY (98-483C) :
NORTHERN STATES POWER COMPANY (98-484C) :
DUKE POWER, A Division of DUKE ENERGY CORP. (98-485C) :
INDIANA MICHIGAN POWER COMPANY (98-486C) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT (98-488C) :
SOUTHERN NUCLEAR OPERATING COMPANY, et al., (98-614C) :
COMMONWEALTH EDISON COMPANY (98-621C) :
BOSTON EDISON COMPANY (99-447C) :
GPU NUCLEAR, INCORPORATED (00-440C) :
WISCONSIN ELECTRIC POWER COMPANY, (00-697C) :
POWER AUTHORITY OF THE STATE OF NEW YORK (00-703C) :
OMAHA PUBLIC POWER DISTRICT (01-115C) :
NEBRASKA PUBLIC POWER DISTRICT (01-116C) :
TENNESSEE VALLEY AUTHORITY (01-249C) :
Plaintiffs, :
v. :
UNITED STATES OF AMERICA, :
Defendant. :
\- - - - - - - - - - - - - - - - - - - - - X

Washington, D.C.
Friday, May 3, 2002

Continued Deposition of RONALD MILNER, a witness herein, called for examination by counsel for

program and the utilities had a goal of taking fuel off the sites as soon as possible, to begin to take fuel off the sites as soon as possible.

Q. And what did you mean by accommodating economic and physical situations confronting utilities such as yours?

A. I think there was a goal to at least mitigate the economic situation relative to cost of storage, but I don't know what physical situation meant.

Q. What was meant by utilities such as yours? Were you referring to shutdown, utilities with shutdown reactors?

A. I don't recall. Likely that would have been the case.

Q. So you've testified that Department had an interest in mitigating the economic situation confronting such utilities. What do you mean by mitigating the economic situation for them?

A. Well, I don't know that -- hypothetically I don't know whether the condition of the economic situation could be totally alleviated, but potentially at least you could mitigate it.

Q. How?

A. Well, I guess one example I might think of

was that the Department entered into a cooperative program with the Rancho Seco reactor to demonstrate dry storage on site and assist that utility in off-loading at least a portion of its pool and storing it in multi-purpose canisters or what was hoped to be multi-purpose canisters on site. Potentially allowing the utility to decommission the pool.

Q. And how did the Department cooperate with Rancho Seco?

A. Providing funding.

Q. Do you recall what portion of the funding was provided for that project?

A. I don't recall. I believe the Department paid for two or three of the storage canisters and casks but I don't recall.

Q. And you say this would potentially allow the utility to decommission the fuel on site?

A. If you stored enough of the fuel, yeah.

Q. Was that an objective the Department had?

MR. SHULTIS: Objection, Mr. Milner is not a 30(b)(6) witness.

THE WITNESS: I think the Department desired to mitigate to the extent we could, you know.

BY MR. NESLIN:

# *CERTIFICATE OF REPORTER*

*UNITED STATES OF AMERICA ) ss.:*

*COMMONWEALTH OF VIRGINIA )*

I, **CYNTHIA R. SIMMONS, RPR, CRR,** the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

Cynthia R Simmons

*Notary Public in and for*

*the Commonwealth of Virginia*

*My Commission expires: 11/30/2004*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -)
YANKEE ATOMIC ELECTRIC COMPANY )
(98-126C) (Merow, S.J.) )
CONNECTICUT YANKEE ATOMIC POWER )
COMPANY )
(98-154C) (Merow, S.J.) ) Volume I
MAINE YANKEE ATOMIC POWER COMPANY) Washington, D.C.
(98-474C) (Merow, S.J.) ) Tuesday
Plaintiffs, ) May 7, 2002
v. )
THE UNITED STATES, )
Defendant. )
- - - - - - - - - - - - - - - - - - - - -)

CERTIFIED COPY

Deposition of RONALD A. MILNER, a witness herein, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to agreement, the witness being duly sworn by CHERYL A. LORD, a Notary Public in and for the District of Columbia, taken at the offices of SPRIGGS & HOLLINGSWORTH, 1350 I Street, N.W., Washington, D.C., at 3:48 p.m., Tuesday, May 7, 2002, and the proceedings being taken down by Stenotype by CHERYL A. LORD, RPR, CRR, and transcribed under her direction.

an MRS could come online and when a statute would come online, what the likely time gap between those would be in view of the statutory construction linkage?

MR. SHULTIS: Objection, calls for speculation and possibly a legal conclusion.

A. I'm trying to recall at that time -- I don't recall what the schedule assumptions were offhand at that point.

BY MR. SKALABAN:

Q. Well, let's take a look at Milner Exhibit 18.

MR. SHULTIS: Are we done with 27?

MR. SKALABAN: For the time being. You may want to leave it handy.

BY MR. SKALABAN:

Q. Milner Exhibit 18, which is the draft 1988 mission plan amendment from June 1988. And if you could turn to page 10, sir, and the document has a Bates number PNL, dash, 029, dash, 1253.

And there's -- in the middle of the page, middle paragraph, it begins: The DOE is confident that the system authorized by the Congress is prudent, reasonable, and workable, period. Schedules based on meeting the requirements in the amendment

act show that the MRS facility should be available no later than 2003, and the repository will begin accepting waste in 2003.

Do you see that, sir?

A. Yes, I do.

Q. Does that suggest to you at that time that the department estimated that the MRS -- or that given the schedule linkages, the MRS would be online at approximately the same time the repository would be?

MR. SHULTIS: Objection. The document speaks for itself.

A. That's what it suggests, yes.

BY MR. SKALABAN:

Q. I'd like to call your attention to page 20. And in the second full paragraph, it begins: The DOE believes that it may be possible to shorten the time between the start of MRS construction and the start of waste acceptance by developing the MRS in phases.

Do you see that, sir?

A. I do.

Q. So does that indicate to you given that -- given the statement -- and if you need to take time to read the paragraph in full -- but does this