# EXHIBIT 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - x COPY

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C

- - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Deposition of LAKE H. BARRETT

Washington, D. C.

Monday, April 22, 2002

9:31 a.m.

Job No.: 11792-4

Pages 1 through 272, Volume 1

Reported by: Diane Gomez, RPR

likely would have read prior to its issuance, correct?

A No. I wasn't responsible for forecasts of waste generation. I can speculate that what they're saying in this last sentence is that by the year 2020 there will be available -- the amount of fuel existing at the reactors in the year 2020 is smaller than the amount of fuel that was discharged by the year 2015. What that has to do with anything, I have no clue.

Q Does this paragraph indicate that the acceptance rate would be larger than the discharge rate?

A The acceptance rate should be larger than the discharge rate under the plans then.

Q Under the plans laid out under the draft mission plan amendment?

A Right.

Q Can I turn your attention to page 56.

MR. CRAWFORD: 56?

MR. CAYNE: Yes.

A Okay.

Q Mr. Barrett, a moment ago I asked you does this paragraph indicate that the acceptance rate would

be larger than the discharge rate, and you answered the acceptance rate should be larger than the discharge rate under the plan then. Do you recall that answer?

A Yes.

Q Why did you give that answer?

A Because the acceptance rate would ramp up in excess of 2,000 tons per year which was the discharge rate.

Q Would ramp up to eventually what?

A Higher than 2,000.

Q So more fuel would be accepted than was being discharged, correct?

A Correct.

Q I ask you to look at the fourth column on page 56. Do you see that?

A Yes.

Q And the take rate for years starting in 2008 is set at 2650. Do you see that? Per year until many years out when it increases to 3,000?

MR. CRAWFORD: You're on the fourth column?

MR. CAYNE: Spent fuel shipped.

ACKNOWLEDGMENT OF DEPONENT

I, Lake H. Barrett, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

6/27/02 ______________________ ______________________

(DATE) (SIGNATURE)



CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

I, Diane Gomez, Registered Professional Reporter, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 25th day of April, 2002.

My commission expires:
June 14, 2005

______________________

NOTARY PUBLIC IN AND FOR
THE DISTRICT OF COLUMBIA



ERRATA SHEET

IN RE: YANKEE ATOMIC v. UNITED STATES

RETURN BY: ______________________

PAGE LINE CORRECTION AND REASON

______________________ ______________________

(DATE) (SIGNATURE)



ERRATA SHEET CONTINUED

IN RE: YANKEE ATOMIC v. UNITED STATES

RETURN BY: ______________________

PAGE LINE CORRECTION AND REASON

______________________ ______________________

(DATE) (SIGNATURE)

# E R R A T A   S H E E T

IN RE: YANKEE ATOMIC v. UNITED STATES

RETURN BY: MAY 27 2002

| PAGE | LINE | CORRECTION AND REASON |
|---|---|---|
| 161 | 14 | they → there |

6/20/02
(DATE)

(SIGNATURE)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - x COPY

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C

- - - - - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Continued Deposition of LAKE H. BARRETT

Washington, D. C.

Friday, April 26, 2002

8:10 a.m.

Job No.: 11792-8

Pages 527 through 825, Volume 3

Reported by: Diane Gomez, RPR

administrivia such as acceptance priority rankings and annual capacity reports were, in your opinion, moot until that time?

MR. CRAWFORD: Objection, vague. Objection to the extent it mischaracterizes prior testimony.

A They weren't high on my priority.

Q They weren't on your priority at all?

A They were not on my priority, that's fair. They were not on my priority.

Q Because until you had a repository plan in place, in your words it was moot, correct?

A Okay. Yeah, I'll accept that. Yes.

MR. CAYNE: Let's take a five-minute break. It's 3:48.

(There is a recess from the record.)

(Deposition Exhibit Barrett 39 was marked for identification and was retained by counsel.)

Q Mr. Barrett, the court reporter has handed you a document marked for identification as Exhibit 39, which is the acceptance priority ranking and annual capacity report issued March 1995, and it bears Bates numbers -- looks like the last four digits on

the first page are 0676 through 0748. Do you have that document before you?
A I do.
Q Now, March 1995, this date is subsequent to the 1994 plan you were referring to a moment ago, correct?
A Correct.
Q What was that 1994 plan?
A Program plan.
Q And that program plan did not reflect in the table the -- the acceptance schedule did not reflect an MRS facility, correct?
A That's my recollection.
Q You can look at it again, sir, if you need to refresh your recollection.
A Did this have a table in it? You probably know what the table is.
Q 1-2.
A The program plan.
Q Mr. Barrett --
A You're asking about this one?
Q No. Strike that. I asked you I think

A I don't want you -- okay.

MR. CRAWFORD: I have the same objections to that question.

Q Then let's return to Exhibit 39.

In light of the sworn testimony you have just provided, sir, why did the Department of Energy choose to use an acceptance rate that reflected capacity limits applicable to and only applicable to an MRS facility when all the governing plans at that point in time did not envision the use of any such facility?

MR. CRAWFORD: Objection, foundation.

A I don't know.

Q Can you give any reason sitting here today to justify why Exhibit 39 contains capacity limitations applicable only in the context of an MRS facility but no such facility was envisioned at the time Exhibit 39 was prepared?

MR. CRAWFORD: Objection, foundation, asked and answered, argumentative.

A I don't know.

Q Can you come up with any, sir?

MR. CRAWFORD: Objection, argumentative, asked and answered.
A No.
Q Did you in your capacity as director or deputy director of the Office of Civilian Radioactive Waste Management sign off on the acceptance rates reflected in Exhibit 39, specifically reflected in Table 1, page four of Exhibit 39?
A I don't recall doing so.
Q Do you think you would have?
A I don't think so. I normally didn't sign these lower priority documents like this.
Q Did anyone in the Office of Civilian Radioactive Waste Management who might have worked on Exhibit 39 consult with you personally concerning the acceptance rates reflected on page four of Exhibit 39?
A I don't recall ever discussing it.
Q If not, if you never discussed it, sir, who would have been the most senior official within your office, what you refer to as RW, who would have been the most senior official who would have signed off on Exhibit 39?

ACKNOWLEDGMENT OF DEPONENT

I, Lake H. Barrett, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

6/27/02
(DATE)

(SIGNATURE)

# ERRATA SHEET

IN RE: YANKEE ATOMIC V UNITED STATES

RETURN BY: MAY 30 2002

| PAGE | LINE | CORRECTION AND REASON |
|---|---|---|
| 640 | 16 | Sing => sit |
| 641 | 17 | poke => joke |
| 641 | 17 | insert "anti" before "nuclear" |
| 650 | 11 | after with insert "the ~~Administration~~ meeting" that... |
| 662 | 2 | N => "M" in MPC |
| 669 | 15 | add @ end "to strong" |

6/20/02
(DATE)

[signature]
(SIGNATURE)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - x

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY; | : Case Nos. 98-126C, |
| CONNECTICUT YANKEE ATOMIC POWER | : 98-154C, 98-474C, |
| COMPANY; MAINE YANKEE ATOMIC | : 98-483C, 98-484C, |
| POWER COMPANY; FLORIDA POWER & | : 98-485C, 98-486C, |
| LIGHT COMPANY; NORTHERN STATES | : 98-488C, 98-614C, |
| POWER COMPANY; DUKE POWER, a | : 98-621C, 99-447C, |
| Division of DUKE ENERGY CORP.; | : 00-440C, 00-695C, |
| INDIANA MICHIGAN POWER COMPANY; | : 00-703C, 01-115C, |
| SACRAMENTO MUNICIPAL UTILITY | : 01-116C, 01-249C |

- - - - - - - - - - - - - - - - - X

(Caption continued on the next page)

Deposition of LAKE H. BARRETT, VOLUME 4

Washington, D.C.

Wednesday, May 8, 2002

9:31 a.m.

Job No.: 11792-10

Pages: 826 through 1103

Reported by: Diane Gomez, RPR

COPY

Q No. My question is with respect to this statement: When the nuclear waste policy was enacted, policy act was enacted, it was envisioned that the department would have a repository available for permanent waste disposal in 1998, and the department entered into contracts with the utility to begin accepting waste in 1998 on that basis. Is that statement consistent with your understanding?

A Yes.

MS. HERRMANN: Objection. Foundation, calls for a legal conclusion.

A Yes.

Q On page three could you please turn to the first paragraph on the top of the page. Do you see that?

A Yes.

Q Why would continued on-site storage of spent fuel threaten the orderly operation of the nation's civilian nuclear reactors?

MS. HERRMANN: Objection. Foundation.

You can take time to read it if you need to.

to the fact that we didn't pick the fuel up, through storage or whatever, while they were -- operating utilities, not shut down ones -- were still paying money into the waste fund. The ones who were operating claimed they were paying twice; once to pay the waste fund and once to do with storage. So we were trying to figure a way to cover some of the storage costs that would alleviate the utilities to have to, quote, pay twice.

Q Under the statute the utilities were supposed to pay into the waste fund, and at that point it became the obligation of the Department of Energy to store and dispose of the spent fuel, correct?

MS. HERRMANN: Objection. Calls for a legal conclusion.

Q Correct?

MS. HERRMANN: Same objection.

A Repeat the question again.

Q The problem of the utilities having to pay twice for storage arose because under the Nuclear Waste Policy Act it was the intention of Congress that the utilities pay once into the nuclear waste fund,

and the payments into the nuclear waste fund would be used to pay for the storage and disposal of spent fuel and the utilities would not have to pay again directly out of their own pockets to provide for such storage and disposal during the period that the department failed to comply with its statutory contractual obligations to pick up the fuel, correct?

MS. HERRMANN: Objection. Calls for a legal conclusion, compound.

A Yes.

Q My statement is correct?

A I believe so.

(Deposition Exhibit Barrett 51 was marked for identification and retained by Counsel.)

Q The court reporter has handed you a document marked for identification as Exhibit 51. Do you have that before you?

A I do.

Q And this document bears Bates numbers HQR-038-0202 through 0204. It's a letter dated March 1st, 1996, from the director of the Office of

OK



ACKNOWLEDGMENT OF DEPONENT

I, LAKE H. BARRETT, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

6/27/02 [signature]

(DATE) (SIGNATURE)

E R R A T A   S H E E T

IN RE: YANKEE ATOMIC V UNITED STATES

RETURN BY: JUN 1 ? 2002

PAGE LINE CORRECTION AND REASON

None

(DATE) (SIGNATURE)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC :
COMPANY, MAINE YANKEE ATOMIC :
POWER CO., and CONNECTICUT :
YANKEE ATOMIC POWER CO., : Case No. 98-126C,
Plaintiffs, : 98-474C, 98-154C
vs. : (Senior Judge Merrow)
UNITED STATES OF AMERICA, :
Defendant. : VOLUME II

- - - - - - - - - - - - - - - -x

Certified Copy

Washington, D.C.
Wednesday, May 15, 2002

Deposition of LAKE H. BARRETT, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being previously duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 Eye Street, N.W., Washington, D.C., commencing at 9:05 a.m., Wednesday, May 15, 2002, and the proceedings being taken down by Stenotype by CAPPY HALLOCK, RPR-CRR, and transcribed under her direction.

CONTAINS CONFIDENTIAL INFORMATION
PURSUANT TO THE PROTECTIVE ORDER

A. I don't recall. I have lots of meetings with Yankee -- there were quite a few people included with the Yankees, and I don't remember.

Q. Do you recall telling anyone at Yankee Atomic, you know, shortly, sometime not long after this denial letter, that you were receptive to suggestions on a process for allocation of priority under the contract which DOE could follow?

MS. HERRMANN: Objection. Vague.

A. I might have.

Q. Okay.

Do you think -- were you sympathetic to Yankee's predicament at the time? In other words, to its desire to move this spent fuel off of its site so that it could complete the decommissioning activities which had been initiated?

MS. HERRMANN: Objection. Vague.

A. Yes.

Q. Why?

A. I felt that it was in the nation's interests to support utilities like Yankee who were trying to clean up their sites and return that real estate to useful societal purpose in

that we should try to move the fuel off as quickly as we practically could, consistent with sound national policies.

Q. Good. That's what you thought, you know, in your working life at RW?

A. Yes.

Q. Okay. But because of these other factors we have discussed previously, either the time wasn't right or whatever to actually grant the priority at that time?

MS. HERRMANN: Objection as to the characterization.

Q. Even though you were sympathetic to their predicament?

A. I was sympathetic to their predicament. Sympathy did not drive the decision to grant it.

Q. Because of the other factors that we discussed previously, is that what led you to deny it?

A. Correct.

Q. Okay.

MR. STOUCK: Would you mark this as Number 101 (sic), please.

(Barrett Deposition Exhibit No. 102 was marked for

lookout for that.

(Thereupon, at 1:30 p.m., the taking of the instant deposition ceased.)

Signature of the Witness

SUBSCRIBED AND SWORN to before me this ______ day of 6/27, 2002.

NOTARY PUBLIC

My Commission Expires: Pat L. Austin
Notary Public, District of Columbia
My Commission Expires 05-14-2006

# ERRATA SHEET FOR THE TRANSCRIPT OF:

Notice Date: May 16, 2002
Case Name: Yankee Atomic vs. United States
Case Number: 98-126C-987 4C
Dep. Date: May 15, 2002
Deponent: Lake Barrett (cont)
Place: Washington DC
Ref. No.: 4269-4

CORRECTIONS:

| Page | Line | Now Reads | Should Read | Reasons Therefore |
|---|---|---|---|---|
| 333 | 22 | he | he was (add) | |
| 337 | 23 | signed | assigned him | |
| 337 | 18 | fuel | full | |

Signature of Deponent

6/20/02
Date of Signature