# EXHIBIT 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
- - - - - - - - - - - - - - - - - - - - -x
YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Tuesday, April 9, 2002

Deposition of ALAN BROWNSTEIN, a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

Q. What were the responsibilities of the department with respect to the disposal of spent nuclear fuel?

A. We were responsible --

MR. BANES: Objection -- I'm sorry. Objection. Calls for a legal conclusion.

Go ahead.

THE WITNESS: Okay. Ultimately we were responsible for accepting that fuel for permanent disposal.

BY MR. TOMASZCZUK:

Q. Was there a date by which the department was to undertake that effort?

MR. BANES: Objection. Calls for a legal conclusion.

Go ahead.

THE WITNESS: I believe and the department believed that we had to begin accepting that fuel upon commencement of the facility operations.

BY MR. TOMASZCZUK:

Q. Not by a particular date?

A. There was a date, but that date was conditional.

We believed that the January 31st,

1998 date was clear as we responded to written questions from the Hill and others, that that date was conditional based on the commencement of facility operations.

Q. Did the department have the responsibility to take title to the spent nuclear fuel or high-level waste involved as expeditiously as practicable?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: Yes, but, and the but is based upon commencement of facility operations.

BY MR. TOMASZCZUK:

Q. Is it your understanding, Mr. Brownstein, that if the facility never opens, then DOE never has an obligation under the contract?

MR. BANES: Objection. Calls for a legal conclusion, and vague.

THE WITNESS: Yes.

BY MR. TOMASZCZUK:

Q. Did you have any understanding at or about the time you became a DOE employee with respect to the spent nuclear fuel acceptance rate that DOE was using with respect to the

understand my question?

A. I don't.

MR. BANES: Same objection.

BY MR. TOMASZCZK:

Q. Well, is it true that DOE under the contract is committed to accept waste from the signatories of standard disposal contracts on a firm schedule that begins no later than January 31, 1998?

MR. BANES: Objection. Calls for a legal conclusion.

Go ahead.

THE WITNESS: I don't believe that. I believe that this is a, a goal.

I don't believe that it accurately represents what the contract calls for.

BY MR. TOMASZCZUK:

Q. Did you ever discuss that view with anyone?

A. I'm sure that I must have, but I don't recall specifically who or circumstances.

Q. You would at least agree the first sentence doesn't talk about goals, does it?

MR. BANES: Objection -- vague, argumentative.

A. Yes.

Q. And the sentence which I quoted has the phrase contractually binding Delivery Commitment Schedules.

What provision of the contract indicates that DCSs, Delivery Commitment Schedules, are contractually binding?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: I have to go back and refresh my memory and read it.

BY MR. TOMASZCZUK:

Q. Sure.

A. But I'm referring to Article V.B. of the contract which addresses Delivery Commitment Schedules.

Q. Okay. Take your time and have a look at it.

(The witness reviewed the document.)

THE WITNESS: Okay. I have reviewed it.

BY MR. TOMASZCZUK:

Q. Okay. And what language in that section of the contract supports the view that you expressed in this letter that the DCSs were

contractually binding?
A. Well, in retrospect, I, I don't really agree with what I wrote at that time.
I think I was trying to juxtapose the idea that we can meet either as a goal or as a contractual commitment accepting a single assembly versus a process which is more than that as referred to in the contract.
I think, today I think that was unfortunate, personally think it was an unfortunate choice of words by using the word contractually binding, but referred to in the contract as Delivery Commitment Schedule.
Q. So sitting here today, you can't identify a provision of the contract that says the DCSs are binding, right?
A. In reading Article VI.B, I didn't see that word.
Q. Indeed do you have the understanding that the DCSs are not binding?
MR. BANES: Objection. Calls for a legal conclusion.
THE WITNESS: I go back to my previous testimony which guided, you know, my thinking the entire ten-year period that I was working

with the contract, which was we had many goals. We had many objectives, but in terms of contractual commitments, the, the, contractually we had a responsibility to begin waste acceptance following commencement of facility operations.

That's what I believed then. That's what guided me. That's what I believe today as you have asked me, I have stated.

BY MR. TOMASZCZUK:

Q. I understood that. Thank you, but I'm not sure that was responsive to my question.

A. Okay.

Q. My question was sitting here today, isn't it true that the DCSs are not binding?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: I do believe that's, that is a legal matter.

I mean I'm not a lawyer.

BY MR. TOMASZCZUK:

Q. Well, with all due respect, sir, I think that answer's also not responsive.

What is your understanding, having worked on the program for more than ten years,

was a change made in the concurrence process by an attorney or a policy change.

Fifteen years ago, I just, I'm having a difficult time explaining what I meant by that word, one word.

BY MR. TOMASZCZUK:

Q. Okay. And my question was sitting here today, is it your understanding that the DCSs are binding or not?

MR. BANES: Objection -- asked and answered.

MR. TOMASZCZUK: Well, I've asked it. I'm not sure he has answered.

MR. BANES: I think he has answered it. I think what he said is he can't divorce it from the commencement of facility operations, so if there is no facility in operation, then it wouldn't be binding.

I think that's what he said.

THE WITNESS: That's exactly right. We can go down two paths here, you know. If there was a facility, if --

BY MR. TOMASZCZUK:

Q. Go ahead.

A. If there was a facility, and if the

facility began operations in '98, then the contract lays out a process -- ACR, APR, DCSs, final DCSs.

And that's, that's, they would have, that's how we would implement terms and conditions of the contract.

If a facility did not begin commencement of operations in '98, whether it was in '99 or whether it was in 2009, I'm hard pressed to believe a DCS submitted and approved by the department, in whatever year that's specified, 1992, that given that the changes to the system and changes to the utilities, the utilities in fact would not have a desire ten years later or that we would not have a desire ten years later to modify that.

That's what I'm trying to explain.

Q. Okay. That's helpful. You referred to, in your earlier answer, if I wrote it down right, as to final DCSs.

Is that a term that is used in the contract somewhere?

A. Yes, it is.

Q. Can you point me out or point me to where in the contract that term is used?

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages 1 through 241, do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

Catherine S. Boyd

CATHERINE S. BOYD

Notary Public in and for

The Commonwealth of Virginia

My commission expires:

February 28, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia

Wednesday, April 10, 2002

Continued deposition of ALAN BROWNSTEIN, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being previously duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman,

MR. BANES: Objection. Mischaracterizes the instructions, and calls for a legal conclusion.

THE WITNESS: A lot has occurred in the last seven years.

I would think the person responsible now would want to review what we did, why we did it, and how we did it, and to see, you know, the applicability in sum or in part as to how they're going to proceed.

I wouldn't purport to say that they should take these and throw them out or take them and adopt them in total.

I don't think a responsible manager would use this as input in helping make a decision.

BY MR. TOMASZCZUK:

Q. Changed circumstances might warrant reviewing and revising these to reflect those circumstances, is that fair?

A. I think that is.

Q. If the, as I understand these instructions, if the ACR on which the DCSs are based is a planning document, which I understand it to be, are the DCSs also planning documents?

MR. BANES: Objection. Calls for a legal conclusion.

THE WITNESS: In my mind, they are. In order to get, if we can just set aside a specific date for a second, in order to get the government with the right equipment to be able to get through the gate of the utility at the right time, there has to be planning that takes place.

For example, we need to know years in advance how many BWR and PWR casks we should make sure are available through whatever means.

We ought to know how many truck casks and how many rail casks we ought to have available.

In order to do that, we need to understand whose fuel we're going to accept, so there has to be communication between the utilities and us years in advance in order to, to allow that marriage to occur at the end, irrespective of the date.

I believe -- as you know, I did not negotiate this contract in '83, but I believe that was the intent of the process that was laid which we have talked about the ACR, the APR, the

DCSs and the FDSs.

I think that, in that sense, that's a planning arrangement. That's a way to respond to your question, but I think that is responsive.

BY MR. TOMASZCZUK:

Q. Okay. Mr. Brownstein, did you have a role to play in the preparation of what I'll refer to as the TSLCC reports -- total system life cycle cost reports?

A. No. Again, I may have, consistent with, I may have reviewed drafts, you know, as my responsibilities as a division director or as a branch chief, but in terms of its preparation, no.

Q. Okay. Same question with respect to fee adequacy reports -- did you have a role to play in the preparation of those?

A. At one time in the organization, for one short period of time, I did, but under the time that I had that responsibility, I don't recall that we actually issued it during that time period.

Q. Can you put a year on that activity for me?

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages 242 through 466, do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages ____ through ____, do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to the proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

Catherine S. Boyd

CATHERINE S. BOYD
Notary Public in and for
The District of Columbia

My commission expires:
August 31, 2002

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C)(Merow, S.J.) :
Plaintiffs, :
v.
THE UNITED STATES, :
Defendant. :
- - - - - - - - - - - - - - - - - - - - x

CERTIFIED COPY

Washington, D.C.
Thursday, May 23, 2002

Deposition of ALAN BROWNSTEIN, a witness herein, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to agreement, the witness being duly sworn by JAN A. WILLIAMS, a Notary Public in and for the District of Columbia, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., 20005-3305, at 8:40 a.m., Thursday, May 23, 2002, the proceedings being taken down by Stenotype by JAN A. WILLIAMS, RPR, and transcribed under her direction.

overbroad.

THE WITNESS: I really don't know.

BY MR. STOUCK:

Q. You don't know one way or the other?

A. No.

Q. Okay. Well, do you believe that the Department of Energy -- or do you know whether the Department of -- let me ask it this way, without regard to whatever position the Department of Justice has taken, do you know whether the Department of Energy has an obligation under the standard contracts to accept spent fuel that is not described in an approved delivery commitment schedule?

MR. CRAWFORD: Objection to the extent it calls for a legal conclusion and foundation since he's not a 30(b)(6) witness.

THE WITNESS: That's an issue in question. I always viewed that both parties had to do the steps required in the contract. The DCSs are -- there's another step in the process which is the final delivery commitment schedules.

So you're asking about DCSs. Where I'm going to ask you for clarification is you're asking me about what happens if there's an approved DCS but there never is an approved FDS.

BY MR. STOUCK:

Q. I believe you testified that is the situation we're in, correct?

A. Yes.

Q. There are no approved final delivery commitment schedules that I'm aware of. Are you aware of any?

A. There are not to my knowledge.

Q. Okay. So do you know whether -- well, I don't know if that clarifies the question. But my question is, with respect to spent fuel, commercial spent fuel, utility spent fuel that's out in the world somewhere in the United States that is not described in a delivery commitment schedule that has been submitted by a utility and approved by the Department of Energy, okay, you agree there is such spent fuel out there?

A. Yes.

Q. Okay. With respect to that spent fuel that's not described in a delivery commitment schedule that has been submitted to the Department of Energy and approved by the Department of Energy, do you know whether or not DOE is obligated under the standard contract to accept that spent fuel for disposal at some point in time? The question does