R&D wastes that was government-owned or university-owned or --

A. It was government disposal responsibility. Exactly whose waste it was or where it came from I don't know.

Q. But in your opinion both of those disposal options, that is near-surface facility pursuant to an exemption from the NRC or otherwise, or this one hundred foot intermediate depth disposal, in your opinion those options are available to utilities today for the disposition of their commercial greater than Class C wastes?

A. It is 100 meter, not foot.

Q. Okay.

A. I don't know how available it is, but you asked were there any possible alternatives. Those are possible alternatives. Availability I don't know.

Q. My question was alternatives, not possible, but available alternatives. Does that cause you to change your answer? Are those available alternatives?

A. They are alternatives, not particularly easily done, but possible.

Q. If you were one of my clients, if you

were Yankee Atomic Electric Company and you had some GTCC wastes, would you be pursuing the possibility of disposing of that GTCC wastes in one of these two alternatives that you have identified?

MS. HERRMANN: Objection. Speculation.

A. Yes.

Q. Okay, why?

A. Well, they have material that they need to put somewhere, and if it was possible they could have disposed of it with a reactive vessel. I'm not saying they could have, but it was possible.

Q. Would DOE support an effort by Yankee Atomic Electric Company to dispose of its GTCC wastes in one of these alternative manners that you have outlined for us today?

MS. HERRMANN: Objection. Foundation. Speculation.

A. I don't know.

Q. Who would know? Who would we ask if we wanted to obtain such work?

A. I don't know.

Q. You don't know?

A. No.

Q. She have a deputy? Thank you.
A. Yes.
Q. Who is that?
A. James Owendoff, I believe.
Q. Currently?
A. Yes.
Q. Now, within RW is there someone who has primary responsibility for the subject of GTCC disposal?
A. All materials that we would accept or discussion about materials that we could or couldn't accept, the responsibility is with Mr. Zabransky.
Q. And that's the generally the waste acceptance area?
A. Correct.
Q. And he's in charge of that right now?
A. Yes.
Q. If Yankee Atomic Electric Company is unable to arrange one of these alternatives, or some other alternative, any alternative disposal option for its GTCC waste, and if the spent nuclear fuel program commences waste acceptance in 2010, do you believe that DOE will accept for disposal Yankee Atomic's GTCC wastes?

MS. HERRMANN: Objection. Foundation. Speculation, calls for a legal conclusion.
A. I don't know.
Q. You don't know. Okay. You have no opinion whether that will happen under the assumptions that I laid out? You have no opinion one way or the other?
MS. HERRMANN: Same objections. Asked and answered.
A. Your assumptions again were?
Q. Number one, Yankee Atomic is not able to arrange any alternative disposal option such as the ones you suggested, or maybe some other options, that is one, and two is the program otherwise commences acceptance of SNF in 2010. Do you have an opinion whether or do you know -- not an opinion, do you know whether DOE will in those circumstances accept Yankee Atomic's GTCC wastes?
A. No.
Q. You don't know?
A. I don't know. I do not know if we will accept it or not.
Q. Okay. Why was the disposal of GTCC wastes in a geologic repository studied and discussed in the Environmental Impact Statement?

politicians if we are authorized to dispose of it or not.

Q. I understand your testimony to be that absent litigation over the question of whether GTCC should or should not be disposed of in the repository, absent that litigation, RW would be more actively and with less difficulty considering that matter; is that right?

MS. HERRMANN: Objection to the extent it mischaracterizes his testimony. Speculation.

A. We might have.

Q. Okay, then there must be some other factor other than the litigation that is inhibiting the act of consideration, and I would like to know what that factor is.

A. The authorization question, are we authorized under the law to dispose of what is essentially low-level waste in a high-level waste repository. That will be a question that will be very likely litigated independent of the current litigation.

Q. Okay. That's your view.

A. Yes.

Q. Why do you think that? Why do you think that there is some question about whether or

not GTCC is covered by the contract that is not going to be resolved in this -- I mean your distinction is between the statute and the contract; is that what you're saying?
A. Yes. It's not just a contract issue that is at issue here, it is also are we authorized to dispose of low-level waste in the high-level waste repository.
Q. Assume that that question is exactly the same question that is being litigated in this case. Just assume that. You don't have to agree with it, just assume it. Okay?
A. Go ahead.
Q. Then is litigation over that question, combined question, I'm to assume they are -- I'm telling you to assume they are the same thing. Is that the factor that is inhibiting and making more difficult RW's consideration of whether or not to put GTCC waste into the repository?
MS. HERRMANN: Speculation in all capital letters, calls for a legal conclusion, and assumes facts not in evidence.
A. I don't know. It's confusing to me.
Q. Okay. But in any event, this litigation is having some depressive effect on

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
- - - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC            :
COMPANY, MAINE YANKEE ATOMIC      :
POWER CO., and CONNECTICUT        :
YANKEE ATOMIC POWER CO.,          : Case No. 98-126C,
                  Plaintiffs,     : 98-474C, 98-154C
              vs.                 : (Senior Judge Merrow)
UNITED STATES OF AMERICA,         :
                  Defendant.      : VOLUME II
- - - - - - - - - - - - - - - - - -X
```

CERTIFIED COPY

Washington, D.C.

Wednesday, May 15, 2002

Deposition of LAKE H. BARRETT, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being previously duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 Eye Street, N.W., Washington, D.C., commencing at 9:05 a.m., Wednesday, May 15, 2002, and the proceedings being taken down by Stenotype by CAPPY HALLOCK, RPR-CRR, and transcribed under her direction.

CONTAINS CONFIDENTIAL INFORMATION

PURSUANT TO THE PROTECTIVE ORDER

Is that a fair characterization?
A. Yes.
Q. Okay. Number 1, "Granting priority can be shown to be lest costly to DOE's waste management system."
Do you believe that a shutdown utility could make that showing?
MS. HERRMANN: Objection. Speculation.
A. Possibly.
Q. Okay. Well, I mean the question is not whether this would always be true, but whether -- the question included possibly. Is it possible that a shutdown utility could make that showing? I'm not sure that "possibly" is a fair answer to that.
MS. HERRMANN: Objection. Speculation. Asked and answered.
A. What was the question?
Q. The question is could a shutdown reactor, is it possible that a shutdown reactor could show that granting priority acceptance to it would be less costly to DOE's -- would reduce the cost of the waste management system?
A. Yes.
Q. And is it possible that granting

priority acceptance -- this is Number 2 -- to a shutdown utility -- I'm paraphrasing -- could be shown to involve small enough quantities of fuel compared to the overall DOE acceptance rate so as not to jeopardize the timely removal of spent fuel from other sites. Is it possible that they could make that showing?

MS. HERRMANN: Objection. Speculation.

A. You use the word timely in an absolute sense. The answer is no.

Q. Okay. So it is your opinion that granting priority acceptance to a shutdown reactor would necessarily involve a schedule impact to some other utility or utilities? In other words, there is no play in the system. If you got priority for one, somebody else would necessarily have to move; is that your understanding?

A. Yes.

Q. And I take it you would agree that granting priority -- this is a different question -- not whether the showing could be made, but I take it you would agree that granting priority to a shutdown reactor can be shown, at least in some circumstances, to avoid the establishment of