THE UNITED STATES, :

Defendant. :

-------------------------------------------X

Deposition of Susan Klein

Washington, DC

Wednesday, April 24, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144539

role the DCS forms that are filled out by the utilities play in terms of the Radioactive Waste Management Program?

MS. POWELL: The same objection, beyond the scope, but you can answer.

THE WITNESS: Could you repeat that. Sounds like the same question, but I know there's a different word in there.

BY MR. HIRSCH:

Q. I guess what I'm just getting at, Ms. Klein, is: After the forms are submitted and they're approved, what does the DOE do with the forms? What function do they serve? That's what I'm getting at.

A. They become the legally binding commitment of the department.

Q. Do they have any role in DOE's planning of the spent nuclear fuel program?

MS. POWELL: Same objection, beyond the scope, but you can answer to your personal knowledge.

THE WITNESS: Yes.

BY MR. HIRSCH:

Q. And what role is this?

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---------------------------------------x

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | : |
| (98-126C)(Merow, S.J.) | : |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | : |
| (98-154C)(Merow, S.J.) | : |
| MAINE YANKEE ATOMIC POWER COMPANY | : |
| (98-474C)(Merow, S.J.) | : |
| FLORIDA POWER & LIGHT COMPANY | : |
| (98-483C)(Wilson, J.) | : |
| NORTHERN STATES POWER COMPANY | : |
| (98-484C)(Wiese, J.) | : |
| DUKE POWER, a Division of DUKE ENERGY CORP. | : |
| (98-485C)(Sypolt, J.) | : |
| INDIANA MICHIGAN POWER COMPANY | : |
| (98-486C)(Hodges, J.) | : |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | : |
| (98-488C)(Yock, S.J.) | : |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | : |
| (98-614C)(Merow, S.J.) | : |
| COMMONWEALTH EDISON COMPANY | : |
| (98-621C)(Hewitt, J.) | : |
| BOSTON EDISON COMPANY | : |
| (99-447C) (Allegra, J.) | : |
| GPU NUCLEAR, INCORPORATED | : |
| (00-440C)(Bush, J.) | : |
| WISCONSIN ELECTRIC POWER COMPANY | : VOLUME |
| (00-697C)(Merow, S.J.) | : II |
| POWER AUTHORITY OF THE STATE OF NEW YORK | : |
| (00-703C)(Damich, J.) | : |
| OMAHA PUBLIC POWER DISTRICT | : |
| (01-115C)(Bush, J.) | : |
| NEBRASKA PUBLIC POWER DISTRICT | :Discovery |
| (01-116C)(Sypolt, J.) | :Judge: |
| TENNESSEE VALLEY AUTHORITY | :(Judge |
| (01-249C)(Bruggink, J.) | :Sypolt) |
| Plaintiffs, | :PAGES |
| v. | :275 - 533 |

THE UNITED STATES, :

Defendant. :

----------------------------------------X

Deposition of Susan Klein

Washington, DC

Thursday, April 25, 2002

Reported by: Denise Dobner Vickery, RMR, CRR

JOB NO. 144540

April 25, 2002

9:54 A.M.

Deposition of Susan Klein, held at the offices of:

Jenner & Block

601 13th Street, NW

12th Floor

Washington, DC 20005

Pursuant to notice, before Denise Dobner Vickery, a Registered Merit Reporter, Notary Public of the District of Columbia.

Q. All right. So, DOE is using the 3,000 MTU rate for the purposes of determining adequacy of the fee, correct?

MS. SULLIVAN: Objection, beyond the scope and also the document speaks for itself. You can answer the question.

THE WITNESS: Yes.

BY MR. TOMASZCZUK:

Q. They're using that rate basically to design the facility that they're planning to build at Yucca Mountain; is that right?

A. Yes.

Q. They're using it in any number of documents that we've seen here over the last couple of days, correct?

A. Yes.

Q. Wouldn't it be fair to say, Ms. Klein, that the lower rate that DOE is using, that is, the rate that goes up to 900 MTU and stops there, is being used for one purpose and that is for this litigation?

MS. SULLIVAN: Objection, beyond the scope. You can answer as to your personal opinion.

Oh, also to the extent it calls for legal conclusion.

THE WITNESS: That seems to be a legal conclusion, but I'm thinking, though, whether this is only for this litigation. I would say no.

BY MR. TOMASZCZUK:

Q. What other purpose is it using that for?

MS. SULLIVAN: Objection, beyond the scope.

THE WITNESS: We have always thought of the DCSs -- approved DCSs as our legal obligation even before the litigation. So that's why I would say no. But we do use it for purposes of determining our legal obligation and -- yeah.

BY MR. TOMASZCZUK:

Q. Did you want to add to your answer or are you finished?

A. No.

MR. TOMASZCZUK: Ms. Reporter, I'd like to mark as Klein Exhibit 32 a set of documents which were attached to the government's Motion for Summary Judgment on the spent nuclear fuel acceptance rate and these are a series of DCSs -- since you've just

contract?

A. I believe in this process, which we call the ACR resolution process, utilities raised issues and the department addressed them. I don't know what all the issues were. That could have been one of them, and in that case we would have looked at it, but other than that I don't know. Maybe we did look at it in that context. As a request from a utility company.

Q. Sitting here today, do you recall DOE considering changing the definition of high-level waste?

A. No, I do not recall.

Q. Is the Federal government responsible for disposing of greater than Class C waste?

A. Yes, it is.

Q. Would you look at the definition of high-level waste in the standard contract, Exhibit 38, specifically I'd ask you to turn to page 589.

A. Yes.

Q. Number 12. The term high-level waste means?

A. Uh-huh.

Q. You see there under B it states: "Other

highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation."

A. Uh-huh.

Q. You see that?

A. Yes, I do.

Q. Do you know why that was put in the standard contract?

A. It's in the statute. I believe comes directly from the Nuclear Waste Policy Act.

Q. And does this provision leave the Nuclear Regulatory Commission the decision whether to determine if material requires permanent isolation such that it's covered by the standard contract?

MS. SULLIVAN: Objection to the extent it calls for a legal conclusion. Objection, the document speaks for itself. Objection, vague. You can answer if you know.

THE WITNESS: Well, I think it gives -- they have to determine that it's other highly radioactive material and determine by rule that it requires permanent isolation. And there is another

way. Congress could legislate that we would put GTCC in repository or give us authority either by NRC rule or by legislation. There are -- those are the two methods that I see that it could become included under the standard contract.

BY MR. MACDONALD:

Q. If the NRC determines that material requires permanent isolation, is it covered by the standard contract?

MS. SULLIVAN: Objection to the extent it calls for legal conclusion.

THE WITNESS: I would say they have to find that it's other highly radioactive material and determined by rule that it requires permanent isolation.

BY MR. MACDONALD:

Q. What do you understand the term other highly radioactive material to mean?

MS. SULLIVAN: Objection, document speaks for itself. Objection to the extent it calls for a legal conclusion.

THE WITNESS: I just know from reading the

rulemaking that NRC did several years ago, had an advanced notice of proposed rulemaking and then a proposed and then a final that it had a very difficult time finding that this was highly radioactive.

BY MR. MACDONALD:

Q. Finding that?

A. That GTCC was always highly radioactive. That was one of the things they discussed in the preamble.

Q. When you said they had a very difficult time finding that GTCC was always highly radioactive, could some GTCC be highly radioactive?

A. I believe that's true. I believe some is highly radioactive.

Q. Do you understand the term other highly radioactive material to have a formal definition?

A. I don't --

MS. SULLIVAN: Objection to the extent it calls for a legal conclusion.

THE WITNESS: I don't know. I don't know of one.

BY MR. MACDONALD:

Q. And the reason -- if you would read the reason given in this document -- is that: "Subsequent to the signing of the Contract, the NRC has ruled on the disposal of GTCC wastes. Neither the NWPA nor the NWPAA anticipated that the Nuclear Waste Fund or the Contract might be required to include disposal of these potential additional waste streams with the one mill per kilowatt per hour fee. The definition of high-level waste still appears in the NWPA ..., so if Congress wants it in the contract with or without a fee increase, there is a basis." Do you see that?

A. I do see that, yes.

Q. In your testimony a few minutes ago, I asked whether or not you were aware of DOE considering changing this definition of high-level radioactive waste in the contract. Do you remember that?

A. Yes.

Q. Does this refresh your recollection as to whether or not DOE considered deleting the subparagraph (b) from definition 12, the term high-level radioactive waste?

A. Is this a DOE document? I don't know that

this is a DOE document. So I don't know, but I am not aware of DOE considering it. Although somebody somewhere considered it as this is true. I don't know if this is a utility document. A contractor document.

Q. I can represent that it was produced by the government in this litigation.

A. Oh, yeah, we have all sorts of documents that we collect. I don't know. This may be a DOE document. I don't know. This obviously never happened, but I don't know if this is a DOE document, and I was never made aware that we considered ever amending the standard contract to include it, to include GTCC. My recollection from where I sat was not to, and if it was needed to be done, it would be done through legislation or NRC regs and not through amendments to the standard contract. But somebody clearly had that suggestion, but I don't know who it was. It could --

Q. And when you refer to that suggestion, could you clarify what you're --

A. The suggestion that you just read to me that we change it. I don't really understand the change

to direct your attention to lines 41 through 46 of Exhibit 43, page 3, that state: "It has been proposed in various draft contract revision recommendations that 12(b) can be deleted without affecting the obligation to accept CHLW for disposal. Of major concern is the potential (implied) obligation to dispose of GTCC wastes resulting from decommissioning activities without specific fee increases to accommodate the waste streams." Do you see where I'm reading?

A. Yes, I do.

Q. And my question to you is: What implied obligation to dispose of GTCC wastes is this document referring to.

MS. POWELL: I do object. The document speaks to itself.

THE WITNESS: I have no idea. I have no idea who drafted this document. I'm not sure it's a DOE document. I think it could be a utility document.

BY MR. MACDONALD:

Q. Again, I'll represent to you that this is a document produced by the government in this litigation to us.

A. Yes, but we have -- we keep all the utility documents in our -- the reason I think it could be is the line 41 and 42 on page 2.

Q. Okay.

A. I think this is someone in EEI group talking about Jay Silberg, who was involved in all this. There is a letter that they referred to in here by a DOE person named Bob Bower, Robert Bower, but I can't figure out where the letter starts or begins. That's why I'm a little bit, I guess, but other than that I don't think this is a DOE document, but I don't know. It doesn't --

Q. And besides lines 41 and 42 of page 2, is there anything else that makes you think this is not a DOE or a DOE contractor document?

A. I don't see anything that indicates that it is, and I think the stuff that was said on the first page I don't think DOE would say. It looks to me like it's what the utilities would say. "It was agreed that DOE was obligated to accept properly packaged." I don't know. I don't really know. It's just that was my sense when I read it, but -- and I have, as I

would say if you put it in a repository and we're going to leave -- one of our plans is to leave ours open for 300 years, I guess after 300 years hopefully it's permanent isolation. But the requirement is they have to determine by rule that it requires permanent isolation. So that to me is different than saying if you put it in the repository. That doesn't mean that NRC has determined that it's required. But it is -- that's all.

BY MR. MACDONALD:

Q. I'm not sure that that exactly answered my question.

A. Okay. Ask it again, please.

Q. Would disposal constitute -- strike that.

Would disposal in a deep geologic repository constitute permanent isolation, in your view?

MS. SULLIVAN: Objection, vague.

THE WITNESS: I guess so, yeah. I would hope it would be isolated and it wouldn't leak out.

MR. MACDONALD: I'd like to mark as Exhibit 40.

(Thereupon, the reporter marked for

identification Deposition Exhibit No. 40.)

BY MR. MACDONALD:

Q. Ms. Klein, I've had marked as Exhibit 40 a document with a Bates label DF-101718 and at the top it's entitled "Draft DOE Position on the Acceptance of Nonfuel Assembly Hardware Under the 10 CFR 961 Standard Contract." Do you have that before you?

A. Yes, I do.

Q. If I could direct your attention to the third bullet point.

A. Yes.

Q. Which states: "Some of the NFA hardware is not GTCC and thus may qualify for shallow land burial and some will be GTCC waste. However, as it now stands, DOE appears to be obligated to accept all such wastes under the Standard Contract, regardless of radiological classification."

A. I see that, yes.

Q. Do you agree that some of the NFA hardware will be GTCC waste?

A. First of all --

MS. SULLIVAN: Objection, vague.

THE WITNESS: I just want to point out, I believe this was written by a contractor JAI. This is not a DOE document that I'm aware of. May qualify for shallow land burial. Would you ask the question again. I'm sorry.

BY MR. MACDONALD:

Q. Would you agree with the statement that some NFA hardware will be GTCC waste?

A. If it falls under the definition in the standard contract. I would say it is not GTCC waste as far as the definition that the NRC and DOE would use. Even though it might have radionuclide concentrations above Class C. It would be spent fuel under the definition in this contract if it falls under that definition.

Q. Despite the fact that it would also be considered GTCC correct?

A. Well, I would say it couldn't be both, but it's not low-level waste. So that exceeds the concentrations in the NRC regs. It would be spent fuel. So it couldn't be low-level waste. And now we're talking definitional issues here. But the

standard contract defines spent fuel to include nonfuel bearing components of the type listed there and whatever their transuranic content would be. They're spent fuel as far as I'm concerned for our authority purposes. They're not GTCC.

Q. But you'd agree that as of 11/29/1990, a DOE contractor included the statement that some NFA hardware will be GTCC waste?

MS. SULLIVAN: Objection.

BY MR. MACDONALD:

Q. Correct?

MS. SULLIVAN: Document speaks for itself.

THE WITNESS: Yeah. This JAI, who I believe is the DOE contractor that we have called, JAI did say that. Someone in that organization, yes. Some will be GTCC.

BY MR. MACDONALD:

Q. Do you know if DOE formally disagreed with this assessment?

A. I don't know, no.

Q. Do you know if DOE does have a contractor called JAI, or did?

A. Yes.
Q. As of 1990?
A. We did have -- we do or did have a contractor called JAI, yes. I think we still do, as a matter of fact.
Q. Do you know what the initials stand for?
A. Usually it's somebody's name. I don't know. Johnson. I don't know.
Q. Has the NRC determined that GTCC waste requires disposal in the repository unless DOE comes up with a different way to dispose of the waste?
MS. SULLIVAN: Objection, vague. Objection to the extent it calls for legal conclusion.
THE WITNESS: I would refer to the NRC regulations, which say something similar to that. Which is basically that it requires disposal in a geologic repository unless the Commission approves alternative methods. Something like that, yes.
BY MR. MACDONALD:
Q. So the Commission has determined that GTCC requires geologic repository unless the Commission approves some alternative?

A. Actually, I brought a letter. Do I have to give this as an exhibit? I don't know what my role is. From the Chairman of the Commission, May 21, 2001. Where he says, "For the reasons noted above, the NRC has decided consistent with past decisions not to classify GTCC as high-level waste."

MR. MACDONALD: For the record, I'd like to have a copy of that letter.

MS. SULLIVAN: That's fine.

MR. MACDONALD: I may already have several copies of it.

MS. SULLIVAN: I'm sure you do.

BY MR. MACDONALD:

Q. So the record is clear, in response to my last question, you read a letter from -- read a letter that you had brought and I'm not sure you answered my question.

A. Well, actually I took it out because he quotes that provision. "The Commission requires that GTCC be disposed of in a geologic repository unless ... proposals for disposal of such waste in the disposal site licensed as defined under 10 CFR approved by the

Commission." That's also in that letter that I will get you a copy of.

Q. Has the NRC licensed any other site for the disposal of GTCC?

MS. SULLIVAN: Objection, beyond the scope.

THE WITNESS: My understanding is there GTCC is buried in Barnwell, South Carolina and the department has GTCC buried in other than geologic. We have deep bore hole burial and there's also potential of -- I think Barnwell is engineered shallow land burial is one. I think that's how they do it in Barnwell, and there's deep bore hole, which we've used at DOE, and there's an intermediate depth facility is also a possibility rather than a deep or shallow land. So there are other ways to address it.

BY MR. MACDONALD:

Q. When you say address rest it, I think my question was in the letter that you read from talked about a site that has been licensed by the NRC for disposal; is that correct?

A. Yeah, and I answered it's not in the letter,

but I believe that Barnwell, South Carolina. It's a licensed facility. It might be licensed under the state. I'm not sure, but they get their authority through the Commission and they have GTCC buried in Barnwell, South Carolina I believe.

Q. Is it your testimony that the NRC has licensed DOE to dispose of GTCC somewhere other than a deep geologic repository?

A. No, not DOE. NRC doesn't license us to dispose of GTCC. I'm sorry. Barnwell is a commercial facility.

Q. Is DOE authorized to dispose of GTCC waste anywhere other than a deep geologic repository?

MS. SULLIVAN: Objection, beyond the scope. You can answer.

THE WITNESS: DOE presently isn't authorized to dispose of it in any place but a licensed facility and we have no licensed facility, but if we sought a license for other than a deep geologic repository, I believe the Commission would entertain it. But we don't have. We have not sought such a license and they have not yet entertained it. So I

don't know.

BY MR. MACDONALD:

Q. Do you know if DOE is considering a proposal to the NRC to dispose of GTCC somewhere other than Yucca Mountain?

A. Not at this time.

Q. If you take a look at Klein Exhibit 40, which you may still have before you. That's the draft letter, the draft position from JAI.

A. Yes.

Q. I would direct your attention to the second bullet point, which states that: "The regulations of the Nuclear Regulatory Commission issued subsequent to the Standard Contract, require that low-level radioactive wastes that contain concentrations of radionuclides that exceed the limits for Class C waste as defined in 10 CFR 61.55 must be disposed of in a repository." Do you see that?

A. I see that sentence, yes.

Q. And you'd agree with that statement, correct?

A. No, I would not agree with that statement.

Q. What aspect of that statement would you

NRC has not approved of disposal anywhere other than the repository as of today; is that correct?

A. Well, has not approved of the department disposal anywhere. Any commercial, yes. As I said before, I think in Barnwell, South Carolina there's some disposal of greater than Class C waste in a shallow land burial and that is a licensed facility, but other than that I'm not aware of anything.

Q. Let me rephrase my question.

A. Okay.

Q. Because I keep mixing up. I'm not asking my question clearly enough. So I apologize for that.

As of today April 2002, the NRC has not approved of DOE disposing any commercial GTCC anywhere other than a repository, correct?

A. Yes, but they also haven't approved it in a repository either. But yes, that's correct.

Q. They haven't approved of it anywhere period?

A. Period. This is true.

Q. Although they have published a rule requiring DOE to dispose of GTCC -- commercial GTCC at the repository unless they approve of another location?

A. I hate to be a stickler here, but I wouldn't quite word it that way.

Q. I'm sorry. How would you word it?

A. I'm sorry. Well, first of all, I don't believe they mentioned DOE in their rule per se, but they just have a rule for what's required to dispose of GTCC and they said they must be -- if it's to be disposed of, it's to be disposed of in deep geologic repository. Or an alternative approved by the Commission, but they don't say the repository. To me that means something because we do not have authority right now to put it in the repository. The one that we're looking at right now, and that would require some other action. We do not have authority to put it in there now. I don't think there's any question about that.

Q. There isn't any -- there isn't a repository right now?

A. That's correct. That's true.

Q. And DOE has not made any proposal to the NRC for disposing of commercial GTCC anywhere other than the repository?

A. That's true. They also haven't proposed to put it in a repository either, yes.

Q. But you're aware of studies suggesting -- DOE studies suggesting that the most economical place to put commercial GTCC is in the repository?

A. I can't cite you to any studies, but that's an understanding I have from conversations with people that it could be economical to put it in the repository when we are authorized to do that.

Q. And it would be difficult to get -- to site another repository for disposal of GTCC, correct?

A. Yes, that is correct.

(Discussion off the record.)

MR. MACDONALD: 46.

(Thereupon, the reporter marked for identification Deposition Exhibit No. 46.)

BY MR. MACDONALD:

Q. Ms. Klein, I've had marked as Exhibit 46 a document entitled "Teleconference Call Summary." It is Bates page SNL-001-0227 and it refers to a teleconference call held on June 22, 1999. Do you have that before you?