IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126C<br>(Senior Judge Merow) |

**YANKEE ATOMIC'S REPLY MEMORANDUM ADDRESSING THE ADMISSIBILITY OF CERTAIN EXHIBITS PREPARED BY CONTRACTORS**[1]

By Order dated July 8, 2004, the Court requested that counsel provide legal authority on the introduction of data or statements made by an entity or individual under contract or other legal relationship with DOE or another government agency "pursuant to Fed. R. Evid. 801(d)(2) or otherwise." Yankee Atomic provided its initial memorandum on this issue ("Memorandum") on July 12, 004 and the government filed its response ("Response") on July 27, 2004. Yankee Atomic now respectfully submits this Reply to the government's Response.

**I. Introduction.**

The government's primary argument, that DOE's contractors do not create departmental policy for DOE and that their statements do not represent DOE positions, *see* Response at 2-3, has no bearing on whether such statements are admissible under those hearsay exceptions relied upon by Yankee Atomic in its initial Memorandum. In those instances where the government has adopted positions developed (at least in part) by its contractors, such as the 3,000 MTU per

1 This bench memorandum should also be deemed applicable to *Connecticut Yankee v. United States*, No. 98-154C and *Maine Yankee v. United States*, No. 98-474C.

year acceptance or "throughput" rate, Yankee Atomic has an additional ground for the admissibility of these documents, under FRE 801(d)(2)(B), which allows into evidence statements of which the party has manifested an adoption or a belief in their truth. Under the hearsay exceptions discussed in Yankee Atomic's initial Memorandum, however, DOE's official adoption of contractor positions is irrelevant. As demonstrated in Yankee Atomic's initial Memorandum, the documents prepared by DOE's contractors contain statements "authorized" by DOE, and are therefore admissible under FRE 801(d)(2)(C), and also are public records or business records, and are admissible on those bases under FRE 803(6) or 803(8). The contractor documents are admissible on those grounds, for the truth of their contents, regardless of whether the statements made by the contractors are eventually adopted by DOE. The government's assertions that contractor documents "do not represent DOE positions," Response at 2, and that "DOE used PNNL to provide nothing more than advice, not, to make policy decisions," Response at 3, are beside the point. And of course, PNNL (Pacific Northwest National Laboratory), although run by an M&O contractor is part of DOE itself, a fact the government does not and cannot deny.

## II. The contractors were plainly authorized to make the statements contained in the reports at issue.

To be admissible under FRE 801(d)(2)(C), the statements contained in the reports and studies of DOE's contractors need simply be authorized by DOE. The government wrongly asserts, however, that "[t]he Yankees have not identified any basis for finding DOE's contractors – potentially including Yankee itself, who has a contract with DOE – 'authorized' to make admissions upon DOE's behalf." *See* Response at 19. That claim is undermined by pertinent testimony given in depositions and at trial, some of which has already been identified in Yankee Atomic's prior Memorandum on this issue, and by the documents themselves.

First, extensive deposition testimony attached by Yankee Atomic to its initial memorandum demonstrates that in multiple instances the challenged documents were prepared at the specific request of DOE. *See* Memorandum at Exhibit 2. For example, PNL's Thomas Wood participated in the following colloquy regarding PX 0152:

> Q. Could you please identify Exhibit 2?
>
> A. Exhibit 2 is a study entitled, Spent Fuel Acceptance Scenarios Devoted to Shutdown Reactors: A Preliminary Analysis. I believe that this was done *at the request of* Jeff Williams, if I remember correctly.
>
> Q. And Jeff Williams was?
>
> A. DOE.

Memorandum at Exhibit 2 (Wood 5/8/02 tr. at 54:11-18) (emphasis added). Similarly, the following exchange occurred between DOE's Thomas Pollog and counsel for Yankee Atomic with respect to PX0169, a PNL document entitled "Cost Estimates of Operating on-Site Spent Fuel Pools after Final Reactor Shutdown:"

> Q. Do you know why DOE wanted – I assume a contractor wouldn't prepare a report like this in this Exhibit 30 without a request from DOE to prepare a report like this?
>
> A. True.

Memorandum at Exhibit 2 (Pollog 5/22/02 tr. at 670:2-6).

Additional testimony elicited at trial shows that DOE regularly authorized its contractors to create such documents. For example, the following exchange took place between Dr. Bartlett and counsel for Yankee Atomic:

> Q. And when you were director, Dr. Bartlett, to what extent was the M&O authorized by the Department to make statements concerning the subjects addressed in studies such as Plaintiff's Exhibit 175?

> A. They have full authority to accomplish *and report* this work.

Trial tr. at 616:23 – 617:3 (emphasis added). Likewise, Mr. Kouts participated in the following exchange at trial regarding Bechtel SAIC Company ("BSC"), OCRWM's current management and operations contractor:

> Q. And how do BSC and JAI help you in the work that you do?
>
> A. They conduct studies. In JAI's case in the waste acceptance area of the program.
>
> Q. How do you go about assigning work to BSC or JAI for the work that they do?
>
> A. Essentially we develop a mutually agreeable annual work plan prior to the beginning of each fiscal year which covers the general areas of their interest or their involvement, if you will, in my area, for instance. Then if there are specific activities that need to be done that seem to fall outside of the work plan, or in terms of what we want to have additional definition, we issue a technical direction letter giving specific instructions as to what we want them to do.
>
> Q. Are BSC personnel responsible for supervising their own work?
>
> A. Yes, they are.
>
> Q. Does BSC or JAI prepare reports in the work that they do for you?
>
> A. Yes they do.

Trial tr. at 3449:5 – 3450:1.

Not only does the testimony of current and former DOE personnel establish the fact that these contractor reports and other documents were authorized by DOE, but the documents themselves support that conclusion. *See* Memorandum at 6 (quoting statement from contractor document PX0169 that "[t]his report was prepared as an account of work sponsored by an

agency of the United States Government"). Indeed, it is illogical to conclude that a contractor's statement that an acceptance rate of 3,000 – 4,000 MTU per year is appropriate was *not* authorized when the entire purpose of the study or report was to ascertain an appropriate rate.

The government's reliance on *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995) to import an agency requirement into FRE 801(d)(2)(C), *see* Response at 19, is misplaced. The text of that Rule does not include an agency requirement and such a requirement cannot properly be read into it. The government's interpretation of FRE 801(d)(2)(C) would essentially render that subsection a nullity because once an agency relationship is established, documents are admissible under the separate provision of FRE 801(d)(2)(D). Indeed, in *Glendale Federal Bank, FSB v. United States*, 39 Fed. Cl. 422, 424 (1997) this Court considered *Kirk*, but rejected it, concluding that "FRE 801(d)(2)(D) applies exclusively to agents but 801(d)(2)(C) does not." It reasoned that "[w]e may not apply (C) to agents because, to the extent we did so, we would render (C) superfluous." Importantly, this Court reached that conclusion in *Glendale* despite the government's reliance there on the Third Circuit's decision in *Kirk*. *Id*. at 423. The *Glendale* Court thus faithfully followed the text of FRE 801(d)(2)(C), a reading consistent with that of other Courts of Appeal that have applied FRE 801(d)(2)(C). *See Michaels v. Michaels*, 767 F.2d 1185, 1201 (7th Cir. 1985) (concluding that a broker's statements are admissible under FRE 801(d)(2)(C) "even if a broker is not an agent for purposes of Rule 801(d)(2)(D)"); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (allowing into evidence a report prepared by a non-employee under FRE 801(d)(2)(C) without inquiry into whether an agency relationship was present).

Moreover, the government's argument that some of the challenged documents are interim versions or preliminary drafts, *see* Response at 13, has no bearing on whether they were "authorized" by DOE within the meaning FRE 801(d)(2)(C). As Mr. Pollog testified at trial, "[g]enerally what we'll do, [the contractor will] submit to us draft deliverables, and we're commenting along the way. And when a final one comes in, it'll come under signature and we will accept it." Trial tr. at 4079:13-17. Whether the documents provided are draft or final versions, the record is clear that the contractors who prepare them do so at the behest of DOE. All these documents are therefore "authorized" by DOE within the meaning of FRE 801(d)(2)(C).

## III. The documents are records, reports or statements of public offices or agencies and set forth the activities of those offices or agencies.

The government's reading of FRE 803(8), the public records exception to the hearsay rule for documents, would preclude the admission of all documents not prepared by a "public official." Response at 9. That niggardly reading of 803(8) is not supported by the Rule's terms or underlying rationale. Subsection (A) of that Rule allows into evidence the "[r]ecords, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth (A) the activities of the office or agency . . . ." FRE 803(8)(A). The Rule's language does not require that documents to be admitted actually be authored "by" employees of public offices or agencies. *See, e.g., In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1309 (7th Cir. 1992) (concluding that challenged documents that "are – or, what is the same thing, summarize – documents generated *or collected by* the national government in the course of its public functions" are admissible under Rule 803(8)) (citation omitted) (emphasis added). Here, except for a few exhibits (PX0148, PX0163, PX0169, PX0172, PX0184, PX0845, PX0856, PX1156, and PX1157) the challenged documents were kept in files either at DOE's headquarters or at Pacific

Northwest National Laboratory, or are maintained on the government's RIS-Web or at the National Technical Information Service's website, www.ntis.gov, a central resource for government-funded scientific, technical, engineering, and business related information. *See* Memorandum at Exhibit 1 (indicating sources of contractor documents). Contrary to the government's suggestion, Yankee Atomic does not argue that all "documents created in the course of [DOE's] working relationships with private industry would also constitute the 'public records' of DOE." Response at 10. Rather, Yankee Atomic contends that where such documents are maintained in DOE files or on government websites, they are public records "of" DOE. Accordingly, many of the challenged contractor documents constitute records, reports, or statements "of" DOE that "set[] forth . . . the activities of" DOE.[2]

Trial testimony confirms that the challenged documents do, as FRE 803(8) requires, "set[] forth" the activities of DOE. As Yankee Atomic notes in its initial Memorandum, DOE almost exclusively employs contractors to accomplish its statutory mission, *see* Memorandum at 4, a point underscored by Dr. Bartlett's trial testimony:

> Q. Dr. Bartlett, as I mentioned when I described the cover of this document, it was prepared by the management and operations contractor at that time. When you were director, to what extent did you and OCRWM rely upon studies prepared by the management and operations contractor such as this one?
>
> A. All of the work is done by the – by the support contractors. That's what they're there for. The Department of Energy has – OCRWM itself has about 65 employees. The program has about

---

[2] As noted above, some of the challenged documents are also admissions of the government under FRE 801(d)(2)(A), given the fact that the national laboratory program is a part of the government managed by DOE. *See* 42 U.S.C. § 7257 (authorizing Secretary of DOE to "acquire, construct, improve, repair, operate, and maintain laboratories"). *See also* 42 U.S.C. § 7139(a) and (b)(3) (authorizing Director of DOE's Office of Science to advise Secretary "with respect to the well-being and management of the multipurpose laboratories under the jurisdiction of the Department").

> 5,000 employees if you look at it this way. These are contractor people.
>
> The M&O organizes all of them, but it includes activities within Sandia National Laboratories, Los Alamos National Laboratory, Livermore National Laboratory, the U.S. Geological Survey. And a lot of the engineering is done by, at our time, the TRW Systems, M&O contractor, management and operations contractor. The work is done by those folks. And the job of the DOE people is to oversight that, do the program planning, give them guidance and direction for what their activities should be.

Trial tr. at 615:22 – 616:22. As such, the government's assertion that these documents are not "typically classic public records," Response at 10, is similarly beside the point. As shown by Dr. Bartlett's testimony, DOE's activities encompass the creation of these documents.[3]

**IV. The documents meet the *Air Land Forwarders* test and therefore qualify as business records under FRE 803(6).**

The government also argues that the challenged documents do not meet the two-part test set forth in *Air Land Forwarders v. United States*, 172 F.3d 1338 (Fed. Cir. 1999), governing the admissibility of business records produced by a third party. That test requires first "that the incorporating business rely upon the accuracy of the document incorporated," and second "that there are other circumstances indicating the trustworthiness of the document." *Id.* at 1343 (citation omitted). Both elements are present in this case. First, as is clear from the testimony of Dr. Bartlett excerpted above, DOE regularly relied on the studies its contractors prepared. *See* Bartlett trial tr. 7/14/04 at 616:2-22. *See also* Morgan tr. 3/22/02 at 254:20-24 ("Q. Did you rely on any contractors? A. We had a support service contract – contractor. And we used the various on-site contractors such as PNL for certain activities *and we used their input*.") (emphasis

[3] Likewise, the government's argument that some of the documents are preliminary or interim drafts, *see* Response at 13, is immaterial to the FRE 803(8) inquiry. *See McGonigle v. Combs*, 986 F.2d 810, 825 (9th Cir. 1992) (ruling that an informal file memorandum prepared by a

Footnote continued on next page

added). Second, there are additional indicia of reliability accompanying the contractor's statements. As in *Air Land Forwarders*, the contractors who prepare these documents are subject to possible criminal liability should they include false statements in their reports. *See* 18 U.S.C. § 1001 (providing criminal penalties for anyone who makes "any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry"). Moreover, the declarants are scientists and engineers who are involved in a government program of great national importance and who have an incentive to perform their work accurately so that the government will seek to renew their contracts. Accordingly, both factors of the *Air Land Forwarders* test are met and the documents should be deemed admissible pursuant to FRE 803(6).

**V. DOE's M&O contractors are agents of DOE.**

Finally, notwithstanding the government's arguments regarding FRE 801(d)(2)(C)'s lack of an agency requirement, Yankee Atomic maintains that DOE's M&O contractors are agents of DOE and their studies are therefore admissible pursuant to FRE 801(d)(2)(D). Although agency may be established in many ways, even under the government's argument that the language of the contract is the determinative factor when ascertaining whether an agency relationship is present, Response at 6, it is noteworthy that Battelle Memorial Institute's ("Battelle's") current contract with DOE to manage and operate Pacific Northwest National Laboratory states that Battelle will act "in accordance with such directions and instructions not inconsistent with this Contract which DOE may deem necessary to give the Contractor from time to time." *See* Exhibit 1 at B-1 (excerpt from Battelle M&O contract, available online at

---

Footnote continued from previous page
member of the Kentucky Director of Securities' staff was a public record and therefore admissible pursuant to FRE 803(8)).

http://www.hanford.gov/doe/contracts/de-ac06-76rl01830/pdf/pnnl-contract.pdf). Accordingly the statements of those contractors should also be held admissible under FRE 801(d)(2)(D).

**VI. Conclusion.**

For the reasons set forth above and in the exhibits to this memorandum, Yankee Atomic respectfully requests that this Court admit into evidence the documents prepared by contractors identified in Exhibit 1 to its Memorandum.

Respectfully submitted

Date: August 9, 2004

s/ Jerry Stouck_____
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
Tel. (202) 898-5800
Fax (202) 682-1639

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:

Robert L. Shapiro
Peter J. Skalaban
SPRIGGS & HOLLINGSWORTH