IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 98-126C<br>(Senior Judge Merow)<br><br>Filed Electronically Sept. 3, 2004 |

**YANKEE ATOMIC'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTIONS TO INTRODUCE DEPOSITION TESTIMONY AND DEFENDANT'S COUNTER-DESIGNATIONS**[1]

Yankee Atomic respectfully submits this reply to the government's response to Yankee Atomic's motions to introduce deposition designations, pursuant to RCFC 32 and Fed. R. Evid 801(d)(d)(2), as evidence, and the government's counter-designations of deposition testimony.

## DISCUSSION

In its response ("D. Resp."), the government lodges three objections to Yankee Atomic's deposition designations: (1) good cause for their admission is lacking because the witnesses were available; (2) certain testimony of Susan Klein – a Rule 30(b)(6) witness – exceeds the scope of the underlying Rule 30(b)(6) topics; and (3) anticipated rebuttal designations should not be considered. Each of these objections lacks merit.

1 This motion should also be deemed applicable to *Connecticut Yankee v. United States*, No. 98-154C and *Maine Yankee v. United States*, No. 98-474C.

**1. Plaintiff's deposition designations are permitted by Rule and should be admitted.**

As a preliminary matter, the government's objection to the use of deposition designations has already been extensively vetted with the Court and was essentially rejected. *See* Ex. 1, June 29, 2004 Pre-trial conf. tr. 38:5 – 56:15. The Court established a schedule for the filing of designations prior to trial, *id.* at 55:4-9, and Yankee Atomic timely filed its designations.

The government's familiar objection that the deposition admissions should not be considered because all of the witnesses were available to testify live (D. Resp. at 2-4) is irrelevant to admissibility pursuant to Rule 32(a)(2) and/or Fed. R. Evid. ("F.R.E.") 801(d)(2)(D).[2] The government is simply recycling the same arguments that were raised and rejected in *Globe Savings Bank F.S.B. v. United States*, 61 Fed. Cl. 91, 95 (2004). There, the Court reiterated the well-established rule that "admissions by a party-opponent" are outside the framework of the hearsay rule and are classified as non-hearsay. *Id*. at 94-95. As such, the availability of the witnesses is immaterial to Yankee Atomic's designations:

> Application of the unavailability requirement to admissions would turn the theory of classifying admissions as nonhearsay on its head: the availability of the witness is the very means by which *the party-opponent* may seek to reap, in effect, the benefits of cross-examination.

*Id*. at 95 (emphasis added). *See also Hughes v. United States*, No. 90-878C, slip op. at 2-3 (Fed. Cl. April 26, 2004) (finding deposition testimony of employees of the Office of Thrift

---

[2] The government assumes – without analysis – that good cause must be demonstrated for the admission of these designations under RCFC App. A ¶ 15(b). While such cause clearly exists, for all the reasons stated in the text, the government's argument is also analytically flawed. The standard reflected in Appendix A is "cause" not "good cause." Second, that provision only applies – by its express terms –to those designations offered under RCFC 32(a)(2), not those offered as non-hearsay under F.R.E. 801(d)(2)(D). *See* RCFC App. A ¶ 15(b); *Globe Savs. Bank v. United States*, 61 Fed. Cl. 91, 96 (2004). Third, it is questionable whether Appendix A applies here because the Court's pre-trial Order of November 4, 1998 directed that Appendix G (the predecessor of Appendix A) would not apply to the litigation. *See* Ex. 2.

Supervision admissible under RCFC 32(a)(1), which provides that "[a]ny deposition may be used by any party for any . . . purpose permitted by the Federal Rules of Evidence," because FRE 801(d)(2)(D) excludes from the definition of hearsay "statements by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Here, the party-opponent – the government – could have called and cross-examined the witnesses whose admissions are included in plaintiff's deposition designations. It chose not to.

Perhaps even more fundamentally, the Rules allow Yankee Atomic to use these depositions in the manner that Yankee Atomic seeks. The government has not and cannot advance any basis for depriving plaintiff of its right to use these admissions as allowed by the Rules. Rule 32(a)(2) expressly provides that the testimony of managing agents or Rule 30(b)(6) witnesses may be used "for *any* purpose" at trial. *See* RCFC 32(a)(2) (emphasis added). Likewise, Rule 801(d)(2)(D) makes admissions admissible without regard to the availability of the witness. As explained in *Aircraft Gear Corp. v. Kaman Aerospace Corp.*:

> Under the evidence Rules, once an item of evidence qualifies as nonhearsay under Evidence Rule 801(d) its admissibility is governed by the broad-brush statement in Evidence Rule 402 that, subject to specified exceptions:
>
> All relevant evidence is admissible.

No. 93-C1220, 1996 WL 65990, at *1 (N.D. Ill. Feb. 12, 1996) (quoting F.R.E. 402).

The government's closely related assertion that the designations are "untrustworthy" or need explanation (D. Resp. at 3-4) is a non-starter. These admissions are reliable and speak for themselves. The designations are sworn testimony, given under oath, under penalty of perjury. The DOE officials and employees who made these admissions were ably represented by the Department of Justice at their depositions. The government could, and did, avail itself of F.R.E.

106 to make counter-designations, and the government was free to call any of these deponents if it thought the admissions could be explained away.

Further, plaintiff's designations will advance the Court's interest in having a complete record. All of these witnesses had relevant knowledge, especially regarding the so-called schedule issues. For instance, Mr. Barrett, the long time Director or Acting Director of the spent fuel program from 1993 through 2002, *see* Ex. 3, Barrett dep. tr. April 22, 2002 at 84:2 – 85:2, was the very first witness listed on the government's 2002 pre-trial submission witness list. *See* Ex. 4, at 1. Alan Brownstein was in charge of the 1991 ACR and the DCS process that the government relies on, *see* Ex. 5, Brownstein dep. tr. April 9, 2002 at 40:7 – 41:1, and he was the second witness listed on the government's 2002 pretrial witness list. *See* Ex. 4, at 2. Similarly, Nancy Slater was heavily involved in the DCS process, *see* Ex. 6, Slater dep. tr. April 22, 1999 at 229:7-22, and was the fourth witness listed on the government's 2002 witness list. *See* Ex. 4 at 3. Their testimony, and the other designated testimony, is relevant and should be considered.

The government's argument regarding "burden," (D. Resp. at 5) is both ill-founded and not a bar to admissibility. These designations were submitted in accordance with a Court-imposed schedule, and in advance of trial. The government has done the work necessary to respond. The submission of these designations has streamlined and shortened a trial that lasted over seven weeks. Plaintiff is entitled to use the tools set forth in the Rules to prove its case, and the fact that the government chose to respond is no basis to exclude plaintiff's designations.

Finally, the government's complaint that the objections made at the depositions need to be resolved (D. Resp. at 5) is insignificant. Consistent with rulings at trial, the objections entered at the depositions lack merit and should be rejected. For instance, the government frequently interposed the coaching objection "calls for a legal conclusion." Such objections are without

merit and, more fundamentally, the testimony is still admissible to show the witnesses' views or understanding. Similarly, the government often erroneously objected to a question as "vague" – but the answers given are clear. In short, the underlying objections are not a bar to admissibility. Nor does the Court have to "read" the testimony into the record as the government suggests (D. Resp. at 5). This is a bench, not a jury trial. The designations should be considered part of the record and the Court may consider the designations as part of the post-trial briefing process that has been established.

**2. Susan Klein's designated testimony is within the scope of Rule 30(b)(6), and in any event is independently admissible.**

The government's assertion that Susan Klein's testimony was beyond the scope of the Rule 30(b)(6) topics (D. Resp. 9-12) is without merit. The great majority of her designated testimony was not subject to any such "scope" objection, and hence that testimony is indisputably admissions of the Department of Energy. Further, in those instances where "scope" objections were lodged, those objections rested on an unduly narrow view of the underlying Rule 30(b)(6) topics, a view that discredits testimony simply because it does not fit the government's theory of the case. The topics that Ms. Klein testified to were reasonably broad in their subject matter, and were understood by the parties to encompass all of the so-called "schedule" issues on which discovery was being taken in the common discovery process. For example, the government cites in its Response (D. Resp. at 11) an exchange where Ms. Klein was asked, "[d]o you know when the last time DOE used the acceptance rates in the 1995 ACR rates for planning purposes?" This question was within the subject matter of the Rule 30(b)(6) notice, which included the topic of "the acceptance rate that DOE is planning to use once acceptance begins." Ex. 7. The objected-to question relates to whether the 1995 ACR rates have any role in the acceptance rate "DOE is planning to use once acceptance begins," and Ms. Klein's responsive

testimony should not be kept out of evidence based merely on the government's litigation-constrained view of the scope of that topic.

Moreover, even if the Court were to determine that one or more of the objected-to questions fell outside the subject matter in the underlying Rule 30(b)(6) notice, Ms. Klein's answer to that question would still be admissible as Ms. Klein's individual testimony (as opposed to the testimony of DOE). It is well-established that Rule 30(b)(6) "cannot be used to limit what is asked of a designated witness at a deposition." *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995); *see Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) (stating, with respect to questions that were beyond the scope of the Rule 30(b)(6) notice, "counsel may request from the trial judge jury instructions that such answers were merely the answers or opinions of individual fact witnesses, not admissions of the party"). Here, at the time of her deposition, Ms. Klein served as a senior policy advisor to the Director and Deputy Director of the Spent Fuel Program (OCRWM). *See* Ex. 8, Klein dep. tr. April 24, 2002 at 11:10-14.[3] As such, her testimony is independently admissible as an admission pursuant to F.R.E. 801(d)(2)(D). *See Hughes*, No. 90-878C, at 2-3.

**3. Plaintiffs' rebuttal designations are admissible.**

The government's objection to certain testimony of Mr. Brownstein, Ms. Slater, and Mr. Milner on the sole ground that it was identified by plaintiff as "rebuttal" designations exalts form over substance. The disclosure of this testimony was made *in advance of trial*. The consideration of this rebuttal testimony is entirely appropriate. Most of the testimony relates to the "DCS process." Although the government's DCS theory has already been rejected, *see*

[3] Ms. Klein is a lawyer who also had previously spent time working in the DOE General Counsel's Office working on the spent fuel litigation. Ex. 10, Klein dep. tr. April 24, 2002 at 11:21 – 12:5.

*Commonwealth Edison Co. v. United States,* 56 Fed. Cl. 652, 663 (2003) (stating the "Standard Contract, including specifically the ACR and DCS process, does not contain or create a SNF acceptance rate"), adopted by this Court in its Order of June 26, 2003, the government nevertheless elected to press this theory at trial. Accordingly, plaintiff will rely on its rebuttal designations. Indeed, the Court should consider the designated testimony because it includes admissions from Alan Brownstein and Nancy Slater, who the government had represented were two of the eight most knowledgeable persons in DOE regarding the DCS issue. Ex. 9, at 5.

**4. Many of the government's counter-designations are inappropriate because they exceed the scope of F.R.E. 106.**

In response to Plaintiffs' designations, the government has taken a very liberal view of the completeness doctrine of F.R.E. 106, and in many instances the government has counter-designated testimony that is far afield of the subject matter of plaintiff's original designations. For example, one government counter-designation includes twenty full pages of the deposition transcript of Mr. Barrett, with no clear unifying theme for this counter designation. *See* D. Resp. at 15; Ex. 10, Barrett dep. tr. May 8, 2004 at 1044:1-1064:22.[4]

To be sure, some of the government's designations are appropriate under F.R.E. 106, so long as plaintiffs original designations are admitted. Yankee Atomic has prepared a chart identifying the government's counter-designations that constitute inadmissible hearsay because they are beyond the scope of plaintiffs' designations. *See* Ex. 12. Some counter-designations are also incomplete because the government has only designated a fragment of the witnesses' answer or omitted relevant material, and accordingly, plaintiff objects to those designations because the

---

[4] The government has also made extensive counter-designation from the testimony of Mr. Trebules on topics that differ from plaintiff's narrowly limited designation regarding efficiency and the spent fuel program. If the government's overly broad counter-designation is considered,

Footnote continued on next page

entire relevant exchange should be considered. A chart identifying the additional testimony necessary to complete the counter-designations, and copies of that testimony, is attached at Exhibit 13.

Yankee Atomic submits that the issue of whether a particular counter-designation exceeds the scope of F.R.E. 106 is best addressed on a case-by-case basis, if the government proposes findings that are based on counter-designations that are outside the bounds of Plaintiffs' initial designations.[5]

## CONCLUSION

In summary, the government's three objections to Plaintiffs' deposition designations are without merit. These designations should be admitted into evidence.

Respectfully submitted

s/ Jerry Stouck________

Date: September 3, 2004

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
Tel. (202) 898-5800
Fax (202) 682-1639

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:
Robert L. Shapiro
Peter J. Skalaban, Jr.
SPRIGGS & HOLLINGSWORTH

---

Footnote continued from previous page
plaintiff has designated some additional deposition testimony from Mr. Trebules that is responsive to the government's counter-designation. *See* Ex. 11.

[5] Much of the testimony the government has counter-designated was subject to objections at the deposition. As discussed previously, these objections are no impediment to consideration of the testimony. Accordingly, if plaintiff's designations are admitted, plaintiff believes that otherwise proper and in-scope counter-designations are admissible over the deposition objections.