# EXHIBIT 13

# EXHIBIT 13

## Testimony to Complete Incomplete Counter Designations by Defendant

**LAKE BARRETT**

**April 22, 2002**
120:22-121:7

**May 14, 2002**
66:18-20
125:23-25

**RONALD A. MILNER**

**May 2, 2002**
310:19-311:22.

**May 3, 2002**
466:1-5; 496:9-25

**May 7, 2002**
40:5-11; 42:2-5
43:9-44:24

**May 8, 2002**
53:20-56:21
59:21-61:16
106:1-6
139:1-14
203:5-25
207:13-208:5
209:6-25
221:1-16
281:3-6

**SUSAN KLEIN**

**April 25, 2002**
492:10-12

**ALAN BROWNSTEIN**

**April 9, 2002**
117:19-118:10

193:22-194:4

**April 10, 2002**
443:3-9
144:9-14

**April 11, 2002**
583:16-585:15

**ROBERT CAMPBELL**

**May 6, 2002**
118:13-21

**NANCY H. SLATER**

**April 22, 1999**
226:25-227:2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COPY

- - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY; | : Case Nos. 98-126C, |
| CONNECTICUT YANKEE ATOMIC POWER | : 98-154C, 98-474C, |
| COMPANY; MAINE YANKEE ATOMIC | : 98-483C, 98-484C, |
| POWER COMPANY; FLORIDA POWER & | : 98-485C, 98-486C, |
| LIGHT COMPANY; NORTHERN STATES | : 98-488C, 98-614C, |
| POWER COMPANY; DUKE POWER, a | : 98-621C, 99-447C, |
| Division of DUKE ENERGY CORP.; | : 00-440C, 00-695C, |
| INDIANA MICHIGAN POWER COMPANY; | : 00-703C, 01-115C, |
| SACRAMENTO MUNICIPAL UTILITY | : 01-116C, 01-249C |

- - - - - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Deposition of LAKE H. BARRETT

Washington, D. C.

Monday, April 22, 2002

9:31 a.m.

Job No.: 11792-4

Pages 1 through 272, Volume 1

Reported by: Diane Gomez, RPR

DISTRICT; SOUTHERN NUCLEAR :
OPERATING COMPANY, et al.; :
COMMONWEALTH EDISON COMPANY; :
BOSTON EDISON COMPANY; GPU :
NUCLEAR, INCORPORATED; WISCONSIN :
ELECTRIC POWER COMPANY; POWER :
AUTHORITY OF THE STATE OF NEW :
YORK; OMAHA PUBLIC POWER DISTRICT; :
NEBRASKA PUBLIC POWER DISTRICT; :
and TENNESSEE VALLEY AUTHORITY, :
Plaintiffs :
v. :
THE UNITED STATES, :
Defendant :
- - - - - - - - - - - - - - - - - X

A That has been our intent.

Q Let's go back to paragraph three, page seven. You referred to January 31st, 1998, as being a goal. Was it something more, wasn't it a contractual commitment and a statutory command?

MR. CRAWFORD: Objection, argumentative. Objection, best evidence. Objection to the extent it calls for a legal conclusion.

A As an engineer, okay, and as a program administrator, okay, and dependent on what the contract said or what courts said, we were always trying to achieve that goal.

Q And why did you establish that goal for yourself?

A Because --

Q And your department?

A It was set in the law, okay, that our goal was to try to create a facility and to create a system that would meet that goal of January 31st, 1998, to start to receive fuel. And it has always been an important objective and goal.

Q To start to receive fuel on January 31st,

1998, at a ramp-up level that would -- in a reasonable amount of time and at a 3,000 per year MTU acceptance rate, correct?

MR. CRAWFORD: Objection to the form. Objection to the mischaracterization of prior testimony. Objection to the extent it assumes facts not in evidence.

A It was a systems goal to receive the material at a reasonable rate, okay, of which the 3,000, ramp up to 3,000 tons was a reasonable rate. It was never a -- in my opinion it was never a legal requirement to do 3,000 tons per year.

Q You base the goal on the statute, correct? That's what you've testified to, correct?

A Yes.

Q Back to paragraph three --

A Excuse me. Let me go back to that. When you say the statute does not say 3,000, okay, that was a judgment part. It is the receipt in January 31, 1998, is in the statute. The rate to my knowledge is not in the statute.

Q So why did you set the 3,000 MTU goal?

269

ACKNOWLEDGMENT OF DEPONENT

I, Lake H. Barrett, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

6/27/02 ____________ [signature]

(DATE) (SIGNATURE)

270

CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

I, Diane Gomez, Registered Professional Reporter, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 25th day of April, 2002.

My commission expires:
June 14, 2005

____________________
NOTARY PUBLIC IN AND FOR
THE DISTRICT OF COLUMBIA

271

ERRATA SHEET

IN RE: YANKEE ATOMIC v. UNITED STATES

RETURN BY: ____________________

| PAGE | LINE | CORRECTION AND REASON |
|---|---|---|
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |

____________ ____________________
(DATE) (SIGNATURE)

272

ERRATA SHEET CONTINUED

IN RE: YANKEE ATOMIC v. UNITED STATES

RETURN BY: ____________________

| PAGE | LINE | CORRECTION AND REASON |
|---|---|---|
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |
| ___ | ___ | ____________________ |

____________ ____________________
(DATE) (SIGNATURE)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC :
COMPANY, CONNECTICUT YANKEE :
ATOMIC POWER COMPANY, MAINE :
YANKEE ATOMIC POWER COMPANY, : Case No. 98-126C,
Plaintiff, : 98-154C, 98-474C
vs. : (Senior Judge Merrow)
UNITED STATES OF AMERICA, :
Defendant. : Volume I

- - - - - - - - - - - - - - - - - - x

CERTIFIED COPY

Washington, D.C.
Tuesday, May 14, 2002

Deposition of LAKE H. BARRETT, a witness herein, called for examination by counsel for the Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 Eye Street, N.W., Washington, D.C., commencing at 9:30 a.m., Tuesday, May 14, 2002, and the proceedings being taken down by Stenotype by CAPPY HALLOCK, RPR-CRR, and transcribed under her direction.

CONTAINS CONFIDENTIAL INFORMATION
PURSUANT TO THE PROTECTIVE ORDER

amplify a little bit by what you mean by bite size campaigns?

A. Bite size meaning how much tonnage of fuel are you going to take in a campaign over a certain period of time.

Q. Okay. Is that determination something that is going to be substantially left to the regional contractors under the RFP that we were discussing earlier?

MS. HERRMANN: Objection. Speculation.

A. It is my opinion regarding the efficiency of the system that the RSC would work with the contract holders in their region or nationally to work out the best mutual arrangement for the contract holders and the government for the most efficient system that could be devised.

Q. As to schedule; is that what you are talking about? It may be other things, but including scheduling matters?

A. Including scheduling, recognizing the fact that there are contractual legal matters that will also have to be addressed, and that I would hope that the RSC, the regional services contractor or agent could facilitate and arrange

A. Yes.
Q. Do you understand the sentence? It seems to have the word priority in there one too many times.
A. Yes.
Q. Do you have knowledge whether DOE would have given priority to purchasers with shutdown facilities?
MS. HERRMANN: Objection. Speculation.
A. I know what the subject and the issue is.
Q. Do you know whether DOE would have given priority to purchasers with shutdown facilities? Do you know whether or not DOE would have given priority to shutdown --
A. No.
Q. You don't know. Okay.
It's an issue that is still under discussion. I think you testified earlier in the deposition it was premature to work that issue out because there were other things that came before?
A. Yes.
Q. Now, let's go to a new subject here. I think I'm done with that for now.
Am I done with that for now? Hold on.

Page 238

A. Right. It's moved now.
Q. All right.
MR. STOUCK: Can you mark this one, please, Number 92.
(Barrett Deposition Exhibit No. 92 was marked for identification.)
BY MR. STOUCK:
Q. Okay. This is a one-pager, Mr. Barrett. It has been marked Exhibit 92. It looks like a Memorandum of Agreement. It says, Subject: Multipurpose Canister Program, date April 30, 1996, Bates number HQR-045-2612. It has got your signature on it, and a Ms. Jill Lyte?
A. Correct.
Q. Do you recall this document?
A. Vaguely.
Q. Okay, what is it? And please review it before you answer.
A. This was when we -- we had a very bad budget year in FY96, and we were in the midst of finishing the Westinghouse design for the multipurpose canister. And we wanted to finish the design and complete the design before the design team disbanded to allow it to continue to

Page 239

be of some use in the industry.
We asked the Office of Environmental Management to try to support us with that and they agreed to do so, and this was the agreement that they provided a million dollars to us to help us finish that design.
Q. Why would they do that?
MS. HERRMANN: Objection. Speculation.
A. So they could use the technology and storage that they have. They have storage needs, and that technology would be helpful to them as well.
Q. What are their storage needs?
A. They store commercial fuel at Idaho as well as West Valley, New York and also DOE fuel in the end reactor.
Q. And the technology being developed in the MPC program could be useful to EM in connection with its responsibility for the storage of that fuel you just mentioned?
A. Correct.
Q. Okay.
MR. STOUCK: Let's quit for the day.
(Discussion off the record.)
(Thereupon, at 5:40 p.m., the taking of

Page 240

the instant deposition ceased.)

Signature of the Witness

SUBSCRIBED AND SWORN to before me this 27 day of June, 2002

NOTARY PUBLIC
My Commission Expires: ______________

Pat L. Austin
Notary Public, District of Columbia
My Commission Expires 05-14-2006

Page 241

UNITED STATES OF AMERICA )
STATE OF MARYLAND )

I, CAPPY HALLOCK, the reporter before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was sworn by me; that said deposition is a true record of the testimony given by said witness.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially or otherwise interested in the outcome of this action.

Cappy Hallock, RPR, CRR

My Commission expires January 1, 2005

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. Certified Copy :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)
McLean, Virginia
Thursday, May 2, 2002

Continued deposition of RONALD A. MILNER, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

needed to be looked at more carefully?
MS. HERRMANN: Objection -- foundation.
THE WITNESS: I would assume that I was referring to ramp-up rates in the August 14th memo.
I don't know what they were offhand.
BY MR. TOMASZCZUK:
Q. Can you look at the memo and identify for me what you were suggesting needed to be looked at more carefully?
A. Which memo?
Q. The memo from Mr. Lemeshewsky on which you're, as I understand it, providing comments.
(The witness reviewed the document.)
THE WITNESS: Potentially it was MRS acceptance rates shown on HQR-0593236.
BY MR. TOMASZCZUK:
Q. You're referring to the second bullet on that page, MRS annual acceptance rate limit?
A. Correct.
Q. Start at 1430 and then go to 6,000?
A. Correct.
Q. Those limits were at least at the upper end higher than the limits we have seen in

previous documents?
A. That's correct.
Q. So that was something you were suggesting should be looked at more carefully?
A. That's correct.
Q. The cover memo from Mr. Lemeshewsky, the first page of Milner Exhibit 38 in the first sentence says in various OCRWM documents, the waste acceptance rate at steady-state operation was assumed at about 3,000 MTU per year.
That was certainly a true statement, correct?
A. That was certainly the program's goal at that time.
Q. I gather you were not indicating in your memo providing comments that that 3,000 MTU waste acceptance rate at steady-state operation needed a more careful look?
MS. HERRMANN: Objection -- foundation.
THE WITNESS: I don't believe that would have been the case.
BY MR. TOMASZCZUK:
Q. What did you mean, Mr. Milner, in the, by use of the phrase near-term driver for our

Page 402

does.

Q. It appears that these rates are based on the existence of an MRS?

A. Apparently so.

MR. TOMASZCZUK: It's 6:20.

(Whereupon, at 6:20 p.m., the deposition was recessed, to reconvene at 9:00 a.m. May 3, 2002.)

[signature] Ronald A. Milner

RONALD A. MILNER

SUBSCRIBED AND SWORN to before me this 24th day of May, 2002.

[signature]

NOTARY PUBLIC

My commission expires: 5/14/06

Page 403

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - - - - X

YANKEE ATOMIC ELECTRIC COMPANY, :
(98-126C) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C) :
NORTHERN STATES POWER COMPANY :
(98-484C) :
DUKE POWER, A Division of DUKE :
ENERGY CORP. (98-485C) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al., (98-614C) :
COMMONWEALTH EDISON COMPANY :
(98-621C) :
BOSTON EDISON COMPANY :
(99-447C) :
GPU NUCLEAR, INCORPORATED :
(00-440C) :
WISCONSIN ELECTRIC POWER COMPANY, :
(00-697C) :
POWER AUTHORITY OF THE STATE OF :
NEW YORK (00-703C) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C) :
TENNESSEE VALLEY AUTHORITY :
(01-249C) :
Plaintiffs, :
v. :
UNITED STATES OF AMERICA, :
Defendant. :

\- - - - - - - - - - - - - - - - - - - - - X

Washington, D.C.
Friday, May 3, 2002

Continued Deposition of RONALD MILNER, a witness herein, called for examination by counsel for

Q. Are there other criteria that you can identify sitting here that would be important to that question?

MR. SHULTIS: Asked and answered.

THE WITNESS: No.

BY MR. NESLIN:

Q. If I could ask you to turn to page 0021. The third paragraph, if I could ask you to review the third paragraph on that page. The second sentence states that, "Whereas the review could be terminated after the first failed review criteria, performing a complete review will provide the purchaser with as much information as possible for preparing a revised exchange request, if desired."

Do you see that language?

A. Yes.

Q. Was it important to the Department to provide purchasers with information on why an exchange request might be disapproved so that they could attempt to correct the problem and resubmit?

MR. SHULTIS: Objection, Mr. Milner's not a 30(b)(6) witness.

THE WITNESS: In my personal opinion it would have been important, sure.

BY MR. NESLIN:

Q. And how do you disagree with it?
A. If a reactor is shutting down, presumably it has all of its spent fuel stored on site either in the pool or dry storage or a combination thereof. That storage exists when the reactor shuts down. Since no more fuel is being generated by the reactor I'm not sure what additional storage would be established.
Q. Would you agree that it would avoid the need to continue an otherwise unneeded reactor site storage facility?
A. I would.
Q. And the next item states that granting priority can be shown to be clearly cost effective for consumers from the standpoint of timely decommissioning?
A. I would agree with that.
Q. And the last item is that granting priority can be shown to support the national policy of efficient operation of the country's waste management system.
A. I can neither agree or disagree with that. I'm not quite sure what that means.
Q. You don't understand --
A. Correct.

***CERTIFICATE OF REPORTER***

***UNITED STATES OF AMERICA ) ss.:***

***COMMONWEALTH OF VIRGINIA )***

I, **CYNTHIA R. SIMMONS, RPR, CRR,** the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

*Notary Public in and for*

*the Commonwealth of Virginia*

*My Commission expires: 11/30/2004*