IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

Certified Copy

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Thursday, April 11, 2002

Continued deposition of ALAN BROWNSTEIN, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being previously duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman,

opposed to contractual commitment to avoid additional on-site storage.

BY MR. NESLIN:

Q. As a goal, wouldn't the mismatch between those utilities which had allocations and those utilities that needed additional storage, running into storage problems, would not that mismatch frustrate that goal?

Do you understand my question?

A. I do.

MR. BANES: Objection. Calls for speculation.

THE WITNESS: A contractual commitment in my mind is a higher priority than a goal.

BY MR. NESLIN:

Q. My question was simply would the goal that you had identified, and understanding that it is a goal and that's the form in which you're speaking to it, wouldn't that be frustrated by the mismatch between those utilities which have allocations, annual allocations and those utilities which need additional storage?

A. It certainly could.

Q. Okay. And wouldn't that problem be addressed by exchanges?

A. That was --

MR. BANES: Calls for speculation. Go ahead.

THE WITNESS: That was certainly something we were aware of, and it certainly could be.

BY MR. NESLIN:

Q. To your mind, wasn't that part of the reason for exchanges?

MR. BANES: Can we take a break for a second?

(There was a pause in the proceedings.)

MR. BANES: I'm sorry, Dave.

THE WITNESS: I'm sorry. Just to make sure I accurately answer your question, can you repeat that?

MR. NESLIN: Do you want to restate that question?

THE REPORTER: Question: "To your mind, wasn't that part of the reason for exchanges?"

THE WITNESS: Need to go back to an additional -- that was half a question.

THE REPORTER: Question: "My question

was simply would the goal that you had identified, and understanding that it is a goal and that's the form in which you're speaking to it, wouldn't that be frustrated by the mismatch between those utilities which have allocations, annual allocations and those utilities which need additional storage?"

MR. BANES: Objection -- lack of foundation.

THE WITNESS: My opinion is yes, and the only caveat I have to that is that when those terms of the contract -- you know, I wasn't with the department, you know, originally, but in my mind, that was -- that's right.

BY MR. NESLIN:

Q. Could exchanges, would exchanges be beneficial to the operation of the waste management system?

MR. BANES: Object. Calls for speculation.

THE WITNESS: It could be.

BY MR. NESLIN:

Q. Insofar as exchanges addressed this mismatch between those utilities which had

CERTIFICATE OF NOTARY PUBLIC

I, Catherine S. Boyd, the Notary Public before whom the proceeding occurred, pages through , do hereby certify that the witness was duly sworn, that the testimony of said witness was taken by me and thereafter reduced to this typewritten transcript under my supervision, that said transcript is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to this proceeding, and further, that I am not a relative or an employee of any attorney or counsel employed by the parties thereto, or financially or otherwise interested in the outcome of the proceeding, or any action involved therewith.

Witness my signature and seal:

CATHERINE S. BOYD
Notary Public in and for
The Commonwealth of Virginia

My commission expires:
February 28, 2006

# TRANSCRIPT OF PROCEEDINGS



In the United States Court of Federal Claims

----------------------------------x

| | |
|---|---|
| Yankee Atomic Electric Company | : |
| | : |
| | : NO. 98-126C |
| v. | : |
| | : |
| United States of America | : |

----------------------------------x

**May 6, 2004**

**DEPOSITION OF:**

**Robert Campbell**

a witness, called by counsel pursuant to notice, commencing at 9:30 a.m., which was taken at Spriggs and Hollingsworth, 1350 Eye St., NW, Washington, DC

**This transcript has been completely indexed for your convenience. It will help you locate the testimony you want FAST. The index is located in the back pages of this volume.**

Page 117

A. No, I don't agree with that.
Q. Can you explain why you don't agree with that?
MS. HERRMANN: Same objections.
A. Any organization within DOE can propose that something go to Yucca Mountain. That doesn't mean it could or would or will. It just means that it was proposed.
My understanding was that they were attempting to summarize all the things that were proposed.
Q. Who had proposed GTCC for the Yucca Mountain repository?
A. I don't know.
Q. Is the effect of including the EIS -- including GTCC in a section of the EIS, does that keep open the -- or otherwise reserve the potential for GTCC being disposed of in the repository?
MS. HERRMANN: Objection, foundation, speculation, calls for a legal conclusion.

Page 118

A. No.
Q. Why include it at all?
MS. HERRMANN: Same objections.
A. Environmental impact statement is a public document and typically the Department tries to be complete in its presentation of the issues, and I believe my best guess as to why that was included is an attempt to be complete.
Q. Complete in what sense?
A. Complete in the sense that you have discussed all the issues surrounding the environmental impacts of Yucca Mountain.
Q. Did you have any involvement in preparing the EIS?
A. No.
Q. Did you have any -- did you do any work with respect to GTCC into the EIS?
A. No.
Q. Did you have any discussions with anyone at OCRWM about why GTCC was included in the EIS?
A. Not that I remember.

Page 119

Q. Were you reviewing this for your own interest?
MS. HERRMANN: Objection, asked and answered.
A. I don't remember.
Q. Do you know for a fact what the purpose was of including the GTCC waste in the EIS, the Yucca Mountain EIS was?
MS. HERRMANN: Objection, foundation, speculation, calls for a legal conclusion, asked and answered.
A. No.
Q. Who do you think would know the answer to that question?
MS. HERRMANN: Speculation.
A. The document manager for the Yucca Mountain EIS.
Q. When you say document manager for the Yucca Mountain EIS, what do you mean by that?
A. Under the National Environmental Policy Act implementing regulations that the Department of

Page 120

Energy has, a document manager is assigned for every environmental impact statement.
That's the person who is responsible for that document.
That would be the most knowledgeable person on that document and what was included in it.
(Whereupon the proffered item was marked as exhibit number 48.)
Q. Mr. Campbell, what is this document?
A. I have not seen it before. I could read the title for you.
Q. Do you have any knowledge of whether GTCC, the performance assessment of GTCC in the Yucca Mountain repository has been analyzed?
A. No, I do not.
Q. The first page of this document says: "This letter report presents the results of calculations to assess long term performance of commercial spent nuclear fuel, US Department of Energy spent nuclear fuel, high level radioactive waste and greater than class C radioactive waste and

Certificate of Deponent

I hereby certify that I have read and examined the foregoing transcript, and the same is a true and accurate record of the testimony given by me.

Any additions or corrections that I feel are necessary I will attach on a separate sheet of paper to the original transcript.

Robert A. Campbell

Signature of witness

I hereby certify that the individual representing him/herself to be the above named individual, appeared before me this 13th day of May and executed the above certificate in my presence.

[signature]

Notary Public

My Commission Expires 7/2/04

CERTIFIED COPY



IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC :
COMPANY, :
Plaintiff, : Case No. 98-126C
v. : Senior Judge
: Merow
THE UNITED STATES, :
Defendant. :

- - - - - - - - - - - - - - - - x

Washington, D.C.
Thursday, April 22, 1999

Continued deposition of NANCY H. SLATER, a witness herein, called for examination by counsel for Plaintiff in the above-entitled matter, pursuant to agreement, the witness being previously duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., at 2:10 p.m., Thursday, April 22, 1999, and the proceedings being taken down by Stenotype by JAN A. WILLIAMS, RPR, and transcribed under her direction.

that page on the transportation issue. Perhaps if you could take a look at that whole page and let me try to rephrase my question. What I'm trying to get at is, by the time this issue got to this level of draft, was the plan still to base the decision on whether or not to approve a proposed exchange of delivery commitment schedules on the transportation plan that would have been created based on the queue as opposed to a transportation plan based on anticipated exchanges?

A. Yes, it would have been based on approved delivery commitment schedules.

Q. Do you recall any discussions or considerations at this stage of the process on transportation plan or acceptance plan or any other plan for that matter being based upon anticipated exchanges as opposed to approved delivery commitment schedules?

A. I don't recall myself having any significant thoughts about that, because my intention was that it be based on approved DCS's. I cannot speak for the transportation people.

Q. You just don't know what was going on

with them?

A. Right.

Q. And, other than Bill Teer who you mentioned earlier, you can't tell us anyone else we might talk to who might be able to give us more information on that issue, on what was being done in the transportation area?

A. I seem to recall that Jim Carlson at DOE might have been involved.

Q. Anyone else?

A. I can't recall.

Q. Now, is your recollection that ultimately a final draft was developed of this document, evaluation of delivery commitment schedule exchange requests?

A. I believe it was.

Q. Do you have a sense of when that final document was prepared?

A. No, I really don't.

Q. This draft says it was prepared by TRW. It would have been your expectation that the final would also been prepared by TRW?

A. Yes.

Q. And the transmittal letter for that draft is from a James Blandford at TRW. Do you

## *CERTIFICATE OF REPORTER*

*UNITED STATES OF AMERICA ) ss.:*

*DISTRICT OF COLUMBIA )*

I, **JAN A. WILLIAMS,** the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

*Notary Public in and for*

*the District of Columbia*

*My commission expires: 03/14/2002*