# In the United States Court of Federal Claims

No. 98-126 C
(Filed September 17, 2004)

******************************
YANKEE ATOMIC *
ELECTRIC COMPANY, *
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
Defendant. *
******************************

**ORDER**[1/]

This matter is before the court on plaintiffs' Bench Memorandum Addressing the Admissibility of Certain Exhibits Prepared by Contractors, to which defendant filed its Response, and plaintiffs filed a Reply Memorandum.

Plaintiffs assert that exhibits charted in Exhibit 1 to the Bench Memorandum are admissible as non-hearsay pursuant to Fed. R. Evid. 801(d)(2) and several other hearsay exceptions. For the most part they are documents of national laboratories and other contractors to the Department of Energy ("DOE") and include analysis of priority for shutdown reactors and other acceptance scenarios, fuel shipment strategies, consideration of failed fuel and delivery commitment schedules, allocations between nuclear utilities, program costs, treatment of greater-than-class C waste ("GTCC"), trading of acceptance rights, and the effects of trading of acceptance rights on transportation – all part of the development of DOE's spent nuclear fuel program.

The documents concerned are relevant to the issues in this litigation. Although the parties commendably reached agreement with respect to the admission of most

[1/] This should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154 and *Maine Yankee v. United States*, No. 98-474.

of the many exhibits offered in this action, defendant objected to numerous contractor documents charted in Exhibit 1 to plaintiffs' Bench Memorandum. Subsequently, the parties stipulated to the admission of these documents, reserving objection as to their use particularly for the truth of the matters asserted therein. *See* Yankee Atomic's Submittal of Admitted Exhibits for Both Parties filed July 30, 2004. Plaintiffs posit: (1) many, if not all, of the documents are public records pursuant to Fed. R. Evid. 803(8); (2) the documents are authorized statements of DOE or statements made by servants or agents of DOE within the scope of that servitude under Fed. R. Evid. 801(d)(2)(C); and (3) two of the documents are ancient and therefore admissible pursuant to Fed. R. Evid. 803(16).

Contesting the asserted public nature of these exhibits, defendant finds fault with plaintiffs' premise that documents generated by national laboratories, such as the Pacific Northwest National Laboratory ("PNNL"),[2/] are documents of a government agency. Defendant also argues that statements from such entities are not DOE policy which is formed only at the highest levels of the Department. Public records are asserted by defendant to be limited to those classic documents such as reports of convictions, automobile titles, applicants for government firefighting positions, court records, and weather.

The contractors – who are they?

Plaintiffs assert DOE relies on its contractors to provide highly technical and specialized expertise in formulating DOE's policies and plans under the Nuclear Waste Policy Act ("NWPA") and related statutes and regulations, as well as under the Standard Contract for spent nuclear fuel ("SNF") involved in this litigation. In this regard, defendant asserts plaintiffs have misrepresented the status of documents from PNNL, stating that plaintiffs rely only on a page from the PNNL website which "[f]ar from establishing that PNNL is part of DOE, that page indicates that PNNL performs work for other Government agencies as well as private industry," and is operated for DOE by Battelle, a private contractor. Def. Resp. at 2. "Thus, the Yankees have

[2/] In addition to PNNL, the contractors include Battelle Memorial Institute; Martin Marietta Energy Systems, Inc. and Science Applications International Corp.; TRW Environmental Safety Systems, Inc.; Weston, Rogers & Associates; Pacific Nuclear; E.R. Johnson for Oak Ridge National Laboratory; ERM Program Management Co.; and Lockheed Martin Idaho Technologies, Inc.

shown no more reason to believe that PNNL is part of DOE than the Department of Defense or a private company." *Id.*

Initially, the court notes the ".gov" designation of PNNL – www.pnl.gov. The organization is presented as holding governmental status. Absent evidence disassociating the organizations from action as DOE surrogates with governmental-type status, the documents relevant to DOE's spent fuel program from any of these entities have been admitted. Going further, however, a brief foray into PNNL's website reveals that "[r]esearchers at [PNNL], an Office of Science laboratory within the U.S. Department of Energy, are advancing the frontiers of scientific knowledge and rapidly translating their discoveries into innovative technologies. *See* www.pnl.gov (Last visited August 5, 2004) (link in original). The link to "Office of Science," the scientific advisor to the Secretary of Energy, describes its Director as an Assistant Secretary equivalent, nominated by the President of the United States and confirmed by the Senate. Duties and responsibilities of the Director of the Office of Science include advising the Secretary of Energy "with respect to the well-being and management of the multipurpose laboratories under the jurisdiction of the Department, excluding laboratories that constitute part of the nuclear weapons complex." www.science.doe.gov/sub/director/statutory_Responsibilities.htm (last visited August 5, 2004), citing 42 U.S.C. § 7139. DOE's Office of Science, Office of Resource Management ("ORM") Fiscal 2005 Year Budget Request to Congress includes approximately $108 million dollars for PNNL. www.sc.doe.gov/orm/Budget_Finance/Budget_Finance_main.htm, p. 29 (last visited August 5 & 6, 2004).

Document authors also include the Idaho National Engineering and Environmental Laboratory ("INEEL").[3/] DOE's Office of Science ". . . funds research and development projects conducted at [Idaho National Engineering and six other laboratories], which are overseen by other DOE offices."[4/]

---

[3/]With respect to the status of Rob Campbell, one of the originators of documents in question, the Idaho Operations Office website has a directory for DOE and for INEEL. There is not a listing for a Rob Campbell under INEEL. Robert A. (Rob) Campbell is listed in the DOE directory as a nuclear engineer in Washington, DC.

[4/]The Office of Science website reports a fiscal year 2005 budget request of $7,261,000 for (continued...)

www.science.doe.gov/Sub/Organization/Map/national_labs_and_userfacilities.htm, p. 2 (last visited August 12, 2004); *See also* www.inel.gov/ (Last visited August 11, 2004). As noted by counsel, INEEL is apparently operated by private contractors including Battelle Memorial Institute. The DOE Idaho Operations Office website represents public accessibility to documents from the Idaho Operations Office, its operating contractors, and predecessor organizations. www.id.doe.gov/FOIA/home.htm. *Missouri, ex rel. Garstang v. United States Dept. of Interior*, 297 F.3d 745, 750-51 (8th Cir. 2002).

INEEL provides management and technical services for DOE's spent nuclear fuel program.

> Established in 1949 as the National Reactor Testing Station, the INEEL was once the site of the world's largest concentration of nuclear reactors. Fifty-two test reactors – most of them first-of-a-kind - were built and operated, including the Navy's first prototype nuclear propulsion plant. Of these, three are still operating . . . . The INEEL provides specialized management, applied research, systems analysis, proof-of-concept engineering, technological support, and related services for various offices of the Department of Energy (DOE). [Those services include the] Spent Nuclear Fuel Program:
>
> The Spent Nuclear Fuel Program consists of the National Spent Nuclear Fuel Program and the INEEL Spent Nuclear Fuel Program. The National Spent Nuclear Fuel Program provides a coordination and integration role in defining and ensuring resolution of the issues for disposition of DOE-owned spent nuclear fuel in the geologic repository, including quantification of the DOE spent nuclear fuel inventory. The National Spent Nuclear Fuel Program provides quality assurance certification of the DOE complex spent nuclear fuel programs.

www.inel.gov/about (Last visited August 12, 2004), p. 3.

---

[4/](...continued)
INEEL, categorized under the Idaho Operations Office total budget request of $8,396,000 inclusive of the INEEL request. *See* FY 2005 Congressional Budget Request for DOE's Office of Science, p. 25 located at www.sc.doe.gov/orm/Budget_Finance/Budget_Finance_main.htm. (Last visited August 12, 2004).

To a significant, if not exclusive extent, DOE's activities, duties and responsibilities under the NWPA, have been and are conducted through its national laboratories and management and operation ("M&O") contractors. *See Westinghouse Electric Co. v. United States*, 1997 WL 1068204 at *2 (Fed. Cl. 1997) ("Unlike a typical Government contract through which the Government obtains products and services to assist it in carrying out its mission, DOE uses the M&O contract to conduct its mission."). *See also* 42 U.S.C. § 10222(d) authorizing the Secretary of Energy to expend funds for nongeneric research, development and demonstration activities under the Act and "the costs associated with acquisition, design, modification, replacement, operation, and construction of facilities at a repository site," and 42 U.S.C. § 7257(authorizing the Secretary of Energy to "acquire, construct, improve, repair, operate, and maintain laboratories . . . .") and 42 U.S.C. § 7139(a) and (b)(3) (authorizing the Director of DOE's Office of Science to advise the Secretary of Energy "with respect to the well-being and management of the multipurpose laboratories under the jurisdiction of the Department."). Witness testimony was not to the contrary. Dr. Bartlett, former director of the Office of Civilian Radioactive Waste Management ("OCRWM") within DOE testified that OCRWM's work was performed by M&O contractors with oversight from DOE.[5/]

---

[5/] Dr. Bartlett testified at trial:

Q. Dr. Bartlett, as I mentioned when I described the cover of this document, it was prepared by the management and operations contractor at that time. When you were director, to what extent did you and OCRWM rely upon studies prepared by the management and operations contractor such as this one?

A. All of the work is done by the – by the support contractors. That's what they're there for. The Department of Energy has – OCRWM itself has about 65 employees. The program has about 5,000 employees if you look at it this way. These are contractor people.

The M&O organizes all of them, but it includes activities within Sandia National Laboratories, Los Alamos National Laboratory, Livermore National Laboratory, the U.S. Geological Survey.

And a lot of the engineering is done by, at our time, the TRW Systems, M&O contractor, management and operations contractor.

The work is done by those folks. And the job of the DOE people is to oversight that, do the program planning, give them guidance and direction for what their activities should be.

Trial Tr. at 615:24-616:22.

With this background, the court examines whether these contractor documents can be relied upon for the truth of the matters asserted therein.

Public records

Hearsay, an out-of-court statement, is generally inadmissible for the truth of its contents since cross-examination at trial is not possible. Generally, deference is given to personal appearance at trial with cross-examination. Fed. R. Evid. 801 and 802. Notwithstanding the general rule, however, some out-of-court statements are excluded from this prohibition because "under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence." *Moss v. Ole South Real Estates, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991), citing *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991).

Rule 803 excludes several categories of evidence from the hearsay ban, including data compilations of the activities by and of a public agency. Fed. R. Evid. 803(8)(A) provides in relevant part that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, . . . . " The Advisory Committee Notes explain that "[j]ustification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." *See Moss*, 933 F.2d at 1305, *citing Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner and Smith*, 805 F.2d 49, 54 (2nd Cir. 1986) ("Rule 803(8) 'is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports.'").

Since the assurance of accuracy is generally greater for public records than for private business records, the proponent is usually not required to establish their admissibility through foundation testimony.[6/] Rule 803 documents are non-hearsay

---

[6/] Though foundational testimony is generally not required, ". . . a custodian or other qualified witness must testify if questions have been raised about the manner in which the records were made or kept . . . ." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 803.10[2], pp. 803-

(continued...)

and admissible regardless of the availability of the declarant. As *Weinstein's Federal Evidence* explains: "[n]early all of the exceptions [to the hearsay rule in rule 803] represent types of hearsay evidence that judicial experience reveals have sufficient reliability to justify consideration by the trier of fact with or without the presence of the declarant and regardless of whether the declarant is absent, that absence can be explained." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* at 803-1 (Joseph M. McLaughlin ed., 2d ed. 2004). This treatment is premised on both the underlying trustworthiness of public documents as well as the desire to avoid calling a government official to attest to the same. *Vanadium Corp. v. Fidelity & Deposit Co.*, 159 F.2d 105, 109 (2nd Cir. 1947) (inconvenience would result if testimony from government officials was required; an official duty provides circumstantial probability of trustworthiness). *See generally Standard Havens Products, Inc. v. Gencor Industries*, 953 F.2d 1360, 1371-72 (Fed. Cir. 1991) (upholding admission of patent Certificate of Correction under public record exception to the hearsay rule).

Admissibility is presumed and the burden of proof is on the party opposing introduction. *Columbia First Bank FSB v. United States*, 58 Fed. Cl. 333, 339 (Fed. Cl. 2003) (quoting *Weinstein's Federal Evidence* § 803.10[2]). *See also Coast Fed. Bank, FSB v. United States*, 48 Fed. Cl. 402, 446 (2000) *rev'd*, 309 F.3d 1353 (Fed. Cir. 2002), *vacated by* 320 F.3d 1338 (Fed. Cir. 2003), *aff'd en banc*, 323 F.3d 1035 (Fed. Cir. 2003) (noting that "the rule shifts the burden of demonstrating 'lack of trustworthiness' to the opponent of the evidence once it is established that the evidence is in fact a public record") (citing *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir. 1992) and *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F. 3d 238, 241 (4th Cir. 1999) (explaining that under Rule 803(8), admission is presumed as a matter of course absent sufficient negative factors of untrustworthiness for which the opponent of admission bears the burden of proof). Although presumptively admissible, there are ample possible arguments for exclusion. Fed. R. Evid. 803(8) advisory committee's note (The rule "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.").

---

[6/](...continued)

92.

Plaintiffs contend that most of the documents are maintained in DOE files or on government websites and are public records of DOE that "set [] forth the activities of" DOE.[7]

Public agency under Rule 803(8)(A) is construed broadly and extends to quasi-public entities. In *Erickson v. Baxter Healthcare, Inc.*, 151 F. Supp.2d 952 (N.D. Ill. 2001) a report from the Institute of Medicine, a private subsidiary of the National Academy of Sciences, also a private entity, was admitted under Rule 803(8), the court reasoning that the Academy was a quasi-public entity created by Act of Congress specifically to conduct investigations for and report to Congress, and the subject report was within that mandate. The agency's legal duty to provide reports whenever called upon by Congress supplied the requisite "'indicia of reliability commensurate with a public entity.'" 151 F. Supp. 2d at 967, citing Michael H. Grahman, *Federal Practice & Proc.: Evid.* § 7049. at 476 (Interim ed. 2000) and *Gilbrook v. City of Westminster*, 177 F.3d 839, 848, 858 (9th Cir.1999) (admitting report of citizens' committee appointed by city counsel as a public record). In *United States v. Davis,* 826 F. Supp. 617, 621 (D.R.I. 1993), a report of a contractor on behalf of the Environmental Protection Agency ("EPA") as to the nature and extent of environmental contamination at a hazardous waste site was admitted under Fed. R. Evid. 803(8)(C) as a report of a public agency.[8] *See also Watts v. City of Hartford,* 2004 WL 717132 at *4, n.8 (D. Conn. 2004) ("A non-governmental entity may be deemed a public agency for purposes of this exception when it has an ongoing legal duty to provide the government with information or when it is a quasi-public entity created by the government to service its needs.") (citations omitted). *See also Ellis*

---

[7] Plaintiffs state that ". . . except for a few exhibits (PX0148, PX0163, PX0169, PX0172, PX0184, PX01845, PX0856, PX1156 and PX1157), the challenged documents were kept in files either at DOE's headquarters or at Pacific Northwest National Laboratory, or are maintained on the government's RIS-Web or at the National Technical Information Service's website, www.ntis.gov, a central resource of government-funded scientific, technical, engineering, and business related information." Pls.' Reply, pp. 6-7.

[8] Although *United States v. Davis*, 826 F. Supp. 617 (D.R.I. 1993) and other authorities cited herein involve other subsections of Rule 803(8), construction of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies" is common to the court's focus here on subsection (A) "the activities of the office or agency." Furthermore, to the extent that the documents in question here fall under subsection (C) as ". . . factual findings resulting from an investigation made pursuant to authority granted by law . . . . " the cases are directly analogous.

*v. International Playtex, Inc.*, 745 F.2d 292, 301 (4th Cir. 1984) (admitting studies of the Center for Disease Control, a branch of the United States Department of Health and Human Services, as well as a study conducted by state health departments, as public offices), *Dynasciences Corp. v. United States*, 214 Ct. Cl. 643 (1977) (upholding admission of performance reports furnished to the Renegotiation Board by procuring agencies), and *United States v. Tyson*, 1986 WL 9250 at *8 (E.D. Pa. 1986) (noting that the inclusion of reports of independent contractors in a report of a governmental agency did not preclude application of the Rule).

Moreover, it is not necessary that the government agency have firsthand knowledge of all matters contained in the records as long as the agency has "'firsthand knowledge *of the investigation* . . . .'" *United States v. Davis*, 826 F. Supp. 617, 621, n.19 (D.R.I. 1993), *citing Robbins v. Whelan*, 653 F.2d 47, 52 (1st Cir. 1981). *See Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1308 (7th Cir. 1992) (describing Rule 803(8) as admitting multilevel hearsay and noting that the Rule does not require the document be kept in the course of a regularly conducted activity). Personal knowledge is satisfied if a colleague or subordinate has knowledge. *Weinstein's Federal Evidence* § 803.10 [3](a). The Supreme Court in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) concluded that opinions or conclusions derived from data contained in a report are admissible under 803(8)(C). 488 U.S. at 161-62. *See also Robbins v. Whelan*, 653 F.2d 47, 52 (1st Cir. 1981) (rejecting an argument that firsthand knowledge was lacking in a Department of Transportation compilation of data provided by car manufacturers, and admitting the compilation under Rule 803(8)(C)). Moreover, any tentative findings and statistical compilations contained in the documents do not preclude application of the Rule. *Ellis v. Int'l Playtex, Inc.*, 745 F.2d at 301.

Defendant cites *Marsee v. United States Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989) in support of its assertion that contractor documents should not be admitted under Fed. R. Evid. 803(8). *Marsee* upheld the exclusion of reports from the International Agency for Research on Cancer and the National Institute of Health as hearsay because they did not qualify under several hearsay exceptions including Rule 803(8)(C). That Rule declares as non hearsay "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, **factual findings resulting from an investigation** made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of

trustworthiness." (emphasis supplied). *Marsee* applied subsection (C), concluding that "[n]either document reflects the **findings** of a government agency authorized by law to report on the adverse health effect of smokeless tobacco." 866 F.2d at 325, emphasis added. The case does not address subsection (A) analyzed by the court here. Of note is the trial court decision, *Marsee v. United States Tobacco Co.*, 639 F. Supp. 466, 470 (W.D. Okla. 1986), which admitted a Report of the Surgeon General's Advisory Committee as an "authoritative, exhaustive study by a public agency. . ." under Fed. R. Evid. 803(8)(C).

*Zeus Enterprise, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) cited by defendant, concluded that the decision of an administrative law judge ("ALJ") fit within 803(8)(C) over objection that the ALJ's decision was not the result of an "investigation" as Rule 803(8)(C) requires. The analysis here is not that the contractor documents were the result of an investigation; the focus is whether they are records, reports or data compilations of any kind of a public agency. Likewise, *Hawthorne Partners v. AT&T Technologies, Inc.*, 1994 WL 63054 (N.D. Ill. 1994), cited by defendant, is distinguishable. In *Hawthorne Partners*, at issue was the admission of a preliminary report prepared by PRC Environmental Management, Inc., a private contractor hired by the EPA. Amidst questions of reliability because one of the parties had a role in the creation of the preliminary report, the court found the document did not fit the definition of public record under Rule 803(8) and lacked sufficient trustworthiness under the escape clause of Rule 803(8)(C) (providing for admission under the preceding subsections ". . . unless the sources of information or other circumstances indicate lack of trustworthiness."). Exclusion under Fed. R. Evid. 403 due to potential improper influence on a jury that outweighed the probative value of the preliminary report, was also cited.

Defendant also cites *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859 (5th Cir. 1998) in support of its argument that the documents are preliminary or interim evaluation of staff members and thus cannot fall within the hearsay exception of 803(8)(A). By way of background, *Smith* was a products liability case concerning the safety of the Isuzu Trooper. A Congressman requested that the National Highway Traffic Safety Administration ("NHTSA") establish stability standards for certain types of passenger vehicles. Although the NHTSA rejected the request, plaintiffs sought to introduce a memorandum from NHTSA staff members that supported plaintiffs' liability theory. Noting that Fed. R. Evid. 803(8)(C) is a hearsay exception for "factual findings resulting from an investigation made pursuant to authority granted by law" absent

indicia of untrustworthiness, *Smith* rejected admission of those pre-investigation documents under Fed. R. Evid. 803(8)(A), reasoning that if preliminary investigative reports were allowed under 803(8)(A), then 803(8)(C) – factual findings of an investigation – would be eviscerated. "If memoranda reflecting the preliminary opinions of agency staff members were admissible under Rule 803(8)(A), then Rule 803(8)(C)'s limitations would be meaningless." 137 F.3d at 862.

Likewise, defendant's reliance on *Blue Water Environmental, Inc. v. United States*, 60 Fed. Cl. 48 (2004) is unavailing. In *Blue Water Environmental,* the court held that a private contractor operating Brookhaven National Laboratory under an M&O contract with DOE was not a federal agency under the Tucker Act. Accordingly, the court held it lacked jurisdiction over a bid protest by a disappointed subcontractor "without reaching the issue of whether DOE's supervision of [the contractor's activities] might qualify as federal actions for other purposes." 60 Fed. Cl. at 52. Similarly, *United States v. Orleans*, 425 U.S. 807 (1976), cited by defendant, held a contractor was not a federal agency for purposes of the Federal Tort Claims Act. Questions of whether a contractor is a federal agency under the Tucker Act or the Federal Tort Claims Act are not the same as the court's evidentiary inquiry here.

In this case, the records, reports, statements or data compilations, in any form, to the extent they are the activities of the DOE, are construed broadly to include those activities done by national laboratories at the behest of DOE and within the parameters thereof. The court is mindful of defendant's point that some of the documents contain a disclaimer that the views are those of the contractor/author, not of any government agency, a position that is relevant to the court's analysis of whether the documents are separately admissible as admissions of DOE, but not dispositive on their admissibility as public records. DOE cannot bifurcate its responsibilities for SNF and/or high level waste ("HLW") disposal by utilizing its M&O contractors to develop DOE's spent nuclear fuel program. Contracting statutory and regulatory responsibility does not eliminate the underlying public nature of these documents. *Erickson v. Baxter Healthcare, Inc.*, 151 F. Supp. 2d 952, 967 (N.D. Ill. 2001); *Watts v. City of Hartford*, 2004 WL 717132 at * 4 (D. Conn. 2004); *United States v. Davis*, 826 F. Supp. 617, 621 (D.R.I. 1992). *See also United States v. Lykes Bros. S.S. Co.,* 432 F.2d 1076, 1079-80 (5th Cir. 1970)("[T]he duty to prepare the report can be delegated, under government regulations, to an independent agency or to a foreign government without the report losing its character, when submitted through the appropriate United

States agency, as a report of a 'department or agency of the United States.'"); *United States v. Summit Equip. & Supplies, Inc.*, 805 F. Supp. 1422, 1425, 1429-30 (N.D. Ohio 1992) (admitting the report of on-site coordinator and an EPA contractor who assisted in evaluating the extent of the contamination as public records); *McGonigle v. Combs*, 968 F.2d 810, 825 (9th Cir. 1992) (declining to find error in the trial court's admission of a file memorandum written by a member of the staff of Kentucky's Director of Securities), and *Butkin Precision Mfg. Corp. v. United States*, 544 F.2d 499, 506 (Ct. Cl. 1976) (affirming finding based on reports by government officials to the Renegotiation Board in the regular course of their and its business, citing Fed. R. Evid. 801(d)(2)[admission of a party opponent] and 803(8)[public records, reports, and data compilations of public agencies setting forth activities of that agency]).

Counsel for defendant represented that at least some of the SNF operations involved in the documents at issue are conducted by a hybrid of governmental and private individuals or organizations. To the extent that defendant has established that a document was completely privately maintained – that is, was not located (or ever located) in DOE or the national laboratory files, admission will not extend to the truth of the contents. However, to the extent the documents are from PNNL, INEEL or other national laboratory files, constitute the activities of that office or agency, are otherwise relevant, and were duly received by DOE, their admission shall, in appropriate context, extend to the truth of the contents under Fed. R. Evid. 803(8) as "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . "[9/]

Defendant predicts that if so-called contractor documents are construed as public documents under Fed. R. Evid. 803(8), all sorts of extraneous data from a contractor could be inserted into government files, creating irrelevant litigation fodder. Application of the Rule in this instance, however, is not so productive of dross. A document generated by a contractor at DOE's behest must first of all be relevant. It also must be a record, report, statement, or compilation of data "in any form" "of"[10/] the agency. The court has allowed the admission of relevant documents that were (1)

[9/] Defendant did not argue proffered documents of PNNL were not of "activities" of PNNL.

[10/] It would perhaps be hyper-technical to note that the Rule includes as public documents data compilations in any form "of" not "by" the agency, the latter perhaps a more exclusive proposition.

located in DOE files; (2) were (or are) the activities of DOE; and (3) do not contain any indicia of untrustworthiness.

Defendant argues that allowing contractor documents to be admissible as public documents would create a "ridiculous" result because, under plaintiffs' theory, all documents generated by a construction contractor under contract to build a federal courthouse would become "public records" and a contractor could potentially generate documents that could be used against the government in litigation. The "contractors" involved in the instant document issues are in no way analogous to a contractor who bids for and obtains a contract to construct a building. The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE. *See United States v. Hopkins*, 427 U.S. 123 (1976). There is no way courthouse construction contractor employees would be performing court work in an equivalent manner. Data compilations, records, reports or statements "of" public offices or agencies "setting forth" the activities of that agency, are within the scope of the hearsay exception. The qualifier "of" does not mean that data compilations, records, reports and statements must in all situations have been authored by the public office or agency – just that they must have emanated therefrom. These are ". . . documents generated or collected by the national government in the course of its public functions." *In re Oil Spill by the Amoco Cadiz*, 954 F.2d at 1309. Here the documents produced by and from the government files as categorized by the Bates stamps satisfy that requirement.

Moreover, in many situations, the documents are referred to, or data is used in other government documents, adding both to their reliability and their authenticity. *See United States v. Davis*, 826 F. Supp. 617, 620 (D.R.I. 1993) (draft investigative report by government contractor regarding the nature and extent of contamination at a hazardous waste disposal site was what its proponent claimed, citing Fed. R. Evid. 901(a) and (6)(7)),[11/] *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.

---

[11/]Fed. R. Evid. 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Among the illustrative, but not limited, examples are "a purported public record, report, statement, or date compilation, in any form [] from the public office where items of (continued...)

1999) (noting the presumption that public records are authentic and trustworthy with the burden on the opponent of the evidence to present "enough negative factors to persuade a court that a report should not be admitted.").

Any reliance on contractor documents for a proposed finding(s) of fact may also require an accompanying discussion of the matters discussed herein. In that regard, data, opinion or other matters contained in a contractor document does not, however, necessarily serve to establish DOE policy. Nevertheless, such data, opinion, or other matter may be probative on, or appropriate evidence of, DOE's knowledge or the reasonableness of the data, opinion, or other matter.

Authorized statements

Plaintiffs also advocate the contractor documents under Fed. R. Evid. 801(d)(2) as admissions of defendant under either subsection (C) ("a statement by a person authorized by the party to make a statement concerning the subject") or subsection (D) ("a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship.").[12/] Plaintiffs insist that the contractors were "authorized" to make the statements concerning the subjects in the reports in the sense that they were specifically requested to perform work for DOE, matters which are not in dispute.[13/] Defendant counters that

---

[11/](...continued)
this nature are kept." Fed. R. Evid. 901(b)(7).

[12/]In relevant part, Fed. R. Evid. 801(d)(2) provides:

> (d) **Statements which are not hearsay**. A statement is not hearsay if --
>
> . . .
>
> (2) **Admission by party-opponent**. The statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

[13/]Indeed, Defendant's Response to Plaintiff's Bench Memorandum Addressing the Admissibility of Certain Exhibits Prepared by Contractors, which asserts that M&O contractors do not make DOE policy, admits that these contractors provided advice, input, suggestions and recommendations to the Department.

authorization to do work is not the same as authorization to make binding admissions on behalf of DOE. Defendant argues that a request for technical recommendations does not stamp the imprimatur of the government on the resulting work product.

"'[A]dmissions [by a party-opponent] are outside the framework of hearsay exceptions, classed as nonhearsay, and excluded from the hearsay rule.'"[14/] *The Globe Savings Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 94 (2004), citing 2 Charles McCormick, *McCormick on Evidence* § 254, at 137 (John W. Strong ed., 5th ed. 1999). "It is a 'widely accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" *Id.*, at 96-97, *citing Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003).

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 564-65 (2003) held that statements by a subsidiary were not admissions of the parent under Fed. R. Evid. 801(d)(2)(D) as there was no demonstration that the parent exercised sufficient control to establish an agency relationship, and no showing that the parent authorized the subsidiary to speak on its behalf. Similarly, due to lack of control or direction, no agency relationship was found between Westfed and its independent and other consultants to warrant introduction of their reports as party admissions. *See also Columbia First Bank, F.S.B. v. United States*, 58 Fed. Cl. 333, 340-41 (2003) (noting that to justify admission under Rules 803(d)(2)(D) an agency relationship must be established and the statement must have been made during the existence and scope of that relationship). *But see Coast Federal Bank, F.S.B. v. United States*, 48 Fed. Cl. 402, 228 (2000) (admitting reports from Goldman Sachs & Co. and plaintiff's external auditor as Rule 803(d)(2)(D) party admissions), and *Globe Savings Bank*, *supra*, (admitting deposition testimony of the former director of the Analysis and Evaluation Division of the Federal Savings and Loan Insurance Corporation under this Rule).

On the issue of agency and authorization, plaintiffs cite trial testimony of Dr. Bartlett, former director of the Office of Civilian Radioactive Waste Management ("OCRWM") within DOE that the M&O contractors were authorized by the Department to make statements concerning the subjects addressed in studies. The dispute, however, is not really whether the work was authorized – these contractors

---

[14/] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

did not research unilaterally. The question is whether the conclusions and recommendations therein were authorized positions of DOE under agency principles, or "only" technical input requisite to DOE's formulation of its policies and statements.[15/]

Under defendant's reasoning, the difference, if any, between one who is authorized to bind his or her principal on a matter, and one who is authorized to make a statement concerning a matter – a dubious distinction described in *Glendale* as a murky eddie – may be more imagined than real. Rule 801(d)(2)(D) is not limited to "agents," but also to "servants." Their statements made within the scope of their servitude fall within the Rule. Thus, discounting the typical response that the author is not authorized to speak or bind the party against whom admission is sought, Michael H. Graham, *Handbook of Federal Evidence* § 801.23 (5th ed. 2001) explains:

> The obvious difficulty with applying strict agency principles is that agents or servants are very rarely authorized to make damaging statements – the truck driver is hired to drive, not to talk. However as a result of the fact that it also seemed unreasonable to deny admission to inculpatory statements by the driver about the driving he was hired to do in light of the probable reliability of such statements, courts often stretched to find a basis for admissibility.
>
> In recognition of the reliability and reasonableness of admitting such statements, Rule 801(d)(2)(D) declares statements of an agent or servant concerning a matter within the scope of his agency or employment to be defined as not hearsay if made during the existence of the relationship. Authority to speak is thus no longer of concern; all that is required is that the statement concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement. A statement meeting the requirement

[15/] "This report was prepared as an account of work sponsored by an agency of the United States Government." PX0169. Trial testimony concerning the contractual relationship between Bechtel SAIC Company ("BSC"), OCRWM's current M&O contractor, explained that contractors assist DOE in the latter's work through an annual work plan augmented by technical direction letters should additional work be needed. The M&O contractors supervise their own work and prepare reports. Trial. Tr. at 3449:5 - 3450:1.

of Rule 801(d)(2)(D) is not made inadmissible simply because the statement was made to the employer and not a third person.

Graham at 168 - 78, extensive footnotes omitted.

Recognizing there are instances when representatives or agents can speak for the government, defendant cites as distinguishable, *Glendale Federal Bank, F.S.B. v. United States,* 39 Fed. Cl. 422, 452 (1997). In *Glendale*, the experts were on the government's witness list, so it was evident that their opinions in the case were consistent with the government as the sponsoring party. By designating them as experts, the government conferred agency on the designated experts and agreed to be bound by their statements. Absent evidence of adoption of the specific statements, data or position by DOE, defendant argues that neither 801(d)(2)(C) (authorized statement), nor 801(d)(2)(D) (statement by agent within the scope of agency), apply.

A contract can create agency. *Rotec Indus. Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1256 (Fed. Cir. 2000) (citing *Chemtool Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("Although 'an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships.'"). Citing *Condus v. Howard Savings Bank*, 986 F. Supp. 914, 916 (D.N.J. 1997), plaintiffs recognize that contractors can either be agents, or non-agents, depending on the particular terms of the contract. Indeed, as plaintiffs point out, Battelle, one of the contractors in this case, was described as DOE's agent in the latter's 1981 experimental program for the underground storage of nuclear waste. *Paul v. Federal Mine Safety and Health Review Com'n*, 812 F.2d 717, 718 (D.C. Cir. 1987). Here, due to the unique relationship between DOE and its contractors – who essentially perform DOE's governmental function of research for the development of the spent nuclear fuel program – these contractors are agents plaintiffs argue, citing *Westinghouse Electric Corp.*, 1997 WL 1068204 at *2 (noting the uniqueness of the DOE M&0 contracts which involve use of government facilities, a long-term relationship between the M&O contractor and DOE with a close connection between the work and DOE's mission, and work that is substantially separate from other business of the contractor); *Michaels v. Michaels,* 767 F.2d 1185, 1201 (7th Cir. 1985) (finding telexes by broker to a potential buyer of a closely held corporation to be admissions by an agent).

Defendant's reliance on *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 163-64 (3rd Cir. 1995) is not dispositive. *Kirk* focused on whether or not a non-testifying expert (a presumably impartial examiner), while undeniably retained by a party, is not necessarily authorized to make admissions against the party until such time as a decision is made by that party to call that expert at trial, citing Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6722, at 502(Interim Edition 1992) (the authority of the agent to speak as to a subject must be established at trial). *Reid Bros. Logging Co.v. Ketchikan Pulp Co.,* 699 F.2d 1292 (9th Cir. 1983) although cited by defendant, supports the admission of the contractor documents. In *Reid Bros.*, a report was prepared by an employee of the Oji Paper Company of Japan, a shareholder of Alaska Pulp Company, the parent company of defendant Alaska Lumber and Pulp Company, at the latter's request. The report was circulated to defendant's officers and managers. Accordingly, there was no question that the author was authorized to make statements concerning these matters and the admission of the report under Rule 801(d)(2)(C) was found to be proper.[16/]

There is authority that it is not necessary that the speaker communicate to other than his or her employer in order for the statement to be a binding admission against the latter. *See Theriot v. J. Ray McDermott & Co., Inc.,* 742 F.2d 877, 882 (5th Cir. 1984) (finding statement made only to the principal himself is nevertheless admissible against the principal under this section) and Michael H. Graham, *Handbook of Federal Evidence* § 801.22, pp. 166-67, n.9. *See also Rollins v. Board of Governors for Higher Educ.*, 761 F. Supp. 939, 942-43 (D.R.I. 1991) (finding a report prepared at defendant's request admissible as a statement authorized by the party, even if it was not prepared for consumption outside the Department).

While plaintiffs' position in this regard is not without support, the court need not reach the separate admissibility of contractor documents under Rule 801. As "servants," direct employees of DOE could make binding admissions as to matters within their employment duties, and there may be no good reason to not afford the same evidentiary treatment to the contractors here. Any distinction between a nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M&O contracts here is questionable, and at best a matter of degree. On the other hand, while trial involved a myriad of issues to be resolved, the particular

[16/] *Reid* also noted that there was no requirement that an authorized statement be communicated to a third party. 699 F.2d 1307, n.25; citations included Advisory Committee Notes.

agency or servant relationship, and the extent of any authorization by the DOE to these contractors to make admissions on their behalf, counsel against finding statements made in these documents to be "admissions" by the DOE absent specific evidence that the contractual relationship included binding the government in this regard. These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE. In a very real sense, these contractors performed DOE's statutory mission, or at a minimum provided the technical input to perform the same. Perhaps the murkiness in the waters of this Rule lies in the intertwining of the use of the words "admission by party-opponent" to denote the hearsay exception of Rule 801(d)(2), then described as a "statement" authorized by the party (here, the contractors were authorized to make the reports but those reports may not necessarily be admissions), or a "statement" by an agent or servant within the scope of that servitude (here, as servants the contractors made reports that also may not necessarily be admissions).[17/] Admissions and statements are not necessarily the same. As a result, the court does not rule on the admissibility of the contractor documents under Rule 801(2), but reserves the issue for consideration with respect to any objection(s) made to specific proposed finding(s).

Business records, ancient documents and the like

Plaintiffs also argue the documents are admissible for their truth as business records under Fed. R. Evid. 803(8) (records of regularly conducted activity) or Fed. R. Evid. 801(d)(2)(B) (a statement of which defendant has manifested an adoption or a belief in its truth). Two of the documents, PX0641, dated February 2, 1984 (the authenticity of which is challenged by defendant) and PX0968, dated April 27, 1984, are independently admissible as ancient documents under Fed. R. Evid 803(a), plaintiffs urge.

The court reserves ruling on remaining alternative theories to the extent that admissibility for truth is addressed herein, but reserves the issue(s) for consideration with respect to any objection(s) made to specific proposed findings(s).

Accordingly, for the reasons stated above, it is **ORDERED** that:

---

[17/]The Advisory Committee Notes state that: "[n]o authority is required for the general proposition that a statement authorized by a party to be made should have the status of an admission by the party."

(1) Plaintiffs shall promptly electronically file the Bench Memorandum Addressing the Admissibility of Certain Exhibits dated July 12, 2004, and tendered to the court during trial proceedings, which Memorandum shall upon receipt be deemed filed *nunc pro tunc* (July 12, 2004)*;*

(2) Proposed findings and objections to proposed findings, filed by the parties, shall clearly indicate, in the supporting record citations, any reliance on the contractor generated documents discussed herein.

s/ James F. Merow
James F. Merow
Senior Judge