# Exhibit 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C

- - - - - - - - - - - - - - - - - - - - X

(Caption continued on the next page)

Continued Deposition of DAVID ZABRANSKY

Washington, D.C.

Thursday, April 18, 2002

9:44 a.m.

Job No.: 112597-2

Pages 227 through 459, Volume 2

Reported by: Diane Gomez, RPR

out to be failed fuel?

MR. OLSEN: Objection to the extent it calls for a legal conclusion, and objection, vague.

A Well, the DCS per the instructions assumes the delivery of standard fuel. So we submitted these, we basically told the department we were going to submit, provide standard fuel in these quantities and this range. It would have been our obligation pursuant to the contract to let them know if we were going to have to submit nonstandard fuel pursuant to Appendix E and provide in accordance with the contract -- basically Article 6.2.B of the contract covers what a purchaser does if it needs to deliver other than standard fuel.

Q I think you testified yesterday that you were involved in the early nineties in the ACR issues resolution process? Did I say that right?

A Yes.

Q Let me show you what's been marked as Exhibit 31.

(Deposition Exhibit Zabransky 31 was marked for identification and was attached to the

transcript.)

MR. BLANTON: Give one to counsel.

Q Do you recognize that document?

A Not specifically, no.

Q Does this appear to you to be a DOE document?

A Given the text in the third paragraph on the first page, it appear to me to be a document created by the M&O at the time.

Q Okay. That would be DOE's M&O?

A DOE's contractor.

Q And M&O means what?

A Management and operating.

Q Okay. The first sentence of that document says "The standard disposal contract which defined the spent nuclear fuel and high-level radioactive waste acceptance process was unfortunately developed in such a way that the terms and conditions contained numerous omissions, inconsistencies, ambiguities, and contradictions." Did you ever hear anybody describe the standard contract that way in the course of the ACR issues resolution process?

A I don't recall the specific use of all those words that way.
Q Any of them?
A I think there was a -- it's fair to say that a discussion of the contract was one that required interpretation and review. You had to look at it; you had to understand it. But it wasn't a simple contract. It also -- but it was no more complicated than many other nuclear fuel contracts.
Q Were you ever in the presence of DOE officials when anybody discussed the contract and the gist of the conversation was, Gee, we read the contract, and we can't tell exactly what happens?
A I don't recall that conversation -- a conversation like that.
Q Okay. Who was DOE's M&O contractor in December 31 of 1991, do you know?
A I believe that would have been what was TRW Environmental and Safety Systems, TESS.
Q Okay. What does an M&O contractor do with respect to the spent nuclear fuel program?
A They provide technical and management

support.
Q Do you think that the standard contract has any omissions that needed to be filled in through the ACR issues resolution process?
A I'm not sure I would find any omissions. It has a lot of -- for both parties, a lot of clauses that give discretion to each party on different issues, and it would be nice to know how parties intended to use discretion, and that's an omission.
Q How about inconsistencies?
A The only term that I would classify from memory as an inconsistency could be or would be the provision that allows a trading of a DCS I believe up to six months prior to delivery as opposed to someone with an FDS or exchange provision of the contract.
Q Could you explain? And I feel like you were trying to start and wanted to look at the contract, which is fine, but could you explain to me how that's inconsistent?
A I said it appears to be an inconsistency. Purchaser shall have the right to determine -- Article 5.E of the contract. I won't read it, but it gives