IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC CO., | ) | |
| Plaintiff, | ) | No. 98-126C |
| v. | ) | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, | ) | Filed Electronically on December 6, 2005 |
| Defendant. | ) | |

SUPPLEMENTAL POST TRIAL BRIEF
ADDRESSING IMPACT OF *INDIANA MICHIGAN*

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiffs*
YANKEE ATOMIC ELECTRIC COMPANY,
CONNECTICUT YANKEE ATOMIC POWER COMPANY, and
MAINE YANKEE ATOMIC POWER COMPANY

*Of Counsel*:

Robert L. Shapiro
GREENBERG TRAURIG, LLP

Dated: December 6, 2005

# TABLE OF CONTENTS

Page

I. The Court Should Exercise Its Discretion To Award The Yankee Utilities Their Respective Damages Through 2002 Now. ... 2

A. The Trial Record Already Treats The Yankee Utilities' Damages Through 2002 As "Past" Damages, And Their Post-2002 Damages As "Future" Damages. ... 4

B. The Yankee Utilities Are Willing To Accept This Conservative Approach To Avoid Making An Appellate Issue Of the Past-Versus-Future Damages Issue. ... 5

C. The Yankee Utilities' Approach Helps Assure That They Are Fairly Compensated For DOE's Breach. ... 5

II. The Court Can Award The Yankee Utilities Their Respective Damages Through 2002 Based On Evidence Timely Disclosed To the Government And Addressed At Trial. ... 7

III. Evidentiary Matters ... 12

IV. Upon Rendering Its Decision On The Yankee Utilities' Claims For Damages Through 2002, The Court Should Make The Findings Required by Rule 54(b) And Enter Final Judgment On Those Claims While Directing The Parties To Pursue Additional Proceedings To Resolve The Yankee Utilities' Separate Claims For Their Initial Post-2002 Damages. ... 16

# TABLE OF AUTHORITIES

CASES PAGE

*Caroline Hunt Trust Estate v. United States*, 65 Fed. Cl. 271 (2005) .............................. 15

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................. 3, 4

*Hi-Shear Technology Corp. v. United States*, 356 F.3d 1372 (Fed. Cir. 2004)............ 3, 15

*Houston Indus., Inc. v. United States,* 78 F.3d 564 (Fed. Cir. 1996)................................ 18

*Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed. Cir. 2002)........................................................................................... 3, 6

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ......... 1, 16

*Intrepid v. Pollack*, 907 F.2d 1125 (Fed. Cir. 1990)......................................................... 3

*Rabekoff v. Lazere & Co.,* 323 F.2d 865 (2d Cir. 1963).................................................. 18

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) .................................................. 18

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)............... 15

*Tritek Technologies, Inc. v. United States*, 67 Fed. Cl. 727 (2005)................................. 14

OTHER AUTHORITIES

McCormick on Evidence § 212 (5th ed. 2002)................................................................ 14

Restatement (Second) of Judgment § 26 ..................................................................... 15, 16

# INDEX OF PLAINTIFFS' APPENDIX

DOCUMENT PAGE


Appendix ....................................................1

Exhibit A1: Yankee Atomic Damages Through 2002....................................................6

Exhibit A2: Connecticut Yankee Damages Through 2002....................................................8

Exhibit A3: Maine Yankee Damages Through 2002....................................................10

Exhibit A4: Trial Exhibit 2043a.16, Yankee Atomic Damages by Year....................................................12

Exhibit A5: Trial Exhibit 2043a.19, Connecticut Yankee Damages by Year ....................................................14

Exhibit A6: Trial Exhibit 2043a.22, Maine Yankee Damages by Year ....................................................16

Exhibit A7: Trial Exhibit 2043.12, Value of Changes Agreed to by Yankee Atomic ....................................................18

Exhibit A8: Trial Exhibit 2043.13, Value of Changes Agreed to by Connecticut Yankee....................................................20

Exhibit A9: Trial Exhibit 2043.14, Value of Changes Agreed to by Maine Yankee....................................................22

Exhibit A10: August 11, 2004 Letter from Plaintiffs' Counsel to Government's Counsel, with attachments ....................................................24

Exhibit A11: The Brattle Group's Detailed Calculations of Year-By-Year Damages for Yankee Atomic and Connecticut Yankee ....................................................33

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC CO., Plaintiff, | ) | No. 98-126C |
| v. | ) | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

SUPPLEMENTAL POST TRIAL BRIEF
ADDRESSING IMPACT OF *INDIANA MICHIGAN*

By Order dated September 12, 2005, the Court requested supplemental briefing to address the impact on the "Yankee" cases, and particularly on the damages to be awarded, of the Federal Circuit's decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005). Plaintiffs Yankee Atomic, Connecticut Yankee and Maine Yankee (the "Yankee Utilities") respectfully submit this joint supplemental brief in response to that Order.[1]

INTRODUCTION

In *Indiana Michigan*, the Federal Circuit ruled that where spent fuel plaintiffs claim a "partial" breach of contract, "highly speculative" future damages should not be awarded. *Id.* at 1376. The Federal Circuit also ruled that spent fuel plaintiffs may return to court to recover additional damages in future proceedings. *Id*. at 1377. These rulings raise various issues concerning the damages to be awarded in this case. Through

[1] Accordingly, this brief is also applicable in *Connecticut Yankee Atomic Power Co. v .United States*, No. 98-154C and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C.

discovery and trial, the Yankee Utilities have presented damages claims that include, in addition to past damages, damages to be incurred in the future out to 2012 (2011 for Maine Yankee), based on the assumption in the Yankee Utilities' damages model that the Department of Energy ("DOE") would commence removal of their spent nuclear fuel and high level radioactive waste (collectively, "spent fuel") in 2010 at the earliest. *Indiana Michigan* therefore presents the issue of where the Court should draw the line between "past" and "future" damages – with the past damages awarded now, and the future damages to be awarded in future proceedings.

For reasons explained below, in light of *Indiana Michigan* the Yankee Utilities request that the Court now award each company their respective damages through 2002, which at trial were deemed "past damages" (as opposed to damages in 2003 and subsequent years, which were deemed "future damages" at trial). The Yankee Utilities also request that the Court direct the parties to pursue additional proceedings in which the Yankee Utilities may recover post-2002 damages promptly after the Court issues its ruling, and enters judgment, on their claim for damages through 2002. As discussed below, *Indiana Michigan* makes it appropriate for the Court to enter a final judgment on the Yankee Utilities' past damages claims under Rule 54(b), and to allow the Yankee Utilities to pursue their separate claims for future damages in these ongoing cases.

## DISCUSSION

### I. The Court Should Exercise Its Discretion To Award The Yankee Utilities Their Respective Damages Through 2002 Now.

The Yankee Utilities largely agree with the government's view – set out, among other places, in the government's reply filed November 21, 2005 in the *WEPCO* case on its motion for reconsideration of the Court's August 30, 2005 Order on future damages –

that under *Indiana Michigan*, the Court retains substantial discretion to draw an appropriate line between "past" and "future" damages. *See* Gov't. 11/21/05 Reply in WEPCO at 4-6. This view accords with the well-established principle that trial courts have substantial discretion in determining damages issues generally. *See, e.g., Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1065 (Fed. Cir. 2002) ("This court reviews damages determinations by the Court of Federal Claims for an abuse of discretion."); *Hi-Shear Technology Corp. v. United States*, 356 F.3d 1372, 1381-82 (Fed. Cir. 2004) ("Court of Federal Claims has great "flexibility" in determining damages, which "is a matter within the trial court's discretion.")

Although the government insisted in WEPCO that the mechanics of filing an amended complaint have some importance in the present context, *see* Gov't 11/21/05 Reply in WEPCO at 4-6, that is simply incorrect. As the Federal Circuit has explained with particular reference to Rule 15, which governs amended and supplemental pleadings, "'[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Intrepid v. Pollack*, 907 F.2d 1125, 1128 (Fed. Cir. 1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Indeed, even the government ultimately acknowledges that exercise of the Court's discretion on the issue of past-versus-future damages should be guided by more significant underlying factors that are case specific – in the government's words, "factors such as the date upon which [a plaintiff] would provide us with an updated claim, the amount of time available for fact and expert discovery upon that claim, the amount of time remaining before trial, and the relationship between the damages claimed in the first

complaint and those in the amended complaint." *See* at 5-6 Gov't. 11/21/05 Reply in WEPCO; *see id* at 6 ("[t]hese are the same factors that the Court considered prior to issuing its September 16, 2005 order regarding the scope of trial in *Southern Nuclear* . . . .") In addition to these primarily-procedural factors, which concern the manner and timing of presentation of various categories of past and on-going damages, exercise of the Court's discretion should also be guided by case-specific substantive factors governing the particular damages claimed in a given case.

The sound exercise of discretion should lead the Court to award at this time all damages claimed by the Yankee Utilities through 2002, and to direct that the Yankee Utilities may recover post-2002 damages in subsequent proceedings in these cases. *Indiana Michigan* makes it particularly appropriate to proceed in this manner, because that decision makes clear that the Yankee Utilities will be returning to court to pursue additional damages in future proceedings. Given that fact, and that all past and future damages will be recoverable in one proceeding or another, proceeding now as the Yankee Utilities request best promotes the efficient and just resolution of their damages claims for several different reasons.

A. The Trial Record Already Treats The Yankee Utilities' Damages Through 2002 As "Past" Damages, And Their Post-2002 Damages As "Future" Damages.

First, as noted above, at trial (and in Dr. Wise's expert reports presented at trial) the damages claimed by Yankee Utilities through 2002 were deemed, and labeled, "past damages," and damages in 2003 and subsequent years were deemed and labeled "future damages." This reflected the fact that Dr. Wise's expert reports were submitted in March 2003, when 2002 was "past" and 2003 and subsequent years were, for the most part, "future." *See* Trial Transcript ("Tr.") 3248:8-9 (Wise) ("we submitted the report in 2003

so at that point, 2003 was future and 2002 was the past."). Thus, the trial record and damages exhibits are in a format that makes it efficient to treat damages through 2002 as past damages to be awarded now, while treating damages in 2003 and subsequent years as future damages that can be addressed in future proceedings.

B. The Yankee Utilities Are Willing To Accept This Conservative Approach To Avoid Making An Appellate Issue Of the Past-Versus-Future Damages Issue.

Second, drawing the line between past and future damages at 2002/2003 is a very conservative approach that likely will avoid making the matter an issue on appeal. There are good arguments that, due to the very different facts of the respective cases, *Indiana Michigan* has no effect at all on the claims for future damages in these *Yankee* cases. After all, Indiana Michigan will not need a spent fuel dry storage facility ("ISFSI") for its spent fuel until well after 2010, and may never need one, rendering its current claim for the cost of that facility speculative. The Yankee Utilities, in contrast, have already constructed ISFSIs, making their current claim future damages "concrete" and more than reasonably certain (at least through 2010). Nonetheless, because under *Indiana Michigan* the Yankee Utilities will be returning to court to recover additional damages, they are willing to limit their current claims to "past" damages through 2002 for the reasons discussed here.

C. The Yankee Utilities' Approach Helps Assure That They Are Fairly Compensated For DOE's Breach.

Third, proceeding as the Yankee Utilities request will fairly and reasonably compensate them for DOE's breach. By the time of trial in July and August 2004, the Yankee Utilities were in a position to know how their actual 2003 and early 2004 costs compared to the projected "future" damages for 2003 and 2004 presented in Dr. Wise's

reports and through other evidence at trial. As explained in trial testimony, for Connecticut Yankee in particular, that comparison was unfavorable. Connecticut Yankee's damages claim was based on the assumption that the company's fixed-price decommissioning contract with Bechtel Corporation would be completed on time and on budget. Tr. 2384:1-18 (Bennet), 2528:13-19 (Jewell-Kelleher). However, in June 2003 Connecticut Yankee terminated Bechtel for default and took over self-performance of the work. Tr. 2354:5-13 (Bennet). By mid-2004, Connecticut Yankee knew that self-performance would cost far more than the fixed prices payable under the Bechtel contract upon which Connecticut Yankee's damages claimed was based. Tr. 2359:23-2360:19 (Bennet). By current estimates, Connecticut Yankee's post-2002 damages will be materially more than Connecticut Yankee's "future" damages claim in this case.

In order to recover all of its known, post-2002 "future" damages, Connecticut Yankee would have had to submit an additional, revised expert report (its third in this case) and then allow another round (the third in this case) of both fact and expert discovery. Doing so would have further delayed the damages trial, which in 2003 was drawing near after more than five years of litigation.

Prior to *Indian Michigan,* the circumstances outlined above may have worked to preclude the Court from implementing the cardinal principle of contract damages, namely, "to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *Hughes*, 271 F.3d at 1066. Now, however, *Indiana Michigan* provides the Court and the parties with a means to implement the cardinal principle of damages, by restoring Connecticut Yankee (as well as the other two Yankee Utilities) to the same position as if no breach had occurred. That will now be

possible – assuming the line between past and future damages is drawn at 2002/2003, as the Yankee Utilities contend it should be – in future proceedings to address the Yankee Utilities' next tranche of damages, consistent with *Indiana Michigan.*[2]

## II. The Court Can Award The Yankee Utilities Their Respective Damages Through 2002 Based On Evidence Timely Disclosed To the Government And Addressed At Trial.

Because Dr. Wise's February 2003 expert reports for each Yankee Utility treated damages through 2002 as "past" damages, and post-2002 damages as "future" damages, and because that same dividing line and terminology were used throughout subsequent discovery and in testimony and exhibits presented at trial, it is a straightforward task to calculate damages through 2002 for each Yankee Utility from exhibits and testimony presented at trial. Indeed, the Yankee Utilities' post-trial proposed findings of fact separately identified and described the derivation of the "past damages" incurred by each company through 2002. *See* Yankee Atomic's Proposed Findings of Fact ¶ 137 ("As of year-end 2002, approximately $101.9 million of Yankee Atomic's minimum damages had already been incurred as 'past damages,' as adjusted for changes agreed to by Yankee Atomic . . . a. Past damages of $101.9 million to year-end 2002 are derived as follows: b. $109.6 million in past damages as submitted in March 2003 and initially at trial, *see* P2043A.14, .16; Tr. 3246:1-3249.24 (Wise); c. Minus adjustments agreed to at trial totaling approximately $7.7 million and attributable to past (i.e., pre-2003) damages: *see* [various proposed findings addressing particular agreed adjustments]"; Connecticut Yankee's Proposed Findings of Fact ¶ 151 (similar, identifying and describing derivation

[2] Dictionary.com defines "tranche" as "a portion of something (especially money)," and reports the etymology of the word to be based on the French word for "slice." *See* http://dictionary.reference.com /search?q=tranche

of $82.9 million of "past damages" "to year-end 2002," net of adjustments for changes agreed to by Connecticut Yankee); Maine Yankee's Proposed Findings of Fact ¶ 153 (similar, identifying and describing derivation of $78.1 million of "past damages" "to year-end 2002," net of adjustments for changes agreed to by Maine Yankee). Under the post-trial briefing process ordered by the Court, the government was required to respond and did respond to these proposed findings concerning the Yankee Utilities' "past" damages through 2002, *see* corresponding paragraphs of the government's responses to the respective Yankee Utilities' proposed findings identified above, and then the Yankee Utilities' replied to those government responses.

In view of the Court's September 12 Order requesting supplemental submissions on damages in light of *Indian Michigan*, it is appropriate here not only to reference the calculation and derivation of the Yankee Utilities' respective damages through 2002 set forth in their post-trial proposed findings, but also to explain in further detail how damages through 2002 for each company are derived from exhibits and other materials submitted during trial. That detailed explanation is set forth in the accompanying Appendix, which includes eleven exhibits (labeled A1, A2, A3, etc.), most of which are copies of exhibits and other materials submitted during trial, but the first three of which are newly-created based on those trial materials. Those three exhibits, A1, A2, and A3, each set forth four tables applicable to one of the Yankee Utilities. As explained in the Appendix, those tables take damages data for each respective company from exhibits and other materials submitted during trial, and show in logical progression how damages through 2002 can be readily derived from those materials.

The "bottom-line" results of the exercise detailed in the Appendix – namely, the total "past" damages through 2002 for Yankee Atomic, Connecticut Yankee and Maine Yankee, respectively, is set forth in the Table 4 of A1, A2, and A3, respectively, which are all reproduced on the next page of this brief. These tables follow the same year-by-year and "three section" analysis format as was used by the Yankee Utilities in testimony and damages exhibits at trial, the three sections being ISFSI Construction damages, ISFSI Operations damages and Wet Pool Related damages. As the tables show, however, because ISFSI Operations damages do not commence for any of the Yankee Utilities until 2003 or later (when the respective ISFSIs would be fully loaded), limiting past damages to those incurred through 2002 as the Yankee Utilities request here will result in no award of ISFSI Operations damages at this time.

[Remainder of this page intentionally left blank.]

**Table YA-4 from Appendix Exhibit A1**
**Yankee Atomic - Adjusted Damages Including Agreed Changes**
**(Nominal Dollars)**

| | | Year | | | | |
|---|---|---|---|---|---|---|
| **Item** | **Total** | **Pre-1999** | **1999** | **2000** | **2001** | **2002** |
| ISFSI Construction | 63,357,106 | (903,694) | 5,260,242 | 11,278,565 | 17,540,253 | 30,181,741 |
| ISFSI Operations | - | - | - | - | - | - |
| Wet Pool Related | 38,422,501 | - | 10,867,912 | 6,798,808 | 9,910,934 | 10,844,848 |
| **Total** | 101,779,608 | (903,694) | 16,128,153 | 18,077,372 | 27,451,188 | 41,026,589 |

**Table CY-4 from Appendix Exhibit A2**
**Connecticut Yankee - Adjusted Damages Including Agreed Changes**
**(Nominal Dollars)**

| | | Year | | | | |
|---|---|---|---|---|---|---|
| **Item** | **Total** | **Pre-1999** | **1999** | **2000** | **2001** | **2002** |
| ISFSI Construction | 60,310,165 | 104,744 | 4,111,252 | (6,272,325) | 27,860,316 | 34,506,178 |
| ISFSI Operations | - | - | - | - | - | - |
| Wet Pool Related | 22,508,772 | 8,350,893 | - | - | 3,522,883 | 10,634,996 |
| **Total** | 82,818,937 | 8,455,637 | 4,111,252 | (6,272,325) | 31,383,199 | 45,141,174 |

**Table MY-4 from Appendix Exhibit A3**
**Maine Yankee - Adjusted Damages Including Agreed Changes**
**(Nominal Dollars)**

| | | Year | | | | |
|---|---|---|---|---|---|---|
| **Item** | **Total** | **Pre-1999** | **1999** | **2000** | **2001** | **2002** |
| ISFSI Construction | 65,705,536 | 255,829 | 6,938,038 | 24,892,289 | 21,394,394 | 12,224,986 |
| ISFSI Operations | - | - | - | - | - | - |
| Wet Pool Related | 12,384,114 | 10,069,018 | - | - | - | 2,315,096 |
| **Total** | 78,089,649 | 10,324,847 | 6,938,038 | 24,892,289 | 21,394,394 | 14,540,082 |

As explained in the Appendix, because damages through 2002 were treated as "past" damages at trial, such damages were stated in the trial exhibits at their actual, "nominal" values, and did not reflect adjustments for future inflation ("escalation") or discounting to present value that arguably would be subject to adjustment now with the passage of time. This is another reason why dividing past and future damages at 2002/2003 is efficient and sensible.

As also explained further in the Appendix, all of the data used to calculate the Yankee Utilities' respective damages through 2002 as set forth in the tables reproduced above is derived from exhibits used at trial, with two exceptions. Both exceptions arise from the fact that the values for each adjustment to damages agreed to by one of the Yankee Utilities prior to or during trial could only be calculated during trial, after the underlying testimony about each damages item was given. *See* Tr. 3289:2-6. The *total* value of each agreed adjustment was set forth in exhibits presented at trial, but how the total value of each agreed adjustment was distributed over one or more years was not. The year-by-year distribution of each agreed adjustment (except one, discussed next) was only shown in schedules (one for each of the Yankee Utilities) attached to a letter dated August 11, 2004 from the Yankee Utilities' counsel that was delivered to government counsel during trial, promptly after the values were calculated, *see* Tr. 3282:19-3283:19, 33284:2-10, at the Court's request. *See* Tr. 3287:18-22 ("COURT: The best solution is for Plaintiffs to work them up as soon as you can and provide them to counsel for Defendant so that they can address them in their case if they have any objections."); *see also* Tr. 3284: 18-21 ("[COURT:] You can be assured that counsel will be asked to provide as a part of final conclusions the actual mathematical effect of any adjustments

that you agree to or want to make in the process."); Tr. 3286:22-25 ("COURT: I'm assuming that you can probably agree what the quantification. . . ."). The second exception is that the year-by-year values for one of the agreed adjustments applicable to Yankee Atomic and Connecticut Yankee was not calculated until after counsel's August 11 letter was written. Though the total amount of that item (about $140,000 for both companies, about $100,000 of which impact damages through 2002) was also shown in a trial exhibit, schedules showing the year-by-year distribution of these two items, prepared by Dr. Wise's firm, The Brattle Group, to assist the Yankee Utilities with post-trial briefing from models disclosed to the government during pretrial proceedings, were not but are included in the Appendix as exhibit A11. Potential evidentiary issues arising from these circumstances are discussed below.

## III. Evidentiary Matters.

There can be no legitimate question that the "past" damages though 2002 shown above for Yankee Atomic, Connecticut Yankee and Maine Yankee, respectively, are accurate calculations of those damages based on data from testimony and exhibits presented at trial and material disclosed to the government during trial, as explained in this brief and detailed further in the Appendix. Certainly these calculations are far more precise than the "reasonable approximation" required by the applicable legal standard. The Yankee Utilities acknowledge that two items used in these calculations – certain schedules attached to their counsel's August 11, 2004 letter, and exhibit A11 to the Appendix – were not introduced or discussed at trial. But as noted above, the August 11, 2004 letter was provided to the government prior to its case-in-chief at trial at the Court's suggestion, and all the relevant trial exhibits and other material used to calculate the Yankee Utilities' damages through 2002 shown above are explained fully in this brief

and the accompanying Appendix. Indeed, as also noted above, the Court contemplated at trial "that counsel will be asked to provide as part of final conclusions the actual mathematical adjustments that you agree to or want to make in the process." Tr. 3284:18-21.

The Yankee Utilities also acknowledge that as a general proposition the parties agreed that demonstrative exhibits would "accompany the record." However, with specific reference to the exhibits used in the Yankee Utilities rebuttal case (exhibits A4-9 to the Appendix), which included the damages schedules from Dr. Wise's reports and also the schedules showing the agreed adjustments and their impact on overall damages, the parties agreed during trial that Dr. Wise did not have to read every number from those exhibits into the record similar to the way the government's expert Mr. Johnson did. Fairly viewed, that agreement makes all the Yankee Utilities' rebuttal exhibits a part of the trial record for all evidentiary purposes. The relevant exchange took place at Tr. 7472:15-7473:19:

> MR. STOUCK: . . . [R]ather than have Dr. Wise sort of read it these numbers in the record, if it's okay with the Court just proceeding with this general testimony on endorsement of these conclusions, we would like to do that, . . . or we can read the numbers into the record the way, you know, Mr. Johnson has done. . . .
>
> And my proposal would be, if it's acceptable, to simply have Dr. Wise testify generally that these numbers are the results of his conclusions so we don't have to clog up the record. But if that's not acceptable, then we will go ahead and read these numbers into the record.

MR. CRAWFORD: Your Honor, we have no objection to that proposal. That sounds logical.

THE COURT: That's fine with me.

MR. STOUCK: Okay.

THE COURT: As long as it's clear from what's happening.

Research reveals no accepted understanding of the concept that certain exhibits will "accompany the record;" instead, the parties' agreement to that effect – either alone or in combination with the further agreement quoted above – effectively made these demonstrative exhibits part of the trial record for all purposes, just like other exhibits that were explicitly "admitted." *See, e.g.,* McCormick on Evidence § 212 (5th ed. 2002) ("[T]he theory justifying admission of [demonstrative] exhibits requires only that the item be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact. Whether admission of a particular exhibit will in fact be helpful, or will instead tend to confuse or mislead the trier, is a matter commonly viewed to be within the sound discretion of the trial court.) (citations omitted); *Tritek Technologies, Inc. v. United States*, 67 Fed. Cl. 727, 729 (2005) (treating admissibility of "demonstrative" exhibits same as admissibility of other exhibits).[3]

In these circumstances, the Yankee Utilities submit that the Court can readily and properly conclude, to far more than a "reasonable approximation," that the "past" damages through 2002 for each of the Yankee Utilities shown above are accurate calculations of those damages based on data from testimony and exhibits presented at trial and material disclosed to the government during trial, as explained in this brief and

---

[3] Admissibility of expert reports is an entirely different matter, given that the experts testified at trial and in many instances that testimony differed from what was in their reports.

explained in the Appendix. In an abundance of caution and in order to have a clean record for appellate review, the Court should order that counsel's August 11, 2004 letter (with attachments) and exhibit A11 to the Appendix be added to the trial record, together with exhibits A1, A2 and A3 to the Appendix. As noted above and explained in the Appendix, the latter three exhibits contain no "new" damages data whatsoever, but simply organize data from exhibits and other materials presented at trial in a way that shows how the damages through 2002 for each of the Yankee Utilities can be derived from those materials.

But ultimately, even if those five items are not made part of the trial record, the Court can still properly conclude from material that is of record that damages through 2002 for each of the shown above and explained in the Appendix are accurate calculations of those damages. As the Federal Circuit noted in *Hi-Shear Technology Corp.,* 356 F.3d at 1381, "[t]he plaintiff can meet its burden of proving damages if it 'furnishes the court with a reasonable basis for computation, even though the result is only approximate'" (internal quotations and citation omitted). *See also* Restatement (Second) of Contracts § 352 (1981) ("Damages need not be calculable with mathematical accuracy and are often at best approximate."); *cf. Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) ("there is a clear distinction between the measure of proof necessary to establish the fact that petitioner has sustained some damage and the measure of proof necessary to enable the jury to fix the amount."); *Caroline Hunt Trust Estate v. United States*, 65 Fed. Cl. 271, 315 (2005) ("Generally, any doubt as to the amount of damages is resolved against the breaching party, in this case the government.")

IV. Upon Rendering Its Decision On The Yankee Utilities' Claims For Damages Through 2002, The Court Should Make The Findings Required by Rule 54(b) And Enter Final Judgment On Those Claims While Directing The Parties To Pursue Additional Proceedings To Resolve The Yankee Utilities' Separate Claims For Their Initial Post-2002 Damages.

In their post-trial legal briefs, the Yankee Utilities explained that it was appropriate that the Court explicitly preserve their claims for "future damages" by adopting the provisions of the Restatement (Second) of Judgments § 26(1)(b) and (e). *See, e.g.,* Yankee Atomic's Initial Post-trial Legal Brief at 31-36. Other Judges of this Court had done so in other spent fuel cases. *See id.* at 32-33.[4] In *Indiana Michigan*, the Federal Circuit has now ruled that claims for past damages in these spent fuel cases are distinct from claims for future damages. *Indiana Michigan,* 422 F.3d at 1378 ("in the case of the continuing contractual obligations owed after an initial suit for partial breach has been filed, *subsequent claims* for future damages are considered to accrue for the purposes of the statute of limitations at the time such damages are incurred.") (emphasis added). Given that ruling, as well as the broader teaching of *Indiana Michigan* that spent fuel plaintiffs may return to court in subsequent proceedings to recover on their claims for future damages "as they are incurred," *id.* at 1377, it is now appropriate for this Court to proceed in a somewhat different manner than the Yankee Utilities suggested in their post-trial briefs.

Specifically, upon awarding the Yankee Utilities their respective "past" damages through 2002, the Court should enter judgment on that award under Rule 54(b). That Rule, which is entitled "Judgment Upon Multiple Claims or Involving Multiple Parties,"

[4] The Federal Circuit also endorsed those provisions in *Indiana Michigan*, although it only actually applied subsection (1)(e), apparently because the "express reserv[ation]" of future claims contemplated by subsection (1)(b) either had not been made by this Court in that case, or was deemed unnecessary in view of the Federal Circuit's separate ruling that Indiana Michigan's claims for future damages in these spent fuel cases are distinct from claims for past damages. *See Indiana Michigan,* 422 F.2d at 1378.
.

provides in pertinent part that "[w]hen more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Once the Court awards the Yankee Utilities their respective damages through 2002, entry of judgment on those awards under Rule 54(b) is appropriate for several reasons.

First, in their initial post-trial briefs the Yankee Utilities suggested that the Court should "retain jurisdiction" after awarding damages, pending further guidance on how claims for future damages would be handled, *see, e.g.,* Yankee Atomic's Initial Post-trial Legal Brief at 35-36, but the Federal Circuit has now provided that guidance in *Indiana Michigan*. There is no longer a need for the Court to informally retain jurisdiction pending guidance; rather, the Court can (and should) rely upon Rule 54(b) both to conclude proceedings on the Yankee Utilities' claims for past damages through 2002, and to *formally* "retain jurisdiction" over their distinct claims for "future" damages after 2002.

Second, entry of judgment on past damages under Rule 54(b) will allow the Yankee Utilities to obtain prompt payment of the judgment, which is fair and appropriate.

Third, utilizing Rule 54(b) will allow one or both parties to pursue an appeal of this Court's rulings.

Finally, and importantly, use of Rule 54(b) will confirm the Federal Circuit's ruling in *Indiana Michigan* that claims for future damages in these spent fuel cases are indeed distinct from claims for past damages. The Yankee Utilities have some concern that in a future case, the government could argue that the *Indiana Michigan*'s ruling

about future damages was "*dicta*," and because the government as the prevailing party could not challenge the ruling, the Federal Circuit should revisit it and consider whether these cases actually involve only one claim from one breach in 1998. By entering judgment under Rule 54(b), this Court will be making a determination – consistent with *Indiana Michigan* – that the Yankee Utilities' past damages claim is distinct from its future damages claim. *See Houston Indus., Inc. v. United States,* 78 F.3d 564, 567 (Fed. Cir. 1996) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956) ("[A] judgment is final for Rule 54(b) purposes when it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'").

In addition, as *Houston Indus*. illustrates, the Federal Circuit will only be able to properly take jurisdiction over an appeal from this Court's Rule 54(b) judgment if it agrees that this case involves multiple claims as contemplated by the Rule. *See also Rabekoff v. Lazere & Co.*, 323 F.2d 865, 866 (2d Cir. 1963) ("By its own terms Rule 54(b) is applicable only to actions involving multiple claims for relief"). Thus, if the Federal Circuit accepts jurisdiction of an appeal from the Rule 54(b) judgment, it will confirm that the Yankee Utilities' claims for "past" damages are distinct from their claims for "future" damages and thereby ameliorate any potential concern about that issue. And if the Federal Circuit on closer analysis does not confirm the *Indiana Michigan* ruling, and declines to accept appellate jurisdiction, these cases will still be pending in this Court and the Yankee Utilities' claims for future damages can be pursued without concern for *res judicata*.

## CONCLUSION

For all of the foregoing reasons, the Court should (1) award Yankee Atomic its past damages through 2002 of $101,779,608, award Connecticut Yankee its past damages through 2002 of $82,818,937, award Maine Yankee its past damages through 2002 of $78,089,649, (2) enter judgment on those awards under Rule 54(b), and (3) direct the parties to pursue additional proceedings in which the Yankee Utilities may recover their post-2002 damages promptly after the Court issues its awards and enters judgment thereon.

Respectfully submitted,

Dated: December 6, 2005

s/Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiffs*
YANKEE ATOMIC ELECTRIC COMPANY,
CONNECTICUT YANKEE ATOMIC POWER COMPANY, and
MAINE YANKEE ATOMIC POWER COMPANY

Of Counsel:

Robert L. Shapiro
GREENBERG TRAURIG, LLP