No. 98-126C
Senior Judge Merow

(Filed Electronically, January 5, 2006)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# THE YANKEE UTILITIES' RESPONSE TO THE GOVERNMENT'S BRIEF ADDRESSING *INDIANA MICHIGAN*

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
*Counsel for Plaintiffs*
YANKEE ATOMIC ELECTRIC COMPANY
CONNECTICUT YANKEE ATOMIC POWER COMPANY, and
MAINE YANKEE ATOMIC POWER COMPANY

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

# TABLE OF CONTENTS

Page

I. THE GOVERNMENT'S ASSERTION THAT *INDIANA MICHIGAN* BARS POST-COMPLAINT DAMAGES IS DISINGENUOUS AND WRONG. ................................ 3

A. The Government Has Acknowledged In Other Cases That This Court Has Flexibility to Award Post-Complaint Damages ........................................................ 3

B. Neither *Indiana Michigan* Nor Any Other Authority Precludes Post-Complaint Damages In These Cases ......................................................................................... 6

C. Limiting Damages To The Time Of The Complaints In 1998 Would Be Arbitrary and Unfair .............................................................................................. 10

II. *INDIANA MICHIGAN* DOES NOT AFFECT THE REASONABLENESS, OR THEREFORE THE RECOVERABILITY, OF THE RERACKING DAMAGES CLAIMED HERE ......................................................................................................... 11

III. APART FROM BEING UNRELATED TO *INDIANA MICHIGAN*, THE GOVERNMENT'S CAUSATION ARGUMENTS ARE NOT NEW AND ARE STILL WRONG.......................................................................................................... 14

## APPENDIX

DOCUMENT PAGE

Exhibit 1: September 16, 2005 Letter from John Ekman ............................................................ 1

Exhibit 2: December 5, 2005 Letter from Sharon Snyder ........................................................... 4

Exhibit 3: Defendant's Response to Plaintiff's Motion for Clarification or Reconsideration on Discovery Restriction filed in Pacific Gas & Electric Company v. United States, No. 04-0074C............................................................................................................ 7

Exhibit 4: Deposition of W. John Arthur, III, Trans. Pgs. 173-174............................................ 34

# TABLE OF AUTHORITIES

PAGE

CASES

*Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003) .... 9

*Beacon Oil Co. v. O'Leary*, 71 F.3d 391 (Fed. Cir. 1995) .... 8

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) .... 9

*Gately v. Commonwealth of Mass.*, 2 F.3d 1221 (1st Cir. 1993) .... 9

*Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060 (Fed. Cir. 2002) .... 10

*Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004) .... 6

*Indiana Michigan v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) .... passim

*Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999) .... 9

*Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665 (2004) .... 13

*Yankee Atomic Electric Co. v. United States,* 2004 WL 1535688 .... 7, 10, 13

OTHER AUTHORITIES PAGE

*Restatement (Second) of Contracts* § 26 .... 8

*Restatement (Second) of Contracts* § 350 .... 13

*Restatement (Second) of Judgments* § 26 .... 8

RCFC 1 .... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC CO., Plaintiff, | ) | No. 98-126C |
| v. | ) | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

THE YANKEE UTILITIES' RESPONSE TO THE GOVERNMENT'S BRIEF ADDRESSING *INDIANA MICHIGAN*[1]

By Order dated September 12, 2005, the Court requested supplemental briefing "detailing, with specificity, the damages items which may be addressed in this litigation in accord with" the Federal Circuit decision in *Indiana Michigan v. United States,* 422 F.3d 1369 (Fed. Cir. 2005). In response, the government has submitted a 15-page brief, ("USBr."), only a few pages of which deal with the effect of *Indiana Michigan* on this Court's damages analysis. On those pages, the government contends that *Indiana Michigan* precludes the Yankee Utilities from recovering in this proceeding damages they incurred after the respective filing dates of their complaints – in February, March and June 1998. The remainder of the government's brief re-argues two other issues: that the costs that Connecticut Yankee and Maine Yankee incurred reracking their spent fuel pools are not recoverable here; and that the Yankee Utilities have not established

[1] Like their opening brief addressing *Indiana Michigan*, this responsive brief is submitted by the Yankee Utilities jointly, and it therefore should also be deemed applicable to *Connecticut Yankee Atomic Power Co. v United States*, No. 98-154C and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C.

causation for any of their claimed damages. The government acknowledges that *Indiana Michigan* has no effect on two of the three points the government reiterates concerning reracking costs, *see, e.g.,* USBr. at 9, and no effect at all on the causation arguments the government also reiterates wholesale from its post-trial briefs, *see, e. g.*, *id*. at 1. Those points and arguments are thus unresponsive, redundant and unhelpful.

The position the government articulates on the issue of past versus future damages is also unhelpful because, in addition to being legally wrong, it is not even the government's real position. As noted in the Yankee Utilities' opening brief ("YUBr.") and discussed further below, in other spent fuel cases the government has acknowledged that the Court has discretion after *Indiana Michigan* to address post-complaint damages, and the government has even agreed to particular dates years after the complaint through which "past" damages may appropriately be considered. In the face of these prior statements, the government's bare, date-of-complaint position here appears to be nothing but gamesmanship that precludes the kind of substantive debate over the parties' actual positions that the Court presumably expected when it requested responsive briefing. And the government's assertion that *Indiana Michigan* flatly bars mitigation costs pre-dating May 1994 misreads both the language and rationale of the Federal Circuit's reaffirmation in *Indiana Michigan* that "reasonable" mitigation costs are compensable.

We elaborate below these flaws in the government's *stated* position on *Indiana Michigan*'s impact on past versus future damages, and its position on pre-1994 mitigation costs. To the extent the government's "response" brief filed concurrently with this paper may offer a new substantive position (and/or new arguments) on past versus future

damages, the Yankee Utilities will also endeavor to respond to those as well prior to the January 10, 2006 hearing.

## I. THE GOVERNMENT'S ASSERTION THAT *INDIANA MICHIGAN* BARS POST-COMPLAINT DAMAGES IS DISINGENUOUS AND WRONG.

### A. The Government Has Acknowledged In Other Cases That This Court Has Flexibility to Award Post-Complaint Damages

The government's argument here that *Indiana Michigan* established a firm rule precluding present recovery of damages incurred after the filing of these cases, *see* USBr. at 5-6 & n.5, is belied by the government's positions in other cases. In the case noted in the Yankee Utilities' opening brief, *Wisconsin Electric Co. v. United States*, No. 00-697C (Fed. Cl. filed November 16, 2000), which is assigned to the same Judge as these *Yankee* cases, the government is not opposing consideration of all damages incurred after institution of the action. *See* YUBr. at 2-4. In *Southern Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl. filed July 29, 1998), which is also assigned to the same Judge, the government has taken the position that plaintiffs, in the present round of litigation, may pursue damages through December 31, 2004 – more than *six years* after the institution of that case. *See* Exhibit 1, Sept. 16, 2005 letter from John Ekman at 1, A2. In *Systems Fuels, Inc. v. United States*, No. 03-2624C (Fed. Cl. filed November 5, 2003), similarly, the government has taken the position that the plaintiff may recover in its current round of litigation damages incurred through August 31, 2005, almost two years after the institution of that action. *See* Exhibit 2, Dec. 5, 2005 letter from Sharon Snyder at 1, A5.

The government does not even attempt to explain why this case is different from the several other spent fuel cases where the government has taken a different – and far more reasonable – position. In both *Southern* and *Systems Fuels*, the government's

position depends on the plaintiff filing an amended or supplemental complaint. But if *Indiana Michigan* is to be read as establishing a firm legal rule precluding consideration of damages in these cases beyond the institution of the actions, the filing of an additional pleading could not change such a legal rule cutting off damages. And the government has offered no explanation as to why the filing of an amended or supplemental pleading should be deemed significant for purposes of determining the time frame for the recoverability of damages.[2] Importantly, as the Yankee Utilities noted in their opening brief, the law concerning pleading is to the contrary. *See* YUBr. at 3-4 (quoting Federal Circuit and Supreme Court authority for proposition that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (citations omitted)). Although not necessary, consistent with the government's positions in *Southern* and *Systems Fuels*, the Yankee Utilities could file supplemental or amended complaints to allege more specifically the past damages they have incurred through 2002 – and thereby further support their position here with the government's own position in other cases – if such an additional pleading would be deemed helpful by the Court.

[2] In his letter to Southern's counsel, Mr. Ekman asserted that an amended complaint would provide "a clear conception of the time period at issue in the trial of this matter and any appeal, and plaintiffs here will reduce any issues surrounding the Court's jurisdiction to consider and the effect of the statute of limitations upon these post-complaint damages." Exhibit 1 at 1, A2. This statement does not explain why an amended or supplemental complaint should be deemed to extend the period in which damages can be sought. Moreover, an amended pleading is surely not the only, or even the best, vehicle to make clear the time period for which damages are being considered. And Mr. Ekman's statement does not identify what "issues" regarding jurisdiction or limitations the government believes might be reduced though an additional pleading.

In yet another spent fuel case, *Pacific Gas & Electric Co. v. United States*, No. 04-0074C (Fed. Cl. filed January 24, 2004), the government explicitly acknowledged in a recent brief that it has taken a different position on this issue in other spent fuel cases, and ultimately sets forth a more flexible approach:

> . . . the Government has consistently maintained that, although an SNF plaintiff may seek leave to file a supplemental complaint to obtain damages that post-date its complaint, the Court has discretion to deny such leave, particularly where it would prejudice the Government.

*See* Exhibit 3, December 14, 2005 Response to Plaintiff's Motion for Clarification or Reconsideration on Discovery at 13, n.8, A24. In that brief, though still asserting a role for a supplemental complaint, the government appropriately emphasizes that practical considerations – like the extent of "prejudice," *see id.* – should inform whether post-complaint damages should be considered now in these cases. The government took a similarly practical approach in *Wisconsin Electric,* as noted in the Yankee Utilities' opening brief here. *See* YUBr. at 2-4. Such practical considerations are fundamentally different from the rigid legal rule the government urges in its opening brief here.

Notably, the government does not even suggest here, as it did in *Pacific Gas & Electric*, that it would be prejudiced if the Yankee Utilities were permitted to seek recovery of their post-complaint damages. Nor could it: given the fulsome discovery and trial that have already taken place in these cases, any such argument would be wholly without merit. In fact, as the Yankee Utilities also explained in their opening brief, *see* YUBr. at 4-5, 7-9, in these *Yankee* cases the practicalities that the government has rightly emphasized in other spent fuel cases fully support the Yankee Utilities' position that the Court should now address their past damages through 2002.

B. Neither *Indiana Michigan* Nor Any Other Authority Precludes Post-Complaint Damages In These Cases

The government's argument that the Federal Circuit's decision in *Indiana Michigan* conclusively resolves the recoverability of post-complaint damages in this case both misreads *Indiana Michigan* and reflects a misunderstanding of the *stare decisis* doctrine. A correct analysis of these issues requires an understanding of the facts of that case – facts not at all like those presented here. The problem with Indiana Michigan's claim for future damages is explained succinctly in the trial court's decision:

> The parties argued during trial that the threshold issue for considering plaintiff's future cost claim is when the Department of Energy will begin collecting spent nuclear fuel according to the Standard Contract. Their emphasis on the year of contract compliance related to a major element of plaintiff's projected damages – the cost of building and maintaining a Dry Storage System. Such a system would store the fuel that remains uncollected after 2010. *If DOE begins complying with the Standard Contract in 2010, plaintiff will not need a Dry Storage System; its current wet pool storage system will have sufficient capacity at least until then. . . .*
>
> Competent evidence during trial permitted a finding that 2010 is the most likely year of DOE's compliance with the Standard Contract. Another date would require speculation amounting to a guess.

*Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639, 643 (2004) (emphasis added). In short, Indiana Michigan's request for future damages depended on a claim that DOE's non-performance would extend until well beyond 2010, and the trial court found that claim to be speculative: "[f]uture costs in this case depend entirely on the occurrence of speculative events." If DOE performed in 2010, as the government contended it would (and the trial court found "most likely"), Indiana Michigan would not need or incur the costs of a dry storage facility. *Id.* at 641.[3]

[3] The trial court concluded "during trial that meeting the 2010 date is possible if everything goes smoothly." *Id.* at 645. In fact, almost nothing has gone smoothly for

In that context, the trial court also held that since Indiana Michigan was pursuing a claim for partial, rather than total, breach of contract, "its damages are limited to those for the partial breach, or partial breaches that occurred by the time that it filed its complaint in this case, or at the outside, that have occurred to date." *Id.* at 648. The trial court's ruling was not any more specific on a cutoff date for the recoverability of "future" damages because greater specificity was not material to resolution of that case – Indiana Michigan's claim for future dry storage damages was speculative in any event. Indeed, given the trial court's finding that Indiana Michigan's claim for future damages was speculative, its entire discussion of the availability of "future" damages in a partial breach of contract case is mere *dicta* – as this Court recognized in a pretrial ruling in these *Yankee* cases. *See Yankee Atomic Electric Co. v. United States,* 2004 WL 1535688, at *1 ("[T]he court's statement that future damages were not available in a claim for partial breach of contract . . . was dicta.").

The Federal Circuit affirmed the trial court's judgment in *Indiana Michigan*. And its discussion of the recoverability of future damages in a partial breach of contract case was no more specific concerning the meaning of "future" damages than the trial court's. As the government notes, *see* USBr. at 5, the Federal Circuit stated that a partial breach claimant may "sue from time to time for the damages incurred to the date of suit." *Indiana Michigan,* 422 F.3d at 1376-77. But contrary to the government's assertion, USBr. at 5, the Federal Circuit did not define the imprecise term "date of its suit" as "the time of institution of the action." The government's purported definition is not the

---

DOE regarding its spent fuel program since that Spring 2004 trial, and DOE has abandoned 2010 as a target date for performance. *See, e.g.,* Deposition Tr. of John Arthur (Deputy Director for Repository Development of DOE's Office of Civilian Radioactive Waste Management) at 173-74, Exhibit 4, A36-37.

wording of the Federal Circuit, but rather a quote from *Restatement (Second) of Judgments* § 26 cmt. g. *See Indiana Michigan*, 422 F.3d at 1377. There is nothing in the Federal Circuit's opinion to suggest that this quote from comment g should be given any more weight as the Federal Circuit's guidance than other statements in the opinion. Elsewhere, the Federal Circuit stated that "[w]e agree with the government, and concur in the proposition that '[i]f the breach of an entire contract is only partial, the plaintiff can recover only such damages as he or she has sustained, *leaving* ***prospective*** *damages to a later suit in the event of further breaches*." *Id.* (emphasis in original; bold added). The Federal Circuit also stated that "Indiana Michigan can, however, obtain recovery of post-breach damages as they are incurred." *Id.* These statements support consideration of damages past the time of the filing of a complaint. Thus, the language of the Federal Circuit's decision in *Indiana Michigan* does not provide clear guidance of the Court's views regarding the recoverability of post-complaint damages in these cases.

Ultimately, the government greatly overstates the significance of the *Restatement (Second) of Contracts* § 26(1)(e) and § 26 cmt. g. *See* USBR. at 4-5. The focus of section 26 and its comment g is on exceptions to the general bar against claim splitting, not on determining the appropriate time frame for consideration of damages in a case for partial breach of contract. Nothing in section 26 or its comments forecloses a plaintiff from pursuing, in an action for partial breach of contract, damages sustained subsequent to the filing of its complaint.

Furthermore, not all statements in a Federal Circuit decision are binding precedent. *Stare decisis* "applies only to legal issues that were actually decided in a prior action. . ." *See, e.g., Beacon Oil Co. v. O'Leary*, 71 F.3d 391, 395 (Fed. Cir. 1995). As

the First Circuit has explained, "if an issue is not argued, or though argued is ignored by the court, or reserved, the decision does not constitute a precedent to be followed." *Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993), *cert. denied,* 511 U.S. 1082 (1994). In *Indiana Michigan,* the Federal Circuit clearly did not decide among the various articulations noted above of a time frame for consideration of the availability of future damages in a partial breach of contract case. It did not have to make such a choice, given that it affirmed the trial court's decision that Indiana Michigan's claimed future damages were speculative in any event and were not going to be incurred until well after trial. Therefore, none of the Federal Circuit's articulations regarding future damages can be considered binding precedent.

Fundamentally, the Federal Circuit only has jurisdiction to resolve particular, concrete cases and controversies. *See, e.g., Anderson v. United States*, 344 F.3d 1343, 1349 (Fed. Cir. 2003). It is not the Federal Circuit's role to offer advisory opinions. *See, e.g., Olson v. United States*, 172 F.3d 1311, 1319 (Fed. Cir. 1999).[4] Therefore, any suggestion that the Federal Circuit attempted to set out a rule regarding the availability of future damages in all of the different spent fuel cases with their varying facts is just plain wrong.

Significantly, the limitations on future damages addressed in *Indiana Michigan* and other authorities cited by the government are based on a concern that is inapplicable to the Yankee Utilities claim here for their past damages through 2002 – that the non-breaching party may be able to avoid its claimed future damages if the breaching party

---

[4] Though not a Court organized under Article III, this Court likewise traditionally limits its decisions to cases and controversies and refrains from offering advisory opinions. *See, e.g., Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 653 (2003).

starts to perform. This Court recognized as much in its pre-trial ruling, *Yankee Atomic,* 2004 WL 1535688, at *2 ("Future damages are generally not awarded due to the possibility of windfall to the non-breaching party should the expenses not materialize if the breaching party does perform"). Both the appellate and trial courts in *Indiana Michigan*, similarly, make clear that their objection to award of future damages in that case was because the claim for such damages was based on anticipated future nonperformance, which was speculative. *See, e.g.,* 422 F.3d at 1376 ("Because of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach.").

In these cases, conversely, the Yankee Utilities' claims for their "past" damages through 2002 do not depend on any speculation as to when DOE will start to perform or the Yankee Utilities' ultimate need to provide for extended spent fuel storage because of the government's failure to perform. The Yankee Utilities had *already* incurred the costs they claim as past damages through 2002 at the time of trial, and no future performance by DOE could possibly convert those damages into a windfall.

C. Limiting Damages To The Time Of The Complaints In 1998 Would Be Arbitrary and Unfair

This Court has the authority and responsibility to fashion an appropriate remedy in this case, including an award of future damages as appropriate. *See, e.g., Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1065 (Fed. Cir. 2002). The government's brief offers no reason why that remedy cannot include the Yankee Utilities' past damages through 2002 – other than *Indiana Michigan*, which the

government has conceded in multiple other cases does not preclude recovery of such damages.

Finally, the government's proposed time-of-complaint damages cutoff fails to take account of the very first directive in the Rules of this Court: that rules be applied and administered "to secure the just, speedy, and inexpensive determination of every action." RCFC 1. The Court and the parties all have expended considerable time, effort and expense litigating and hearing the Yankee Utilities' claims for damages that extend beyond the date of the complaint. The government's proposed 1998 damages cutoff would needlessly waste virtually all of that effort, and needlessly delay adjudication and award of a substantial portion of the Yankee Utilities' past damages. The government cannot justify such waste and delay.

## II. *INDIANA MICHIGAN* DOES NOT AFFECT THE REASONABLENESS, OR THEREFORE THE RECOVERABILITY, OF THE RERACKING DAMAGES CLAIMED HERE

The government's argument that "[p]ursuant to *Indiana Michigan*, . . .the obligation to mitigate damages did not begin until May 25, 1994," USBr. At 9, is wrong for three reasons. First, what the Federal Circuit actually said was "[i]t is beyond dispute that because the government unequivocally announced in 1994 that it would not meet its contractual obligations beginning in 1998, the utilities were in fact obligated to take mitgatory steps." *Indiana Michigan*, 422 F.3d at 1375. The court's "beyond dispute" and "unequivocal" characterization of the government's 1994 announcement requires a conclusion *opposite* to the one drawn by the government: 1994 was not the date that utilities' option to mitigate "first" arose, but rather the *last* possible date that that option could be said to arise in view of the great likelihood at that point that the breach would occur in 1998.

Second, the Federal Circuit's discussion of the 1994 date has no real precedential value anyway, given the court's affirmance of the trial court's conclusion that Indiana Michigan's claim for reracking damages failed factually for lack of proof. *Id.* at 1376 ("It failed to make such a showing."); *see id.* at 1375 ("[O]n these facts, the trial court's finding that Indiana Michigan is not entitled to ["pre-breach mitigation"] damages is supportable."). As the Federal Circuit explained, echoing the trial court's factual findings, Indiana Michigan "authorized the expenditure for its reracking projects in 1989, *in the ordinary course of business,* six years before the 1994 Notice of Inquiry . . . . *Id.* (emphasis added). Thus, "[i]n light of that fact" – *i.e.*, the "ordinary course of business" reracking expenditures – "the trial court found that Indiana Michigan's rerack schedule was not affected by 1987 and 1989 DOE announcements projecting delays in the scheduled January 1998 acceptance start date." *Id.* As demonstrated at trial and noted briefly below, the reracking causation facts now before this Court are completely different.

Third, and more fundamentally, the government's claim that *Indiana Michigan* establishes a legal rule that no mitigation duty could exist prior to May 1994 contradicts the underlying rationale of the Federal Circuit's *refusal* to declare that "pre-breach costs are *per se* unrecoverable." While noting the general rule that contract damages are measured from the date of breach, the Federal Circuit concluded in *Indiana Michigan* that the obligation to mitigate damages was sufficiently strong and important to override that general rule. *Id* at 1374-75. The Federal Circuit thus declared that well-established mitigation principles do apply, fully, to pre-breach mitigation costs. In particular, the court reaffirmed that "[m]itigation is appropriate where a reasonable person, in light of

the known facts and circumstances, would have taken steps to avoid damage." *Id.* at 1375; *see id.* (quoting with approval *Restatement (Second) of Contracts* § 350, cmt. b, which states "[o]nce a party has reason to know that performance by the other party will not be forthcoming, . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss. . . ."). It was precisely that same "reasonableness" rule – which is plainly incompatible with a fixed commencement date for mitigation – that this Court applied in its pretrial ruling rejecting the government's proposed *per se* legal rule against pre-breach mitigation costs, including reracking costs. *Yankee Atomic,* 2004 WL 1535688, at *6 (citing *Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665, 674 (2004)).

At trial, the evidence demonstrated beyond serious question that the decisions that Connecticut Yankee and Maine Yankee made in the early 1990s to rerack their respective spent fuel pools were in fact reasonably made, in anticipation of DOE's likely failure to commence performance in 1998 and/or thereafter to remove sufficient spent fuel from these two sites to allow continued maintenance of full core offload reserve capacity. *See* Connecticut Yankee Post-Trial Proposed Findings of Fact ("PFOF") ¶¶ 115-18, 124; Maine Yankee PFOF ¶¶ 108-09, 117-18, 121, 128. The government nevertheless makes two factual assertions in its supplemental brief, concededly "without regard" to *Indiana Michigan*: first, that when the reracking decisions were made, both Connecticut Yankee and Maine Yankee "expected to run out of wet pool space *before* 1998," USBr. at 9-10, and therefore the reracking decisions would have been made even absent the breach, USBr. at 10; and second, that because both utilities "shut down prematurely, neither . . .

actually needed to rerack their pools, at least not as a result of DOE's breach," USBr. at 10-11.

These points, both of which were made and fully responded to in post-trial briefing, are wrong. The first point is wrong factually. The actual evidence demonstrates that the government's dates are incorrect and that the utilities' reracking decisions would not have been made had DOE performance been reasonably expected. *See, e.g.,* Connecticut Yankee PFOF ¶ 114, Connecticut Yankee Reply on its Post-Trial Proposed Findings Of Fact ("RPFOF") ¶ 115; Maine Yankee PFOF ¶¶ 116-118; Maine Yankee RPFOF ¶ 107. The second point is wrong legally, because – as the Yankee Utilities have explained at length in prior briefing – the reasonableness of mitigation decisions is judged by facts existing at the time of the decisions. *See* Yankee Atomic's Response To the Government's Post-Trial Legal Brief at 26-27; Yankee Atomic's Third Post-Trial Legal Brief at 31-32.

## III. APART FROM BEING UNRELATED TO *INDIANA MICHIGAN*, THE GOVERNMENT'S CAUSATION ARGUMENTS ARE NOT NEW AND ARE STILL WRONG.

Finally, the government devotes almost a third of its brief to repeating various causation arguments that it already made (often more than once) in prior post-trial briefing, arguments that also concededly are unaffected by *Indiana Michigan*. USBr. at 11-15. The government's repetition of these arguments does not make them any more valid, but it is revealing – if the government had any confidence in the validity of these arguments the first time it made them, it would have no need to repeat them again and again. The Yankee Utilities, conversely, have full confidence in their previous responses to these government arguments, and see no need to reiterate those responses here.

We cannot, however, avoid noting again here that the government's citation of trial testimony continues to be misleading and unreliable. The government cites testimony from three individuals on page 12 of its brief, for example, for the proposition that an acceptance rate "well below" 3000 MTU could satisfy the objectives of the contracting parties. But that testimony does not support that proposition, particularly when read in conjunction with preceding and following testimony. The government cannot win that point by repetition either, because it simply is not true.

CONCLUSION

For these reasons, and those set forth in the Yankee Utilities' initial brief addressing the impact of *Indiana Michigan*, the Court should award the Yankee Utilities their past damages through 2002 in the amounts set forth in that first brief and fully supported in prior post-trial briefing.

Dated: January 5, 2006

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiffs*
YANKEE ATOMIC ELECTRIC COMPANY,
CONNECTICUT YANKEE ATOMIC POWER COMPANY, and
MAINE YANKEE ATOMIC POWER COMPANY

Of Counsel:

Robert L. Shapiro
GREENBERG TRAURIG, LLP