# EXHIBIT 1

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:JEkman
154-98-614

Telephone: (202) 353-0897
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

September 16, 2005

VIA FACSIMILE AND U.S. MAIL

M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Re: *Southern Nuclear Operating Co. v. United States*, Fed. Cl. No. 98-614C

Dear Mr. Blanton:

We are writing concerning several issues arising out of yesterday's pretrial conference and plaintiffs' objections to the Government's exhibit list. First, based upon the decision in Indiana Michigan Power Co. v. United States, 04-5122 (Fed. Cir. Sept. 9, 2005), and the statements of Senior Judge Merow during the pretrial conference, we request that plaintiffs file a new complaint in advance of trial, seeking damages through December 31, 2004. We will agree to the consolidation of the new action and the pending action for trial in October. Moreover, we will agree that damages that have arisen under the new complaint will be litigated through December 31, 2004. We will agree that any actual costs incurred between January 1, 2005, and the date of the new complaint can be included in a new complaint filed in the future in accordance with the appellate court's decision in Indiana Michigan. By filing the new complaint, the parties will have a clear conception of the time period at issue in the trial of this matter and any appeal, and plaintiffs here will reduce any issues surrounding the Court's jurisdiction to consider and the effect of the statute of limitations upon these post-complaint damages.

Second, we need to respond to your letter dated September 9, 2005, in which you largely parrot our critiques of plaintiffs' exhibit list in responding to the Government's exhibit list. Your criticisms of the Government's exhibit list are overstated. For example, your letter asserts that the Government's exhibit list contains duplications, and you parrot our language to you upon that same issue that "'duplication could significantly affect the record in this case' and results in 'unnecessary copying.'" However, plaintiffs' objections to the Government's exhibits identify only two duplicated exhibits upon the Government's entire list – totaling only seven pages between them. In contrast, the Government has identified more than 100 duplicative exhibits upon plaintiffs' list encompassing potentially thousands of pages of documents. The "unnecessary copying" of seven pages of duplication pales in comparison to plaintiffs' failure to remove unnecessary duplication from its exhibit list.

In any event, to the extent that two exhibits listed upon the Government's list have been duplicated, we will remove the offending duplicate exhibit leaving upon our list a complete copy of each exhibit. We anticipate, given the strong language in your letter, that plaintiffs likewise will remove any duplicative exhibits from their list.

We are looking at the remaining minor critiques of our exhibit list and will respond to those issues upon completion of that analysis. However, with respect to your concerns relating to allegedly incomplete exhibits, we note that the plaintiffs are entitled to enter into evidence complete versions of any allegedly incomplete exhibit. We likely will not be expanding our exhibit production for the purposes of addressing allegedly incomplete exhibits. Additionally, by this letter we are confirming that exhibits 330-333 were renumbered to exhibits 333-336.

Finally, and based upon the Court's limitation of the damages to be tried by the parties and by the Government's stipulation concerning costs that we do not dispute were incurred by plaintiffs, we ask that you remove from your exhibit list any documents rendered superfluous by these two actions. We believe that our stipulation and the limitation of damages greatly reduces the paper record required to litigate plaintiffs' case. Please also consider whether plaintiffs need to present the testimony of both of their damages experts. We believe that the testimony of Richard Sieracki – if ever relevant – has been eviscerated by the Court's limitation of damages. Eliminating an unnecessary and irrelevant expert witness will reduce the trial time needed to present the plaintiffs' case-in-chief. We likewise will be reviewing the opinions of our experts to eliminate unnecessary testimony from the trial record.

If you have any questions, please do not hesitate to call.

Sincerely,

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch

# EXHIBIT 2

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:SASnyder
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

December 5, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, VA 22102-4859

Re: System Fuels, Inc. v. United States, No. 03-2624

Dear Mr. Tomaszczuk:

We have preliminarily reviewed the expert reports that plaintiff, System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association (collectively "SFI"), provided to us on November 18, 2005. The SFI claim for damages includes a claim for damages "estimated to be incurred between September 1, 2005 and August 31, 2006." These costs are potential future damages for which you have provided no invoices or supporting data. The SFI claim also includes costs incurred between the date upon which SFI filed its complaint and September 1, 2005. It appears that you submitted the report of Messrs. Metcalfe and Sieracki with the expectation that the United States Court of Appeals for the Federal Circuit would grant the petition for rehearing in the Indiana Michigan case. Because the Federal Circuit denied that petition, we understand the Indiana Michigan decision to be settled law in this case. Thus, the damages that SFI may claim here are only those damages that have been incurred as of "the time of the institution of the action." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1377 (Fed. Cir. 2005). In this case, because the SFI complaint was filed on November 5, 2003, the trial of this case should only consider those damages incurred through November 5, 2003.

Even though costs incurred after November 5, 2003 are not currently a proper part of this case, we would be willing to consider agreeing not to oppose a motion by SFI to file an amended or supplemental complaint that would update its damages through August 31, 2005. Given that you have provided to us documentation for the damages incurred through August 31, 2005, we expect that we would be able to complete our discovery, including an audit, of those actual costs through that time. However, we must oppose any effort by SFI to amend the complaint to the time of trial, to include any costs beyond August 31, 2005, as that will not provide us with the time that we need for fact and expert discovery based upon actual documentary support for actual costs, as opposed to speculation about costs that might be incurred.

Alex Tomaszczuk
December 5, 2005
Page 2

Please let me know as soon as possible what your intentions are in this regard so that we may plan accordingly. If I do not hear from you by close of business, December 7, 2005, we will assume that we need to raise this issue with the Court and seek to strike those portions of your damages report that refer to damages to be incurred after November 5, 2003.

Please give me a call if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

# EXHIBIT 3

No. 04-0074C, into which has been
consolidated No. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR
CLARIFICATION OR RECONSIDERATION ON DISCOVERY RESTRICTION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
100 L Street N.W.
Washington, DC 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

December 14, 2005

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. PG&E'S CONTENTION THAT THE COURT SHOULD REVISIT ITS PREVIOUS DECISION REGARDING A DISCOVERY CUT-OFF DATE IS WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. All Discovery Requests Must Be Measured Against PG&E's Burden To Establish The Difference Between The "But For" World And The Actual World . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. DOE's 2004 Annual Capacity Report Is Not Relevant Because It Does Not Contemplate Performance In A "But For" World_ . . . . . . . . . . . . . . . 9

C. The Burden Imposed By PG&E's Open-Ended Discovery Requests Is Unnecessary And Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D. The Government Has Not Selectively Produced Post-2004 Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

Alaska Pulp Corp. v. United States,
59 Fed. Cl. 400 (2004) .................... 6

Energy Capital Corp. v. United States,
60 Fed. Cl. 315 (2004) .................... 9

Florsheim Shoe Co. v. United States,
744 F.2d 787 (Fed. Cir. 1984) .................... 9

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) .................... 11

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) .................... passim

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) .................... 3

San Carlos Irrigation & Drainage Dist. v. United States,
111 F.3d. 1557 (Fed. Cir. 1997) .................... 6

### STATUTES AND REGULATIONS

42 U.S.C. § 10101 .................... 2

42 U.S.C. § 10131 .................... 2

42 U.S.C. § 10222 .................... 2, 9, 10

### MISCELLANEOUS

48 Fed. Reg. 16590 (Apr. 18, 1983) .................... 3

48 Fed. Reg. 5458 (Feb. 4, 1983) .................... 3, 10

**INDEX TO APPENDIX**

DOCUMENT PAGE

September 1995 Analysis of The Total System Life Cycle Cost of The Civilian Radioactive Waste Management Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Trial Testimony Of Robert Morgan, Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl.) (July 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| THE UNITED STATES, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CLARIFICATION OR RECONSIDERATION ON DISCOVERY RESTRICTION

Pursuant to the Court's December 9, 2005 order, defendant, the United States, respectfully responds to the motion by plaintiff, Pacific Gas & Electric Company ("PG&E") requesting "clarification or reconsideration on discovery restriction." In the Court's December 2, 2005 order granting, in part, and denying, in part, PG&E's motion to compel discovery for Document Request No. 22, the Court held that the appropriate cut-off date for discovery in this case is January 28, 2004, the date that PG&E amended its complaints. For the reasons stated below, the Court's decision to allow PG&E extensive discovery in this case beyond January 31, 1998 is generous to PG&E given that any evidence necessary to define the "but for" world against which PG&E's incurred costs must be compared to determine causation necessarily was generated prior to the alleged partial breach.

BACKGROUND

This case is one of 59 cases currently pending before the Court of Federal Claims alleging a partial breach of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste ("Standard Contract"). To consider PG&E's request for continuing and

apparently never-ending discovery into post-breach activities within the Government, it is important to understand the context of PG&E's claims.

On January 7, 1983, the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. 97-425, 96 Stat. 2201 (codified at 42 U.S.C. §§ 10101-10270 (1982)), was enacted. The bases for Congress' passage of the NWPA included statutory findings that the public health and safety necessitated that the Government provide a solution for the permanent storage and disposal of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW"), but that the costs of the interim and permanent storage and disposal of SNF and HLW were the responsibility of those entities that created the SNF and HLW. 42 U.S.C. §§ 10131(a)(4)-(5) (1982). The NWPA provided that the Secretary would enter into contracts with the owners and generators of SNF of domestic origin for "the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1) (1982). The NWPA also required that the contracts with the nuclear utilities provide that:

> (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and
>
> (B) in return for the payment of fees established by this section, <u>the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subtitle.</u>

42 U.S.C. § 10222(a)(5) (emphasis added).

On February 4, 1983, DOE, in furtherance of its obligations pursuant to the NWPA, 42 U.S.C. § 10222, published a notice of proposed rulemaking in the Federal Register, proposing terms for the "Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level

Radioactive Waste" ("Standard Contract") mandated by the NWPA, 42 U.S.C. § 10222. See 48 Fed. Reg. 5458 (Feb. 4, 1983). On April 18, 1983, DOE issued the terms of the Standard Contract as a final rule. 48 Fed. Reg. 16590, 16592 (Apr. 18, 1983). PG&E and the Department of Energy signed the Standard Contract on June 30, 1983.

Because it lacked a suitable disposal facility, DOE did not begin the acceptance of SNF by January 31, 1998. Subsequently, numerous contract holders sued the Government, alleging, among other things, a partial breach of the Standard Contract, and seeking damages as a result of the Government's breach. Several of these cases have already proceeded through trial, and, in the only damages decision that this Court has yet issued, this Court found that none of the plaintiff's claimed damages had been caused by DOE's delay, but, instead, were costs that would have been incurred regardless of that delay. See Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 664 (2004). Subsequently, the plaintiff in Indiana Michigan appealed that decision to the United States Court of Appeals for the Federal Circuit, but the Court affirmed the trial court's decision not to award damages to the contract holder in that case. See Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005). The Federal Circuit also held that a claim for partial breach precludes the recovery of future damages. Id. at 1276. The Federal Circuit explained that, "[b]ecause of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach." Id. (citing San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997) & 9 Arthur L. Corbin, Corbin on Contracts, § 956 (Interim ed. 1993)). Noting that future damages may be awarded where a plaintiff claims a total breach of contract, the Federal Circuit held that, where a "claim is

premised upon the government's partial breach, its damages were limited to those costs incurred prior to the date of its suit." Indiana Michigan, 422 F.2d at 1276-77 (emphasis added). The Federal Circuit further referred to the "date of suit" as "the time of the institution of the action." Indiana Michigan, 422 F.3d at 1377(quoting Restatement (Second) of Judgments § 26(e) & cmt. g (1982)). In discussing the rules for the Court to apply in future cases, the Federal Circuit expressly stated that the SNF plaintiff's grievance "falls within [the Restatement (Second) of Judgments] subsection (e)'s exception," id. at 1378, which expressly limits damages in a partial breach case to those "incurred to the date of suit," Restatement (Second) of Judgments § 26(e) (1982), or "damages sustained from breaches up to the time of the institution of the action." Id. § 26 cmt. g, at 241 (quoted in Indiana Michigan, 422 F.3d at 1377). The Federal Circuit also explained that, where the breach of a contract is only partial, "the plaintiff can recover only such damages as he or she has sustained, leaving prospective damages to a later suit in the event of future breaches." Id. at 1377 (quoting 22 Am. Jur. 2d Damages § 488 (2003)) (emphasis in original).

On January 22, 2004, PG&E filed its complaints in this Court and, on January 28, 2005, filed amended complaints, claiming, among other things, a partial breach of the Standard Contract based upon DOE's failure to begin accepting SNF "not later than January 31, 1998." Pl. Amend. Compl. ¶¶ 1, 23, 25. On June 3, 2005, PG&E served broad and far-reaching discovery requests upon the Government, seeking, among other things, the production of documents that post-date the Government's 1998 failure to begin SNF acceptance by six years. Unsatisfied with the Government's response to its requests, PG&E filed a motion to compel discovery on August 25, 2005, and requested an expedited hearing. The Court held two

telephonic hearings on October 14 and 17, 2005, regarding PG&E's motion to compel. On October 18, 2005, the Court issued an order granting in part, and denying in part, PG&E's motion to compel. In that order, the Court limited PG&E's requests to those documents created up to January 22, 2004, the date that PG&E filed its initial complaints. In addition, the Court requested that the parties provide the legal basis regarding the discoverability of the materials that PG&E sought under Production Request No. 22, which sought "[c]ommunications between PG&E and either [the Department of Energy (DOE)] or the United States Regulatory Commission [(NRC)] related to spent fuel." Following the briefing of this issue, on December 2, 2005, the Court issued an order requiring that "plaintiff narrow its request by specifically identifying to defendant the offices and divisions within the NRC to which it sent or from which it received correspondence 'related to spent fuel' and the time periods within which it believes it sent or received such correspondence." The Court also explained that "[p]laintiff is not entitled to production of communications made after January 28, 2004," the date that PG&E filed its amended complaints. PG&E now requests that the Court reconsider its decision that January 28, 2004 is an appropriate cut-off date for discovery in this case and require that the Government continue to produce all documents responsive to its broad discovery requests on a continuing basis, as they are generated.

## DISCUSSION

### I. PG&E'S CONTENTION THAT THE COURT SHOULD REVISIT ITS PREVIOUS DECISION REGARDING A DISCOVERY CUT-OFF DATE IS WITHOUT MERIT

PG&E contends in its motion for clarification or reconsideration of the Court's decision limiting discovery to January 28, 2004, that this limitation upon discovery is inappropriate

because "there are many, many examples of documents generated after January 2004, that are not only relevant to, but compelling evidence concerning, the key disputed issues [in] this case." Pl. Mot. at 2.[1] PG&E has a fundamental misunderstanding of the issues in this case.

### A. All Discovery Requests Must Be Measured Against PG&E's Burden To Establish The Difference Between The "But For" World And The Actual World

To establish damages in this case, PG&E "must prove the requirements for an award by a preponderance of the evidence," and these "requirements include: causation, foreseeability, and reasonable certainty in the amount of damages." Alaska Pulp Corp. v. United States, 59 Fed. Cl. 400, 413-14 (2004). With regard to the causation element, PG&E must establish that its costs are a direct result of, and were "caused" by DOE's delay, such that the costs would not have been incurred absent the delay. San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997) ("[a] plaintiff must show that but for the breach, the damages alleged would not have been suffered"). To establish this element, PG&E will have to show, among other things, that the costs it has allegedly incurred in the "actual" world would not have been incurred in the "but for," or non-breach, world.[2]

In addition to this causation requirement, PG&E's damages in this partial breach action are limited by the Federal Circuit's decision in Indiana Michigan. Pursuant to the direction in that case, PG&E is precluded from seeking damages in a partial breach case, like this one, that post-date the filing of its amended complaint. Indiana Michigan, 422 F.3d at 1276-77. Instead,

---

[1] "Pl. Mot. at __" refers to PG&E's December 9, 2005 "Motion for Clarification Or Reconsideration On Discovery Restriction."

[2] PG&E would also need to show that its costs were reasonable, could not reasonably have been mitigated, and were necessary.

PG&E may recover damages for future partial breaches in a subsequent lawsuit once those damages have been incurred. Consequently, this damages trial is limited in scope to those alleged damages that PG&E has incurred through the filing of its amended complaint on January 28, 2004.

Accordingly, there are three primary elements that the Court will need to resolve relating to PG&E's damages claim. First, the Court must identify the "but for" world in which DOE began acceptance of contract holders' SNF by January 31, 1998, specifically identifying the rate at which the Standard Contract required DOE to accept SNF and the SNF acceptance allocations running to PG&E based upon that rate. Second, the Court must identify the activities that PG&E would have to have undertaken, and the costs that PG&E would have to have incurred, in that "but for" world to store or maintain its SNF until it was time for DOE to accept it. Third, the Court must identify what costs PG&E has actually incurred (and for what purposes) to store SNF on-site, through the date of its amended complaints filings, so that it can determine what costs are an incremental result of DOE's delay. In evaluating PG&E's requests for extensive and ever-continuing discovery into Government activities and thought processes in the actual world that post-date the amended complaint filings by six years, the Court should compare PG&E's discovery requests against the issues that remain in this case following the Federal Circuit's decision in Indiana Michigan. Only by comparing PG&E's requests to these elements can the Court determine whether PG&E's discovery requests are relevant to this litigation and whether its requests for never-ceasing discovery regarding post-January 31, 1998 activities are justified in light of the burden to the Government. PG&E's own damages expert, Dr. Brad Cornell, explains

in his report that, "a standard approach to determining damages in a breach of contract claim . . . is to compare PG&E's actual costs to the costs PG&E would have incurred 'but for' the breach."

Because causation is determined by comparing the actual world with the "but for" world, the cut-off for discovery of documents from the Government's files should be as early as 1998. In defining the "but for" world, the Court must first look at the contract and its requirements, given that it is the contract language that creates and defines the scope of the parties' mutual obligations. To the extent that the Court needs further evidence to define the Government's contract obligations, it should, at most, look at documents or evidence that contemplate performance pursuant to the contract in the "but for" world and relate to specific contract obligations created by the Standard Contract. The Federal Circuit in Indiana Michigan held that the Government announced in 1994 that it would not meet its contractual obligations, see Indiana Michigan, 422 F.3d at 1375, and, in September 1995, DOE recognized in a planning document that it would not be able to open an Monitored Retrievable Storage facility ("MRS") by January 31, 1998. App. at 1-3.[3] PG&E's apparent suggestion that it might be able to define performance in the "but for" world by reference to documents that were created more than 10 years after DOE's announcement that it would not be able to satisfy any "but for" world requirements is nonsensical. To the extent that PG&E needs documents from the Government's files relating specifically to the costs that PG&E incurred between 1998 and the date upon which it filed its amended complaints, DOE would likely not possess any such documents and, if it did, they would be limited to those relating to such costs and would not assist in defining a "but for" world against which to assess causation.

[3] "App. at __" refers to the appendix accompanying this motion.

The crux of PG&E's argument is that it is improper for the Court to "conflate[] the issue of a cut-off date for damages with the issue of a cut-off date for discovery." Pl. Mot. at 1.[4] PG&E has not cited to a single case in support of the proposition that such a cut-off is improper. Indeed, such a cut-off date for discovery in this case is not only entirely reasonable and sensible, but is well within this Court's inherent authority to limit the scope of discovery. See Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court.") (cited in Energy Capital Corp. v. United States, 60 Fed. Cl. 315, 318 (2004)). Here, particularly given the Federal Circuit's decision in Indiana Michigan, this Court is well within its discretion to limit discovery in this case to the date upon which PG&E filed its amended complaints.

### B. DOE's 2004 Annual Capacity Report Is Not Relevant Because It Does Not Contemplate Performance In A "But For" World

In its motion, PG&E points to DOE's 2004 Annual Capacity Report ("ACR") as "a highly probative DOE document" in this litigation. Pl. Mot. at 4. Following Indiana Michigan, and as we explain below, the 2004 ACR does not have any significance in this case.

As stated above, the NWPA provided that the Secretary of Energy would enter into contracts with the owners and generators of SNF of domestic origin for "the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1) (1982). The NWPA further provided that DOE begin acceptance of SNF from utilities generally by January 31, 1998. 42 U.S.C. § 10222(a)(5). The statute did not mandate a rate of acceptance.

[4] "Pl. Mot. at __" refers to PG&E's "motion for clarification or reconsideration on discovery restriction," filed on December 9, 2005.