No. 98-126C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

YANKEE ATOMIC ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL POST-TRIAL BRIEF ADDRESSING IMPACT OF *INDIANA MICHIGAN*

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 305-7562
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
RUSSELL A. SHULTIS
MARIAN E. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

January 5, 2006

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT . . . . . 1

DISCUSSION . . . . . 4

I. TO EXTEND THE DATE FOR DAMAGES BEYOND THE DATES OF THEIR COMPLAINTS, THE YANKEES MUST FILE AMENDED OR SUPPLEMENTAL COMPLAINTS SEEKING ADDITIONAL DAMAGES . . . . . 4

II. OUTSIDE OF THE SERIOUS QUESTIONS CONCERNING CAUSATION, THE YANKEES' REQUEST THAT THEY BE PERMITTED TO RECOVER POST-COMPLAINT DAMAGES THROUGH 2001 FOR CONNECTICUT YANKEE AND YANKEE ATOMIC, AND THROUGH 2002 FOR MAINE YANKEE, WOULD RESULT IN AN AWARD OF COSTS BASED UPON COST ESTIMATES, RATHER THAN ACTUAL INCURRED COSTS . . . . . 7

III. THE YANKEES SHOULD NOT BE ALLOWED TO ALTER THE EVIDENTIARY RECORD IN CONNECTION WITH SUPPLEMENTAL POST-TRIAL BRIEFING . . . . . 10

A. The Yankees' Request To Expand The Limited Basis Upon Which Demonstratives Used In Its Rebuttal Case Were Admitted Into The Record Should Be Rejected . . . . . 10

B. Attachment Nos. A1, A2, A3, A10, And A11 – None Of Which Were Presented At Trial – Should Be Stricken From The Record . . . . . 11

IV. THE YANKEES' ASSERTION THAT THEY NEED PROVE THEIR DAMAGES ONLY TO A "REASONABLE CERTAINTY" HAS BEEN ADDRESSED IN THE GOVERNMENT'S PRIOR BRIEFING . . . . . 13

V. THIS COURT SHOULD NOT RETAIN JURISDICTION OVER THIS CASE UPON THE ENTRY OF ANY FINAL ORDER PURSUANT TO RCFC 54(b) . . . . . 15

CONCLUSION . . . . . 18

# TABLE OF AUTHORITIES

CASES PAGE(S)

Adams v. United States,
51 Fed. Cl. 57, 59 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bradford Trust Co. of Boston v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,
622 F. Supp. 208 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dawco Construction, Inc. v. United States,
930 F.2d 872 (Fed. Cir. 1991), overruled in part on other grounds,
Reflectone, Inc. v. United States, 60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . 14

Houston Industries, Inc. v. United States,
78 F.3d 564, 567 (Fed Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005), reh'g denied (Fed. Cir. Nov. 25, 2005) . . . . . . . 1, 4, 5, 6

Joseph Pickard's Sons Co. v. United States,
209 Ct. Cl. 643, 532 F.2d 739 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Newman-Green, Inc. v. Alfonzo-Larrain,
490 U.S. 826 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Wells Fargo Bank v. United States,
88 F.3d 1012, 1023 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MISCELLANEOUS

Restatement (Second) of Contracts § 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Second) of Judgments § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

RCFC 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5

RCFC 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15, 16, 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-126C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
POST-TRIAL BRIEF ADDRESSING IMPACT OF *INDIANA MICHIGAN*[1]

Defendant, the United States, respectfully submits this response to the "Supplemental Post Trial Brief Addressing Impact of *Indiana Michigan*" (the "Supplemental Brief"), filed by the plaintiffs, Yankee Atomic Electric Company ("Yankee Atomic"), Connecticut Yankee Atomic Power Company ("Connecticut Yankee"), and Maine Yankee Atomic Power Company ("Maine Yankee") (collectively, the "Yankees").

SUMMARY OF ARGUMENT

In addressing the effect of Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), reh'g denied (Fed. Cir. Nov. 25, 2005), upon this litigation, the Yankees' supplemental brief contains at least two significant errors. First, the Yankees have made a conscious and intentional decision not to submit any request for leave to file a supplemental or amended complaint pursuant to RCFC 15(d) in these three cases, through which they could seek permission to extend the date (beyond the original complaint filing date) through which damages may be considered by this Court. As we established in our December 6, 2005 supplemental

[1] The Government requests that this brief also be deemed applicable in Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C, and Maine Yankee Atomic Power Co. v. United States, No. 98-474C.

brief, the United States Court of Appeals for the Federal Circuit in Indiana Michigan has held that the "date of complaint" is the appropriate termination date for damages in a partial breach case. Accordingly, the Yankees' post-complaint damages claims in these partial breach cases are not properly encompassed within plaintiffs' existing complaints. According to the Federal Circuit, plaintiffs that allege a partial breach of contract, such as the Yankees, "must bring any future actions for damages related to DOE's breach of the Standard Contract" in a new complaint, filed within the appropriate statute of limitations. Id. Although the Yankees treat the filing of an amended or supplemental complaint as an unnecessary formality, the filing the amended or supplemental complaint is a jurisdictional prerequisite to this Court's consideration of any claims for damages incurred after the initial filing of the complaint.[2] Here, because the Yankees still have not made any request for leave to file amended or supplemental complaints in these three cases, there is no need for the Court to determine whether, if such a request was made, the extent to which it would be appropriate to grant it, in light of statute of limitations and evidentiary support issues that would complicate that request at this juncture. Instead, given that the only existing complaints were filed in 1998, damages in these three partial breach cases may only be awarded for costs incurred and caused by the Department of Energy's delay in beginning spent nuclear fuel ("SNF") acceptance through the date of the filing of those complaints.

Second, although the Yankees have sought to limit their damages award in these three cases to those claimed through the end of 2002 based upon their interpretation of Indiana Michigan, that request ignores the Federal Circuit's limitation of damages to those incurred

---

[2] As will be discussed below, the Yankees appear incorrectly to reject the idea that they have any obligation to file new actions as future claims allegedly arise.

through the filing of the complaint. Nevertheless, if the Court were to consider post-complaint damages in these cases, the Yankees' request that they be permitted to recover damages through the end of 2002, and their implication that all such costs claimed are actual incurred costs based upon actual documentary support, is misguided. Although the Yankees may have "treated" costs through 2002 as "past costs" for the purposes of trial, costs that post-dated 2001 for Connecticut Yankee and Yankee Atomic were simply cost estimates and were not actual past incurred costs for the purposes of the audit, discovery, or trial. To the extent that the Court considers post-complaint costs in these three cases, any consideration of damages after December 31, 2001 for Yankee Atomic and Connecticut Yankee would result in the award of costs that lack any actual documentary support.

Finally, the Yankees' request that the Court enter judgment upon their partial breach of contract claim under RCFC 54(b) and retain jurisdiction over these cases for the litigation of future claims as they arise is based upon the errant factual predicate that this case involves multiple post-complaint partial breach claims that somehow automatically become a part of this case, despite the absence of a supplemental or amended complaint pursuant to RCFC 15(d) adding them to the case. Any claims related to future costs that the Yankees have or that they may have in the future are not presently before the Court. There simply is no claim for post-complaint partial breaches over which this Court could somehow retain jurisdiction following entry of final judgment on the existing complaint. Moreover, the Yankees' request would render moot the Federal Circuit's admonition that the "date of complaint" establishes and defines this Court's jurisdiction and that new claims for post-complaint costs should be brought in a new complaint with the appropriate statute of limitations after they are incurred. To the extent that

the Yankees intend to seek to recover costs that they incurred after they filed their complaints or actually incur in the future, those future alleged damages must be sought in future cases instituted by new complaints. RCFC 54(b) was not intended to allow for the interminable litigation, unbounded by basic rules of pleading, that the Yankees seek here.

## DISCUSSION

### I. TO EXTEND THE DATE FOR DAMAGES BEYOND THE DATES OF THEIR COMPLAINTS, THE YANKEES MUST FILE AMENDED OR SUPPLEMENTAL COMPLAINTS SEEKING ADDITIONAL DAMAGES

Under Indiana Michigan, the Yankees' partial breach claims limit recovery of damages to those damages that pre-date the filing of their complaints. Indiana Michigan, 422 F.3d at 1376-77. In so holding, the Federal Circuit applied section 26(e) of the Restatement (Second) of Judgments, finding that, if a party elects to treat a breach as partial, "he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date." Id. at 1377 (quoting Restatement (Second) of Judgments § 26 cmt. g); see id. ("its damages were limited to those costs incurred prior to the date of its suit"). As we explained in our December 6, 2005 supplemental brief, the plain language of Indiana Michigan limits the Yankees' recovery to damages incurred prior to the dates of their respective complaints. See Def. Supp. Br. 3-6.[3]

In their December 6, 2005 supplemental brief, the Yankees assert that, in a filing in Wisconsin Electric Power Co. v. United States, No. 00-697C (Fed. Cl.), we suggested that "the Court retains substantial discretion to draw an appropriate line between 'past' and 'future'

[3] "Def. Supp. Br. ___" refers to defendant's supplemental brief, filed on December 6, 2005. "Pl. Supp. Br. ___" refers to plaintiffs' December 6, 2005 supplemental brief.

costs." Pl. Supp. Br. 3. The Yankees are taking our statements in the WEPCO case out of context. As we explained to the Court in WEPCO, RCFC 15 establishes a mechanism by which a plaintiff can seek leave from the Court to file a supplemental or amended complaint, which would allow it to extend the Court's jurisdiction, in a partial breach case, to damages claims incurred after the filing of its original complaint and prior to the date upon which it files its supplemental or amended complaint. In essence, this procedure effects the same result as if the plaintiff had filed a new complaint with the Court and then sought leave to consolidate it with the originally-filed case. Indeed, under Indiana Michigan, and to the extent that alleged damages beyond their 1998 complaints are sought, the Yankees could have taken this simple, yet essential, procedural step. See Indiana Michigan, 422 F.3d at 1378.

Although the Yankees apparently recognize that their claims should be limited to "past" costs, the Yankees steadfastly have refused to seek leave to amend or supplement their complaints. Indeed, even though this issue was one of the central focuses of our appellate briefing in Indiana Michigan (in which the Yankees participated as amici), and even though the Federal Circuit's decision in that appeal was issued on September 9, 2005, the Yankees still have made no effort to seek leave to file a supplemental or amended complaint. Instead, they continue to argue that every alleged damage that they incur after they filed their original complaints as a result of partial breaches that occurred after those complaints were filed somehow becomes a part of these cases and that this Court has the discretion simply to select a date by which to limit damages. The Federal Circuit's decision in Indiana Michigan, as well as the other authorities cited in our prior briefing on this issue, establish that the Yankees are incorrect. Although the rationale underlying section 26(b) of the Restatement (Second) of Judgments might support the

Yankees' theory, the Federal Circuit properly did not adopt that provision of the Restatement in considering partial breach claims. Instead, it adopted section 26(e), which limits jurisdiction in a partial breach to costs incurred prior to the filing of the complaint. The Yankees have identified no basis, in light of Indiana Michigan, for their argument that this Court may simply select some post-complaint date by which to conclude its damages award.

Further, contrary to the Yankees' arguments, the filing of an amended or supplemental complaint is not simply form over substance. As we established in our December 6, 2005 supplemental brief, this Court's jurisdiction is defined by reference to the partial breach, or partial breaches, that had occurred prior to the date upon which the Yankees filed their complaints. See Def. Supp. Br. 5 (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)). Here, the Yankees are seeking damages not only for damages incurred as a result of those pre-complaint partial breaches, but also for post-complaint partial breaches and costs incurred as a result of those post-complaint partial breaches. Under the breach of contract theory that the Yankees elected to pursue – a partial, rather than total, breach of contract – the damages that they may recover in this action are limited to those that were incurred by the time that they filed their complaints. Restatement (Second) of Judgments § 26(e). Without a supplemental complaint in this case, or a separately-filed complaint that is consolidated into this case, this Court lacks jurisdiction to consider the Yankees' post-complaint damages claims. To the extent that they want this Court to add post-complaint damages to this case, they should have sought, in a timely manner, leave to file a supplemental complaint seeking recovery of additional costs incurred between 1998 and either the date of the supplemental complaint or some date prior to the actual supplemental complaint filing date for which they had actual cost figures. The

Yankees have made no request for leave to file such a supplemental complaint, so it is not currently at issue in these three cases.

Further, the statute of limitations period for the recovery of costs post-dating the 1998 complaints directly is tied to the filing of any new complaint or any amended or supplemental complaint. Under Indiana Michigan, the Yankees – and all other plaintiffs in this Court that pursue claims founded upon partial breaches – must file new complaints within six years of the date that a cost to be sought as damage was incurred. Here, the Yankees seek damages that post-date the 1998 filing dates, but that fall outside the applicable six-year limitations period. Nevertheless, the Court need not consider this issue here, given that the Yankees have made a conscious decision not to seek leave to file supplemental or amended complaints in their cases. Without such a request, the only issue here is whether the Yankees can recover – in the existing litigation – post-complaint damages. Pursuant to Indiana Michigan, it is clear that they cannot. Accordingly, any damages award here cannot include costs incurred after the dates upon which the Yankees filed their complaints in 1998.

## II. OUTSIDE OF THE SERIOUS QUESTIONS CONCERNING CAUSATION, THE YANKEES' REQUEST THAT THEY BE PERMITTED TO RECOVER POST-COMPLAINT DAMAGES THROUGH 2001 FOR CONNECTICUT YANKEE AND YANKEE ATOMIC, AND THROUGH 2002 FOR MAINE YANKEE, WOULD RESULT IN AN AWARD OF COSTS BASED UPON COST ESTIMATES, RATHER THAN ACTUAL INCURRED COSTS

In their supplemental brief, the Yankees have requested that, based upon their incorrect interpretation of Indiana Michigan, they be permitted to recover damages through the end of 2002 because all such costs were treated as "past costs" at trial. As an initial matter, the Yankees' request is in direct conflict with the Federal Circuit's guidance in Indiana Michigan, which limits recoverable costs to those incurred as of the date of the complaint. Further, even if

the Court were to consider damages claims that post-date their complaints, the Yankees' supplemental brief omits any material discussion concerning their obligation to establish causation for their alleged "past" damages, which we discussed in our December 6, 2005 supplemental brief. The Yankees ignore the fact that, without their unsupportable reliance on exchanges or priority and regardless of the rate of acceptance applied by the Court, they have failed to establish that the Government's delay caused any of the damages that they have alleged to date.

Outside of these problems, the Yankees' brief incorrectly implies that all of their alleged damages through 2002 were "past" costs for the purposes of their presentation at trial in 2004. Throughout their supplemental brief, the Yankees repeatedly assert that damages "through 2002 were deemed, and labeled, 'past damages.'" See, e.g., Pl. Supp. Br. 4; see also id. at 11 ("damages through 2002 were treated as 'past' damages at trial"). However, the use of the words "deemed," "labeled," and "treated" does not mean that all of those costs actually were incurred costs based upon actual incurred-cost support for purposes of the Government's audit, for the operative discovery period, or for the evidence introduced at trial. In fact, the Yankees provided actual cost information to the Government against which discovery was taken, and an audit was performed through 2001 (for Yankee Atomic and Connecticut Yankee) and through 2002 (for Maine Yankee). See, e.g., Tr. 2982:16-25, 3247:25-3248:13, 3254:3-12, 3259:7-23. Actual cost information through these years likewise was provided as evidence to the Court at trial. For dates beyond December 31, 2001, for Yankee Atomic and Connecticut Yankee, all of the asserted "past" costs actually were only estimates. The Yankees' insinuation that the phrase "past costs" means "actual incurred costs with documented support" is incorrect, and their

suggestion that the Court's award of damages through the end of 2002 would be based upon actual incurred-cost support is wrong.

To the extent that the Court considers post-complaint damages, the Yankees' request that damages be awarded through the end of 2002 would continue to implicate the Government's continuing objections and attenuated evidentiary issues concerning plaintiffs' Exhibit Nos. YA1726, CY1726, and MY1726. As the Court may recall, the Government repeatedly objected to the admission of these three damages submittals upon, among other things, hearsay grounds. The Government's hearsay objections were founded upon the presence of estimated costs derived by employees of the Yankees – some of whom did not testify at trial – that post-dated 2001 (Yankee Atomic and Connecticut Yankee) and 2002 (Maine Yankee). Obviously, if the Court limits damages to the date of the filing of the Yankees' complaints, the issues implicated by the Government's objections to these exhibits largely disappear. In that event, and based upon the Court's findings concerning the rate of acceptance and the order in which the Yankees' SNF would have been accepted, costs that post-date the existing complaints filed in 1998 would be the subject of future litigation.[4]

[4] The Court's rejection of any post-complaint damages claims in these three cases does not necessarily mean that the Court would see new Yankee cases in 2007. If the Court rejects the Yankees' exchanges and priority theories and accepts that the Government is obligated to follow "oldest-fuel-first" acceptance queue set forth by the Standard Contract in accepting the various nuclear utility contract holders' spent nuclear fuel, damages could not begin to accrue until the final fuel-out dates dictated by the rate of acceptance set forth by the Court.

## III. THE YANKEES SHOULD NOT BE ALLOWED TO ALTER THE EVIDENTIARY RECORD IN CONNECTION WITH SUPPLEMENTAL POST-TRIAL BRIEFING

### A. The Yankees' Request To Expand The Limited Basis Upon Which Demonstratives Used In Its Rebuttal Case Were Admitted Into The Record Should Be Rejected

The Yankees' supplemental brief contains a three-page discussion of "evidentiary matters" that they apparently believe concern the instant briefing. Based upon the timing and content of the Yankees' argument, it is unclear what, if anything, the Yankees are seeking to accomplish through their "evidentiary" analysis. On its face, it appears that the Yankees are attempting to alter the evidentiary record in this case, stating that, although the Court allowed several demonstratives used with the Yankees' expert witness in its rebuttal case (identified at Attachments A4 through A9 of the Yankees' supplemental brief) to "accompany the record" based at least in part on the Government's non-opposition, the Court should expand the Government's non-opposition to mean, in reality, that it should now become substantive evidence. If that is the Yankees' intent, the Court should deny the Yankees' request to modify the record or alter the purposes for which any demonstrative was admitted at trial. Issues concerning the evidence or the trial record in this case should have been resolved at the close of trial in August 2004 or, at the very latest, at the end of briefing and argument in January 2005. The Yankees should not be allowed to alter the evidentiary record now or the purposes for which evidence was admitted based upon the Indiana Michigan decision.

Although the purpose of the Yankees' evidentiary discussion is unclear, to the extent that the Government consented to the admission of any demonstratives, that agreement only relates to the admission of the demonstratives used during the rebuttal case and to their admission for a

limited purpose. Indeed, it is clear from the testimony that the Yankees cite that the demonstratives at issue were generated after the Government's expert testified and during the Yankees' rebuttal. Moreover, any agreement by the Government not to oppose allowing the demonstratives to "accompany the record" was premised upon the desire to save time by eliminating the requirement that Dr. Wise read into the record the asserted damages amounts presented in the rebuttal case. The agreement does not mean that the demonstratives, admitted for that limited purpose, now can be used as substantive evidence supporting the Yankees' damages numbers. Further, they cannot become evidence of the dates upon which various damages were incurred where there is no other evidence in the record supporting those allocations.

B. Attachment Nos. A1, A2, A3, A10, And A11 – None Of Which Were Presented At Trial – Should Be Stricken From The Record

None of the summaries and/or tables that the Yankees have attached to their supplemental brief at Attachment Nos. A1, A2, and A3, and neither of the documents at Attachment Nos. A10 and A11, were presented at trial, much less admitted as exhibits at trial. In fact, it appears that the tables and/or summaries at Attachment Nos. A1, A2, and A3 were generated specifically for the Yankees' supplemental brief. Although the Yankees assert that the pages at Attachment Nos. A1, A2, and A3 merely summarize the rebuttal testimony of their expert witness, Mr. Wise, it is unclear whether all of the information that the Yankees present in Attachment Nos. A1, A2, and A3 was actually admitted at trial. Certainly, the Yankees do not cite to specific trial testimony or other evidence, other than the demonstratives attached to the Yankees' supplemental brief at Attachment Nos. A4 through A9, to support all of their new dollar allocations. Similarly, although the documents at Attachment Nos. A10 and A11 may be

duplicative of unidentified evidence in the trial record, the Yankees have not cited to the actual comparable trial evidence or explained why they need to attach non-record evidence to their supplemental brief.

Any decision by this Court should rely upon the evidentiary record before the Court at trial, not upon an analysis and purported summary of that record filed nearly 16 months later. With regard to the pages in Attachment Nos. A1, A2, and A3, it appears that the Yankees, without explanation, are seeking to modify, or at least supplement, the evidence with these tables, which is simply inappropriate at this stage of the proceedings in this case. See Bradford Trust Co. of Boston v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 622 F. Supp. 208, 214 (S.D.N.Y. 1985) (court should not grant motion to reopen trial record "unless the interests of justice require it, nor should any party be afforded such relief where it has not carried its burden of establishing that its failure to produce the evidence which it now seeks to offer was not the result of its own lack of diligence"). To the extent that there is record evidence supporting the Yankees' damages arguments, the Yankees should cite to that evidence. If there is not, the Yankees have failed to satisfy their burden of proof as to whatever information they did not present at trial. Because these documents were not presented at trial, they should be stricken from the record of this case.

The Yankees acknowledge that the tables attached to the August 11, 2004 letter from Jerry Stouck to Messrs. Lester and Crawford (Attachment No. A10) and the tables at Attachment No. A11 were not introduced at trial. Although it appears that some of the information reflects reductions that the Yankees made as a result of the Government's audit and case-in-chief, it is unclear whether Attachment No. A11 reflects the allegedly additional increased costs to the

Yankees beyond those costs submitted into evidence that the Yankees submitted into evidence at trial. As the Court may recall, during their rebuttal case, the Yankees attempted to submit evidence of additional costs that they had not presented during their case-in-chief, and this Court, after the Government objected, expressly excluded that evidence. See Transcript of Proceedings, dated August 25, 2004, at 7028:16-7043:11. To the extent that the figures represented in Attachment Nos. A10 and A11 constitute an attempt to increase the Yankees' damages beyond that supported by the record, the figures cannot constitute a basis for an award of damages. In any event, these documents should be stricken from the record, given that they were not admitted at trial, and any damages award in this case must be based upon the actual trial evidence.

## IV. THE YANKEES' ASSERTION THAT THEY NEED PROVE THEIR DAMAGES ONLY TO A "REASONABLE CERTAINTY" HAS BEEN ADDRESSED IN THE GOVERNMENT'S PRIOR BRIEFING

In their supplemental brief, the Yankees reassert an argument that they have previously raised: that they need only prove their damages with "reasonable certainty." We previously addressed the Yankees' contention that an approximation of damages is sufficient to meet their burden of proof. As we established in the Government's Response to Plaintiffs' Initial Post-Trial Briefs, filed on January 13, 2005, the Yankees have the burden to establish "reasonable certainty" as to each item within their damages claims. See Wells Fargo Bank v. United States, 88 F.3d 1012, 1023 (Fed. Cir. 1996); see Restatement (Second) of Contracts § 352 cmt. a ("[a] party cannot recover damages for breach of a contract for loss beyond the amount that the evidence permits to be established with reasonable certainty").

The Yankees' supplemental brief appears to reflect a concern that the Yankees' alleged damages are susceptible only to proof by an approximation. Further, it appears that the Yankees are unable to establish, under the present trial record, when many of their alleged costs were incurred (if they were incurred at all, given that, as discussed elsewhere in this response brief, the Yankees provided only cost estimates to support some claimed costs). As we discussed in our prior post-trial brief, the Yankees have repeatedly attempted to mix causation and "reasonable certainty" concepts, attempting to establish a rule that allows them to prove causation with "reasonable certainty," rather than by a preponderance of the evidence, and to avoid proving actual incurred costs with the best evidence available. To the extent that the Yankees are asking this Court to allow them to prove that costs were incurred prior to 1998, or prior to any specific damages cut-off date, with "reasonable certainty," rather than by reference to evidence of the actual date on which costs were incurred, the Yankees appear to be asking this Court to award damages under a jury verdict formula. Given that the Yankees have not identified the reasons that specific evidence of the actual dates upon which costs were incurred was unavailable at trial, they have not satisfied one of several requirements for a jury verdict award. Dawco Construction, Inc. v. United States, 930 F.2d 872, 881 (Fed. Cir. 1991) (italics in original; quoting Joseph Pickard's Sons Co. v. United States, 209 Ct. Cl. 643, 532 F.2d 739, 742 (1976)) (to use jury verdict method, plaintiff must establish, among other things, that "no more reliable method for computing damages" exists, including proof of "a *justifiable inability to substantiate* the amount of his resultant injury by direct and specific proof"), overruled in part on other grounds, Reflectone, Inc. v. United States, 60 F.3d 1572 (Fed. Cir. 1995). Because this Court is limited to considering actual past costs, incurred prior to the date of the filing of the

complaint, the Yankees' evidence must be sufficient to prove clearly the individual costs allegedly incurred as a result of the breach. If the evidence somehow is not clear, and if the Yankees need to supplement the record through their supplemental briefing to clarify their damages, the Yankees appear to have failed to present sufficient proof at trial, which cannot be cured at this stage of the litigation.

## V. THIS COURT SHOULD NOT RETAIN JURISDICTION OVER THIS CASE UPON THE ENTRY OF ANY FINAL ORDER PURSUANT TO RCFC 54(b)

The Yankees acknowledge in their supplemental brief that "the Federal Circuit has now ruled that claims for past damages in these spent fuel cases are distinct from claims for future damages." Pl. Supp. 16. Yet, the Yankees request that this Court enter judgment upon its "past costs" pursuant to RCFC 54(b), but "'retain jurisdiction' over [the Yankees'] distinct claims for 'future' damages after 2002." Pl. Supp. Br. 17. The Yankees' request misapplies RCFC 54(b) and conflicts with the Federal Circuit's Indiana Michigan decision. Additionally, the request contradicts the Yankees' position that supplementing or amending their claims is an unnecessary procedural formality.

RCFC 54(b) provides that, "[w]hen more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." RCFC 54(b). The Yankees' request for the entry of judgment pursuant to RCFC 54(b) is based upon critical factual error that is dispositive of their request. Although multiple distinct claims may be distinct in certain circumstances for the purposes of RCFC 54(b), see Houston Indus., Inc. v. United States, 78 F.3d 564, 567 (Fed Cir. 1996); Adams v. United States, 51 Fed. Cl. 57, 59 (2001), RCFC 54(b)

permits the entry of an order in an appropriate case "as to one but fewer than all of the claims" pending in the litigation. Here, there are no post-complaint breach claims pending in this case, beyond the 1998 filings. Even if the Court were to allow supplementation or amendment, the Yankees' request for a 2002 cut-off date demonstrates that claims which post-date 2002 are not pending before this Court in these three cases. The Yankees certainly pled multiple claims, including claims for partial breach of contract, takings, and restitution. However, they are not seeking the entry of final judgment upon the breach claim while the other takings and restitution claims remain active in this Court. Accordingly, any judgment will be final upon all claims that are properly before the Court in these three cases. To the extent that the Yankees wish to seek damages that post-date their existing complaints, those claims must be filed as new cases, in new complaints, within the appropriate statute of limitations.

The application of RCFC 54(b) also is belied by the Indiana Michigan decision. Specifically, in analyzing the recovery of future damages in future partial breach actions, the Federal Circuit held that "subsequent claims accrue for the purposes of the statute of limitations at the time such damages are incurred." Indiana Michigan, 422 F.3d at 1378. Accordingly, plaintiffs "must bring future actions for damages related to DOE's breach of the Standard Contract within six years of incurring such damages." Id. The Federal Circuit specifically envisioned that nuclear utility contract holders would file new complaints in future cases after additional costs are incurred as a result of future partial breaches by the Department of Energy. Under the Yankees' interpretation of RCFC 54(b), no new complaint need ever be filed. Instead, they apparently would, from time to time, reapply informally to the Court for additional

damages.[5] Such a result is not supported by Indiana Michigan or by an appropriate application of RCFC 54(b).

Finally, the Yankees' request for judgment pursuant to RCFC 54(b) contradicts their assertion that amendment, supplementation, or the filing of a new complaint is not needed to extend the dates of the alleged damages at issue here. Through their supplemental brief, the Yankees seek to render the unambiguous language concerning the timing for the filing of any action based upon future partial breaches in Indiana Michigan irrelevant. Specifically, it appears as though the Yankees believe that, in addition to having no obligation to seek leave to file supplemental or amended complaints, they have no obligation to initiate future partial breach actions with new complaints. Instead, and although the precise mechanism remains unclear, the Yankees appear to propose that, from time to time, they will return to Court in an interminable case to adjudicate any alleged future damages. Unexplained, and among other problems, is how this Court will retain jurisdiction over future partial breach claims that post-date the 1998 complaints and over which it currently lacks jurisdiction. Indeed, without a new complaint, no future partial breach action even is pending.

The Yankees' request is nothing more than an attempt to keep this case open indefinitely and seeks to eliminate any pleading requirements associated with new partial breaches that allegedly result in damages. Not only is the Yankees' request inconsistent with the plain

[5] The Yankees' concerns regarding the res judicata effect of any order are misplaced. While any decision of this Court concerning underlying causation issues – including exchanges, priority, failed fuel, and the rate of spent nuclear fuel acceptance – could be binding upon the parties in future cases, depending on the manner in which this Court resolves those issues, the Yankees, pursuant to the authority of Indiana Michigan, would not be precluded by res judicata from litigating alleged damages that, at the time of the filing of their complaints in these three cases, had not yet been incurred.

language of RCFC 54(b), it is contradicted by basic pleading requirements and by sound judicial policy which seeks finality of the matters pending before the Court.[6]

## CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court enter judgment in the Government's favor as set forth in this brief and in the Government's post-trial briefs.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

[6] If this Court were to accept the Yankees' theory and enter judgment under Rule 54(b), these three 1998 cases will remain upon this Court's docket indefinitely. We submit that any asserted inconvenience in filing a new action is nominal when compared with the burden upon the Court and the Government that would result in leaving these three cases open for the indefinite future.

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
RUSSELL A. SHULTIS
MARIAN L. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

January 5, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on this 5th day of January 2006, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL POST-TRIAL BRIEF ADDRESSING IMPACT OF *INDIANA MICHIGAN*" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.