IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically on April 17, 2006

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC CO., Plaintiff, | ) | No. 98-126C |
| v. | ) | (Senior Judge Merow) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

YANKEE ATOMIC'S REPLY ON ITS MOTION TO AMEND COMPLAINT[1]

It is now more than eight years since the filing of Yankee Atomic's complaint and almost two years since the start of trial in this case. Given that passage of time and all of the effort of the parties and the Court, Yankee Atomic moved for leave to amend its complaint in order to facilitate the Court's award now of the damages Yankee Atomic has incurred due to the government's partial breach of contract through 2002, while preserving Yankee Atomic's claim for damages incurred after 2002 in a subsequent round or rounds of litigation. Motions for leave to amend complaints – whether under Rule 15(a) or Rule 15(d), as explained in Yankee Atomic's opening submission – are freely granted. The government's opposition ("Govt. Resp.") supplies no meritorious basis to deny Yankee Atomic's request. Instead, the government's opposition primarily seeks to minimize the parties' and Court's efforts to date, arguing that the Court should limit consideration of damages to those incurred only up to the filing of the Complaint in

[1] This reply should also be deemed applicable to *Connecticut Yankee Atomic Power Co. v United States*, No. 98-154C and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C.9

February 1998 – less than one month after DOE's breach. The government's arguments against permitting leave to amend are meritless.

I. The Government's Statute-of-Limitations Argument is Without Merit

The government's primary response to Yankee Atomic's straightforward motion for leave to amend is that Yankee Atomic should be deprived recovery of damages it incurred due to the government's breach during the purported "gap" between the filing of the complaint and six years prior to the filing of the motion to amend. This refrain crops up in every segment of the government's opposition brief. S*ee* Govt. Resp. 6-11, 12-13, 14-17. It is also meritless, both as a substantive matter and as a basis for denying leave to amend.

Yankee Atomic fully addressed this purported "gap" issue in its motion to amend, *see* Motion to Amend at 6-10, and the government's own explanation of its argument highlights its lack of merit. For example, the government contends that the "incidents that Yankee attempts to encompass through its 1998 through 2000 damages claims" are "all . . . separate causes of action." *Id.* at 17. But Yankee Atomic's proposed amended complaint refers not to separately actionable, post-1998 "incidents" of government conduct, but rather to the continuing, post-1998 incurrence of *damages* by Yankee Atomic.

And in any event, as explained in the Motion to Amend at 9-10, even if the government's view of the accrual of Yankee Atomic's cause of action was correct, Yankee Atomic should still be granted leave to amend its complaint to avoid a jurisdictional gap in the Court's ability to provide an adequate remedy for the government's partial breach of contract. The government mentions *Intrepid v. Pollock*,

907 F.3d 1125 (Fed. Cir. 1990), *see* Govt. Resp. at 13, n.6, but the government fails to acknowledge the Federal Circuit's ultimate holding in that case – ". . . we hold that the trial court abused its discretion in refusing to allow the supplemental and amended pleadings." *Id.* at 1130. And the government does not even mention the other authorities cited in the Motion to Amend on this issue. *See* Motion to Amend at 9-10, citing *Mathews v. Diaz,* 426 U.S. 67, 75 (1976); *Black v. Secretary of Health and Human Servs.,* 93 F.3d 781, 790 (Fed. Cir. 1996).

Lacking any response to Yankee Atomic's motion, and fully aware that the strong weight of this Court's precedent counsels in favor of freely permitting leave to amend, the government resorts to arguing that the recent order in *Pacific Gas & Elec. Co. v. United States*, No. 04-0074C, slip op. (Fed. Cl. March 30, 2006) ("*PG&E*"), supports its position here. *See* Govt. Resp. at 9. But *PG&E* does nothing of the sort. Judge Hewitt read *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), as limiting consideration of damages in a partial breach of contract case to those incurred through the date of an amended complaint – a notion with which there is not universal agreement in the Court.[2] But more important for purposes of this motion for leave to amend, the Court in *PG&E* did not accord the significance to the filing of an amended complaint that the government argues for here. Notwithstanding the fact that the last amended complaint in that case was filed in January 2004, the Court decided that it would consider damages incurred through the end of 2004 at trial in June 2006 and that

[2] Judge Lettow, for example, has made clear that he disagrees with the government's reading of *Indiana Michigan* as limiting consideration of damages to only those incurred up to the time of an amended complaint. *See Systems Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.), Tr. of Hrg. of March 14, 2006 at 5-12 ("I just don't accept your reading of *Indiana Michigan* at all. I hate to say that, but it's just not plausible." Id. at 10-11), and Order of March 14, both attached hereto as Exhibit 1.

the Court would simply "deem plaintiff's complaint to be amended and supplemented" through the end of 2004. *See PG&E*, slip op. at 11. *PG&E* therefore supports leave to amend here – not the other way around.

II. <u>The Government Fails to Establish Grounds for Denying Leave to Amend</u>

The government attempts to fashion its argument regarding the statute of limitations as reflecting "futility" in the amendment, *see* Govt. Resp. at 14, but the government ignores the fact that its statute-of-limitations argument only applies to the supposed "gap" period. As explained in the Motion to Amend, even if the government's view of the accrual of Yankee Atomic's complaint were correct and even if there was a "gap" in the jurisdiction to award Yankee Atomic relief for damages incurred in the 1998-2000 period that could not be cured through amendment of the complaint, amendment would still be appropriate to address damages incurred after 2000. Thus, the government's "futility" argument is without merit.

The government also suggests that Yankee Atomic unduly delayed seeking leave to amend. *See* Govt. Resp. 18. But Yankee Atomic's motion was filed shortly after the hearing before this Court at which the amendment issue was aired, and just days after the time ran for the parties to seek additional review of *Indiana Michigan.* More fundamentally, the government does not attempt to explain how filing of Yankee Atomic's motion to amend a few days, a few months or even a few years earlier would have altered the conduct of the litigation. As the Federal Circuit explained in *Intrepid* in rejecting a similar argument that an effort to amend or supplement a pleading came to late, "[t]here is no reason to apply a statue of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it."

907 F.2d at 1130, *quoting Tiller v. Atlantic Coast Line R.R.*, 323 U.S. 574, 581 (1945). Here, the government has obviously been on notice of Yankee Atomic's claims against it since the outset of the litigation, and the government has had a full and fair opportunity to defend against those claims.

The government also asserts that it would be prejudiced through the amendment because it would result in the loss of a statute-of-limitations defense. *See* Govt. Resp. at 17. The government cites *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002) and *Phillips v. Ill. Central Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989) for the proposition that loss of a statute-of-limitations defense can constitute prejudice. Govt. Resp. at 17. But the government fails to inform the Court that the plaintiffs in those cases were seeking leave pursuant to Fed. R. Civ. P. 41(a) to dismiss without prejudice claims subject to statute of limitations defenses in the jurisdictions in which they had been filed so that the same claims could be refiled in other jurisdictions with more favorable limitations periods. 279 F.3d at 318-19; 874 F.2d at 985-86. Such forum-shopping concerns may well suggest prejudice. Those concerns also are totally inapplicable to Yankee Atomic's motion to amend its complaint under RCFC 15 here.

The government also complains that amendment to facilitate award of damages through 2002 is inappropriate, because Yankee Atomic only provided the government with cost estimates for 2002. *See* Govt. Resp. at 18-19.[3] This argument is hardly a ground for denying the Motion to Amend; it goes to the Court's exercise of its discretion

[3] The government's assertion that Yankee Atomic did not provide cost data relating to its 2002 damage claim is demonstrably wrong. This Court permitted the government the opportunity to conduct a thorough audit of Yankee Atomic's damage claim (and those of Connecticut Yankee and Maine Yankee). Those 2003 audits provided ample opportunity for the government to obtain data and other information pertinent to Yankee Atomic's claim for costs incurred in 2002.

to fashion an appropriate damage award. And the government's argument is wrong on its merits. Although Yankee Atomic's damage claim for 2002 is based on estimates, as we have explained previously, there is nothing wrong with basing a damages award on estimated costs. *See, e.g.*, Yankee Atomic's Supplemental Post-Trial Brief Addressing *Indiana Michigan* at 15. And contrary to the government's argument, *see* Govt. Resp. at 19, the Federal Circuit's decision in *Indiana Michigan* did not address this issue. The Federal Circuit's concern was whether the government might ultimately perform so that Indiana Michigan would never suffer any damages at all. 422 F.3d at 1376.

## Conclusion

Yankee Atomic has sought for eight years to collect damages due to the government's unquestioned partial breach of contract. The government's procedural arguments against amending Yankee Atomic's complaint are not only without merit, they also belittle the long efforts of the parties and the Court in resolving Yankee Atomic's damage claims. Yankee Atomic's Motion to Amend will efficiently provide a full record for review by facilitating the award of damages incurred through 2002 now while preserving consideration of future damages without causing the government to suffer any prejudice. The motion to amend should be granted.

Dated: April 17, 2006

Respectfully submitted,

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiff*
YANKEE ATOMIC ELECTRIC
COMPANY

Of Counsel:

Robert L. Shapiro
GREENBERG TRAURIG, LLP

# Exhibit 1

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEM FUELS, INC. AND<br>ENTERGY ARKANSAS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | {PRIVATE }<br><br><br><br><br>Docket No.: 03-2623C |

Pages: 1 through 39

Place: Washington, D.C.

Date: March 14, 2006

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEM FUELS, INC. AND ENTERGY ARKANSAS, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Docket No.: 03-2623C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Courtroom 6, Room 507
National Courts Building
717 Madison Place N.W.
Washington, D.C.

Tuesday,
March 14, 2006

The parties met, pursuant to notice of the Court, at 10:00 a.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:

For the Plaintiffs:

ALEX D. TOMASZCZUK, Esquire
JACK Y. CHU, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7940

APPEARANCES: (Cont'd.)

For the Defendant:

JOSHUA E. GARDNER, Esquire
HAROLD LESTER, Esquire
KEVIN CRAWFORD, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7583

Case 1:04-cv-00126-ECH Document 90 Filed 03/27/2006 Page 13 of 41



P R O C E E D I N G S

(10:00 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Charles Lettow presiding.

THE COURT: Please be seated. Not that I brought in half the library, but I just thought a little reference help might be needed.

Good morning. The case before the Court this morning is System Fuels, Inc. and Entergy Arkansas, Inc. v. United States, No. 03-2623.

For the record, Mr. Tomaszczuk, would you introduce yourself and your colleague?

MR. TOMASZCZUK: Yes, Your Honor. Good morning. This is Alex Tomaszczuk of the law firm Pillsbury Winthrop Shaw Pittman, and I represent the Plaintiffs here today, Systems Fuel, Inc. and Entergy Arkansas, Inc., and with me is my associate, Jack Chu.

THE COURT: Welcome.

Mr. Gardner, would you introduce yourself and your colleagues?

MR. GARDNER: Yes. Josh Gardner on behalf of the United States. With me today is Harold Lester and Kevin Crawford, both from the Department of Justice.

THE COURT: Welcome. It's good to see everyone again.

We have in hand a motion for reconsideration. It's actually partial reconsideration. The Court had denied it in part and deferred action in part. The outstanding issue is the time period to be covered by the claims of damage at the trial that is forthcoming in February.

The Court has, as you might imagine, reached some tentative conclusions in that regard, but they are still very tentative. We'd like to hear from counsel, which is why this hearing seemed appropriate.

Mr. Gardner, I wonder if you'd proceed?

MR. GARDNER: Thank you, Your Honor. May it please the Court.

Frankly, Your Honor, the government does not have much to say outside of the subjects that we briefed, but I think maybe highlighting some particular portions of what we briefed and then being available to answer questions might be the best approach in this case.

In Indiana Michigan, the Federal Circuit articulated a bright line rule for establishing the scope of damages in a partial breach case such as this one. Specifically, the Federal Circuit held that

partial breaches, such as the one in this case, fall under Rule 26(1)(e) of the Restatement 2d, Judgments, rather than 26(1)(b).

The Federal Circuit explained that pursuant to 26(1)(e) under a claim for partial breach of contract damages are limited to the date of suit and further referred to comment G of that same section, which defines the date of suit as the time of the institution of the action.

Here, absent a motion for leave to file a supplemental or amended complaint, the scope of damages in this case should be limited to the time of the filing of SFI's current amended complaint, which currently is May 13, 2005.

THE COURT: Mr. Gardner, just at the outset the Court doesn't agree with your fundamental premise. We might as well start there.

MR. GARDNER: Okay.

THE COURT: You're taking the decision in Indiana Michigan as if it was a single note on this issue. It isn't.

I'm going to read you from the decision. It's 422 F.3d 1378. "We agree with the exceptions to the rules of mergers and bars set out in Restatement 2d, Judgments, Sections 26(1)(b) and (e)," and then it

goes on to say, "Indiana Michigan's grievance falls within subsection (e)'s exception for injury experienced during the execution phase of a continuing contract. Because it has sued for partial breach, ongoing obligations exist for both parties."

The reason it couldn't take any action under 26(1)(b) of the Restatement is that that portion of the Restatement is reserved for the Court, not the parties. (e) is reserved to the parties. I'm just going to read 26(1)(e).

26(1)(e) says, "For reasons of substantive policy in a case involving a continuing or recurrent wrong, the Plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of the suit and chooses the latter course." That's an option that the Plaintiff has.

26(1)(b) doesn't say that. It says, "The Court in the first action has expressly reserved the Plaintiff's right to maintain the second action." I did that.

MR. GARDNER: I understand, Your Honor, and maybe to address your question --

THE COURT: I'm just saying the Court in Indiana Michigan could not have issued any ruling

based on 26(1)(b) even though it expressly said it agreed with the exceptions to the rules of merger and bar stated not only in that portion of the Restatement, but in 26(1)(e) because the Court hadn't acted under 26(1)(b).

Let's just start from that premise, Mr. Gardner.

MR. GARDNER: That's fine, Your Honor. I'm happy to address that premise.

I think let's go back to first principles and what is the underlying purpose behind 26(1)(b) versus 26(1)(e). I think what's helpful here is to refer to Section 25 of the Restatement 2d, Judgments, which gives illustrative examples as to when 26(1)(b) would be applicable.

The examples it gives of when 26(1)(b) would be applicable deal with a very different situation than partial breaches. That deals with alternative claims for damages.

For example, one of the illustrations it gives is when a party brings a claim for breach of contract and as an alternative a claim for restitution, and at the time of trial the Plaintiff realizes or recognizes that the breach of contract claim the Plaintiff will not be able to satisfy its

burden of proof and so that it may then ask to supplement the complaint and make a claim for restitution.

If the Court were to deny such supplementation then the Plaintiff may be able to request from the Court under 26(1)(b) the right in the final judgment to come back at a later time and make a claim for restitution based upon those same facts and circumstances that supported the breach.

THE COURT: Mr. Gardner, those circumstances -- and I recognize that you're right; I was looking at comment F to Restatement Section 25 earlier -- just don't have any bearing on this situation.

MR. GARDNER: I agree, Your Honor.

THE COURT: In fact, the key problem here and the one reason I was interested in hearing you is that we really have to have an agreed or understood -- one or the other -- cutoff date for the damages to be put forward at trial such that both sides have a full and fair opportunity to address damages.

As you're well aware and as Mr. Lester and especially Mr. Crawford are well aware, the Court had that situation in Tennessee Valley Authority. That's because the date of the prior cutoff for the fiscal year for Tennessee Valley Authority was approximately

nine and a half months before trial.

MR. GARDNER: That's correct.

THE COURT: It gave people an opportunity to look at the accounting system from the perspective of completed records of costs and expenses. There was no misunderstanding in Tennessee Valley Authority about what was going on.

The Court doesn't want any misunderstanding in this case. The question is whether or not the government would be prejudiced by going to trial in February when the cutoff date was December 31.

MR. GARDNER: Well, the direct answer to that question, Your Honor, is yes, we would be prejudiced.

Again, as you just mentioned, there were approximately nine and a half months between the scope of damages cutoff in TVA and the date of trial. In this case we're talking about six weeks between the end of cutoff damages and the beginning of trial.

I think what's important to note here is in TVA this Court focused upon the notion that TVA's damages would be audited because it limited it to its most recent fiscal year.

In this case we're not going to have audited damages for the entirety of 2006 by the time of trial

in February 2007. Not only that; I mean, all these costs, at least a portion of them in 2006, will be complete estimates.

THE COURT: Well, you don't know. Whatever happens, they're not going to be estimates.

Let's just start from the premise that you have to deal with audited financials. That's not necessarily so. What you have to deal with though are real numbers, and you have to have an opportunity to examine those numbers. That's what the Court is concerned about.

Let's just start from another foundation. From all the developments recently, it appears that these cases are going to be going to trial or you're going to have to settle them, one way or another, on a fairly regular basis.

Every six years, as things keep rolling along now, we're going to be having these damage trials. Let's not put everyone in a position where we don't have adequate ground rules.

MR. GARDNER: I agree, Your Honor, and that is why I think we look to Indiana Michigan and the bright line rule it articulates. I understand this Court disagrees with that premise.

THE COURT: Mr. Gardner, I just don't accept

your reading of Indiana Michigan at all. I hate to say that, but it's just not plausible.

MR. GARDNER: Whether or not the Court agrees with the government's interpretation of Indiana Michigan, the government certainly agrees with you that there should be ground rules.

We believe Indiana Michigan constitutes such ground rules, but to the extent the Court disagrees there needs to be something there, some certainty, some bright line that both parties in all these cases can agree upon going forward.

THE COURT: The Court accepts that principle. That's why we're here today.

MR. GARDNER: Understood, Your Honor. Again, the government's position obviously is that Indiana Michigan creates those ground rules.

Putting that to one side, understanding your disagreement with that, then I think we're left in a bit of a quandary.

THE COURT: It's not disagreement. I just think you're wrong in reading Indiana Michigan. I'm sorry. It's that simple.

MR. GARDNER: I understand, Your Honor.

THE COURT: I had decided TVA before Indiana Michigan or the first TVA decision before Indiana

Michigan came up, and the Court was well aware in Indiana Michigan of what this Court had done in Tennessee Valley Authority. It's that simple.

MR. GARDNER: I understand. Then I think going to the next level there needs to be some ground rules.

The government has never opposed the filing of supplemental or amended complaints when it doesn't prejudice the government.

THE COURT: I'm just saying they are not necessary when action has been taken under Restatement 26(1)(b). The question though is in this particular case because of the timing of trial whether the appropriate cutoff is the end of the fiscal year prior to trial.

MR. GARDNER: To answer that question directly, the government's view is it is not.

THE COURT: What do you think the appropriate cutoff is?

MR. GARDNER: We talked about this internally, and it was a little abstract because we did believe there was a requirement -- we do believe there is a requirement -- that a plaintiff files a supplemental complaint.

Putting that to one side, we do think that

there is a utility in having audited financials from the Plaintiff because absent that the government is going to have to go in and audit those financials.

THE COURT: You had to in Tennessee Valley Authority anyway.

MR. GARDNER: To a limited extent that's correct, although with the nine months preceding trial at least we had something more definitive than six weeks after the cutoff of damages to begin proceeding to trial.

I think an important point, at least two important points. One, the fact that a plaintiff like SFI is going to claim that it has costs as of December 2006 doesn't mean that it's necessarily incurred those costs. It takes time to go through billing. Sometimes we've experienced two months between the receipt of an invoice and the payment of those invoices.

THE COURT: So you're saying an accrued cost is not a cost? It actually has to be a paid cost?

MR. GARDNER: I'm saying it has to be an incurred cost for the government to determine whether or not --

THE COURT: That's not what I asked.

MR. GARDNER: Okay.

Case 1:94-cv-00174-EHM Document 130 Filed 03/17/2006 Page 24 of 41



THE COURT: Are you denying an accrual basis, and you're saying a bill has to be paid?

MR. GARDNER: I think the government's view is that certainly we would expect to see that a cost has been incurred; that something has been paid.

THE COURT: Now, they're different. Whether or not something has been incurred for accrual and on a cash basis are quite different, Mr. Gardner.

MR. GARDNER: I understand that, Your Honor.

THE COURT: Give me an answer to my question.

MR. GARDNER: I frankly cannot, sitting here right now, tell you what the government's position is with respect to accrual or cash basis. I'm not sure that I've sufficiently thought that out.

THE COURT: Well, it came up in Tennessee Valley Authority, but I think the question was satisfied on either ground. I really would like an answer.

MR. GARDNER: I'm not trying to be coy with you, Your Honor. I am telling you that I haven't sufficiently thought that out to give you an articulable position. I apologize.

I can go back, and I can get you that answer. I can file something supplemental.

THE COURT: Let's go back to the question of what you think an appropriate cutoff date is.

MR. GARDNER: I would think that December 31, 2005, the end of their most recent audited financials prior to trial, would be appropriate.

THE COURT: So System Fuels and Entergy Arkansas have to bring another suit before the end of 2011? Wait. 2010.

MR. GARDNER: 2010 I believe would be correct.

THE COURT: Okay.

MR. GARDNER: No. No. I believe it is 2011.

THE COURT: Well, let's just find out. You said December 31. When you said 2005, it's not 2005. It's 2004. 2005?

MR. GARDNER: No. I do mean December 31, 2005. That would be the most recent audited financials we would receive prior to the 2007 trial.

THE COURT: So it is 2011.

MR. GARDNER: That's correct.

THE COURT: They would have to bring another suit before December 31, 2011, either another suit or they'd have to file a supplemental complaint, one or

the other.

MR. GARDNER: I believe that to be the case, Your Honor, yes. I think that to the extent the Court believes there needs to be a reasonable cutoff other than Indiana Michigan, I think that strikes a balance between prejudice to the government and prejudice to the Plaintiff.

We recognize that these are continuing breaches, and Plaintiffs are going to continue to come back presumably to claim future costs. At the same time, the government needs some certainty that these costs were incurred, and I think that would strike an appropriate balance focusing on the audited financials that a particular utility has.

THE COURT: Why do you need audited financials when you are going to go back in and look anyway?

MR. GARDNER: Well, I think that goes to the nature of what we're looking at. When you have audited financials from a Plaintiff, all the government needs to do at that point, to my understanding, is we call it ticking and tying. We're making sure the invoice goes to the payment, the journal voucher or what have you.

That process, it's my understanding, and I'm

Case 1:94-cv-00074-FCM Document 130 Filed 03/27/2006 Page 27 of 41



not an accountant, is significantly easier when you have the company that has audited the financials. They're all right there, and it's a pretty straight line.

THE COURT: That has a lot to do with the company's accounting system. It doesn't have to do with whether they're audited or not, Mr. Gardner.

MR. GARDNER: Well, I do think it's a little bit of both. Again, I am not an accountant. I don't represent to know a lot about accounting principles, but I do understand from the accountants I've used in past cases that they believe it is significantly easier to determine whether these costs were incurred when we have audited financials.

THE COURT: You don't believe in 10-Qs or something like that?

MR. GARDNER: Do I believe in them? They are what they are. Do I think that a 10-Q is a reasonable basis to determine that a claim has been incurred? I don't know the answer to that.

THE COURT: The SEC views them as appropriate information for investors in public companies.

MR. GARDNER: That's true, Your Honor, but I'm not sure though that that necessarily takes to the

next step that that is an appropriate basis for determining damages.

THE COURT: For damages?

MR. GARDNER: I don't know. I have not looked at that issue, but I don't think that to be the case necessarily.

THE COURT: I'm satisfied you don't know, Mr. Gardner.

MR. GARDNER: Excellent. I really don't have much else to say other than I don't believe that bringing damages to the end of 2006 for a February 2007 trial is appropriate. I think it will prejudice the government. We will not have a sufficient time to --

THE COURT: Let me tell you what the Court's concern is.

MR. GARDNER: Okay.

THE COURT: The discovery cutoff is September 1.

MR. GARDNER: November.

THE COURT: November.

MR. GARDNER: November 3. We amended the scheduling order.

THE COURT: Don't tell me I'm a little behind on that.

MR. GARDNER: Approximately I believe six weeks ago we amended the scheduling order.

THE COURT: You're right. There's a distinction between the order that was entered on the 20th of January, which was September 1, and that which was amended on January 23, which applies November 3.

We're talking about fact discovery in that respect, correct?

MR. GARDNER: It's actually both, Your Honor. Fact and expert discovery close at the same time.

THE COURT: But you understand I'm concerned about fact discovery?

MR. GARDNER: Yes. I understand.

THE COURT: What experts have you identified, Mr. Gardner?

MR. GARDNER: We have not yet. Our obligation to identify experts is I believe in July, if I'm not mistaken, in this case.

THE COURT: Service of the expert reports, July 11.

MR. GARDNER: Yes.

THE COURT: Is that correct?

MR. GARDNER: I believe that to be correct, yes.

THE COURT: Do you plan on having an accounting expert or someone who will examine the damage claims?

MR. GARDNER: Yes, sir. In fact, I can represent to you we've already begun that process. We've been working cooperatively with Plaintiff to get an understanding of their accounting system to start tracking the costs. We have begun that process already.

THE COURT: What would happen if the Court contemplated that a midyear cutoff, that is something in the range of June 30, would be more appropriate?

MR. GARDNER: I'm sorry. May I have one moment, Your Honor?

THE COURT: Yes. Certainly.

(Pause.)

MR. GARDNER: I think Mr. Lester and I had the same thought. The only problem with doing that is then we'll have to issue supplemental reports more likely than not because our reports are due in July. The damages are going to cut off in June. There's going to be that overlap.

I think that one consequence is we either move back the expert discovery, which I'm not sure SFI is going to want to do, or we move the date up a

little further.

THE COURT: Well, you have a date of August 11, 2006, for exchange of any expert rebuttal reports.

MR. GARDNER: I believe that to be the case, yes, although I don't know that our doing a supplemental report is necessarily rebuttal.

THE COURT: I'm just trying to sort through a set of questions involving the particular dates. All right.

MR. GARDNER: Thank you, Your Honor.

THE COURT: Thank you, Mr. Gardner.

Mr. Tomaszczuk?

MR. TOMASZCZUK: May it please the Court. Just a few words about the law, and then we can talk about what I understand to be some of the Court's more practical concerns.

Number one, it has seemed to us that this Court's April 20, 2005, decision is fully consistent with the Federal Circuit decision in Indiana Michigan, and in that regard I would like to quote from the Federal Circuit decision in Indiana Michigan.

I'm specifically quoting at 422 F.3d 1377, the page previous to that cited by the Court in its remarks, where the Federal Circuit stated at the

beginning of a paragraph, "Indiana Michigan can, however, obtain recovery for postbreach damages as they are incurred."

The government, in its motions and in its filings in other spent nuclear fuel cases, consistently ignores that language. As they are incurred I think connotes just what the Court appears to be suggesting here today; that the cutoff is not the bright line rule that Mr. Gardner articulated of the filing of a complaint or amended complaint, but some reasonable date on which the parties can agree or the Court can impose to allow the government to conduct discovery and at the same time let Plaintiff recover those costs at some point prior to trial consistent with what I think is the underlying ruling of the Federal Circuit in the Indiana Michigan case.

I would note -- I'm sorry to report I was the trial attorney in Indiana Michigan -- indeed we tried before Judge Hodges damages not only after the date of the complaint up to the date of trial, but beyond that.

Now, that's what the Federal Circuit held we could not do in a partial breach case; that the cutoff date is some date prior to trial to allow the Plaintiff to recover damages as they are incurred.

That's what the Federal Circuit, we submit, held.

THE COURT: One of the problems in these cases, as you're well aware, Mr. Tomaszczuk, is that one has absolutely no idea when DOE is going to begin performance.

MR. TOMASZCZUK: That is a fair observation, and it's a problem for operating utilities like those here before the Court today.

I think the Court ought to be informed by the first rule of this Court's rules, which in pertinent part says that the rules ought to be construed to allow for the just, speedy and inexpensive determination of every action.

I think that the Court has to recognize, number one, that the Plaintiffs are the non-breaching parties; number two, that there's incredible uncertainty with respect to when DOE is going to begin to perform; number three, that these cases are very expensive for any individual plaintiff to begin; and, number four, in the interest of the efficiency of the Court it seems to me that some date close to the date of trial ought to be established so that the Plaintiffs can recover as much as they can in an individual action and defer having to file suit every other year.

For example, if substantial costs are incurred in a future year you don't wait five years. You file suit to recover those costs as they are incurred.

I think from the standpoint of the Court wanting to administer its docket and not be inundated with these cases it makes some sense for the Court to establish not a bright line rule of the filing of the complaint, but some reasonable point in time where the government can conduct discovery and the Court can have some certainty that the costs were indeed incurred.

THE COURT: Well, the Court is interested in shall we say efficiency and efficiency derived from a common understanding of what the cutoff date is because it puts everyone in a position where they can plan well in advance for their damages case on the part of the Plaintiffs and the defense case on the part of the government and have a relatively quite organized presentation.

I was fortunate, and I hate to use a personal pronoun, but this Court was quite fortunate in having that circumstance in Tennessee Valley Authority. Counsel, and one of them is sitting in this Court today, were very organized about what they

were doing, and that's what this Court has in mind by holding this hearing so that we get ourselves on a common footing.

MR. TOMASZCZUK: And we don't dispute that, Your Honor. Indeed, I would note that in other cases we have agreed with the government on a common cutoff date.

I would also say, number one, that I don't know exactly what Mr. Gardner means by audited financials. I mean, we have presented to the government already a very detailed expert report which is backed up by books and records of the Plaintiffs which establish what damages they're seeking in this case.

If I were to bring them in here they would be stacked up pretty deep, so already the government has substantial knowledge about what the damages claims in this case are.

I can also say that in one of the schedules in those workpapers there is a fairly detailed estimate, which is what we had to do at the time, of projecting costs from January 2006 through December 2006. Those costs total in this estimate $10,037,000.

THE COURT: $10 million?

MR. TOMASZCZUK: $37,000.

THE COURT: And that was from what date to what date?

MR. TOMASZCZUK: Those were the 2006 estimated costs. They're broken down into four or five definite categories.

Dry cask procurement. We know we're going to have to purchase casks for the dry storage facility, and the cost estimated for that was $5.4 million. The government has these figures. Their experts have had these figures for several months. There was a cost estimate for dry cask loading, $614,000.

THE COURT: When is the projection for dry cask loading?

MR. TOMASZCZUK: These figures, Your Honor, all refer to the period January 2006 through December 2006.

THE COURT: That's very helpful, Mr. Tomaszczuk, but the problem is, and Mr. Gardner helpfully corrected me on the fact discovery cutoff date. It's not September 1. It is November 3.

Some of the damages would actually be incurred, to use Mr. Gardner's word, after the factual discovery cutoff date. That's what is bothering the Court.

MR. TOMASZCZUK: Well, my client will beat me over the head with a hammer. Then we need to pick a date that the Court feels will allow the government to conduct discovery.

Again, I don't know about this term audited financials, but in terms of --

THE COURT: Well, we'll pass that.

MR. TOMASZCZUK: -- reasonable discovery about the books and records that support the claim that's before the Court. That's what we're talking about.

THE COURT: Is System Fuels part of a public company such that it files quarterly reports, as well as annual reports?

MR. TOMASZCZUK: Mr. Smith is not here today. Certainly Entergy does. Whether or not Systems Fuel does I wouldn't want to misrepresent without confirming that.

THE COURT: Then the best the Court can come up with, given the factual circumstances that you're talking about and that Mr. Gardner talked about, would be a midyear cutoff -- that is, June 30 -- because that ought to give the government's people and your people a chance to compile actual incurred costs through that half year.

There might have to be some supplementation, but as long as the supplementation is within the bounds of the prior report it doesn't seem to be a big problem.

I don't know what else to do in this particular case, Mr. Tomaszczuk.

MR. TOMASZCZUK: Well, that's certainly preferable to delaying the trial, which we would not want to do. If that's the Court's ruling then we'll accept that and live with it.

That gives us, I would note, four months -- July, August, September, October -- to conduct any discovery with respect to those costs.

THE COURT: It's also seven and one-half months prior to trial, and that's something that seems entirely feasible given the Court's prior experience in the Tennessee Valley Authority case --

MR. TOMASZCZUK: Right.

THE COURT: -- where it was roughly nine and a half months prior to trial. It just wasn't a problem.

MR. TOMASZCZUK: Your Honor, I would have to say I would note, with all due respect to counsel for the government, one would think that they've tried several of these cases. By now I think they

understand what these costs are. They're dry storage facility. They're reracking. There's costs associated with loading and moving casks. There may be some modifications to the plant.

You know, there's about five or six categories, and they come up again and again and again and again. The notion that the government can't possibly be ready for a trial in February if that's the cutoff date is incomprehensible to me, with all due respect.

THE COURT: Well, the Court is going to have to get used to trying these cases on a fairly regular basis because these aren't going to go away the way the circumstances are playing out.

MR. TOMASZCZUK: No, they're not.

THE COURT: We might as well get used to it now. Part of getting used to it is setting reasonable ground rules that accommodate the needs of the parties. That's why we're here today.

You think that something along the lines of a cutoff on June 30 would be acceptable, even though you don't want it? That's too strong. You don't prefer it?

MR. TOMASZCZUK: That would be an accurate statement, Your Honor. I think we could live with it,

and we will live with it even though we'd just as soon capture those costs through the end of the year. I understand what the Court's concerns are, and we'll proceed accordingly.

THE COURT: Let's stop a minute. Do you want to actually file an amendment to the complaint or it's actually more like a supplemental complaint than an amended complaint because the facts are the same. You basically just pick up an additional quantum of damages.

MR. TOMASZCZUK: Probably in an exercise of caution we will do that here, but I would not do that until we get closer to the date that the Court has established because if the cutoff date is June 30, 2006, then I would probably want to file that amended and supplemental complaint in July to make sure I captured those costs to obviate any argument by the government that I couldn't recover those costs because I hadn't filed a complaint capturing them.

THE COURT: That's a prudent thing to do. Mr. Gardner has made his argument. The Court has been fairly explicit about what it thinks of that argument, but in any event the Court of Appeals might have a different view and so that's definitely a prudent course, Mr. Tomaszczuk.

MR. TOMASZCZUK: That's what I have concluded, Your Honor, so I think we would file such a motion for leave to file an amended supplemental complaint. If the cutoff date is June 30, we would file that in July of 2006.

THE COURT: Thank you very much.

Mr. Gardner?

MR. GARDNER: We have nothing further, Your Honor.

THE COURT: Well, I'd like to visit with you a moment or so though.

MR. GARDNER: Okay.

THE COURT: What happens when Mr. Tomaszczuk on July 10 -- whatever in July -- comes up with a motion for leave to file a supplemental complaint?

MR. GARDNER: What happens, Your Honor?

THE COURT: What position does the government take?

MR. GARDNER: Your Honor, I don't know sitting here right now. I do know that this June 30 cutoff is going to create some problems for the government in terms of now having to do a second expert report, whether we call it supplemental rebuttal or what have you.

I also think that we're going to need a bit

of an assurance that after June 30 we're going to promptly get those invoices and those documents that will support the claimed costs because I think that is obviously going to be a concern to the government.

Now, what position we take on whether or not they're allowed to amend their complaint, I don't know sitting here right now. I would have to think about it, and that's the best answer I can give you.

THE COURT: Well, you have three and a half months' notice that this is going to happen, or at least say four months' notice this is going to happen.

MR. GARDNER: Yes.

THE COURT: There are all sorts of opportunities to plan ahead.

MR. GARDNER: That's correct.

THE COURT: There shouldn't be any surprises here.

MR. GARDNER: No, I don't think there will be a surprise. It's really just going to come down to whether or not the government is prejudiced by having a discovery cutoff or a claimed damages cutoff that is June 30.

Frankly, sitting here right now I don't know the answer to that. I'm going to have to talk to my auditors. I'm going to have to talk about it

internally with people at a higher pay grade than myself frankly.

THE COURT: Do you think there's a difference between the seven and a half months prior to trial that you would have incurred costs in this case and the nine and a half months in <u>Tennessee Valley Authority</u>? Do you think two months makes a difference?

MR. GARDNER: I don't know, Your Honor. Let me just explain something.

You know, Mr. Tomaszczuk said the government should be familiar with the costs these Plaintiffs have incurred. Certainly in terms of the types of costs we've obviously seen dry storage costs. We've seen O&M costs before, but that doesn't mean that we don't have to determine that a particular Plaintiff actually incurred the costs they're claiming. That takes time.

THE COURT: That's why I asked you earlier about accrual and cost basis plaintiffs.

MR. GARDNER: I understand, Your Honor.

THE COURT: I mean, I can't imagine that there's a difference.

MR. GARDNER: I would hate to give you a hasty answer that's incorrect. I would rather give

you a thoughtful answer that is correct. I just can't do that sitting here right now, so unless the Court has further questions --

THE COURT: All right. So you object to a cutoff of June 30?

MR. GARDNER: When Plaintiff files a supplemental or amended complaint shortly after June 30, I think the government can take a position then as to whether or not we would oppose that supplementation or not.

Again, I don't know, one, if our accountants can do this; two, how that's going to impact discovery, so it's difficult for me to sit here right now and tell you that.

I'm not trying to be coy or difficult. I just don't know the answer.

THE COURT: I take it you also would object if the Court exercised what authority it thinks it has under Indiana Michigan and Restatement of Judgments 26(1)(b) to set a cutoff date of June 30, 2006? That would give you an appellate issue you could talk about to the Court of Appeals.

MR. GARDNER: We don't believe that it is appropriate under Indiana Michigan to allow for a claim of damages that postdates the complaint.

Case 1:94-cv-00076-EJW Document 139 Filed 03/27/2006 Page 43 of 51



THE COURT: Well, this Court is inclined to give the Court of Appeals issues only when it has to.

MR. GARDNER: Understood.

THE COURT: In this particular instance Mr. Tomaszczuk is going to take a prudent course and obviously is going to move to amend or supplement the complaint in July. You can file what you want to file then, Mr. Gardner, and I'm sure you will.

MR. GARDNER: Understood.

THE COURT: It just seems appropriate in this case to go forward with the preparations for trial on the assumption that June 30, 2006, is going to be the end date for the damages and proofs that will be put forward at trial and that the government is asked to defend.

MR. GARDNER: We understand. We understand. Thank you, Your Honor.

THE COURT: Is there anything further?

MR. GARDNER: We have nothing further on our end.

THE COURT: All right. Mr. Tomaszczuk?

MR. TOMASZCZUK: I would just ask, Your Honor. The Court will enter an order to that effect, I presume?

THE COURT: I will not. Well, let me

discuss that with you.

I guess at this point what I was inclined to do is just to deny the deferred part of the motion for reconsideration. I just don't want to make an appellate issue out of a Court action under 26(1)(b) when it doesn't seem necessary.

On the other hand, here we are on March 14, and the transcript of this hearing will provide everyone with notice about what the expectations are.

Do you propose something different, Mr. Tomaszczuk?

MR. TOMASZCZUK: I think that's fine, Your Honor.

I am concerned, I should have to say, about the government opposing our motion when we file it, and my guess is they will couple it with a motion to extend the trial date.

I'm adamantly opposed to that, Your Honor, because I think this Plaintiff ought to be entitled to present its damages case, and whatever the cutoff date is I personally think June 30 is quite reasonable, but I fear we'll be back before this Court arguing about the propriety of our motion to amend and whether the trial ought to be moved.

THE COURT: I doubt that, Mr. Tomaszczuk,

because we have pretty good ground rules now about what's going to happen and why. Frankly, I have nine or 10 trials scheduled, and they go through May of 2007. This is slotted in.

Unless something happens, and it would have to be drastic, this is going to go forward in February of 2007.

MR. TOMASZCZUK: Very well, Your Honor. Thank you.

THE COURT: Let me just think about this. There's another spent fuel case that goes to trial in May.

MR. GARDNER: That's the Boston Edison case, Your Honor.

THE COURT: Yes. Exactly. The trial schedule is I wouldn't say absolutely full. I could probably fit a couple day trial in there somewhere, but it's close.

Unless something really drastic happens -- you never want to say never -- this trial is going to go forward in February.

MR. TOMASZCZUK: Very well, Your Honor. Thank you.

THE COURT: All right. Thank you very much. I look forward to seeing you again, but not for a

while.

We'll wish everyone well in their endeavors in getting ready for trial and anticipate that given the capabilities and competence and experience of counsel all this will go forward very smoothly in February of 2007, about 11 months from now.

We're in recess.

(Whereupon, at 10:45 a.m. the hearing in the above-entitled matter was concluded.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

REPORTER'S CERTIFICATE

DOCKET NO.: 03-2623C

CASE TITLE: System Fuels v. United States

HEARING DATE: March 14, 2006

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: March 14, 2006

Tammy Brodsky
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 03-2623C

(Filed: March 14, 2006)

| | |
|---|---|
| SYSTEM FUELS, INC., and ENTERGY ARKANSAS, INC. | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Pending before the court is that part of Defendant's Motion for Reconsideration of Certain Aspects of the Court's April 20, 2005 Opinion upon which action was deferred by the court's Scheduling Order of February 1, 2006. In that Scheduling Order, the court denied defendant’s motion insofar as it requested reconsideration of the court’s decision that plaintiffs may plead a takings claim as an alternative to a claim for breach of contract. The court deferred that part of defendant's motion requesting that the court reconsider its decision respecting the time period to be covered by the trial on damages scheduled for February 2007, and requested that plaintiffs respond to defendant’s motion. The parties have briefed the deferred issue, and a hearing was held on March 14, 2006 to address defendant’s motion.

The deferred portion of defendant’s motion for reconsideration is hereby DENIED for the reasons stated at the hearing of March 14, 2006. The court anticipates that plaintiffs will move in July 2006 for leave to file a supplemental complaint seeking damages through June 30, 2006 for defendant’s partial breach of contract.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge