# In the United States Court of Federal Claims

No. 98-126C
(Filed January 7, 2009)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| YANKEE ATOMIC | \* |
| ELECTRIC COMPANY, | \* |
|         Plaintiff, | \* |
| | \* |
|     v. | \* |
| | \* |
| THE UNITED STATES, | \* |
|         Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER SETTING STATUS CONFERENCE [1]

The Federal Circuit's August 7, 2008 Opinion in *Yankee Atomic Co. v. United States*, 536 F.3d 1268 (2008) affirmed-in-part and reversed-in-part *Yankee Atomic Co. v. United States*, 73 Fed. Cl. 249 (2006), and remanded the matter to the undersigned to apply the 1987 Annual Capacity Report ("ACR") acceptance rates to assess causation of certain awarded costs. The mandate issued on October 24, 2008.[2] This court then requested a Status Report indicating any further proceedings by the parties considered to be appropriate and a proposed schedule for any proceedings so indicated.

Yankees' Status Report filed December 10, 2008 defines remaining issues as narrow, limited to causation for discrete costs for dry storage and for reracking.

---

[1] This shall also be deemed applicable in *Connecticut Yankee v. United States,* No. 98-154 C and *Maine Yankee v. United States*, No. 98-474 C.

[2] According to the publically-available Federal Circuit docket sheet, the government filed a Motion to Recall Mandate on October 27, 2008 and a Motion for Reconsideration of the Circuit's October 24, 2008 Order denying its motion for an enlargement of time to file a petition for panel rehearing and/or a petition for rehearing *en banc*. The government nevertheless recognizes that the Federal Circuit's decisions in *Yankee Atomic* and *Pacific Gas & Electric Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008) are currently binding.

Additional discovery, including expert testimony on exchanges in a hypothetical non-breach world of the 1987 ACR, will not be significant according to the Yankees, and the court may and should also use the evidentiary record from the 2004 trial. There is no need or justification for revisiting issues not disturbed by the Federal Circuit. *See Eagle Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication."). A schedule is proposed, culminating in a mini-trial of approximately three days in the summer of 2009.

The government has a different view of the scope of the remand. Its Status Report filed December 17, 2008 advocates the court proceed on the existing trial record with summary judgment motions, stating there is no evidence in the existing trial record to support Yankees' claim for damages under the 1987 ACR rate. Causation is defeated on the existing record according to the government. Reliance on Mr. Grave's exchange model is disparaged.

In support of its position that Yankees may not seek damages on a theory that was not previously pursued, the government cites *First Federal Lincoln Bank v. United States*, 518 F.3d 1308 (Fed. Cir. 2008). In *First Federal*, a *Winstar* case, the thrift requested damages for breach based for future lost profits or for the lost value of the thrift. The court awarded damages based on another theory not advanced by the thrift, the value of the thrift deposits during a certain period of time. Because that damages theory was not sought at trial, the Federal Circuit reversed, but did not remand.

Here, the situation is different in that Yankee's mitigation or expectation damages quest – efforts to find storage for DOE's partial breaches– remain – the template being one of comparing appropriately-established costs in the breach world less any costs that would have been incurred absent those breaches. While the previous opinion found that in the nonbreach world, the Yankees would not have expended the amounts awarded for reracking or for constructing dry storage, 73 Fed. Cl. 268, and under any reasonable acceptance rate, plus some augmentation, it was highly unlikely Yankees would have built dry storage, 73 Fed. Cl. 310, the Federal Circuit's mandate requires the application of the acceptance rates in the 1987 ACR in formulating any costs that may have been incurred in this selected non-breach world. This number then is subtracted from the breach-world costs to arrive at the net

damages caused by DOE's partial breach(es).  In other words, the remand ordered is not to apply a new damages model such as lost profits versus mitigation damages; rather the remand is to reassess or refactor one of the components of this comparative equation.  The structure of the formula is the same.  If the government's position were correct, then the Federal Circuit could well have concluded that Yankees failed to meet their burdens in this regard and reverse rather than remand.

Additional evidence and argument for the limited refocus on the causation issues identified would not be contrary to the Federal Circuit's opinion; however, whether the required calculation of costs in the 1987 ACR world can be determined by application of evidence already in the record or additional record evidence is needed is not determined at this time.

> Without record evidence about the Yankees' condition with full Government performance, the Court of Federal Claims could not perform the necessary comparison between the breach and non-breach worlds and thus could not accurately assess the Yankees' damages. *See Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (instructing that plaintiffs bear the burden of demonstrating "what might have been"); *Bluebonnet Sav. Bank FSB v. United States*, 67 Fed. Cl. 231, 238 (2005) ("[B]ecause plaintiffs in this case are seeking expectancy damages, it is incumbent upon them to establish a plausible 'but-for' world.").

536 F.3d at 1273.

The Federal Circuit's selection of the 1987 ACR for the non-breach world may point to a need for further evidence to guide the court's comparison, mindful that Yankees have the burden. *See Yankee Atomic*, 536 F.3d at 1273 (explaining that "the Yankees had the burden to prove the contractual acceptance rate and apply that rate before suggesting that the Government's breach was a substantial factor in causing the Yankees' claimed expenses.").  Remand involves the application of the 1987 acceptance rate to assess causation.  536 F.3d at 1274 ("Accordingly, the court vacates and remands with instructions that the Court of Federal Claims apply the Standard Contract acceptance rate identified in *Pacific Gas* to assess causation.").

"[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (citing *Kelley v. S. Pac. Co.*, 419 U.S. 318, 331-32 (1974)); *accord Winters v. Gober*, 219 F.3d 1375, 1379 (Fed. Cir. 2000) (denying a litigant an opportunity to present relevant evidence to the trier of fact under a new standard "is inconsistent with general principles of fairness"); *Baginsky v. United States*, 697 F.2d 1070, 1074 (Fed. Cir. 1983) (the normal practice is to remand to allow the trial court to reconsider issue under the proper legal standard); *Adams v. United States*, 230 Ct. Cl. 628, 680 F.2d 746 (1982) (remanding for factual determinations following reversal).

The government also contends that Yankees must reconcile the Federal Circuit's holding affirming the determination that Greater-Than-Class-C radioactive waste ("GTCC") constituted HLW as defined in the contract with the 1987 SNF acceptance schedule.  An issue as to the need for additional evidence is also present in this GTCC issue.

The government also takes an alternate position, that should the court allow the Yankees to pursue "an alternate damages model under the 1987 ACR, . . . "the issues to be resolved on remand from the Federal Circuit are circumscribed to issues of causation," Defendant's Status Report, p. 6, and "should primarily involve the submission of supplemental expert reports by the parties and depositions of those experts."

The case management schedule proposed by the government has deadlines for expert reports and close of discovery by July 24, 2009.  Yankees proposed a deadline of June 12, 2009 for close of discovery.  Differences also include whether it is premature to set deadlines for rebuttal expert reports and/or a trial date.  These matters can be addressed at the Status Conference.

Subject to discussion at the requested Status Conference, the following is perceived to be the scope and extent of the remand, and accordingly the scope for discovery and any evidence:

1. Causation for the pre-breach reracking costs of Maine Yankee ($10,069,018) and Connecticut Yankee ($8,350,893).

The record also shows that the reracks were reasonable even though early closure of some facilities rendered some of the efforts unnecessary. The Yankees are "'not precluded from recovery . . . to the extent that [they have] made reasonable but unsuccessful efforts to avoid loss.' " *Id.* (quoting Restatement (Second) of Contracts § 350 comment b). Because the rerack efforts were reasonable, foreseeable, and caused by the Government's partial breach, their ultimate success and usage is irrelevant. Accordingly, this court affirms the trial court's findings that the Yankees' rerack decisions were "commercially reasonable" and "foreseeable to DOE at the time of contracting." *Yankee I*, 73 Fed. Cl. at 279, 283.

Causation, the remaining pre-breach mitigation factor, presents more difficulty for the Yankees. As explained in section II above, the trial court must apply the contract rate when assessing causation under the substantial factor test. Thus, although this court affirms the Court of Federal Claims' findings with respect to the foreseeability and reasonableness prongs of the pre-breach mitigation damages test, it must nevertheless remand as to causation. In particular, the Court of Federal Claims must apply the Standard Contract acceptance rate in evaluating whether the Government's partial breach of contract was a substantial factor in causing the Yankees to rerack.

536 F.3d at 1276-77.

2. Causation for expenses for a dry storage facility at Maine Yankee ($65,705,536.00 through 2002), Connecticut Yankee ($25,803,986.00 through 2001) and Yankee Atomic ($32,86,366.00 through 2001). "In sum, the trial court had an obligation to determine the SNF and HLW acceptance rate under the Standard Contract and apply that rate in determining the substantial cause of the Yankees' costs." 536 F.3d at 1274.

Accordingly, it is **ORDERED** that the parties' Joint Request for a Status Conference filed December 22, 2008, is **GRANTED.** Counsel indicated January 28-30, 2009 were possible dates and these dates are available. Counsel shall consult as to the continuing availability of those dates, choose one, and then contact Ms. Linda Eddins, (202) 357-6613, to schedule the Status Conference which can proceed either

in person at the National Courts Building or telephonically, depending on counsels' agreement.  Counsel may file any additional submissions addressed to this Status Conference not later than five days prior to its scheduled date.

s/ James F. Merow
James F. Merow
Senior Judge